**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: 100% GRATED PARMESAN CHEESE MARKETING AND SALES PRACTICES LITIGATION | 16 CV 5802 |
| | MDL 2705 |
| | Judge Gary S. Feinerman |
| *This Document Relates to All Cases on The Kraft Heinz Company Track* | |

**CONSOLIDATED CLASS ACTION**
**COMPLAINT AGAINST THE KRAFT HEINZ COMPANY**

Plaintiffs Samantha Lewin, Yvette Nash, Rosemary Quinn, Larry Rollinger, Jr., Adam Weiss, Ann Bell, Alfonso Fata, Michael Wills, and Karen Ford, individually and on behalf of all others similarly situated, upon personal knowledge of facts pertaining to themselves and on information and belief as to all other matters, by and through undersigned Interim Class Counsel, bring this class action complaint against Defendant The Kraft Heinz Company ("Defendant" or "Kraft").

## NATURE OF THE ACTION

1.      This consumer class action arises out of Defendant's misbranding and false and misleading advertising of its grated Parmesan cheese products (the "Products") as "100% Grated Parmesan Cheese," "100% Grated Parmesan and Romano Cheese," and "100% Grated Three Cheese Blend." Defendant's advertisements, including its labels, represent the Products as "100% Grated Parmesan Cheese," "100% Grated Parmesan and Romano Cheese," and "100% Grated Three Cheese Blend" (the "100% Claims"), but these representations are false, misleading, and likely to deceive the reasonable consumer because the Products are not 100% cheese.

2.      Rather than being comprised of all cheese, the Products contain fillers and additives such as cellulose, an inexpensive filler derived from wood pulp. They also contain potassium sorbate cheese cultures that are not one of the types of cheeses listed on the label. The Products are not "100% Grated Parmesan Cheese," "100% Grated Parmesan and Romano Cheese," and "100% Grated Three Cheese Blend."

3.      As a result of the false, misleading, untrue, and deceptive statement on the Products' labels and other advertisements, Plaintiffs and the other Class members did not receive that which was promised.

1

4.     Plaintiffs bring this action on behalf of themselves and all other similarly situated consumers to recover the amounts Plaintiffs and the other Class members overpaid, to prevent Defendant from continuing to engage in this conduct, and to correct the false perception it has created in the marketplace.

## JURISDICTION AND VENUE

5.     The Court has original subject matter jurisdiction over the case under 28 U.S.C. § 1332(d) because the case is brought as a class action under Fed. R. Civ. P. 23, at least one proposed Class member is of diverse citizenship from Defendant, the proposed Class includes more than 100 members, and the aggregate amount in controversy exceeds five million dollars, excluding interest and costs.

6.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendant engaged in substantial conduct relevant to Plaintiffs' claims within this District and has caused harm to Class members residing within this District. Additionally, the lawsuits comprising this consolidated complaint have been transferred to this Court for coordinated pretrial proceedings pursuant to the Transfer Order of the JPML dated June 2, 2016. Plaintiffs in the transferred actions reserve their rights of remand to the districts from which they were transferred at or before the conclusion of the pretrial proceedings.

## PARTIES

7.     Plaintiff Samantha Lewin ("Lewin") is a citizen of the State of California, residing in San Francisco, California. Around November of 2015, Lewin purchased a container of Kraft's "100% Grated Parmesan Cheese" for about $3.99 at a store in San Francisco, California. Lewin purchased the "100% Grated Parmesan Cheese" believing it was 100% Parmesan cheese. Lewin did not receive that which she was promised.

2

8.      Plaintiff Yvette Nash ("Nash") is a citizen of the State of Illinois, residing in Chicago, Illinois. Around November of 2015, Nash purchased Kraft "100% Grated Parmesan and Romano Cheese" at her local Jewel grocery store. Nash ordinarily purchased Kraft "100% Grated Parmesan and Romano Cheese" about two times a year. Nash purchased the Kraft "100% Grated Parmesan and Romano Cheese" believing it was 100% Parmesan and Romano cheese. Nash did not receive that which she was promised.

9.      Plaintiff Rosemary Quinn ("Quinn") is a citizen of the State of New York, residing in Katonah, New York. Quinn purchased containers of Kraft "100% Grated Parmesan Cheese" in New York and Connecticut. Quinn ordinarily purchased Kraft "100% Grated Parmesan Cheese" about once a week. Quinn purchased the Kraft "100% Grated Parmesan" believing it was 100% Parmesan cheese. Quinn did not receive that which she was promised.

10.     Plaintiff Larry Rollinger, Jr. ("Rollinger") is a citizen of the State of Minnesota, residing in St. Paul Park, Minnesota. Rollinger has purchased Kraft "100% Grated Parmesan Cheese" from various stores in Minnesota several times a year. Rollinger purchased the Kraft "100% Grated Parmesan Cheese" believing it was 100% Parmesan cheese.  Rollinger did not receive that which he was promised.

11.     Plaintiff Adam Weiss ("Weiss") is a citizen of the State of California, residing in Huntington Beach, California. Weiss ordinarily purchased Kraft "100% Grated Parmesan Cheese" from an Albertson's store in California several times a year. Weiss purchased the Kraft "100% Grated Parmesan Cheese" believing it was 100% Parmesan cheese. Weiss did not receive that which he was promised.

12.     Plaintiff Ann Bell ("Bell") is a citizen of the State of Illinois, residing in Palatine, Illinois. Bell has regularly purchased Kraft "100% Grated Parmesan Cheese" at retail locations in

Illinois, including her local Costco, Jewel Osco, Mariano's, Meijer, and Target. She has purchased the Products approximately once every two or three months. Bell purchased the Kraft "100% Grated Parmesan" believing it was 100% Parmesan cheese. Bell did not receive that which she was promised.

13.     Plaintiff Alfonso Fata ("Fata") is a citizen of the State of Florida, residing in Orlando, Florida. Fata has regularly purchased Kraft "100% Grated Parmesan Cheese" at retail locations in Florida, including Publix, Target, and Wal-Mart. He has purchased the Products approximately once or twice a month. Fata purchased the Kraft "100% Grated Parmesan" believing it was 100% Parmesan cheese. Fata did not receive that which he was promised.

14.     Plaintiff Michael Wills ("Wills") is a citizen of the State of Alabama, residing in Mumford, Alabama. Wills has purchased Kraft "100% Grated Parmesan Cheese" at retail locations in Alabama, including Winn-Dixie. He has purchased the Products several times over the last four years. Wills purchased the Kraft "100% Grated Parmesan" believing it was 100% Parmesan cheese.  Wills did not receive that which he was promised.

15.     Plaintiff Karen Ford ("Ford") is a citizen of the State of Michigan, residing in Dearborn Heights, Michigan. Ford has regularly purchased Kraft "100% Grated Parmesan Cheese" at retail locations in Plymouth, Michigan. She has purchased the Products several times a year. Ford purchased the Kraft "100% Grated Parmesan" believing it was 100% Parmesan cheese. Ford did not receive that which she was promised.

16.     Defendant The Kraft Heinz Company is a Pennsylvania corporation co-headquartered in Chicago, Illinois, and Pittsburgh, Pennsylvania. Defendant promotes, distributes, markets, and sells the Products and many other foods and beverages to consumers throughout the United States, including in Illinois and this District.

4

**FACTUAL ALLEGATIONS**

17.     Kraft has been selling grated Parmesan cheese products since 1945, and since at least 1965, has distributed, marketed, and sold products advertised as 100% grated Parmesan cheese on a nationwide basis.

18.     According to the United States Department of Agriculture, in 2015, output of Parmesan cheese rose 11% from 2014, to around 336 million pounds, while Romano production grew 20% to 54 million pounds.[1]

19.     Cellulose is an organic polymer. It is not cheese or any other type of dairy product. Its main use is in the production of paperboard and paper. Humans cannot digest cellulose, and it provides no nutritional calories. Cellulose is often used as a filler. Potassium sorbate, also found in the Products, is a synthetic chemical additive used in some foods and personal care products.

20.     The Products' package labels prominently represent the Products as "100% Grated Parmesan Cheese," "100% Grated Parmesan & Romano Cheese," or "100% Grated Three Cheese Blend." Representative packaging of the Products appear below:

---

[1] Lydia Mulvany, Bloomberg, *The Parmesan Cheese You Sprinkle on Your Penne Could Be Wood*, *available at,* http://www.bloomberg.com/news/articles/2016-02-16/the-parmesan-cheese-you-sprinkle-on-your-penne-could-be-wood (last visited Nov. 1, 2016).

 

 

21. Various television commercials developed and paid for by Defendant throughout the years and the class period have reinforced the message that the Products are comprised of only 100% real cheese.

6

22.     Contrary to Defendant's 100% Claims, the Products are not 100% cheese. In or around February 2016, an independent testing facility determined that a sample of Defendant's Products allegedly consisting of 100% grated Parmesan cheese actually contained 3.8% cellulose.

23.     Because the Products are not all cheese, Defendant's advertising, including its labels, is false, misleading, unfair, deceptive, and intended to induce consumers to purchase the Products.

24.     Plaintiffs and the Class members did not receive that which was promised and represented to them. Each has been exposed to Defendant's advertisements and has seen the Products' labels. Plaintiffs and the Class members overpaid for the Products they purchased.

25.     Plaintiffs have notified Defendant in writing about the allegations in this complaint, and in so doing, have satisfied all pre-suit demand and notice requirements.

## CLASS ALLEGATIONS

26.     Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3), on behalf of a Class defined as follows:

> All persons in the United States and its territories who purchased, other than for resale, Kraft 100% Grated Parmesan Cheese, Kraft 100% Grated Parmesan and Romano Cheese, or Kraft 100% Grated Three Cheese Blend products.

Excluded from the Class are: (i) Defendant and its officers and directors, agents, affiliates, subsidiaries, and authorized distributors and dealers; (ii) all Class members that timely and validly request exclusion from the Class; and (iii) the Judge presiding over this action.

27.     Alternatively, Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(b)(3), on behalf of the following subclasses:

A.     Illinois, and all states with laws at issue similar to Illinois, by Plaintiffs Nash and Bell ("Illinois Class"):

All persons who purchased, other than for resale, in the State of Illinois Kraft 100% Grated Parmesan Cheese, Kraft 100% Grated Parmesan and Romano Cheese, or Kraft 100% Grated Three Cheese Blend products.

B.    New York, and all states with laws at issue similar to New York, by Plaintiff Quinn

("New York Class"):

All persons who purchased, other than for resale, in the State of New York Kraft 100% Grated Parmesan Cheese, Kraft 100% Grated Parmesan and Romano Cheese, or Kraft 100% Grated Three Cheese Blend products.

C.    Connecticut, and all states with laws at issue similar to Connecticut, by Plaintiff

Quinn ("Connecticut Class")

All persons who purchased, other than for resale, in the State of Connecticut Kraft 100% Grated Parmesan Cheese, Kraft 100% Grated Parmesan and Romano Cheese, or Kraft 100% Grated Three Cheese Blend products.

D.    California, and all states with laws at issue similar to California, by Plaintiffs Weiss

and Lewin ("California Class")

All persons who purchased, other than for resale, in the State of California Kraft 100% Grated Parmesan Cheese, Kraft 100% Grated Parmesan and Romano Cheese, or Kraft 100% Grated Three Cheese Blend products.

E.    Minnesota, and all states with laws at issue similar to Minnesota, by Plaintiff

Rollinger ("Minnesota Class")

All persons who purchased, other than for resale, in the State of Minnesota Kraft 100% Grated Parmesan Cheese, Kraft 100% Grated Parmesan and Romano Cheese, or Kraft 100% Grated Three Cheese Blend products.

F.    Florida, and all states with laws at issue similar to Florida, by Plaintiff Fata

("Florida Class")

All persons who purchased, other than for resale, in the State of Florida Kraft 100% Grated Parmesan Cheese, Kraft 100% Grated Parmesan and Romano Cheese, or Kraft 100% Grated Three Cheese Blend products.

G.    Alabama, and all states with laws at issue similar to Alabama, by Plaintiff Wills

8

("Alabama Class")

All persons who purchased, other than for resale, in the State of Alabama Kraft 100% Grated Parmesan Cheese, Kraft 100% Grated Parmesan and Romano Cheese, or Kraft 100% Grated Three Cheese Blend products.

H.    Michigan, and all states with laws at issue similar to Michigan, by Plaintiff Ford

      ("Michigan Class")

All persons who purchased, other than for resale, in the State of Michigan Kraft 100% Grated Parmesan Cheese, Kraft 100% Grated Parmesan and Romano Cheese, or Kraft 100% Grated Three Cheese Blend products.

28.    Certification of Plaintiffs' claims for classwide treatment is appropriate because Plaintiffs can prove the elements of their claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

29.    The members of the Class are so numerous that joinder of the Class members would be impracticable.

30.    Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Such common questions of law or fact include, *inter alia*:

A.    Whether Defendant engaged in the conduct alleged;

B.    Whether Defendant misrepresented the content of the Products or misbranded them;

C.    Whether Defendant's misrepresentations were false, misleading, or likely to mislead a reasonable person;

D.    Whether Defendant's representation that the Products' contents consisted of 100% cheese created an express warranty;

E.    Whether Plaintiffs and the Class members paid for a product that they did

9

not receive;

F.     Whether Plaintiffs and the Class members have been damaged and, if so, the measure of such damages;

G.     Whether Defendant unjustly retained a benefit conferred by Plaintiffs and the Class members; and

H.     Whether Plaintiffs and the Class members are entitled to equitable relief, including, but not limited to, a constructive trust, restitution, and injunctive relief.

31.     Plaintiffs' claims are typical of the claims of the Class members because, among other things, Plaintiffs and the Class members were injured through the substantially uniform misconduct described above. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all Class members.

32.     Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other Class members they seek to represent; they have retained counsel competent and experienced in complex commercial and class action litigation; and Plaintiffs intend to prosecute this action vigorously. The interests of the Class members will be fairly and adequately protected by Plaintiffs and their counsel.

33.     A class action is also warranted under Fed. R. Civ. P. 23(b)(2), because Defendant has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole. Defendant has directed and continues to direct its conduct to all consumers in a uniform manner. Therefore, injunctive relief on a classwide basis is necessary to remedy continuing harms to Plaintiffs and the Class members caused by Defendant's continuing misconduct.

34.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other detriment suffered by Plaintiffs and the Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system should not be required to undertake such an unnecessary burden. Individualized litigation would also create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

## CLAIMS

### COUNT I
### Breach of Express Warranty
### On Behalf of the Nationwide Class,
### Or in the Alternative, Plaintiffs' Respective State Classes

35.     Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

36.     Defendant made affirmations of fact to Plaintiffs and the Class members relating to and describing the Products that the Products were 100% cheese.

37.     Defendant's 100% Claims were affirmations of fact and descriptions of the Products, including that the containers in which the Products were sold contained only cheese. These affirmations of fact and descriptions formed the basis of the bargain between Plaintiffs and the Class members and Defendant, creating an express warranty under Uniform Commercial Code,

11

2-313—an identical or substantially similar version of which has been and is currently enacted in each and every state.

38.     Defendant's Products were accompanied by an express warranty when placed in the stream of commerce by Defendant.

39.     All conditions precedent have occurred or been performed.

40.     Defendant breached the express warranty by selling a product that did not conform to the affirmations of fact and descriptions.

41.     At the time of sale to Plaintiffs and the Class members, Defendant had actual knowledge that it breached express warranties with Plaintiffs and the Class members.

42.     As the foreseeable and actual result of Defendant's breach of express warranty, Plaintiffs and the Class members were damaged.

**COUNT II**
**Unjust Enrichment**
**On Behalf of the Nationwide Class,**
**Or in the Alternative, On Behalf of Plaintiffs' Respective State Classes**

43.     Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

44.     Defendant has been unjustly enriched to Plaintiffs' and the Class members' detriment as a result of its unlawful and wrongful retention of money conferred by Plaintiffs and the Class members, such that Defendant's retention of their money would be inequitable.

45.     Defendant's unlawful and wrongful acts, as alleged above, enabled Defendant to unlawfully receive monies it would not have otherwise obtained.

46.     Plaintiffs and the Class members have conferred benefits on Defendant, which Defendant has knowingly accepted and retained.

47.     Defendant's retention of the benefits conferred by Plaintiffs and the Class members would be against fundamental principles of justice, equity, and good conscience.

48.     Plaintiffs and the Class members seek to disgorge Defendant's unlawfully retained profits and other benefits resulting from its unlawful conduct, and seek restitution and rescission for the benefit of Plaintiffs and the Class members.

49.     Plaintiffs and the Class members are entitled to the imposition of a constructive trust upon Defendant, such that its unjustly retained profits and other benefits are distributed equitably by the Court to and for the benefit of Plaintiffs and the Class members.

### COUNT III
### Breach of Implied Warranty of Merchantability
### On Behalf of Certain States

50.     Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

51.     Plaintiffs and the Class members assert a claim for breach of implied warranty of merchantability on behalf of themselves and other Class members in the following states: Alaska; Arkansas; California; Colorado; Connecticut; Delaware; District of Columbia; Hawaii; Kansas; Louisiana; Maine; Maryland; Massachusetts; Michigan; Minnesota; Mississippi; Missouri; Montana; Nebraska; Nevada; New Hampshire; New Jersey; New Mexico; North Dakota; Oklahoma; Oregon; Pennsylvania; Rhode Island; South Carolina; South Dakota; Texas; Utah; Vermont; Virginia; West Virginia; and Wyoming.

52.     Defendant, as the manufacturer, marketer, distributor, and seller of the Products is a merchant.

53.     Plaintiffs and the other Class members purchased the Products that were manufactured and sold by Defendant in consumer transactions.

54.     The implied warranty of merchantability requires that goods be adequately contained, packaged, and labeled, and the goods must conform to the promises or affirmations of fact made on the container or label.

13

55.     The Products are not adequately contained, packaged or labeled because they are packaged as "100% Grated Parmesan Cheese," "100% Grated Parmesan and Romano Cheese," and "100% Grated Three Cheese Blend," but the Products do not consist of 100% of the stated cheeses.

56.     The Products do not conform to the promises and affirmations of facts made on their containers and labels because they do not consist of 100% of the stated cheeses as their packaging and labeling warrants.

57.     Plaintiffs and the other members of the Class did not receive the Products as warranted. The Products they purchased were worth substantially less than the Products they were promised and expected.

58.     As a result of Defendant's breach of warranty, Plaintiffs and members of the Class suffered damages by purchasing the Products because they would not have purchased the Products, or would have paid substantially less for them, had they known the truth.

**COUNT IV**
**Violation of the New York General Business Law § 349**
**On Behalf of the New York Class**

59.     Plaintiff Quinn ("Plaintiff" for purposes of Counts IV and V) repeats and realleges all preceding paragraphs as if fully set forth herein.

60.     New York General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

61.     Defendant's 100% Claims in connection with the labeling, marketing, and selling of the Products was deceptive. Instead of being 100% Parmesan cheese as claimed, the Products contain substances other than cheese, rendering the 100% Claims false, misleading, and deceptive.

14

62.     A reasonable person would consider the 100% Claims to be material to a decision to purchase the Products.

63.     Plaintiff and the other Class members were injured by reason of Defendant's violation of Section 349. As a foreseeable and actual result of Defendant's deceptive conduct, Plaintiff and the other Class members overpaid for the Products. Had Plaintiff and the other Class members known that Defendant's 100% Claims were false and that the Products contained substances other than the cheese advertised on the front label, they would not have purchased the Products.

**COUNT V**
**Violation of the New York General Business Law § 350**
**On Behalf of New York Class**

64.     Plaintiff Quinn ("Plaintiff" for purposes of Counts IV and V) repeats and realleges all preceding paragraphs as if fully set forth herein.

65.     New York General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

66.     Defendant's 100% Claims in connection with the labeling, marketing, and selling of the Products was false advertising. Instead of being 100% Parmesan cheese as advertised, the Products contained substances other than cheese, rendering the 100% Claims false.

67.     Defendant's 100% Claims impact consumers at large and are likely to mislead a reasonable consumer acting reasonably under the circumstances. The 100% Claims induced Plaintiff and the other Class members to purchase the Products.

68.     As a foreseeable and actual result of Defendant's false advertising, Plaintiff and the other Class members purchased Products that they would not have purchased had they known the 100% Claims were false.

## COUNT VI
### Violation of California Unfair Competition Law ("UCL"),
### California Business & Professions Code § 17200, *et seq.*
### On Behalf of the California Class

69.     Plaintiffs Lewin and Weiss ("Plaintiffs" for purposes of Counts VI and VII) reassert and reallege all of the preceding paragraphs as if fully set forth herein.

70.     The Unfair Competition Law, Business & Professions Code §§ 17200, *et seq.*, prohibits any unlawful, fraudulent, or unfair business act or practice and any false or misleading advertising.

71.     In the course of conducting business, Defendant committed unlawful business practices by, among other things, making representations (which also constitute advertising within the meaning of §§ 17200 and 17500) and omissions of material facts regarding the Products in its advertising campaign, including the Products' packaging, as set forth more fully herein. These representations constitute a misbranding of the Products, as prohibited by Section 110765 of the California Health & Safety Code, and the Food and Drug Administration's regulations, 21 C.F.R. §§ 101.18, and 21 U.S.C. §§ 342 and 343, because Defendant's advertising and labeling of the Products are false and misleading in that they assert the 100% Claims when, in fact, they contain substances other than the promised cheese. Defendant has also violated the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 343, because it manufactured and introduced into interstate commerce misbranded Products. This conduct constitutes violations of the unfair prong of Section 17200.

81.     In the course of conducting business, Defendant committed unfair business practices by, among other things, making the representations (which also constitute advertising within the meaning of §§ 17200 and 17500) and omissions of material facts regarding the Products in its advertising campaign, including the Products' packaging, as set forth more fully herein. There

is no societal benefit from false advertising, only harm. Plaintiffs and the other Class members paid for lower value products that were not what they purported to be. While Plaintiffs and the other Class members were harmed, Defendant was unjustly enriched by its false misrepresentations and omissions. As a result, Defendant's conduct is unfair, as it offended an established public policy. Further, Defendant engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

82.     Defendant's conduct violated consumer protection, unfair competition, and truth in advertising laws in California and other states, resulting in harm to consumers. Defendant's acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition, and deceptive conduct towards consumers. This conduct violates the unlawful prong of Section 17200.

83.     There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

84.     In the course of conducting business, Defendant committed fraudulent business acts or practices by, among other things, making the representations (which also constitute advertising within the meaning of §§ 17200 and 17500) and omissions of material facts regarding the Products in its advertising campaign, including on the Products' packaging and labeling, as set forth more fully herein. Defendant made the misrepresentations and omissions regarding the ingredients, character, and contents of its Products, among other ways by misrepresenting on each and every Product's packaging and labeling that the Products contain "100%" cheese, when in fact, the representations are false and deceptive. The Products do not contain just one ingredient, cheese. They contain substances other than the promised cheese as well.

85.     Plaintiffs and the other Class members have suffered injury in fact and lost money or property as a result of Defendant's conduct.

86.     Plaintiffs relied on Defendant's material misrepresentations and omissions, which are described above. Plaintiffs have suffered injury in fact and lost money as a result of Defendant's unlawful, unfair, and fraudulent practices.

87.     Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct in violation of Section 17200, entitling Plaintiffs and the other Class members to injunctive relief. If Defendant continues to engage in the violations of Section 17200 described above, Plaintiffs will likely be deceived in the future when they shop for Defendant's Products, not knowing the truth about the representations Defendant makes.

**COUNT VII**
**Violation of the California Consumers Legal Remedies Act ("CLRA")**
**California Civil Code §§ 1750, *et seq.***
**On Behalf of the California Class**

88.     Plaintiffs Lewin and Weiss ("Plaintiffs" for purposes of Counts VI and VII) repeat and reallege the foregoing paragraphs as if fully set forth herein.

89.     The Products are goods within the meaning of Section 1761(a).

90.     Defendant violated and continues to violate the CLRA by engaging in the following prohibited practices in transactions with Plaintiffs and the other Class members which Defendant intended to result in, and did result in, the sale of Products:

A.      Representing that the Products have characteristics, ingredients, uses, benefits, or quantities which they do not have (Cal. Civ. Code § 1770(a)(5));

B.      Representing that the Products are of a particular standard, quality, or grade when they are of another (Cal. Civ. Code § 1770(a)(7));

18

C.   Advertising goods with intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9)); and

D.   Representing that the Products have been supplied in accordance with a previous representation when they have not (Cal. Civ. Code § 1770(a)(16)).

91.   Defendant violated the CLRA by representing and failing to disclose material facts on the Products' labeling and associated advertising, as described above, when it knew that the representations were false and misleading and that the omissions were of material facts it was obligated to disclose.

92.   Pursuant to Section 1782(d), Plaintiffs, individually and on behalf of the other Class members, seek a Court order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement.

93.   Pursuant to Section 1782, Plaintiffs notified Defendant in writing by certified mail of the particular violations of Section 1770 and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to so act. A copy of the letter is attached to the underlying complaints filed in the transferred cases.

94.   Defendant has failed to rectify or agree to rectify the problems associated with the actions detailed above and to give notice to all affected consumers within 30 days of the date of written notice. Plaintiffs therefore are entitled to, and hereby do seek, actual, punitive, and statutory damages for Defendant's violations of the CLRA. Defendant's conduct was knowing, fraudulent, wanton and malicious, thereby entitling Plaintiffs and the members of the Class to whom this claim applies to punitive damages.

## COUNT VIII
## Violation of the Minnesota Prevention of Consumer Fraud Act ("MPCFA"),
## Minn. Stat. § 325F.68, *et seq.*
## On Behalf of the Minnesota Class

72.     Plaintiff Rollinger ("Plaintiff" for purposes of Counts VIII–XI) repeats and realleges all of the preceding paragraphs as if fully set forth herein.

73.     The MPCFA prohibits the act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby. Minn. Stat. § 325F.69, subd. 1.

74.     Defendant is a person within the meaning of Minn. Stat. § 325F.68, subd. 3.

75.     The Products are merchandise within the meaning of Minn. Stat. § 325F.68, subd. 2.

76.     Defendant's use and employment of the 100% Claims in connection with the sales of its Products violated the MPCFA because the 100% Claims were false, misleading, and deceptive. The Products were not comprised only of cheese.

77.     In making the 100% Claims, Defendant intended that Plaintiff and the other Class members rely on the truth of the 100% Claims when making decisions to purchase the Products. Defendant knew or should have known that the 100% Claims were misleading and deceptive.

78.     The 100% Claims were likely to mislead a reasonable consumer. A reasonable consumer would consider the ingredients in the Products material to a decision to purchase the Products.

79.     Plaintiff and the other Class members reasonably relied on the 100% Claims and purchased the Products in reliance thereon. Plaintiff and the Class members paid a particular price for a product as represented by the 100% Claims. When they received a product that was not in

20

conformity with the 100% Claims, Plaintiff and the other Class members were damaged on account of receiving Products worth less than as represented.

80.     Pursuant to Minn. Stat. § 8.31, subd. 3a, Plaintiff brings this action to recover damages, together with costs, and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the Court.

**COUNT IX**
**Violation of Minnesota Unlawful Trade Practices Act ("MUTPA"),**
**Minn. Stat. §§ 325D.09, _et seq._**
**On Behalf of the Minnesota Class**

81.     Plaintiff Rollinger ("Plaintiff" for purposes of Counts VIII–XI) repeats and realleges all of the preceding paragraphs as if fully set forth herein.

82.     Minnesota Statute § 325D.13 provides: "No person shall, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality, ingredients or origin of such merchandise."

83.     Defendant is a person within the meaning of Minn. Stat. §325D.10, subd. a.

84.     Plaintiff and the other Class members are persons within the meaning of Minn. Stat. § 325D.10, subd. a.

85.     Defendant violated Section 325D.13 by making 100% Claims in connection with the sale of the Products.

86.     Defendant made the 100% Claims knowing them to be false, misleading, and deceptive. Defendant knew the actual ingredients of the Products included substances other than cheese that made the 100% Claims false.

87.     The 100% Claims are and were material and likely to mislead a reasonable consumer, and Plaintiff and the other Class members were misled and deceived by the 100% Claims.

88.     Plaintiff and the other Class members reasonably relied on the 100% Claims and purchased the Products in reliance thereon. When they received a product that was not in conformity with the 100% Claims, Plaintiff and the other Class members were damaged on account of receiving Products worth less than as represented.

89.     Pursuant to Minn. Stat. § 8.31, subd. 3a, Plaintiff brings this action to recover damages, together with costs, and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the Court.

### COUNT X
### Violation of Minnesota False Statement in Advertising Act ("FSAA"),
### Minn. Stat. § 325F.67
### On Behalf of the Minnesota Class

90.     Plaintiff Rollinger ("Plaintiff" for purposes of Counts VIII–XI) repeats and realleges all of the preceding paragraphs as if fully set forth herein.

91.     The FSAA broadly prohibits any person from making an untrue, deceptive, or misleading material assertion, representation, or statement in the sale or disposition of merchandise, securities, or services.

92.     Defendant violated the FSAA because the 100% Claims were untrue, deceptive, and misleading material assertions, representations, or statements connected to the sale of the Products, which are merchandise. The Products did not contain 100% of the stated cheese ingredients as prominently represented on the front of the labels.

93.     Defendant placed the 100% Claims prominently on the front label of the Products in order to induce consumers to view and rely on the representations in making decisions to purchase its Products.

94.     The 100% Claims are material representations or statements of fact which are material and likely to mislead a reasonable consumer.

95.     Plaintiff and the other Class members were in fact misled by the 100% Claims and purchased the Products in reliance on the 100% Claims.  Had they known that the 100% Claims were false, they would not have purchased the Products.

96.     Plaintiff and the Class members paid a particular price for a product as represented by the 100% Claims. When they received a product that was not in conformity with the 100% Claims, Plaintiff and the other Class members were damaged on account of receiving Products that were other than as represented.

97.     Pursuant to Minn. Stat. § 8.31, subd. 3a, Plaintiff brings this action to recover damages, together with costs, and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the Court.

**COUNT XI**
**Violation of Minnesota Deceptive Trade Practices Act ("MDTPA"),**
**Minn. Stat. § 325D.44, *et seq.***
**On Behalf of the Minnesota Class**

98.     Plaintiff Rollinger ("Plaintiff" for purposes of Counts VIII–XI) repeats and realleges all of the preceding paragraphs as if fully set forth herein.

99.     The MDTPA defines the following practices in the course of business as deceptive trade practices:

A.     Representing that goods have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have;

B.     Representing that goods are of a particular standard, quality, or grade, if they are of another;

C.     Advertising goods with intent not to sell them as advertised; and

D.     Engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

100.    Defendant violated the MDTPA by making the 100% Claims prominently on the front labels of the Products when the Products did not conform. Instead the Products contained substances other than cheese that made the 100% Claims false, misleading, and deceptive.

101.    Defendant knew that the 100% Claims were untrue, false, misleading, and deceptive and that they would mislead reasonable consumers.

102.    Defendant continues to engage in this conduct and Defendant's violations of the MDTPA are ongoing. Plaintiff and the other Class members are entitled to truthful labeling when they go shopping for consumer goods. The continued use of the 100% Claims leads Plaintiff and the other Class members to reasonably believe that Defendant has corrected its untruthful, misleading, and deceptive conduct and that the Products now actually contain 100% of the stated cheese ingredients. Therefore, Defendant's conduct has caused, and is likely to continue to cause, confusion or misunderstanding.

103.    Plaintiff and the other Class members seek to enjoin Defendant's conduct that violates the MDTPA, and to recover costs and attorney's fees for Defendant's willful violations of the MDTPA.

### COUNT XII
### Violation of the Illinois Deceptive Practices and Consumer Fraud Act ("ICFA"), 815 ILCS 505/2
### On Behalf of the Illinois Class

104.    Plaintiffs Nash and Bell ("Plaintiffs" for purposes of Count XII) repeat and reallege all preceding paragraphs as if fully set forth herein.

105.    The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2 prohibits unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, or misrepresentation in the conduct of any trade or commerce.

24

106.     Plaintiffs and the other Class members are consumers who purchased the Products.

107.     Defendant's conduct, described above, in misrepresenting and prominently labeling the Products with the 100% Claims, while omitting on the front of the label that the Products were not all cheese, constitutes an unfair or deceptive practice and was and is likely to mislead a reasonable consumer.

108.     A reasonable consumer would consider the promise of receiving something other and less than as promised to be important when making a decision to purchase the Products.

109.     Defendant's practices were unfair because they offended public policy, were immoral, unethical, oppressive, and unscrupulous, and caused substantial injury to consumers.

110.     Defendant's unfair and deceptive acts or practices were the foreseeable and actual cause of Plaintiffs and the other Class members suffering actual damage on account of receiving a product that was not 100% cheese.

111.     Plaintiffs and the other Class members paid a particular price for a product as represented by the 100% Claims. When they received a product that was not in conformity with the 100% Claims, Plaintiffs and the other Class members were damaged on account of receiving Products other than as represented.

## COUNT XIII
## Violation of the Connecticut Unfair Trade Practices Act ("CUTPA"),
## Conn. Gen. Stat. § 42-110b
## On Behalf of the Connecticut Class

112.     Plaintiff Quinn ("Plaintiff" for purposes of Count XIII) repeats and realleges all of the preceding paragraphs as if fully set forth herein.

113.     Connecticut General Statute § 42-110b prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

114.     Plaintiff and the other Class members are consumers who purchased the Products.

25

115. Defendant's conduct, described above, in misrepresenting and prominently labeling the Products with the 100% Claims, while omitting on the front of the label that the Products were not all cheese, constitutes an unfair or deceptive practice and was and is likely to mislead a reasonable consumer.

116. A reasonable consumer would consider the promise of receiving something other and less than as promised to be important when making a decision to purchase the Products.

117. Defendant's practices were unfair because they offended public policy, were immoral, unethical, oppressive, and unscrupulous, and caused substantial injury to consumers. Defendant sold a foodstuff that was misbranded.

118. Defendant's unfair and deceptive acts or practices were the foreseeable and actual cause of Plaintiff and the other Class members suffering actual damage on account of receiving a product that was not in conformity with the 100% Claims.

119. Plaintiff and the other Class members paid a particular price for a product as represented by the 100% Claims. When they received a product that was not in conformity with the 100% Claims, Plaintiff and the other Class members were damaged on account of receiving Products that were not as represented.

**COUNT XIV**
**Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")**
**Fla. Stat. §§ 501.201, *et seq*.**
**On Behalf of the Florida Class**

120. Plaintiff Fata ("Plaintiff" for purposes of Count XIV) repeats and realleges all of the preceding paragraphs as if fully set forth herein.

121. The express purpose of FDUTPA is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or

practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2). The FDUTPA declares

such acts and practices to be unlawful. Fla. Stat. § 501.204(1).

122. The sale of the Products was a "consumer transaction" within the scope of FDUTPA.

123. Plaintiff is a "consumer" as defined by Section 501.203, Florida Statutes.

124. Defendant's Products are "goods" within the meaning of FDUTPA, and Defendant is engaged in "trade or commerce" within the meaning of FDUTPA.

125. Defendant's unfair and deceptive practices are likely to mislead—and have misled—reasonable consumers, such as Plaintiff and members of the Class.

126. Defendant has violated FDUTPA by engaging in the unfair and deceptive practices described above, which offend public policies and are immoral, unethical, unscrupulous, and substantially injurious to consumers.

127. Specifically, Defendant represents that the Products contain "100%" Parmesan or Parmesan and Romano cheeses, when in fact they do not.

128. Plaintiff and Class members have been aggrieved by Defendant's unfair and deceptive practices in violation of FDUTPA, in that they paid money for Defendant's mislabeled Products.

129. Reasonable consumers rely on Defendant to honestly represent the true nature of the contents of the package.

130. Defendant has deceived reasonable consumers, like Plaintiff and members of the Class, into believing the Products are something they are not; specifically that the Products are comprised of "100%" cheese, when they are not.

131.    Pursuant to sections 501.211(2) and 501.2105, Florida Statutes, Plaintiff and members of the Class make claims for damages, attorney's fees, and costs. The damages suffered by Plaintiff and the Class were directly and proximately caused by the deceptive, misleading, and unfair practices of Defendant. Pursuant to section 501.211(1), Florida Statutes, Plaintiff and the Class seek injunctive relief for, *inter alia*, the Court to enjoin Defendant's above-described wrongful acts and practices and for restitution and disgorgement.

132.    Plaintiff seeks all available remedies, damages, and awards as a result of Defendant's violations of FDUTPA.

**COUNT XV**
**Violation of the Alabama Deceptive Trade Practices Act ("ADTPA")**
**Ala. Code § 8-19-1, *et seq.***
**On Behalf of the Alabama Class**

133.    Plaintiff Wills ("Plaintiff" for purposes of Count XV) repeats and realleges all of the preceding paragraphs as if fully set forth herein.

134.    The ADTPA makes unlawful deceptive acts or practices in the conduct of any trade or commerce such as the following: representing that goods have characteristics, ingredients, benefits, or qualities that they do not have; representing that goods are of a particular standard, quality, or grade, if they are of another; advertising goods or services with intent not to sell them as advertised; or engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce. Ala. Code § 8-19-5(5), (7), (9), (27).

135.    Under the ADTPA, Plaintiff and the Class members and Defendant are persons, and Plaintiff and the Class members are consumers. Ala. Code § 8-19-3(2), (5).

136.    Defendant sells and distributes the Products, which are goods, in trade or commerce. Ala. Code § 8-19-3(3), (6).

137. The conduct of Defendant, as set forth herein, constitutes unfair or deceptive acts or practices under the ADTPA, including but not limited to, representing and failing to disclose material facts on the Products' labeling and associated advertising, as described above, when it knew that the representations were false and misleading and that the omissions were of material facts it was obligated to disclose.

138. Defendant's actions occurred in the course of trade or commerce. Ala. Code § 8-19-3(8).

139. Defendant's actions impact the public interest because Plaintiff and the Class members were injured in exactly the same way as thousands of others who purchase the Products as a result of Defendant's generalized course of deception. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendant's business.

140. Plaintiff and the Class members were injured as a result of Defendant's conduct.

141. Plaintiff and the Class members overpaid for the Products and did not receive the benefit of their bargain.

142. Defendant's conduct proximately caused the injuries to Plaintiff and the Class members.

143. Defendant is liable to Plaintiff and the Class members for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

144. Pursuant to Ala. Code § 8-19-8, Plaintiff will serve the Alabama Attorney General with a copy of this complaint as Plaintiff and the Class members seek injunctive relief.

**COUNT XVI**
**Violation of the Michigan Consumer Protection Act ("MCPA")**
**Mich. Comp. Laws § 445.903, *et seq.***
**On Behalf of the Michigan Class**

145.    Plaintiff Ford ("Plaintiff" for purposes of Count XVI) repeats and realleges all of the preceding paragraphs as if fully set forth herein.

146.    The MCPA prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce . . . ." Mich. Comp. Laws § 445.903(1).

147.    Defendant violated the MCPA by, *inter alia*: representing that goods have characteristics, ingredients, benefits, or quantities that they do not have; representing that goods are of a particular standard or quality if they are of another; advertising or representing goods with intent not to dispose of those goods as advertised or represented; causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner. Mich. Comp. Laws § 445.903(1)(c), (e), (g), (n), (s), (bb), (cc).

148.    At all relevant times, Plaintiff and the Class members were "person[s]" within the meaning of the Mich. Comp. Laws § 445.902(1)(d).

149.    At all relevant times, Defendant was a "person" engaged in "trade or commerce" within the meaning of the Mich. Comp. Laws § 445.902(1)(d) and (g).

150.    In the course of its business, Defendant concealed and suppressed material facts concerning the Products. Defendant accomplished this by representing and failing to disclose

30

material facts on the front of the Products' labeling and associated advertising, as described above, when it knew that the representations were false and misleading and that the omissions were of material facts it was obligated to disclose.

151. Defendant thus violated the MCPA by, at minimum employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Products.

152. Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Class members, about the true contents of the Products.

153. As a direct and proximate result of Defendant's violations of the MCPA, Plaintiff and the Class have suffered injury-in-fact and/or actual damage.

154. Defendant's violations also present a continuing risk to Plaintiff and the Class as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

155. Plaintiff and the Class seek injunctive relief to enjoin Defendant from continuing its unfair and deceptive acts; monetary relief against Defendant measured as the greater of actual damages in an amount to be determined at trial and statutory damages in the amount of $250 for Plaintiff and each Class member; reasonable attorneys' fees; and any other just and proper relief available under Mich. Comp. Laws § 445.911.

## <u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that the Court enter judgment in their favor and against Defendant as follows:

A.      Certifying the Class under Federal Rule of Civil Procedure 23, as requested herein;

B.      Appointing Plaintiffs as Class Representative and Plaintiffs' Interim Co-Lead Counsel as Class Counsel;

C.      Awarding Plaintiffs and the Class members actual, compensatory, statutory, and consequential damages;

D.      Awarding Plaintiffs and the Class members declaratory and injunctive relief;

E.      Awarding Plaintiffs and the Class members restitution and disgorgement;

F.      Imposing a constructive trust for the benefit of Plaintiffs and the Class members on the unjustly retained benefits conferred by Plaintiffs and the Class members upon Defendant;

G.      Awarding Plaintiffs and the Class members reasonable attorneys' fees, costs, and expenses; and

H.      Granting such other relief as the Court deems just and appropriate.

## <u>JURY TRIAL DEMAND</u>

Plaintiffs, individually and on behalf of all others similarly situated, hereby request a jury trial, pursuant to Federal Rule of Civil Procedure 38, on all claims so triable.

DATED: November 3, 2016                    Respectfully submitted,

                                           s/ Ben Barnow

                                           Ben Barnow
                                           Erich P. Schork
                                           Barnow and Associates, P.C.
                                           1 North LaSalle St., Suite 4600
                                           Chicago, Illinois 60602
                                           b.barnow@barnowlaw.com
                                           e.schork@barnowlaw.com
                                           (312) 621-2000 (ph)
                                           (312) 641-5504 (fax)

Timothy G. Blood
Camille S. Bass
Blood Hurst & O'Reardon, LLP
701 B Street, Suite 1700
San Diego, CA 92101
tblood@bholaw.com
cbass@bholaw.com
(619) 338-1100 (ph)
(619) 338-1101 (fax)

Lori G. Feldman
Andrea Clisura
Levi & Korsinsky LLP
30 Broad Street, 24th Floor
New York, NY 10004
lfeldman@zlk.com
aclisura@zlk.com
(212) 363-7500 (ph)
(212) 363-7171 (fax)

*Plaintiffs' Interim Co-Lead Counsel*

L. Timothy Fisher
Bursor & Fisher, P.A.
1990 N. California Blvd., Suite 940
Walnut Creek, California 94596
(925) 300-4455 (t)
(925) 407-2700 (f)
ltfisher@bursor.com

Todd S. Garber
Finkelstein, Blankenship,
Frei-Pearson & Garber LLP
1311 Mamaroneck Avenue
White Plains, New York 10605
(914) 298-3283 (t)
(914) 824-1561 (f)
tgarber@fbfglaw.com

*Plaintiffs' Executive Committee for*
*The Kraft Heinz Company Track*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing document was filed on November 3, 2016, with the Clerk of the Court by using the CM/ECF system which will send a notice of filing to all counsel of record.

/s/ Ben Barnow