# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE: 100% GRATED PARMESAN CHEESE MARKETING AND SALES PRACTICES LITIGATION | 16 CV 5802 |
| | MDL 2705 |
| | Judge Gary S. Feinerman |
| *This Document Relates to All Cases on the Wal-Mart Track* | |

## CONSOLIDATED CLASS ACTION COMPLAINT AGAINST
## <u>WAL-MART STORES, INC. AND ICCO-CHEESE COMPANY, INC</u>

Plaintiffs, Alan Ducorsky, Becky Sikes, Larry Rollinger, Jr., Rita Schmoll, Michael Wills, and Nancy Reeves, individually and on behalf of all others similarly situated, upon personal knowledge of facts pertaining to themselves and on information and belief as to all other matters, by and through undersigned Interim Class Counsel, bring this class action complaint against Defendants Wal-Mart Stores, Inc. ("Wal-Mart") and ICCO-Cheese Company, Inc. ("ICCO") (collectively, "Defendants").

## NATURE OF THE ACTION

1.      This consumer class action arises out of Defendants' misbranding and false and misleading advertising of their grated Parmesan cheese products sold under the Great Value brand (the "Products") as 100% grated Parmesan cheese. Defendants' advertisements, including their labels, represent the Products as "100% Grated Parmesan Cheese" and "100% Parmesan Grated Cheese" (the "100% Claims"), but these representations are false, misleading, and likely to deceive the reasonable consumer because the Products are not 100% cheese.

2.      Rather than being comprised of all cheese, the Products contain fillers and additives, such as cellulose, an inexpensive filler derived from wood pulp. They also contain potassium sorbate and cheese cultures that are not the type of cheese listed on the label. The Products are not "100% Grated Parmesan Cheese."

3.      As a result of the false, misleading, untrue, and deceptive statement on the Products' labels and other advertisements, Plaintiffs and the Class members did not receive that which was promised.

4.      Plaintiffs bring this action on behalf of themselves and all other similarly situated consumers to recover the amounts Plaintiffs and the Class members overpaid, to prevent

Defendants from continuing to engage in this conduct, and to correct the false perception Defendants have created in the marketplace.

## JURISDICTION AND VENUE

5.     The Court has original subject matter jurisdiction over the case under 28 U.S.C. § 1332(d) because the case is brought as a class action under Fed. R. Civ. P. 23, at least one proposed class member is of diverse citizenship from Defendants, the proposed Class includes more than 100 members, and the aggregate amount in controversy exceeds five million dollars, excluding interest and costs.

6.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendants engaged in substantial conduct relevant to Plaintiffs' claims within this District and have caused harm to Class members residing within this District. Additionally, the lawsuits comprising this consolidated complaint have been transferred to this Court for coordinated pretrial proceedings pursuant to the Transfer Order of the JPML dated June 2, 2016. Plaintiffs in the transferred actions reserve their rights of remand to the districts from which they were transferred at or before the conclusion of the pretrial proceedings.

## PARTIES

7.     Plaintiff Larry Rollinger, Jr. ("Rollinger") is a citizen of the State of Minnesota, residing in St. Paul Park, Minnesota. Rollinger has purchased the Great Value "100% Grated Parmesan Cheese" or "100% Parmesan Grated Cheese" product several times over the past four years from a Wal-Mart store in Vadnais Heights, Minnesota. Rollinger purchased the "100% Grated Parmesan Cheese" or "100% Parmesan Grated Cheese" product believing it was 100% Parmesan cheese. Rollinger did not receive that which he was promised.

8.      Plaintiff Alan Ducorsky ("Ducorsky") is a citizen of the State of New York, residing in Island Park, New York. Ducorsky has purchased the Great Value "100% Grated Parmesan Cheese" or "100% Parmesan Grated Cheese" product several times a year from Wal-Mart stores in Westbury, New York, Valley Stream, New York, and Levittown, New York. Ducorsky purchased the "100% Grated Parmesan Cheese" or "100% Parmesan Grated Cheese" product believing it was 100% Parmesan cheese. Ducorsky did not receive that which he was promised.

9.      Plaintiff Becky Sikes ("Sikes") is a citizen of the State of Florida, residing in Melbourne, Florida. Sikes has purchased the Great Value "100% Grated Parmesan Cheese" or "100% Parmesan Grated Cheese" product several times a year from Wal-Mart stores in Melbourne, Florida, and Indialantic, Florida. Sikes purchased the "100% Grated Parmesan Cheese" or "100% Parmesan Grated Cheese" product believing it was 100% Parmesan cheese. Sikes did not receive that which she was promised.

10.      Plaintiff Rita Schmoll ("Schmoll") is a citizen of the State of New Jersey, residing in Cherry Hill, New Jersey. Schmoll has purchased the Great Value "100% Grated Parmesan Cheese" or "100% Parmesan Grated Cheese" product several times a year from a Wal-Mart store in Cherry Hill, New Jersey. Schmoll purchased the "100% Grated Parmesan Cheese" or "100% Parmesan Grated Cheese" product believing it was 100% Parmesan cheese. Schmoll did not receive that which she was promised.

11.      Plaintiff Michael Wills ("Wills") is a citizen of Alabama, residing in Mumford, Alabama. Wills purchased at least six containers of the Great Value "100% Grated Parmesan Cheese" or "100% Parmesan Grated Cheese" product at various Wal-Mart stores in Alabama over the past four years. Wills purchased the "100% Grated Parmesan Cheese" or "100% Parmesan

Grated Cheese" product believing it was 100% Parmesan cheese. Wills did not receive that which he was promised.

12.     Plaintiff Nancy Reeves ("Reeves") is a citizen of the State of California, residing in Imperial, California. Reeves has purchased the Great Value "100% Grated Parmesan Cheese" or "100% Parmesan Grated Cheese" product several times a year from a Wal-Mart store in El Centro, California. Reeves purchased the "100% Grated Parmesan Cheese" or "100% Parmesan Grated Cheese" product believing it was 100% Parmesan cheese. Reeves did not receive that which she was promised.

13.     Defendant Wal-Mart Stores, Inc. is a Delaware corporation headquartered in Bentonville, Arkansas. At all times relevant hereto, Wal-Mart was engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling "100% Grated Parmesan Cheese" under the brand name "Great Value." Wal-Mart is the registered owner of the trademark "Great Value." The Products' labels state they are distributed by Wal-Mart.

14.     Defendant ICCO-Cheese Company, Inc. is a New York corporation with its principal place of business located at 1 Olympic Drive, Orangeburg, New York 10962. It is a nationwide provider of prepared food products, including grated cheeses, sold under private, store-brand labels across the country. ICCO conducts business in this District and elsewhere throughout the United States.

**FACTUAL ALLEGATIONS**

15.     According to the United States Department of Agriculture, in 2015, output of Parmesan cheese rose 11% from 2014, to around 336 million pounds, while Romano production grew 20% to 54 million pounds.[1]

16.     Wal-Mart and ICCO are co-participants in committing the acts of consumer fraud alleged. Since ICCO manufactures, packages, and labels the Products so Wal-Mart can sell the Wal-Mart Products in its retail stores. As the manufacturer of the Wal-Mart Products, ICCO knowingly manufactured the Wal-Mart Products with the type and amount of substances other than cheese used in the Products. It also packaged and labeled the Products with the representation that the Products consisted of "100%" Parmesan cheese, knowing that the label was false.

17.     Because of ICCO's actions in adding substances other than Parmesan to its "100%" Parmesan cheese products, the Wal-Mart Products consist of 7.8% cellulose, in addition to other non-cheese ingredients, and the representations it made on the packaging that it is "100% Grated Parmesan Cheese" and "100% Parmesan Grated Cheese" are false, misleading, and deceptive to consumers.

18.     Cellulose is an organic polymer. It is not cheese or any other type of dairy product. Its main use is in the production of paperboard and paper. Humans cannot digest cellulose, and it provides no nutritional calories. Cellulose is often used as a filler. Potassium sorbate, also found in the Products, is a synthetic chemical additive used in some foods and personal care products.

---

[1]Lydia Mulvany, Bloomberg, *The Parmesan Cheese You Sprinkle on Your Penne Could Be Wood*, *available at*, http://www.bloomberg.com/news/articles/2016-02-16/the-parmesan-cheese-you-sprinkle-on-your-penne-could-be-wood (last visited Nov. 1, 2016).

19.     The Products' package labels prominently represent the Products as "100% Grated Parmesan Cheese" and "100% Parmesan Grated Cheese." Representative packaging of the Products appear below:




20.     Contrary to Defendants' 100% Claims, the Products are not 100% cheese. In or around February 2016, an independent testing facility determined that a sample of Defendants' Products allegedly consisting of 100% grated Parmesan cheese actually contained 7.8% cellulose.

21.     Because the Products are not all cheese, Defendants' advertising, including their labels, is false, misleading, unfair, deceptive, and intended to induce consumers to purchase the Products.

22. Plaintiffs and the Class members did not receive that which was promised and represented to them. Each has been exposed to Defendants' advertisements and has seen the Products' labels. Plaintiffs and the Class members overpaid for the Products they purchased.

## CLASS ALLEGATIONS

23. Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3), on behalf of a Class defined as follows:

> All persons in the United States and its territories who purchased, other than for resale, Wal-Mart's "100% Grated Parmesan Cheese" or "100% Parmesan Grated Cheese" products.

Excluded from the Classes are: (i) Defendants and their officers and directors, agents, affiliates, subsidiaries, and authorized distributors and dealers; (ii) all Class members that timely and validly request exclusion from the Classes; and (iii) the Judge presiding over this action.

24. Alternatively, Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(b)(3), on behalf of the following subclasses:

> a. Minnesota, and all states with laws at issue similar to Minnesota, by Plaintiff Rollinger ("Minnesota Class'):

> All persons who purchased, other than for resale, in the State of Minnesota Wal-Mart's "100% Grated Parmesan Cheese" or "100% Parmesan Grated Cheese" products.

> b. Florida, and all states with laws at issue similar to Florida, by Plaintiff Sikes ("Florida Class"):

> All persons who purchased, other than for resale, in the state of Florida Wal-Mart's "100% Grated Parmesan Cheese" or "100% Parmesan Grated Cheese" products.

> c. New York, and all states with laws at issue similar to New York, by Plaintiff Ducorsky ("New York Class")

> All persons who purchased, other than for resale, in the state of New York Wal-Mart's "100% Grated Parmesan Cheese" or "100% Parmesan Grated Cheese" products.

      d.  New Jersey, and all states with laws at issue similar to New Jersey, by Plaintiff Schmoll ("New Jersey Class")

All persons who purchased, other than for resale, in the state of New Jersey Wal-Mart's "100% Grated Parmesan Cheese" or "100% Parmesan Grated Cheese" products.

      e.  Alabama, and all states with laws at issue similar to Alabama, by Plaintiff Wills ("Alabama Class")

All persons who purchased, other than for resale, in the state of Alabama Wal-Mart's "100% Grated Parmesan Cheese" or "100% Parmesan Grated Cheese" products.

      f.  California, and all states with laws at issue similar to California, by Plaintiff Reeves ("California Class")

All persons who purchased, other than for resale, in the state of California Wal-Mart's "100% Grated Parmesan Cheese" or "100% Parmesan Grated Cheese" products.

25.    Certification of Plaintiffs' claims for classwide treatment is appropriate because Plaintiffs can prove the elements of their claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

26.    The members of the Classes are so numerous that joinder of the Class members would be impracticable.

27.    Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Such common questions of law or fact include, *inter alia*:

    A.    Whether Defendants engaged in the conduct alleged;

    B.    Whether Defendants misrepresented the content of the Products or misbranded them;

    C.    Whether Defendants' misrepresentations were false, misleading, or likely to mislead a reasonable person;

8

D.    Whether Defendants' representation that the Products' contents consisted of 100% cheese created an express warranty;

E.    Whether Plaintiffs and the Class members paid for a product that they did not receive;

F.    Whether Plaintiffs and the Class members have been damaged and, if so, the measure of such damages;

G.    Whether Defendants unjustly retained a benefit conferred by Plaintiffs and the Class members; and

H.    Whether Plaintiffs and the Class members are entitled to equitable relief, including, but not limited to, a constructive trust, restitution, and injunctive relief.

28.    Plaintiffs' claims are typical of the claims of the Class members because, among other things, Plaintiffs and the Class members were injured through the substantially uniform misconduct described above. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all Class members.

29.    Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other Class members they seek to represent; they have retained counsel competent and experienced in complex commercial and class action litigation; and Plaintiffs intend to prosecute this action vigorously. The interests of the Class members will be fairly and adequately protected by Plaintiffs and their counsel.

30.    A class action is also warranted under Fed. R. Civ. P. 23(b)(2), because Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole. Defendants have

directed and continue to direct their conduct to all consumers in a uniform manner. Therefore, injunctive relief on a classwide basis is necessary to remedy continuing harms to Plaintiffs and the Class members caused by Defendants' continuing misconduct.

31.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other detriment suffered by Plaintiffs and the Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Class members to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system should not be required to undertake such an unnecessary burden. Individualized litigation would also create a potential for inconsistent or contradictory judgments, and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

## CLAIMS

### COUNT I
### Breach of Express Warranty
### On Behalf of the Nationwide Class,
### Or in the Alternative, Plaintiffs' Respective State Classes

32.     Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

33.     Defendants made affirmations of fact to Plaintiffs and the Class members relating to and describing the Products that the Products were 100% cheese.

34.     Defendants' 100% Claims were affirmations of fact and descriptions of the Products, including that the containers in which the Products were sold contained only cheese.

These affirmations of fact and descriptions formed the basis of the bargain between Plaintiffs and the Class members and Defendants, creating an express warranty under Uniform Commercial Code, 2-313—an identical or substantially similar version of which has been and is currently enacted in each and every state.

35.     Defendants' Products were accompanied by an express warranty when placed in the stream of commerce by Defendants.

36.     All conditions precedent have occurred or been performed.

37.     Defendants breached the express warranty by selling a product that did not conform to the affirmations of fact and descriptions.

38.     At the time of sale to Plaintiffs and the Class members, Defendants had actual knowledge that they breached express warranties with Plaintiffs and the Class members.

39.     As the foreseeable and actual result of Defendants' breach of express warranty, Plaintiffs and the Class members were damaged.

### COUNT II
### Unjust Enrichment
### On Behalf of the Nationwide Class,
### Or in the Alternative, On Behalf of Plaintiffs' Respective State Classes

40.     Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

41.     Defendants have been unjustly enriched to Plaintiffs' and the Class members' detriment as a result of their unlawful and wrongful retention of money conferred by Plaintiffs and the Class members, such that Defendants' retention of their money would be inequitable.

42.     Defendants' unlawful and wrongful acts, as alleged above, enabled Defendants to unlawfully receive monies they would not have otherwise obtained.

43.     Plaintiffs and the Class members have conferred benefits on Defendants, which Defendants have knowingly accepted and retained.

44.     Defendants' retention of the benefits conferred by Plaintiffs and the Class members would be against fundamental principles of justice, equity, and good conscience.

45.     Plaintiffs and the Class members seek to disgorge Defendants' unlawfully retained profits and other benefits resulting from their unlawful conduct, and seek restitution and rescission for the benefit of Plaintiffs and the Class members.

46.     Plaintiffs and the Class members are entitled to the imposition of a constructive trust upon Defendants, such that their unjustly retained profits and other benefits are distributed equitably by the Court to and for the benefit of Plaintiffs and the Class members.

## COUNT III
## Breach of Implied Warranty of Merchantability
## On Behalf of the Nationwide Class,
## Or in the Alternative, On Behalf of Plaintiffs' Respective State Classes

47.     Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

48.     The implied warranty of merchantability requires that goods be adequately contained, packaged, and labeled, and the goods must conform to the promises or affirmations of fact made on the container or label.

49.     Defendants, as the manufacturers, marketers, distributors, and sellers of the Products are merchants.

50.     Plaintiffs and the other Class members purchased Products that were manufactured and sold by Defendants in consumer transactions.

51.     The Products are not adequately contained, packaged, or labeled because they are packaged as "100% Grated Parmesan Cheese" or "100% Parmesan Grated Cheese," but the Products do not consist of 100% Parmesan cheese.

52.     The Products do not conform to the promises and affirmations of facts made on their containers and labels because they do not consist of 100% Parmesan cheese as their packaging and labeling warrant.

53.     Plaintiffs and the Class members did not receive the Products as warranted. The Products they purchased were worth substantially less than the products they were promised and expected.

54.     As a result of Defendant's breach of warranty, Plaintiffs and members of the Class suffered damages by purchasing the Products because they would not have purchased the Products, or would have paid substantially less for them, had they known the truth.

**COUNT IV**
**Violation of the New York General Business Law § 349**
**On Behalf of the New York Class**

55.     Plaintiff Ducorsky ("Plaintiff" for purposes of Counts IV and V) repeats and realleges all preceding paragraphs as if fully set forth herein.

56.     New York General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

57.     Defendants' 100% Claims in connection with the labeling, marketing, and selling of the Products were deceptive. Instead of being 100% Parmesan cheese as claimed, the Products contained substances other than cheese, rendering the 100% Claims false, misleading, and deceptive.

58.     A reasonable person would consider the 100% Claims to be material to a decision to purchase the Products.

59.     Plaintiff and the other Class members were injured by reason of Defendants' violation of Section 349. As a foreseeable and actual result of Defendants' deceptive conduct,

Plaintiff and the other Class members overpaid for the Products. Had Plaintiff and the other Class members known that Defendants' 100% Claims were false and that the Products contained substances other than cheese, they would not have purchased the Products.

## COUNT V
## Violation of the New York General Business Law § 350
## On Behalf of New York Class

60.     Plaintiff Ducorsky ("Plaintiff" for purposes of Counts IV and V) repeats and realleges all preceding paragraphs as if fully set forth herein.

61.     New York General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

62.     Defendants' 100% Claims in connection with the labeling, marketing, and selling of the Products were false advertising. Instead of being 100% Parmesan cheese as advertised, the Products contained substances other than cheese, rendering the 100% Claims false.

63.     Defendants' 100% Claims impact consumers at large and are likely to mislead a reasonable consumer acting reasonably under the circumstances. The 100% Claims induced Plaintiff and the other Class members to purchase the Products.

64.     As a foreseeable and actual result of Defendants' false advertising, Plaintiff and the other Class members purchased Products that they would not have purchased had they known the 100% Claims were false.

## COUNT VI
## Violation of the Minnesota Prevention of Consumer Fraud Act ("MPCFA"),
## Minn. Stat. § 325F.68, *et seq.*
## On Behalf of the Minnesota Class

65.     Plaintiff Rollinger ("Plaintiff" for purposes of Counts VI–IX) repeats and realleges all of the preceding paragraphs as if fully set forth herein.

14

66.     The MPCFA prohibits the act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby. Minn. Stat. § 325F.69, subd. 1.

67.     Defendants are persons within the meaning of Minn. Stat. § 325F.68, subd. 3

68.     The Products are merchandise within the meaning of Minn. Stat. § 325F.68, subd. 2.

69.     Defendants' use and employment of the 100% Claims in connection with the sales of its Products violated the MPCFA because the 100% Claims were false, misleading, and deceptive. The Products do contain 100% of the stated cheese ingredients. Instead the Products are tainted with cellulose, and other fillers, additives, and adulterants.

70.     In making the 100% Claims, Defendant intended that Plaintiff and the other Class members rely on the truth of the 100% Claims when making decisions to purchase the Products. Defendant knew or should have known that the 100% Claims were misleading and deceptive.

71.     The 100% Claims were likely to mislead a reasonable consumer. A reasonable consumer would consider the ingredients in the Products material to a decision to purchase the Products.

72.     Plaintiff and the other Class members reasonably relied on the 100% Claims and purchased the Products in reliance thereon. Plaintiffs and the Class members paid a particular price for a product as represented by the 100% Claims. When they received a product that was not in conformity with the 100% Claims, Plaintiffs and the other Class members were damaged on account of receiving Products worth less than as represented.

73.     Pursuant to Minn. Stat. § 8.31, subd. 3a, Plaintiff brings this action to recover damages, together with costs, and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the Court.

**COUNT VII**
**Violation of Minnesota Unlawful Trade Practices Act ("MUTPA"),**
**Minn. Stat. §§ 325D.09, *et seq.***
**On Behalf of the Minnesota Class**

74.     Plaintiff Rollinger ("Plaintiff" for purposes of Counts VI–IX) repeats and realleges all of the preceding paragraphs as if fully set forth herein.

75.     Minnesota Statute § 325D.13 provides: "No person shall, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality, ingredients or origin of such merchandise."

76.     Defendants are persons within the meaning of Minn. Stat. § 325D.10, subd. a.

77.     Plaintiff and the other Class members are persons within the meaning of Minn. Stat. § 325D.10, subd. a.

78.     Defendants violated Section 325D.13 by making 100% Claims in connection with the sale of the Products.

79.     Defendants made the 100% Claims knowing them to be false, misleading, and deceptive. Defendants knew the actual ingredients of the Products included cellulose, and other fillers, additives, and adulterants that made the 100% Claims false.

80.     The 100% Claims are and were material and likely to mislead a reasonable consumer, and Plaintiff and the other Class members were misled and deceived by the 100% Claims.

81.     Plaintiff and the other Class members reasonably relied on the 100% Claims and purchased the Products in reliance thereon. Plaintiffs and the Class members paid a particular price

for a product as represented by the 100% Claims. When they received a product that was not in conformity with the 100% Claims, Plaintiffs and the other Class members were damaged on account of receiving Products worth less than as represented.

82.    Pursuant to Minn. Stat. § 8.31, subd. 3a, Plaintiff brings this action to recover damages, together with costs, and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the Court.

**COUNT VIII**
**Violation of Minnesota False Statement in Advertising Act ("FSAA"),**
**Minn. Stat. § 325F.67**
**On Behalf of the Minnesota Class**

83.    Plaintiff Rollinger ("Plaintiff" for purposes of Counts VI–IX) repeats and realleges all of the preceding paragraphs as if fully set forth herein.

84.    The FSAA broadly prohibits any person from making an untrue, deceptive, or misleading material assertion, representation or statement in the sale or disposition of merchandise, securities, or services.

85.    Defendants violated the FSAA because the 100% Claims were untrue, deceptive, and misleading material assertions, representations, or statements connected to the sale of the Products, which are merchandise. The Products did not contain 100% of the stated cheese ingredients as prominently represented on the front of the labels. Instead, the Products were tainted with cellulose, and other fillers, additives, and adulterants.

86.    Defendants placed the 100% Claims prominently on the front label of the Products in order to induce consumers to view and rely on the representations in making decisions to purchase its Products.

87.    The 100% Claims are material representations or statements of fact which are material and likely to mislead a reasonable consumer.

17

88.     Plaintiff and the other Class members were in fact misled by the 100% Claims and purchased the Products in reliance on the 100% Claims. Had they known that the 100% Claims were false, they would not have purchased the Products.

89.     Plaintiffs and the Class members paid a particular price for a product as represented by the 100% Claims. When they received a product that was not in conformity with the 100% Claims, Plaintiffs and the other Class members were damaged on account of receiving Products worth less than as represented.

90.     Pursuant to Minn. Stat. § 8.31, subd. 3a, Plaintiff brings this action to recover damages, together with costs, and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the Court.

**COUNT IX**
**Violation of Minnesota Deceptive Trade Practices Act ("MDTPA"),**
**Minn. Stat. § 325D.44, *et seq.***
**On Behalf of the Minnesota Class**

91.     Plaintiff Rollinger ("Plaintiff" for purposes of Counts VI–IX) repeats and realleges all of the preceding paragraphs as if fully set forth herein.

92.     The MDTPA defines the following practices in the course of business as deceptive trade practices:

a.      Representing that goods have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have;

b.      Represents that goods are of a particular standard, quality, or grade, if they are of another;

c.      Advertises goods with intent not to sell them as advertised; and

d.      Engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

93. Defendants violated the MDTPA by making the 100% Claims prominently on the front labels of the Products when the Products did not conform. Instead the Products contained cellulose, and other fillers, additives, and adulterants that made the 100% Claims false, misleading, and deceptive.

94. Defendants knew that the 100% Claims were untrue, false, misleading, and deceptive and that they would mislead reasonable consumers.

95. Defendants continue to engage in this conduct and Defendants' violations of the MDTPA are ongoing. Plaintiff and the other Class members are entitled to truthful labeling when they go shopping for consumer goods. The continued use of the 100% Claims leads Plaintiff and the other Class members to reasonably believe that Defendants have corrected their untruthful, misleading, and deceptive conduct and that the Products now actually contain 100% of the stated cheese ingredients. Therefore, Defendants' conduct has caused, and is likely to continue to cause, confusion or of misunderstanding.

96. Plaintiff and the other Class members seek to enjoin Defendants' conduct that violates the MDTPA, and to recover costs, attorney's fees for Defendants' willful violations of the MDTPA.

## COUNT X
### Violation of Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.* On Behalf of the Florida Class

97. Plaintiff Sikes ("Plaintiff" for purposes of Count X) repeats and realleges all preceding paragraphs as if fully set forth herein.

98. The express purpose of FDUTPA is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts

or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2). The FDUTPA declares such acts and practices to be unlawful. Fla. Stat. § 501.204(1).

99.     The sale of the Products was a "consumer transaction" within the scope of FDUTPA.

100.    Plaintiff is a "consumer" as defined by Section 501.203, Florida Statutes.

101.    Defendants' Products are goods within the meaning of FDUTPA, and Defendants are engaged in trade or commerce within the meaning of FDUTPA.

102.    Defendants' unfair and deceptive practices are likely to mislead—and have misled—reasonable consumers, such as Plaintiff and members of the Class.

103.    Defendants have violated FDUTPA by engaging in the unfair and deceptive practices described above, which offend public policies and are immoral, unethical, unscrupulous, and substantially injurious to consumers.

104.    Specifically, Defendants represent that the Products contain "100%" Parmesan cheese, when in fact they do not.

105.    Plaintiff and Class members have been aggrieved by Defendants' unfair and deceptive practices in violation of FDUTPA, in that they paid money for Defendants' mislabeled Products.

106.    Reasonable consumers rely on Defendants to honestly represent the true nature of the contents of the Products' packaging.

107.    Defendants have deceived reasonable consumers, like Plaintiff and members of the Class, into believing the Products are something they are not; specifically that the Products are comprised of "100%" cheese, when they are not.

108.     Pursuant to sections 501.211(2) and 501.2105, Florida Statutes, Plaintiff and members of the Class make claims for damages, attorney's fees, and costs. The damages suffered by Plaintiff and the Class were directly and proximately caused by the deceptive, misleading, and unfair practices of Defendants. Pursuant to section 501.211(1), Florida Statutes, Plaintiff and the Class seek injunctive relief for, *inter alia*, the Court to enjoin Defendants' above-described wrongful acts and practices and for restitution and disgorgement.

109.     Plaintiff seeks all available remedies, damages, and awards as a result of Defendants' violations of FDUTPA.

**COUNT XI**
**Violation of New Jersey Consumer Fraud Act,**
**N.J. Stat. § 56:8-1, *et seq.***
**On Behalf of the New Jersey Class**

110.     Plaintiff Schmoll ("Plaintiff" for purposes of Count XI) repeats and realleges all preceding paragraphs as if fully set forth herein

111.     The New Jersey Consumer Fraud Act, N.J. Stat. § 56:8-1, *et seq.* ("NJCFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby. . . ." N.J. Stat. § 56:8-2.

112.     Plaintiff, the New Jersey Class members, and Defendants are persons under the NJCFA, N.J. Stat. § 56:8-1(d).

113.    Defendants engaged in "sales" of "merchandise" within the meaning of N.J. Stat. § 56:8-1(c), (e). Defendants' actions as set forth herein occurred in the conduct of trade or commerce.

114.    Defendants violated the NJCFA by making the 100% Claims prominently on the front labels of the Products when the Products did not conform. Instead the Products contained substances other than cheese that made the 100% Claims false, misleading, and deceptive.

115.    Defendants knew that the 100% Claims were untrue, false, misleading, and deceptive and that they would mislead reasonable consumers.

116.    Defendants continue to engage in this conduct and Defendants' violations of the NJCFA are ongoing. Plaintiff and the other Class members are entitled to truthful labeling when they go shopping for consumer goods. The continued use of the 100% Claims leads Plaintiff and the other Class members to reasonably believe that Defendants have corrected their untruthful, misleading, and deceptive conduct and that the Products now actually contain 100% of the stated cheese ingredients. Therefore, Defendants' conduct has caused, and is likely to continue to cause, confusion or of misunderstanding.

117.    Plaintiff and the Class members paid a particular price for a product as represented by the 100% Claims. When they received a product that was not 100% grated Parmesan cheese, Plaintiff and the Class members were damaged on account of receiving Products worth less than as represented.

### COUNT XII
### Violation of the Alabama Deceptive Trade Practices Act ("ADTPA")
### Ala. Code § 8-19-1, *et seq.*
### On Behalf of the Alabama Class

118.    Plaintiff Wills ("Plaintiff" for purposes of Count XII) repeats and realleges all of the preceding paragraphs as if fully set forth herein.

119.    The ADTPA makes unlawful deceptive acts or practices in the conduct of any trade or commerce such as the following: representing that goods have characteristics, ingredients, benefits, or qualities that they do not have; representing that goods are of a particular standard, quality, or grade, if they are of another; advertising goods or services with intent not to sell them as advertised; or engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce. Ala. Code § 8-19-5(5), (7), (9), (27).

120.    Under the ADTPA, Plaintiff and the Class members and Defendants are persons, and Plaintiff and the Class members are consumers. Ala. Code § 8-19-3(2), (5).

121.    Defendants sell and distribute the Products, which are goods, in trade or commerce. Ala. Code § 8-19-3(3), (6).

122.    The conduct of Defendants, as set forth herein, constitutes unfair or deceptive acts or practices under the ADTPA, including but not limited to, representing and failing to disclose material facts on the Products' labeling and associated advertising, as described above, when they knew that the representations were false and misleading and that the omissions were of material facts they were obligated to disclose.

123.    Defendants' actions occurred in the course of trade or commerce. Ala. Code § 8-19-3(8).

124.    Defendants' actions impact the public interest because Plaintiff and the Class members were injured in exactly the same way as thousands of others who purchase the Products as a result of Defendants' generalized course of deception. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business.

125.    Plaintiff and the Class members were injured as a result of Defendants' conduct.

23

126.    Plaintiff and the Class members overpaid for the Products and did not receive the benefit of their bargain.

127.    Defendants' conduct proximately caused the injuries to Plaintiff and the Class members.

128.    Defendants are liable to Plaintiff and the Class members for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

129.    Pursuant to Ala. Code § 8-19-8, Plaintiff will serve the Alabama Attorney General with a copy of this complaint as Plaintiff and the Class members seek injunctive relief.

## COUNT XIII
### Violation of California Unfair Competition Law ("UCL"), California Business & Professions Code § 17200, *et seq.* On Behalf of the California Class

130.    Plaintiff Reeves ("Plaintiff" for purposes of Counts XIII and XIV) reasserts and realleges all of the preceding paragraphs as if fully set forth herein.

131.    The Unfair Competition Law, Business & Professions Code § 17200, *et seq.*, prohibits any unlawful, fraudulent, or unfair business act or practice and any false or misleading advertising.

132.    In the course of conducting business, Defendants committed unlawful business practices by, among other things, making representations (which also constitute advertising within the meaning of §§ 17200 and 17500) and omissions of material facts regarding the Products in their advertising campaign, including the Products' packaging, as set forth more fully herein. These representations constitute a misbranding of the Products, as prohibited by Section 110765 of the California Health & Safety Code, and the Food and Drug Administration's regulations, 21 C.F.R. §§ 101.18, and 21 U.S.C. §§ 342, 343, because Defendants' advertising and labeling of the Products are false and misleading in that they state that the Products assert the 100% Claims when,

24

in fact, they contain substances other than cheese. Defendants have also violated the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 343, because they manufactured and introduced into interstate commerce misbranded Products. This conduct constitutes violations of the unfair prong of Section 17200.

133.     In the course of conducting business, Defendants committed unfair business practices by, among other things, making the representations (which also constitute advertising within the meaning of §§ 17200 and 17500) and omissions of material facts regarding the Products in their advertising campaign, including the Products' packaging, as set forth more fully herein. There is no societal benefit from false advertising, only harm. Plaintiff and the other Class members paid for lower-value products that were not what they purported to be. While Plaintiff and the other Class members were harmed, Defendants were unjustly enriched by their false misrepresentations and omissions. As a result, Defendants' conduct is unfair, as it offended an established public policy. Further, Defendants engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

134.     Defendants' conduct violated consumer protection, unfair competition, and truth in advertising laws in California and other states, resulting in harm to consumers. Defendants' acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition, and deceptive conduct towards consumers. This conduct violates the unlawful prong of Section 17200.

135.     There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

136.     In the course of conducting business, Defendants committed fraudulent business acts or practices by, among other things, making the representations (which also constitute

25

advertising within the meaning of §§ 17200 and 17500) and omissions of material facts regarding the Products in their advertising campaign, including on the Products' packaging and labeling, as set forth more fully herein. Defendants made the misrepresentations and omissions regarding the ingredients, character, and contents of the Products, among other ways by misrepresenting on each and every Product's packaging and labeling that the Products contain "100%" grated Parmesan cheese," when in fact, the representations are false and deceptive. The Products do not contain just one ingredient, cheese. They contain substances other than the promised cheese as well.

137.    Plaintiff and the other Class members have suffered injury in fact and lost money or property as a result of Defendants' conduct.

138.    Plaintiff relied on Defendants' material misrepresentations and omissions, which are described above. Plaintiff has suffered injury in fact and lost money as a result of Defendants' unlawful, unfair, and fraudulent practices.

139.    Unless restrained and enjoined, Defendants will continue to engage in the above-described conduct in violation of Section 17200, entitling Plaintiff and the other Class members to injunctive relief. If Defendants continue to engage in the violations of Section 17200 described above, Plaintiff and the Class members will likely be deceived in the future when they shop for Defendants' Products, not knowing the truth about the representations Defendants make.

**COUNT XIV**
**Violation of the California Consumers Legal Remedies Act ("CLRA")**
**California Civil Code §§ 1750,** ***et seq.***
**On Behalf of the California Class**

140.    Plaintiff Reeves ("Plaintiff" for purposes of Counts XIII and XIV) repeats and realleges the foregoing paragraphs as if fully set forth herein.

141.    The Products are goods within the meaning of Section 1761(a).

142.    Defendants violated and continue to violate the CLRA by engaging in the following prohibited practices in transaction with Plaintiff and the Class members which Defendants intended to result in, and did result in, the sale of Products:

a.    Representing that the Products have characteristics, ingredients, uses, benefits, or quantities which they do not have (Cal. Civ. Code § 1770(a)(5));

b.    Representing that the Products are of a particular standard, quality, or grade when they are of another (Cal. Civ. Code § 1770(a)(7));

c.    Advertising goods with intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9)); and

d.    Representing that the Products have been supplied in accordance with a previous representation when they have not (Cal. Civ. Code § 1770(a)(16)).

143.    Defendants violated the CLRA by representing and failing to disclose material facts on the Products' labeling and associated advertising, as described above, when they knew that the representations were false and misleading and that the omissions were of material facts they were obligated to disclose.

144.    Pursuant to Section 1782(d), Plaintiff, individually and on behalf of the Class members, seeks a Court order enjoining the above-described wrongful acts and practices of Defendants and for restitution and disgorgement.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that the Court enter judgment in their favor and against Defendants as follows:

A.    Certifying the Class under Federal Rule of Civil Procedure 23, as requested herein;

B.    Appointing Plaintiffs as Class Representatives and Plaintiffs' Interim Co-Lead counsel as Class Counsel;

27

C.   Awarding Plaintiffs and the Class members actual, compensatory, statutory, and consequential damages;

D.   Awarding Plaintiffs and the Class members declaratory and injunctive relief;

E.   Awarding Plaintiffs and the Class members restitution and disgorgement;

F.   Imposing a constructive trust for the benefit of Plaintiffs and the Class members on the unjustly retained benefits conferred by Plaintiffs and the Class members upon Defendants;

G.   Awarding Plaintiffs and the Class members reasonable attorneys' fees, costs, and expenses; and

H.   Granting such other relief as the Court deems just and appropriate.

## **JURY TRIAL DEMAND**

Plaintiffs, individually and on behalf of all others similarly situated, hereby request a jury trial, pursuant to Federal Rule of Civil Procedure 38, on all claims so triable.


DATED: November 3, 2016                                   Respectfully submitted,


                                                                         s/ Ben Barnow

                                                                         Ben Barnow
                                                                         Erich P. Schork
                                                                         Barnow and Associates, P.C.
                                                                         1 North LaSalle St., Suite 4600
                                                                         Chicago, Illinois 60602
                                                                         b.barnow@barnowlaw.com
                                                                         e.schork@barnowlaw.com
                                                                         (312) 621-2000 (ph)
                                                                         (312) 641-5504 (fax)

Timothy G. Blood
Camille S. Bass
Blood Hurst & O'Reardon, LLP
701 B Street, Suite 1700
San Diego, CA 92101
tblood@bholaw.com
cbass@bholaw.com
(619) 338-1100 (ph)
(619) 338-1101 (fax)

Lori G. Feldman
Andrea Clisura
Levi & Korsinsky LLP
30 Broad Street, 24th Floor
New York, NY 10004
lfeldman@zlk.com
aclisura@zlk.com
(212) 363-7500 (ph)
(212) 363-7171 (fax)

*Plaintiffs' Interim Co-Lead Counsel*

Michael McShane
Audet & Partners, LLP
711 Van Ness Avenue, Suite 500
San Francisco, California 94102
(415) 568-2555 (t)
(415) 568-2556 (f)
Mmcshane@audetlaw.com

Brant D. Penney
Reinhardt Wendorf Blanchfield
E-1250 First National Bank Building
332 Minnesota Street
St. Paul, Minnesota 55101
(651) 287-2100 (t)
(651) 287-2103 (f)
b.penney@rwblawfirm.com

*Plaintiffs' Executive Committee for Wal-Mart
Stores, Inc. and ICCO-Cheese Co., Inc. Track*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing document was filed on November 3, 2016, with the Clerk of the Court by using the CM/ECF system which will send a notice of filing to all counsel of record.

/s/ Ben Barnow