# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE:  100% GRATED PARMESAN CHEESE MARKETING AND SALES PRACTICES LITIGATION | Civil Action No. 16 CV 5802 |
| | **MDL 2705** |
| *This Document Relates to all Cases on the Albertsons and Supervalu Track* | **Judge Gary S. Feinerman** |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
## CONSOLIDATED COMPLAINT AGAINST
## ALBERTSONS COMPANIES, INC., ALBERTSONS LLC, AND SUPERVALU, INC.

Gary Hansen (admitted *pro hac vice*)
Heidi A.O. Fisher (admitted *pro hac vice*)
FOX ROTHSCHILD LLP
222 South Ninth Street, Suite 2000
Minneapolis, MN  55402-3338
Phone: 612.607.7000
Facsimile:  612.607.7100
ghansen@foxrothschild.com
hfisher@foxrothschild.com

Joseph E. Collins
FOX ROTHSCHILD LLP
353 N. Clark Street, Suite 3650
Chicago, Illinois 60654
Phone: 312.517.9227
Facsimile:  312.517.9201
jcollins@foxrothschild.com

*Counsel for Defendants Albertsons Companies, Inc., Albertsons LLC, and Supervalu Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

FACTUAL ALLEGATIONS ............................................................................... 2

ARGUMENT ....................................................................................................... 4

I.     LEGAL STANDARD. ................................................................................ 4

        A.     Rule 12(b)(1). ....................................................................... 4

        B.     Rule 12(b)(6). ....................................................................... 5

        C.     Rule 9(b). .............................................................................. 6

II.     FDA STATUTES AND REGULATIONS ................................................ 6

III.     STANDING. .............................................................................................. 9

        A.     Injury in Fact. ...................................................................... 9

        B.     Injunctive Relief. ...............................................................10

        C.     Class Relief. .......................................................................10

IV.     PREEMPTION. ........................................................................................11

V.     CONSUMER FRAUD STATUTES. ......................................................12

        A.     COUNT I (VIOLATION OF IFCA) FAILS TO STATE A CLAIM. ..................12

                1.     The Statements Are Not Actionable Under Section 10b(1) of ICFA. .......12

                2.     The Statements Are Not Misleading as a Matter of Law. .........................13

        B.     COUNT II (VIOLATION OF ADTPA) FAILS TO STATE A CLAIM. .............16

                1.     The Label Statements Are Not Actionable Under ADTPA. ....................16

                2.     Wills' ADTPA Claim Fails Because He Did Not Give Pre-Suit Notice. 17

                3.     Wills Has Failed to Plead a Claim Under ADTPA. ................................17

VI.     BREACH OF WARRANTY CLAIMS (COUNTS III & IV). ...........................17

        A.     Plaintiffs' Failure to Provide Pre-Suit Notice Bars Plaintiffs' Breach of Warranty Claims. ..................18

        B.     Plaintiffs' Express Warranty Claims Should Be Dismissed Because No Express Warranties Were Breached. ..................19

i

  C.  Plaintiffs' Warranty Claims Must Be Dismissed for Lack of Privity...................21

VII. UNJUST ENRICHMENT. ..................................................................................23

  A.  Bell and Lang's Unjust Enrichment Claims Fail Because the Related Claims Fail as a Matter of Law. ....................................................................................23

  B.  Wills' Unjust Enrichment Claims Fail Under Alabama Law.............................24

CONCLUSION.....................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                        **Page(s)**

*Allee v. Medrano,*
    416 U.S. 802 (1974) ...................................................................................5

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................5, 6

*Association Benefit Services v. Caremark Rx, Inc.,*
    493 F.3d 841 (7th Cir. 2007) ......................................................................23

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ...................................................................................5

*Bober v. Glaxo Wellcome PLC,*
    246 F.3d 934 (7th Cir. 2001) ...............................................................*passim*

*Borsellino v. Goldman Sachs Group, Inc.,*
    477 F.3d 502 (7th Cir. 2007) ......................................................................6

*Boysen v. Walgreen Co.,*
    No. C 11-06262 SI, 2012 WL 2953069 (N.D. Cal. July 19, 2012) .......................10

*Camasta v. Jos. A. Bank Clothiers, Inc.,*
    761 F.3d 732 (7th Cir. 2014) ......................................................................10

*Caterpillar, Inc. v. Usinor Industeel,*
    393 F. Supp. 2d 659 (N.D. Ill. 2005).......................................................22, 23

*Chin v. General Mills, Inc.,*
    No. 12–2150, 2013 WL 2420455 (D. Minn. June 3, 2013).................................21

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983) ...................................................................................10

*Cleary v. Philip Morris Inc.,*
    656 F.3d 511 (7th Cir. 2011) .................................................................23, 24

*Coles-Moultrie Electric Co-op v. City of Sullivan,*
    709 N.E.2d 249 (Ill. App. Ct. 1999).............................................................20

*Collins Co. v. Carboline Co.,*
    532 N.E.2d 834 (Ill. 1988).........................................................................22

*In re Community Health Systems, Inc.*,
  No. 15-CV-222-KOB, 2016 WL 4732630 (N.D. Ala. Sept. 12, 2016) ................................11

*In re Dairy Farmers of America, Inc. Cheese Antitrust Litigation*,
  No. 09 CV 3690, MDL No. 2031, 2013 WL 4506000 (N.D. Ill. Aug. 23,
  2013) ................................................................................................................................11

*Deerman v. Federal Home Loan Mortgage Corp.*,
  955 F. Supp. 1393 (N.D. Ala. 1997), *aff'd*, 140 F.3d 1043 (11th Cir. 1998) ........................17

*Federal Security Administrator v. Quaker Oats Co.*,
  318 U.S. 218 (1943) ............................................................................................................14

*Frank v. Edward Hines Lumber Co.*,
  761 N.E.2d 1257 (Ill. App. Ct. 2001) ................................................................................22

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995) ................................................................................................21

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,
  528 U.S. 167 (2000) ..............................................................................................................5

*Hart v. FedEx Ground Package System Inc.*,
  457 F.3d 675 (7th Cir. 2006) ................................................................................................4

*Hinrichs v. Speaker of the House of Representatives of the Indiana General
  Assembly*,
  506 F.3d 584 (7th Cir. 2007) ................................................................................................4

*Hobbs v. General Motors Corp.*,
  134 F. Supp. 2d 1277 (M.D. Ala. 2001)........................................................................ 18, 19

*Holmes v. Behr Process Corp.*,
  No. 2:15-CV-0454-WMA, 2015 WL 7252662 (N.D. Ala. Nov. 17, 2015) ........................25

*Homes of Legend, Inc. v. McCollough*,
  776 So.2d 741 (Ala. 2000)..................................................................................................20

*Ibarrola v. Kind, LLC*,
  83 F. Supp. 3d 751 (N.D. Ill. 2015) ............................................................................*passim*

*INEOS Polymers Inc. v. BASF Catalysts*,
  553 F.3d 491 (7th Cir. 2009) ..............................................................................................20

*Jackson v. South Holland Dodge, Inc.*,
  755 N.E.2d 462 (Ill. 2001)..................................................................................................12

*Jensen v. Bayer AG*,
    862 N.E.2d 1091 (Ill. App. Ct. 2007)...................................................................................21

*Jewell v. Seaboard Industrial, Inc.*,
    667 So.2d 653 (Ala. 1995)....................................................................................... 19, 21

*Jones v. Apple, Inc.*,
    No. 15-CV-249-NJR-SCW, 2016 WL 4429801 (S.D. Ill. Aug. 22, 2016) ............................18

*Keith v. Ferring Pharmaceuticals, Inc.*,
    No. 15-C-10381, 2016 WL 5391224 (N.D. Ill. Sept. 27, 2016)...........................................22

*Kokkonen v. Guardian Life Insurance Co. of America*,
    511 U.S. 375 (1994) ................................................................................................................4

*Kuenzig v. Hormel Foods Corp.*,
    505 F. App'x 937 (11th Cir. 2013) .......................................................................................16

*Landlock National Paving, Inc. v. Desin L.P.*,
    No. 12 C 2893, 2013 WL 4854361 (N.D. Ill. Sept. 11, 2013) (Feinerman, J.) ....................24

*Lanier v. Associates Finance, Inc.*,
    499 N.E.2d 440 (Ill. 1986)....................................................................................................12

*Lewis v. Casey*,
    518 U.S. 343 (1996) ................................................................................................................5

*Loeffel Steel Products, Inc. v. Delta Brands, Inc.*,
    379 F. Supp. 2d 968 (N.D. Ill. 2005)....................................................................................20

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .............................................................................................................4, 5

*Mekertichian v. Mercedes–Benz U.S.A., L.L.C.*,
    807 N.E.2d 1165 (Ill. App. Ct. 2004)...................................................................................22

*Ex parte Miller*,
    693 So.2d 1372 (Ala. 1997)..................................................................................................20

*Miller v. Hypoguard USA, Inc.*,
    No. 05-CV-0186-DRH, 2005 WL 3481542 (S.D. Ill. Dec. 20, 2005) ............................ 18, 19

*Parker v. Bell Ford, Inc.*,
    425 So.2d 1101 (Ala. 1983)..................................................................................................19

*Payton v. County of Kane*,
    308 F.3d 673 (7th Cir. 2002) .................................................................................................5

*Pearson's Pharmacy, Inc. v. Express Scripts, Inc.*,
   505 F. Supp. 2d 1272 (M.D. Ala. 2007) ............................................................... 25

*Perona v. Volkswagen of America, Inc.*,
   684 N.E.2d 859 (Ill. App. Ct. 1997) .................................................................... 18

*Pelayo v. Nestle USA, Inc.*,
   989 F. Supp. 2d 973 (C.D. Cal. 2013) ................................................................ 14

*Ponder v. Lake Forest Property Owners Association*,
   No. 2130790, 2015 WL 3935490 (Ala. Civ. App. June 26, 2015) ....................... 24

*Price v. Philip Morris, Inc.*,
   848 N.E.2d 1 (Ill. 2005) ..................................................................................... 12

*Raines v. Byrd*,
   521 U.S. 811 (1997) ........................................................................................... 10

*Rampey v. Novartis Consumer Health, Inc.*,
   867 So.2d 1079 (Ala. 2003) ............................................................................... 23

*Reyes v. McDonald's Corp.*,
   No. 06 C 1604, 06 C 2813, 2006 WL 3253579 (N.D. Ill. Nov. 8, 2006) .............. 18

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004) ................................................................................. 6

*Rosenblum v. Travelbyus.com Ltd.*,
   299 F.3d 657 (7th Cir. 2002) ............................................................................... 3

*Rothe v. Maloney Cadillac, Inc.*,
   518 N.E.2d 1028 (Ill. 1988) ............................................................................... 21

*Szajna v. General Motors Corp.*,
   503 N.E.2d 760 (Ill. 1986) ................................................................................ 21

*Simon v. Eastern Kentucky Welfare Rights Organization*,
   426 U.S. 26 (1976) ........................................................................................ 5, 11

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ......................................................................................... 5

*State Farm Fire and Casualty Co. v. J.B. Plastics, Inc.*,
   505 So.2d 1223 (Ala. 1987) ............................................................................... 22

*Suchanek v. Sturm Foods, Inc.*,
   764 F.3d 750 (7th Cir. 2014) ............................................................................. 17

*Trujillo v. Apple Computer, Inc.*,
    581 F. Supp. 2d 935 (N.D. Ill. 2008)...................................................................15

*Veal v. Citrus World, Inc.*,
    No. 2:12–CV–801–IPJ, 2013 WL 120761 (N.D. Ala. Jan 8, 2013) ......................10

*Voelker v. Porsche Cars North America*,
    353 F.3d 516 (7th Cir 2003) .................................................................................22

*White v. Microsoft Corp.*,
    454 F. Supp. 2d 1118 (S.D. Ala. 2006) ................................................................25

*Whitmore v. Arkansas*,
    495 U.S. 149, 155 (1990) ........................................................................................5

*Wigod v. Wells Fargo Bank, N.A.*,
    673 F.3d 547 (7th Cir. 2012) ...................................................................................6

*Workman v. Plum Inc.*,
    141 F. Supp. 3d 1032 (N.D. Cal. 2015)................................................................21

*Wynn v. Davison Design & Development, Inc.*,
    No. 09–0790–CG–C, 2010 WL 891905 (S.D. Ala. Mar. 8, 2010) ........................24

*Zaycer v. Sturm Foods, Inc.*,
    896 F. Supp. 2d 399 (D. Md. 2012) ......................................................................11

**Statutes**

21 U.S.C. § 331(b) ..........................................................................................................6

21 U.S.C. § 343..............................................................................................................6

Ala. Code § 7-2-313.....................................................................................................19

Ala. Code § 7-2-317.....................................................................................................20

Ala. Code § 7-2-607................................................................................................18, 19

Ala. Code § 8–19–10 ...............................................................................................16, 17

Ala. Code § 8-19-4.......................................................................................................16

Ala. Code § 8-19-1.......................................................................................................16

810 Ill. Comp. Stat. 5/2-313(1).....................................................................................19

810 Ill. Comp. Stat. 5/2-317 .........................................................................................20

810 Ill. Comp. Stat. 5/2-607(3)(A) ..................................................................................18

815 Ill. Comp. Stat. 505/10b(1) ......................................................................................12

410 Ill. Comp. Stat. 620/2.35 .........................................................................................13

410 Ill. Comp. Stat. 620/9 .........................................................................................13, 14

410 Ill. Comp. Stat. 620 .................................................................................................12

Pub. L. No. 101-535, 104 Stat. 2353 ................................................................................6

**Other Authorities**

21 C.F.R. § 101.1 ........................................................................................................6, 7

21 C.F.R. § 101.2 ............................................................................................................7

21 C.F.R. § 101.3 ............................................................................................................7

21 C.F.R. § 101.4 ............................................................................................................7

21 C.F.R. § 133.146 ......................................................................................................3, 8

21 C.F.R. § 133.165 .........................................................................................................7

21 C.F.R. § 133.183 .........................................................................................................7

21 C.F.R. § 182.1480 .......................................................................................................8

H.R. Rep. No. 101-538 (1990), *reprinted in* 1990 U.S.C.C.A.N. 3336 ........................6

Federal Rules of Civil Procedure 9(b) ...........................................................................6

Federal Rules of Civil Procedure 12(b)(1) .....................................................................4

Federal Rules of Civil Procedure 12(b)(6) .....................................................................5

*Williston on Sales* § 15–9 (4th ed. 1974) .....................................................................20

## INTRODUCTION

Albertsons Companies, Inc., Albertsons LLC, and Supervalu, Inc. sell Supervalu's Essential Everyday® grated cheese products in containers labeled: "100% Grated Parmesan Cheese" and "100% Grated Parmesan & Romano Cheese."[1] [2] The label is entirely truthful because: (1) Grated Parmesan Cheese is a term both defined and required by the Food and Drug Administration ("FDA"); (2) as defined by FDA, Grated Parmesan Cheese includes cellulose and other non-cheese ingredients; (3) the label discloses the presence of those additional ingredients; and (4) Parmesan (or Parmesan and Romano) is the only cheese in the product. Though the labels are accurate and complete, Plaintiffs attack them as false. They claim the label identifying the product as "100% Grated Parmesan Cheese" is the same as if it had stated "100% Parmesan Cheese," which they claim is false because the product includes ingredients in addition to cheese.

Grated Parmesan Cheese does, in fact, contain ingredients in addition to cheese. "Grated Parmesan Cheese" is the standard of identity established by FDA for the product made by combining Parmesan Cheese and other ingredients—specifically including antimycotics, spices, flavorings, and (as most relevant here) anticaking agents such as cellulose. FDA requires that this multi-ingredient product bear a label identifying it as "Grated Parmesan Cheese." By law, that product name must be prominently displayed on the product's principal display panel, as it was on Supervalu's Essential Everyday® grated cheese containers.

---

[1] The claims asserted with respect to Everyday Essentials® "100% Grated Parmesan Cheese" are the same as the claims asserted with respect to Everyday Essentials® "100% Parmesan and Romano Cheese." For ease of reference, this memorandum will refer to them collectively as Grated Parmesan Cheese, with the arguments applying equally to Grated Parmesan and Romano Cheese.

[2] Supervalu and Albertsons are separate, unrelated entities. Supervalu sells its private label Essential Everyday® products to retail stores, including some stores owned, affiliated, or supplied by Albertsons.

If Supervalu had not labeled the grated cheese product, with its permitted additional ingredients, as Grated Parmesan Cheese, it would have been in violation of FDA regulation. Thus, Supervalu's use of the term "Grated Parmesan Cheese" to describe the product was both accurate and required. And if it is accurate to follow FDA directives and describe the product as "Grated Parmesan Cheese," it is also accurate to describe the product as "100% Grated Parmesan Cheese"—both phrases convey the same information. Moreover, a reasonable consumer could have no confusion about product contents because the label also lists all of the ingredients, including the presence of cellulose as an anticaking agent.

All of Plaintiffs' claims are premised on the incorrect assumption that Essential Everyday® Grated Parmesan Cheese is not, in fact, 100% Grated Parmesan Cheese. Because that assumption is wrong as a matter of law, each of the claims in the Consolidated Complaint Against Albertsons Companies, Inc., Albertsons LLC, and Supervalu, Inc. ("Complaint") fails to state a claim upon which relief can be granted and should be dismissed. Moreover, Plaintiffs' attacks on FDA's required nomenclature are, at their heart, an attack on FDA regulations and should be dismissed under the preemption and safe harbor doctrines. For these reasons, and for other reasons set forth in this memorandum, Defendants ask the Court to dismiss the Complaint with prejudice.

## FACTUAL ALLEGATIONS

Plaintiffs Bell and Lang are citizens of Illinois, and Plaintiff Wills is a citizen of Alabama. (Compl. ¶¶ 7–9.) They each purchased Essential Everyday® grated cheese products from retailers in their home state. *Id.* As required by law, the principal display panel on the containers identified the product as "Grated Parmesan Cheese." (Compl. ¶ 17.) That product identifier was preceded with the designation "100%." *Id.* The label's ingredient panel provides full information on the product ingredients: "INGREDIENTS: MILK, CHEESE CULTURE, SALT, ENZYMES,

2

*POWDERED CELLULOSE, ADDED TO PREVENT CAKING*. CONTAINS MILK."   (See

below.)



(Declaration of Catherine Proper, ¶¶ 4–5, Exs. A, B) (emphasis added.) [3]

The standard of identity for "Grated Parmesan Cheese" is established by FDA regulation

and defines the product as Parmesan cheese and additional ingredients, including antimycotics,

anticaking agents such as cellulose, spices, and flavorings.  21 C.F.R. § 133.146.  Plaintiffs allege

that Supervalu's Essential Everyday® Grated Parmesan Cheese did in fact contain the cellulose

permitted by FDA regulation.  (Compl. ¶¶ 2, 16, 18.)  Plaintiffs do not allege that the product they

---

[3] The Complaint presented images of the front of the Grated Parmesan Cheese container, but not
of the back of the container.  (Compl. ¶ 17.)  Images of the entire label of the containers are attached
as Exhibits A and B to the Declaration of Catherine Proper and are properly considered by the
Court in this motion because they are documents referenced in the Complaint.  *Rosenblum v.
Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002).

purchased was anything other than what FDA defines as Grated Parmesan Cheese—in other words, Parmesan cheese and other permitted ingredients. They do not explain how the product they purchased could be accurately described as Grated Parmesan Cheese and not also be described as 100% Grated Parmesan Cheese. Nonetheless, entirely ignoring the ingredients information panel, they claim the product labeling misled them to believe that the product consisted only of Parmesan cheese, but none of the other ingredients properly included to produce Grated Parmesan Cheese. (Compl. ¶¶ 1–2, 7–9, 18–19.)

Plaintiffs assert claims for themselves and for national, Illinois, and Alabama classes of purchasers. They seek damages based on the differential between the price they paid and the price they assert they would have been willing to pay had they read the label and understood Supervalu's Grated Parmesan Cheese contained multiple ingredients. (Compl. ¶¶ 4, 20–22, 37, 46, 71.)

## ARGUMENT

## I. LEGAL STANDARD.

### A. Rule 12(b)(1).

Standing is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims. *Hinrichs v. Speaker of the House of Representatives of Ind. Gen. Assembly*, 506 F.3d 584, 590 (7th Cir. 2007). Standing is jurisdictional, cannot be waived, and is properly addressed under Rule 12(b)(1). *Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 679 (7th Cir. 2006) ("Federal courts are courts of limited jurisdiction: 'It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.'" (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994))).

Plaintiffs must meet three basic requirements to establish standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "First, the plaintiff must have suffered an 'injury in fact'—an

invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)); *see also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547–48 (2016). "Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (alteration in original) (quoting *Simon v. E. Ky. Welfare Rights Organization*, 426 U.S. 26, 41–42 (1976)). "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561 (quoting *Simon*, 426 U.S. at 38, 43); *Spokeo*, 136 S. Ct. at 1547–48. These basic requirements—injury in fact, causation, and redressability—must be proven separately as to each request for relief. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. Inc.*, 528 U.S. 167, 185 (2000) ("[A] plaintiff must demonstrate standing separately for each form of relief sought."); *see also Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("[S]tanding is not dispensed in gross."). In addition, "[s]tanding cannot be acquired through the back door of a class action." *Payton v. Cty. of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) (quoting *Allee v. Medrano*, 416 U.S. 802, 828–29 (1974) (Burger, C.J., dissenting)).

### B.  Rule 12(b)(6).

The Court should dismiss a complaint when it fails to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive, a plaintiff's factual allegations must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Conclusory statements and naked assertions are insufficient, and courts do not presume a plaintiff's legal conclusions are true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, the complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A complaint fails to state a claim when the legal theory underpinning the claims is insufficient as a

matter of law. In other words, a court must assess, as a matter of law, the plausibility of alleged violations of law. *Iqbal*, 556 U.S. at 678.

### C. Rule 9(b).

The heightened pleading standard of Rule 9(b) applies to all of Plaintiffs' claims. As recognized by the Seventh Circuit, "Rule 9(b) applies to averments of fraud, not [just] claims of fraud, so whether the rule applies will depend on the plaintiffs' factual allegations." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (quotations omitted). Therefore, any "claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." *Borsellino*, 477 F.3d at 507 (quoting *Rombach v. Chang*, 355 F.3d 164, 170–71 (2d Cir. 2004)). Accordingly, the complaint must identify "the who, what, when, where, and how" of the fraud. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012).

## II. FDA STATUTES AND REGULATIONS.

There are two primary sources from which FDA derives its authority over food labeling. The Federal Food, Drug, and Cosmetic Act ("FDCA") generally prohibits "misbranding" of food. 21 U.S.C. § 331(b) (2017). In 1990, Congress enacted the more comprehensive Nutrition Labeling and Education Act of 1990 ("NLEA"), which added a specific regulatory scheme for food labeling. Pub. L. No. 101-535, 104 Stat. 2353. The NLEA regulates "misbranding" of food in greater detail than the FDCA. *See* 21 U.S.C. § 343 (2017). Through the NLEA, Congress sought to "clarify and . . . strengthen the Food and Drug Administration's legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients in foods." H.R. Rep. No. 101-538, at 7 (1990), *reprinted in* 1990 U.S.C.C.A.N. 3336, 3337.

Federal regulation of food labeling distinguishes between (1) the "principal display panel," or the "front" of the label; and (2) the "information panel," or the "back" of the label. *See* 21

C.F.R. §§ 101.1 (principal display panel), 101.2 (information panel). "The principal display panel of a food in package form *shall* bear as one of its principal features a statement of the identity of the commodity," which is the name specified in the applicable regulation. 21 C.F.R. § 101.3(a)–(b) (emphasis added). In other words, the "statement of identity" of the commodity on the principal display panel of a food in package form must be "[t]he name . . . required by any applicable Federal law or regulation*." Id.* The complete list of ingredients in the food product is not required on the principal display panel unless specifically otherwise provided by the regulation controlling that particular food. 21 C.F.R. §§ 101.2(b), 101.4(a)(1). Instead, FDA regulations require ingredients to be listed "on either the principal display panel *or* the information panel." 21 C.F.R. § 101.4(a)(1) (emphasis added); *id.* § 101.2(b).

Two separate but harmonious regulations determine the appropriate labeling for Grated Parmesan Cheese. The legal requirements for production of Parmesan cheese are found at 21 C.F.R. § 133.165. Among other things, these regulations specify the ingredients and manufacturing processes involved in creating cheeses that may properly be identified as "Parmesan." *See* 21 C.F.R. § 133.165(a) ("Parmesan cheese . . . is the food prepared from milk and other ingredients specified in this section, by the procedure set forth in . . . this section . . . .").[4] The regulations further provide that the ingredients used in the food "shall be declared on the label as required by the applicable sections of parts 101 and 130 of this chapter," with certain exceptions. 21 C.F.R. §§ 133.165(e), 133.183(f).

Knowing the standard of identity for the cheese at issue is not enough, however. FDA also specifically regulates *grated* cheese as a distinct product with its own statement of identity:

---

[4] The similar requirements for Romano cheese are found at 21 C.F.R. § 133.183.

> Grated cheeses is the class of foods prepared by grinding, grating, shredding, or otherwise comminuting cheese of one variety or a mixture of two or more varieties. The cheese varieties that may be used are those for which there are definitions and standards of identity, except that cream cheese, neufchatel cheese, cottage cheese, creamed cottage cheese, cook cheese, and skim milk cheese for manufacturing may not be used. . . . *One or more of the optional ingredients specified in paragraph (c) of this section may be used*.

21 C.F.R. § 133.146(a) (emphasis added). These approved "optional ingredients" are: (1) antimycotics; (2) anticaking agents; (3) spices; and (4) flavorings. 21 C.F.R. § 133.146(c). Cellulose is an FDA-approved anticaking agent that "is generally recognized as safe." 21 C.F.R. § 182.1480. Therefore, in grated or similar form and *with the inclusion of* the optional ingredients, FDA specifies the grated cheese product's statement of identity as follows:

> (d) *Nomenclature*.
>
>> (1) The *name of the food* is "grated cheese" or "grated cheeses", as appropriate. The name of the food shall be accompanied by a declaration of the specific variety of cheese(s) used in the food and by a declaration indicating the presence of any added spice or flavoring.
>>
>> (2) Any cheese varietal names used in the name of the food are those specified by applicable standards of identity, except that the designation "American cheese" may be used for cheddar, washed curd, colby, or granular cheese or for any mixture of these cheeses.
>>
>> (3) The following terms may be used in place of the name of the food to describe specific types of grated cheese:
>>
>>> (i) If only one variety of cheese is used, *the name of the food is "grated ___ cheese"*, the name of the cheese filling the blank.
>>>
>>> (ii) If only parmesan and romano cheeses are used and each is present at a level of not less than 25 percent by weight of the finished food, the name of the food is "grated _____ and _____ cheese", the blanks being filled with the names "parmesan" and "romano" in order of predominance by weight. The name "reggiano" may be used for "parmesan".

21 C.F.R. § 133.146 (d)(1)–(3). FDA requires that "[e]ach of the ingredients used in the food shall be declared on the label as required by the applicable sections of parts 101 and 130," with certain exceptions. 21 C.F.R. § 133.146(e).

8

In summary, FDA regulations define the grated cheese products distributed by Supervalu to include anticaking agents, and specifically require the product to be identified as "Grated Parmesan Cheese." FDA also requires disclosure accompanying "the name of the food" of the presence of any added spice or flavoring, *but not* the other optional ingredients. Rather, if an anticaking agent is used, it is to be listed in the ingredients panel section of the label. Supervalu's Essential Everyday® labels are consistent with each of these requirements.

## III. STANDING.

### A. Injury in Fact.

Plaintiffs' claims should be dismissed because Plaintiffs have failed to plead an injury in fact and therefore lack Article III standing.[5] Plaintiffs allege their injury as "not receiving what was promised" on Supervalu's labels, (Compl. ¶ 2); having "overpaid for the Products they purchased," (*id.* ¶ 20; *see also* ¶¶ 37, 71–72); and not receiving the "benefit of their bargain," (*id.* ¶ 46). But other than these buzzwords, Plaintiffs have not pled a "concrete and particularized" injury as opposed to a "conjectural or hypothetical" one.

The crux of Plaintiffs' allegations—from which their alleged injury flows—is that Supervalu's products "are not 100% cheese," or "are not all cheese." (Compl. ¶¶ 18–19.) That is true, but "100% cheese" is *not* what Supervalu's labels promised. Rather, they promised "100% Grated Parmesan Cheese," and FDA has drawn a clear and legally recognizable difference between those two statements. Supervalu's labels were in full compliance with FDA regulations because they identified the grated cheese products, listed all of their ingredients, and were complete and

---

[5] For the same reason, Plaintiffs also fail to plead an essential element of all of their claims—injury and/or or damages caused by Defendant's actions. Both lack of standing and failure to plead an injury are discussed at greater length in the memoranda of defendants on other tracks of this MDL. Defendants will rely on those memoranda rather than present an expanded argument here. (*See* the memoranda of law filed by Wal-Mart Stores, Inc. and jointly by Target Corporation and ICCO Cheese Company, Inc. in support of their motions to dismiss.)

accurate. Therefore, the premise on which Plaintiffs' allegations depend is faulty. *See Veal v. Citrus World, Inc.*, No. 2:12–CV–801–IPJ, 2013 WL 120761, at *4–5, 7–9 (N.D. Ala. Jan 8, 2013) (dismissing claim based on defendant's label stating that the product was "100% orange juice" because the label complied with FDA regulations). Because Plaintiffs' underlying theory is defective, no injury based on their "benefit of the bargain" or "overpayment" theory can follow. *Id.* at *4–5, 7 (noting, in dismissing warranty claim regarding "100% orange juice," that unfulfilled, unrealistic expectations "[do] not translate into a concrete injury to plaintiff upon his learning that [his] beliefs about commercially grown and produced orange juice were incorrect"); *see also Boysen v. Walgreen Co.*, No. C 11-06262 SI, 2012 WL 2953069, at *3–5 (N.D. Cal. July 19, 2012).

### B. Injunctive Relief.

Despite now being fully aware that Supervalu's grated cheese products contain cellulose and are not 100% cheese, Plaintiffs seek injunctive relief under Illinois and Alabama state consumer protections statutes to protect them from being misled in the future. Injunctive relief "is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *see also Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 735 (7th Cir. 2014)).[6]

### C. Class Relief.

The standing inquiry also "focuses on whether the plaintiff is the proper party to bring this suit." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). Plaintiffs assert claims on behalf of nationwide

---

[6] This issue is discussed in greater length in the memoranda of defendants on other tracks of this MDL. Defendants here will rely on those memoranda rather than present an expanded argument in this memorandum. (*See* memoranda of law filed by Kraft Heinz Company and Wal-Mart Stores, Inc. in support of their motions to dismiss.)

classes even though they only allege injuries related to their purchases in Illinois and Alabama. However, "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 09 CV 3690, MDL No. 2031, 2013 WL 4506000, at *8 (N.D. Ill. Aug. 23, 2013) (quoting *Simon*, 426 U.S. at 40 n.20). Thus, named plaintiffs lack standing to assert claims under the laws of "states in which they do not reside and/or did not purchase the products at issue." *Dairy Farmers*, 2013 WL 4506000, at *8 (citations omitted); *see also Zaycer v. Sturm Foods, Inc.*, 896 F. Supp. 2d 399, 409 (D. Md. 2012); *In re Cmty. Health Sys., Inc.*, No. 15-CV-222-KOB, 2016 WL 4732630, *18 (N.D. Ala. Sept. 12, 2016).

## IV.    PREEMPTION.

FDA has established the standard of identity for Grated Parmesan Cheese (which includes the presence of non-cheese ingredients, specifically including cellulose), dictated the use of the product name "Grated Parmesan Cheese" on the front of the label, and dictated the listing of non-cheese ingredients on the back of the label. Supervalu fully complied with these mandatory regulations, accurately describing its product as "100% Grated Parmesan Cheese."

In these circumstances, FDA regulations preempt Plaintiffs' claims under both express exemption and conflict exemption analyses. Moreover, in the case of Grated Parmesan Cheese, FDA has done more than require the product to be named "Grated Parmesan Cheese." It has expressly approved multiple grated Parmesan (and other varietal) cheese labels describing the product as, in the case of Parmesan products, "100% Grated Parmesan Cheese," providing Supervalu with a defense to Plaintiffs' claims under the "safe harbor" doctrine.

These fundamental deficiencies in Plaintiffs' Complaint are already discussed in detail in the memoranda filed in support of the Kraft Heinz Company's motion to dismiss and the Target

Corporation's and ICCO Cheese Company's joint motion to dismiss. Rather than burden the Court with a repetition of those arguments, Defendants incorporate them by reference and ask the Court to dismiss Plaintiffs' Complaint with prejudice for the reasons set forth therein.

## V.     CONSUMER FRAUD STATUTES.

### A.     COUNT I (VIOLATION OF IFCA) FAILS TO STATE A CLAIM.

Plaintiffs Bell and Lang assert a claim under the Illinois Deceptive Practices and Consumer Fraud Act ("ICFA") (Compl. ¶ 31.) Their claim is based on Supervalu's "prominently labeling Products with the 100% Claims, while omitting on the front of the label that the Products were not all cheese." (*Id.* ¶ 33.) This claim fails for multiple reasons.

#### 1.     The Statements Are Not Actionable Under Section 10b(1) of ICFA.

Illinois enacted ICFA to protect customers from fraud and unfair and deceptive trade practices—not to circumvent or second guess the legislative or regulatory processes. *Price v. Philip Morris, Inc.*, 848 N.E.2d 1, 38 (Ill. 2005). ICFA excludes from liability "actions . . . specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." 815 Ill. Comp. Stat. 505/10b(1) (2016). The Illinois Supreme Court instructs that ICFA is to be construed consistent with the "policy throughout Illinois law against extending disclosure requirements beyond what it mandated by federal law." *Jackson v. S. Holland Dodge, Inc.*, 755 N.E.2d 462, 469 (Ill. 2001); *see also Lanier v. Assocs. Fin. Inc.*, 499 N.E.2d 440, 447 (Ill. 1986). Because Supervalu's labels were specifically authorized—indeed, required—by FDA under the authority of the FDCA, and by the State of Illinois under the authority of the Illinois Food Drug and Cosmetics Act, 410 Ill. Comp. Stat. 620, those labels cannot form the basis of an ICFA claim.

Section 10b(1) expressly precludes ICFA from imposing higher disclosure requirements on parties than those established by federal regulations. *Bober v. Glaxo Wellcome PLC*, 246 F.3d

934, 941 (7th Cir. 2001). Thus, the inquiry under Section 10b(1) is whether the statements complained of are "sufficiently within what is authorized by federal law." *Id.* If the statements are authorized by federal law, then no liability may be imposed—even if the permitted statements are potentially misunderstood by a consumer:

> The regulations implementing the FDCA are extensive and extremely detailed. . . . Technical requirements abound, and ***it is not only possible but likely that ordinary consumers will find some of them confusing, or possibly misleading*** as the term is used in statutes like Illinois's CFA. But, ***recognizing the primacy of federal law in this field, the Illinois statute itself protects companies from liability if their actions are authorized by federal law.*** (Such protection would amount to nothing if it applied only to statements that were not susceptible to misunderstanding; those statements would escape liability under the CFA in any event.)

*Id.* at 941–43 (emphasis added).

Supervalu's statement that its products are "100% Grated Parmesan Cheese" is "sufficiently within" what is authorized by federal and State law. Supervalu's labeling complies with FDA labeling standards, and Illinois adopted the federal standards without alteration. *See* 410 Ill. Comp. Stat. 620/2.35 (2016) ("All manufactured dairy products shall meet the applicable definitions and standards of identity as promulgated under the Federal Act."); *id.* 620/9 ("Definitions and standards of identity, quality and fill of container and supplements thereto or revisions thereof, adopted under authority of the Federal Food, Drug and Cosmetic Act are the definitions and standards of identity, quality and fill of container in this State . . . ."). Therefore, Defendants are exempt from liability under Section 10b(1), and Plaintiffs' ICFA claim must be dismissed.

### 2. The Statements Are Not Misleading as a Matter of Law.

Supervalu's labels are not misleading as a matter of law. To properly plead an ICFA claim, Plaintiffs must sufficiently allege that the challenged statements are misleading. *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 756 (N.D. Ill. 2015). A court must dismiss an ICFA claim if the

13

challenged statements are not misleading as a matter of law. *Id.* (citing *Bober*, 246 F.3d at 940; and then citing *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013)).

The statement "100% Grated Parmesan Cheese" cannot be misleading as a matter of law because it complies with standards of identity under applicable state and federal law, and no reasonable consumer would understand the statement "100% Grated Parmesan Cheese" to mean the products contain 100% "cheese" (as Plaintiffs allege), rather than 100% "grated Parmesan cheese." (Compl. ¶¶ 18–19.) This is particularly true where, as here, the presence of cellulose and other ingredients is prominently displayed on the label in capital letters.

### a. The Statements Cannot Be Misleading Because They Comply with FDCA Standards of Identity.

Plaintiffs allege Supervalu's use of "100% Grated Parmesan Cheese" is somehow misleading because the products contained cellulose. As discussed *supra*, FDA standards of identity expressly allow products named "Grated Parmesan Cheese" to include cellulose where, as here, it is disclosed on the label's list of ingredients, and these standards are adopted by the IFCA. *See* 410 Ill. Comp. Stat. 620/2.35, 620/9 (2016). Plaintiffs cannot rationally be confused by a product named and labeled in accordance with federal and state standards implemented expressly to avoid this type of confusion. *See Fed. Sec. Adm'r v. Quaker Oats Co.*, 318 U.S. 218, 230–31 (1943) (finding that the legislative purposes of FDA's standards of identity were to maintain the integrity of food products and eliminate confusion by consumers).

### b. No Reasonable Consumer Could Be Deceived by the Statements.

Even if Supervalu's compliance with FDCA labeling practices was not legally dispositive of Plaintiffs' ICFA claims, Plaintiffs' ICFA claims must be dismissed because no reasonable consumer could be deceived by the challenged labels. No reasonable consumer could believe that Supervalu's products did not contain cellulose because the products specifically disclosed

14

cellulose as an ingredient and because the products were accurately described as "Grated Parmesan Cheese."

"Under ICFA, a statement or omission is deceptive if it creates the likelihood of deception or has the capacity to deceive." *Trujillo v. Apple Computer, Inc.*, 581 F. Supp. 2d 935, 938 (N.D. Ill. 2008) (citing *Bober*, 246 F.3d at 938). "If other information disclosed or available to the consumer dispels any tendency to deceive, there is no deception." *Id.* Liability under ICFA only exists when the statement or omission "concerned the type of information upon which a buyer would be expected to rely in making a decision whether to purchase." *Id.* at 939 (citations omitted). This is a reasonable person standard—not a subjective standard. *Id.* Thus, an ICFA claim should be dismissed for failure to state a claim when the totality of information available to the consumer would dispel any likelihood of a reasonable person or reasonable consumer being deceived by any alleged misrepresentation or omission.

*Ibarrola v. Kind, LLC* involved an ICFA claim pertaining to a statement on the front label of the defendant's "Vanilla Blueberry Clusters" product providing that it contained "no refined sugars." *See Ibarrola*, 83 F. Supp. 3d at 753. The plaintiff claimed the representation was misleading because the ingredients panel listed "evaporated cane juice" and "molasses" as ingredients. *Id.* at 754. The court dismissed the claim, finding that a reasonable consumer would not be deceived by the product's "no refined sugars" statement, but would understand that some sort of refinement process would need to take place to convert pure sugar cane—which is an indigestible grass in its natural, unprocessed state—into something fit for human consumption. *Id.* at 758, 759. This was especially true because other readily available information (i.e., the ingredients panel) clearly disclosed all of the ingredients, and a reasonable consumer would use this additional information to clarify the meaning of the phrase "no refined sugars." *Id.*

Here, as in *Ibarrola*, no reasonable consumer could conclude that "Grated Parmesan Cheese" contains no additives when the term "Grated Parmesan Cheese" is defined by FDA to include non-cheese ingredients *and* the ingredients panel expressly disclosed the addition of cellulose for its anticaking effect. Because the totality of information disclosed and available to the consumer dispelled any tendency to deceive, there is no deception and, as a result, Plaintiffs have no claim. *See Bober*, 246 F.3d at 938.

### B.  COUNT II (VIOLATION OF ADTPA) FAILS TO STATE A CLAIM.

Plaintiff Wills asserts a claim under the Alabama Deceptive Trade Practices Act ("ADTPA"), Ala. Code § 8-19-1, *et seq*., which makes "deceptive acts or practices in the conduct of any trade or commerce" unlawful. Ala. Code. § 8-19-5 (2016). (Compl. ¶¶ 38–39.) To be held liable under the ADTPA, a person must commit one or more "acts or practices declared unlawful" and cause monetary damage to a consumer. Ala. Code. § 8-19-10 (2016).

### 1.  The Label Statements Are Not Actionable Under ADTPA.

Similar to ICFA, ADTPA provides: "nor shall good faith compliance with any federal or state law or regulation be a violation of this chapter with respect to that specific act of compliance." Ala. Code § 8-19-4(c) (2016). While there is no Alabama case law analyzing this particular subsection, the Eleventh Circuit affirmed dismissal in a similar case under the analogous "safe harbor" provision in Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), finding that "the FDUTPA does not apply to acts specifically permitted by federal law." *Kuenzig v. Hormel Foods Corp.*, 505 F. App'x 937, 939 (11th Cir. 2013). For the same reason that Plaintiffs' Illinois ICFA claim should be dismissed, so too should Wills' ADTPA claim. (*See supra*, section V.A.)

2. **Wills' ADTPA Claim Fails Because He Did Not Give Pre-Suit Notice.**

ADTPA requires that, "[a]t least 15 days prior to the filing of any action under this section, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be communicated to any prospective respondent." Ala. Code § 8–19–10(e) (2016). Wills has not alleged (and did not provide) that notice. Therefore, Wills' ADTPA claim must be dismissed. *Deerman v. Fed. Home Loan Mortg. Corp.*, 955 F. Supp. 1393, 1400 (N.D. Ala. 1997) ("The Deermans' failure to reasonably describe the unfair or deceptive practice in a timely letter is fatal to their claim under Alabama law."), *aff'd*, 140 F.3d 1043 (11th Cir. 1998).

3. **Wills Has Failed to Plead a Claim Under ADTPA.**

Wills alleges that Defendants violated the ADTPA by "representing and failing to disclose material facts on the Products' labeling and associated advertising, as described above." (Compl. ¶ 42.) Wills does not provide any detail about the "associated advertising," and it is clear from the Complaint as a whole that he is referring only to the product labels. For the reasons described above, Supervalu's labels do not "represent" or "fail to disclose material facts." They are accurate and complete, not deceptive or misleading. Wills' ADTPA claim further fails because Wills has failed to allege that any reasonable consumer would be misled by Supervalu's FDA-compliant labels. *See Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 755 (7th Cir. 2014) (applying "reasonable consumer" test in class action lawsuit alleging violation of Alabama consumer protection statute).

## VI. BREACH OF WARRANTY CLAIMS (COUNTS III & IV).

Plaintiffs allege breaches of express and implied warranties under Illinois and Alabama statutes codifying the Uniform Commercial Code ("UCC"). Plaintiffs' warranty claims must be dismissed for failure to provide pre-suit notice, lack of privity, and failure to plead a warranty that was breached by Defendants.

A.    **Plaintiffs' Failure to Provide Pre-Suit Notice Bars Plaintiffs' Breach of Warranty Claims.**

The claims in Count III (Breach of Express Warranty) and Count V (Breach of Implied Warranty) are barred by Plaintiffs' failure to provide pre-suit notice to Defendants.  The UCC, as adopted in both Illinois and Alabama, requires pre-suit notice.  810 Ill. Comp. Stat. 5/2-607(3)(A) (2016); Ala. Code. § 7-2-607 (2016); *see Ibarrola*, 83 F. Supp. 3d at 760 (dismissing claim because of plaintiff's failure to give pre-suit notice); *Hobbs v. Gen. Motors Corp.*, 134 F. Supp. 2d 1277, 1283 (M.D. Ala. 2001) ("Under Alabama law, notice of breach is a condition precedent to bringing a breach of warranty action, which must be affirmatively pleaded in the complaint."); *Perona v. Volkswagen of Am., Inc.*, 684 N.E.2d 859, 864 (Ill. App. Ct. 1997) (holding that failure to provide pre-suit notice is fatal to warranty claims in Illinois).

"The purpose of the notice requirement is to encourage parties to resolve the dispute short of litigation." *Ibarrola,* 83 F. Supp. 3d at 760.  "The drafters of the U.C.C. contemplated that, by adding a notice requirement, adverse parties would . . . have an incentive to attempt settlement of breach of warranty claims prior to commencement of a suit." *Reyes v. McDonald's Corp.*, No. 06 C 1604, 06 C 2813, 2006 WL 3253579, at *3 (N.D. Ill. Nov. 8, 2006); *see also Hobbs*, 134 F. Supp. 2d at 1283–84 ("The Alabama Supreme Court stated that there are three justifications for the notice requirement: to prevent stale claims, to allow the seller to marshal evidence for a defense, and to allow the seller to correct the defect or mitigate damages.").  Notice must be provided in advance of litigation, not merely in advance of asserting a warranty claim.  *See Ibarrola*, 83 F. Supp. 3d at 760.  The failure to provide pre-litigation notice requires dismissal of warranty claims with prejudice.  *Jones v. Apple, Inc.*, No. 15-CV-249-NJR-SCW, 2016 WL 4429801, at * 4 (S.D. Ill. Aug. 22, 2016) (dismissing warranty claims with prejudice under UCC for failure to allege and provide pre-litigation notice of breach); *Miller v. Hypoguard USA, Inc.*,

18

No. 05-CV-0186-DRH, 2005 WL 3481542, at *2 (S.D. Ill. Dec. 20, 2005) (dismissing warranty claims with prejudice under Illinois UCC and MMWA); *Ibarrola*, 83 F. Supp. 3d at 761 ("At this point, it would be impossible for [the plaintiff] to provide pre-litigation notice of the breach of warranty."); *Parker v. Bell Ford, Inc.*, 425 So.2d 1101, 1102 (Ala. 1983) (stating that notice, as required by Ala. Code § 7-2-607, is "a condition precedent to recovery"); *Jewell v. Seaboard Indus., Inc.*, 667 So.2d 653, 661 (Ala. 1995) (affirming summary judgment ruling because plaintiff did not give sufficient notice of a breach of an implied warranty).

Plaintiffs have not pled, and cannot accurately plead, that they had *any* pre-suit communication with any Defendant, let alone communications that could satisfy the pre-suit notice requirement. It is too late now to effectively provide that notice. *See Hobbs*, 134 F. Supp. 2d at 1283 (notice "must be affirmatively pleaded in the complaint."). Counts III (Breach of Express Warranty) and V (Breach of Implied Warranty) of the Complaint should be dismissed with prejudice.

### B. Plaintiffs' Express Warranty Claims Should Be Dismissed Because No Express Warranties Were Breached.

Plaintiffs allege the existence of an express warranty because "Defendants' 100% claims are affirmations of fact and descriptions of the Products, including that the container in which the Product was sold consisted of only cheese," and because "[t]hese affirmations of fact and descriptions formed the basis of the bargain. . . creating an express warranty" under the UCC. (Compl. ¶ 52.) *See* 810 Ill. Comp. Stat. 5/2-313(1) (2016); Ala. Code § 7-2-313 (2016). Those claims fail because there is no warranty that has been breached by Defendants.

The product labels at issue do not describe, promise or affirm that there is no cellulose or other ingredients in Supervalu's Essential Everyday® grated cheese products. In fact, just the opposite is true—the product label discloses the ingredients in exactly the form and format

required by FDA, and cellulose is a listed ingredient. Plaintiffs cannot complain that the label formed an express warranty without taking into consideration the *entire label*, and when the entire label is considered, Plaintiffs' express warranty claim unravels.

Express warranties are treated like any other written form of contract and are interpreted according to general contract principles. *See Ex parte Miller*, 693 So.2d 1372, 1376 (Ala. 1997) (citing *Williston on Sales* § 15–9 (4th ed. 1974)); *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 379 F. Supp. 2d 968, 983–84 (N.D. Ill. 2005) ("Express warranties are contractual in nature."). Under canons of contract construction, intent is to be discerned from the entire contract—or in this case, the entire label. *Homes of Legend, Inc. v. McCollough*, 776 So.2d 741, 746 (Ala. 2000). The court must review the entire warranty and construe it in a way that will give meaning to all of its terms. *Id.* ("[W]here there is a choice between a valid construction and an invalid construction the court has a duty to accept the construction that will uphold, rather than destroy, the contract and that will give effect and meaning to all of its terms."); *see also INEOS Polymers Inc. v. BASF Catalysts*, 553 F.3d 491, 500 (7th Cir. 2009) (citing "the principle of contract interpretation that 'meaning and effect must be given to every part of the contract including all its terms and provisions, so no part is rendered meaningless or surplusage unless absolutely necessary'" (quoting *Coles-Moultrie Elec. Co-op v. City of Sullivan*, 709 N.E.2d 249, 253 (Ill. App. Ct. 1999)). In addition, both Illinois and Alabama law address the "[c]umulation and conflict of warranties express or implied," Ala. Code. § 7-2-317 (2016); 810 Ill. Comp. Stat. 5/2-317 (2016), and provide that warranties "shall be construed as consistent with each other and as cumulative," and "technical specifications displace an inconsistent sample or model or general language of description." *Id.*

Plaintiffs cannot ignore the express and unambiguous statement on the labels that the grated cheese products included cellulose as an anticaking agent and claim a conflicting subjective

interpretation or expectation that the products contained "all cheese." (Compl. ¶ 19.) *See Jewell*, 667 So. at 695 (affirming summary judgment and finding that because mobile home sold to plaintiffs was in fact "new" pursuant to legal standards, defendant did not breach an express warranty that the mobile home was "new" despite fact that it failed to meet plaintiffs' reasonable expectations). Put another way, because the label discloses the presence of cellulose, there can be no breach of warranty on the premise that the labels warranted an absence of cellulose. *Chin v. Gen. Mills, Inc.*, No. 12–2150 (MJD/TNL), 2013 WL 2420455, at *7 (D. Minn. June 3, 2013) (finding that "100% Natural" claim on label "cannot be viewed in isolation and must be read in the context of the entire package, including the ingredient panel"); *see generally Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015) (dismissing deception claims as implausible where ingredient list disclosed predominance of ingredients); *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995) (finding sweepstakes mailer must be read in its entirety; it would unreasonable to review only information in large type while ignoring qualifying information in smaller type on same document). Accordingly, Plaintiffs' express warranty claim should be dismissed with prejudice.

### C.   Plaintiffs' Warranty Claims Must Be Dismissed for Lack of Privity.

Plaintiffs' Count III (Breach of Express Warranty) and Count V (Breach of Implied Warranty) claims must be dismissed because Plaintiffs lack vertical privity of contract with Defendants. To establish a claim for economic damages for the breach of an implied warranty under the UCC as adopted in Illinois, a plaintiff must plead that he was in vertical privity of contract with the defendant. *Jensen v. Bayer AG*, 862 N.E.2d 1091, 1099 (Ill. 2007) (dismissing breach of warranty claim made under the Illinois version of the UCC because plaintiff lacked privity with defendant) (citing *Rothe v. Maloney Cadillac, Inc.*, 518 N.E.2d 1028, 1029–30 (Ill. 1988); and then citing *Szajna v. General Motors Corp.*, 503 N.E.2d 760, 767–68 (Ill. 1986)). That

means a buyer of goods has a potential cause of action for breach of warranty only against his immediate seller. *Id.* (citing *Mekertichian v. Mercedes–Benz U.S.A., L.L.C.*, 807 N.E.2d 1165, 1168 (Ill. App. Ct. 2004)); *see also Voelker v. Porsche Cars N. Am.*, 353 F.3d 516, 525 (7th Cir 2003). Establishing privity with a subsidiary of a party is insufficient to sustain a breach of warranty claim. *Caterpillar, Inc. v. Usinor Industeel*, 393 F. Supp. 2d 659, 677 (N.D. Ill. 2005).[7]

Similarly, under Alabama law, "privity of contract is a prerequisite to recover economic damages for breach of implied warranty." *State Farm Fire and Cas. Co. v. J.B. Plastics, Inc.*, 505 So.2d 1223, 1227 (Ala. 1987) ("While Alabama's version of U.C.C. § 2-318 has abolished privity requirements in actions involving injuries to natural persons, the privity requirements still remains in cases of strictly economic injury.").

Plaintiffs do not allege they purchased Essential Everyday® 100% Grated Parmesan Cheese directly from any named Defendant. Specifically, Plaintiffs Bell and Lang allege that they purchased products from a "local Jewel Osco retail store" and "several times from various Jewel Osco retail store locations." (Compl. ¶¶ 7–8.) And while they allege generally that Albertsons "operates" multiple stores in several states—some under the Jewel-Osco brand—they do not allege Bell and Lang purchased Essential Everyday® 100% Grated Parmesan Cheese *from Albertsons* (or from Supervalu). Plaintiff Wills alleges he purchased at least six containers of Essential Everyday® 100% Grated Parmesan Cheese "at various stores in Alabama over the past four years," but he doesn't identify any specific retail stores from which he purchased the product. (*Id.* ¶ 9.)

---

[7] "[T]he Supreme Court of Illinois has yet to extend express warranties to non-privity plaintiffs, but instead highlights the 'comprehensive schedule of remedies' under Illinois' UCC." *Keith v. Ferring Pharms., Inc.*, No. 15-C-10381, 2016 WL 5391224 (N.D. Ill. Sept. 27, 2016) (citing *Collins Co. v. Carboline Co.*, 532 N.E.2d 834, 837 (Ill. 1988); and then citing *Frank v. Edward Hines Lumber Co.*, 761 N.E.2d 1257, 1267-68 (Ill. App. Ct. 2001)).

Thus, though Plaintiffs all allege that they purchased products from retail stores and plead only economic losses, none of them alleges a purchase directly from Defendants. Accordingly, Plaintiffs Bell and Lang's express warranty claims and Plaintiff Wills' implied warranty claims all fail for lack of privity. *Rampey v. Novartis Cons. Health, Inc.*, 867 So.2d 1079, 1089 (Ala. 2003) (holding no privity existed because the defendant was a manufacturer and not the seller of the product and plaintiff could not maintain a claim for breach of implied warranties for economic injury against defendant); *Caterpillar, Inc.*, 393 F. Supp. 2d at 677 (dismissing breach claim when the plaintiff's subsidiary had privity with the defendant but plaintiff himself lacked privity).

## VII.  UNJUST ENRICHMENT.

### A.  Bell and Lang's Unjust Enrichment Claims Fail Because the Related Claims Fail as a Matter of Law.

Plaintiffs' unjust enrichment claims are based on the same alleged wrongdoing as pled in Count I (Violation of ICFA), Count II (Violation of ADTPA), Count III (Breach of Express Warranty), and Count V (Breach of Implied Warranty) of the Complaint. Because Counts I, II, III, and V must be dismissed for the reasons discussed above, Plaintiffs' Count IV unjust enrichment claim also should be dismissed with prejudice.

In attempting to reconcile apparently divergent case law concerning whether or not unjust enrichment can constitute an independent claim under Illinois law, the Seventh Circuit stated:

> Unjust enrichment is a common-law theory of recovery or restitution that arises when the defendant is retaining a benefit to the plaintiff's detriment, and this retention is unjust. What makes the retention of the benefit unjust is often due to some improper conduct by the defendant. And usually this improper conduct will form the basis of another claim against the defendant in tort, contract, or statute. So, *if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim – and, of course, unjust enrichment will stand or fall with the related claim*.

*Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) (emphasis added) (citing *Ass'n Benefit Servs. v. Caremark Rx, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007) ("[W]here the plaintiff's claim of unjust

enrichment is predicated on the same allegations of fraudulent conduct that support an independent claim of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well."), *reh'g denied* (Nov. 15, 2011); *see also Landlock Natural Paving, Inc. v. Desin L.P.*, No. 12 C 2893, 2013 WL 4854361 (N.D. Ill. Sept. 11, 2013) (Feinerman, J.) (dismissing unjust enrichment claim because it was tied to dismissed statutory and common law fraud claims).

Plaintiffs' theory of unjust enrichment is undeniably based on the conduct which Plaintiffs deemed unfair under ICFA and ADTPA, and which provides the basis for Plaintiffs' warranty claims. (*See* Compl. ¶ 60) ("Defendants' unlawful and wrongful acts, as alleged above [in Counts I through III alleging violations of the ICFA, ADTPA, and express warranty provisions], enabled Defendants to unlawfully receive monies they would not have otherwise obtained."). Plaintiffs' unjust enrichment claim rises and falls with those related claims. Because Plaintiffs' ICFA, ADTPA, and warranty claims fail as a matter of law and must be dismissed, Plaintiffs' unjust enrichment claim should also be dismissed with prejudice. *See Cleary*, 656 F.3d at 517.

### B.     Wills' Unjust Enrichment Claims Fail Under Alabama Law.

Because Wills seeks redress for Defendants' alleged wrongs under Plaintiffs' claims for breach of warranty and under the ADTPA, both of which provide adequate remedies at law, his unjust enrichment claim must be dismissed. "In Alabama, the doctrine of unjust enrichment is an equitable remedy which issues only where there is no adequate remedy at law." *Wynn v. Davison Design & Dev., Inc*., No. 09–0790–CG–C, 2010 WL 891905, at \*9 (S.D. Ala. Mar. 8, 2010); *see also Ponder v. Lake Forest Prop. Owners Ass'n*, No. 2130790, 2015 WL 3935490, at \*5 (Ala. Civ. App. June 26, 2015) (holding that plaintiff could not recover for unjust enrichment sounding in tort because the underlying conspiracy claim was properly dismissed on summary judgment). Here, Wills has an adequate remedy at law if he succeeds on any of his other claims. Therefore, his unjust enrichment claims fail. *See Pearson's Pharmacy, Inc. v. Express Scripts, Inc.*, 505 F.

Supp. 2d 1272, 1278 (M.D. Ala. 2007) (dismissing unjust enrichment claims based on fraud where "plaintiffs have an adequate remedy at law for damages under a theory of breach of contract"); *see also White v. Microsoft Corp.*, 454 F. Supp. 2d 1118, 1132 (S.D. Ala. 2006) (dismissing plaintiffs unjust enrichment claim when "an express contract (the Warranty) governs the parties' relationship and covers the precise issues as to which [plaintiff] is asking the court to imply a contract to prevent wrongful retention of funds"); *Holmes v. Behr Process Corp.*, No. 2:15-CV-0454-WMA, 2015 WL 7252662, at *3 (N.D. Ala. Nov. 17, 2015) ("[T]he plain text of the ADTPA specifically and unambiguously makes, as an essential element of the claim, the statutory remedy exclusive of other remedies available under Alabama law.").

## CONCLUSION

Plaintiffs' complaint should be dismissed in its entirety and with prejudice.

Dated:  January 5, 2017                         Respectfully submitted,

                                                /s/ Gary Hansen
                                                Gary Hansen (admitted *pro hac vice*)
                                                Heidi A.O. Fisher (admitted *pro hac vice*)
                                                FOX ROTHSCHILD LLP
                                                222 South Ninth Street - Suite 2000
                                                Minneapolis, MN  55402-3338
                                                Telephone:  612.607.7000
                                                Facsimile:  612.607.7100
                                                Email: ghansen@foxrothschild.com
                                                        hfisher@foxrothschild.com

                                                and

Joseph E. Collins
FOX ROTHSCHILD LLP
353 N. Clark St., Suite 3650
Chicago, Illinois 60654
Telephone: 312.517.9227
Facsimile:  312.517.9201
Email:  jcollins@foxrothschild.com

*Counsel for Defendants Albertsons Companies, Inc., Albertsons LLC, and Supervalu, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was filed on January 5, 2017, with the Clerk of the Court by using the CM/ECF system which will send a notice of filing to all counsel of record.

/s/ Heidi A.O. Fisher
Heidi A.O. Fisher