**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: 100% GRATED PARMESAN CHEESE MARKETING AND SALES PRACTICES LITIGATION<br><br>*This Document Relates to All Cases on The Kraft Heinz Company Track* | Case No. 1:16-cv-05802<br>MDL No. 2705<br><br>Judge Gary S. Feinerman |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT
AGAINST THE KRAFT HEINZ COMPANY**

**JENNER & BLOCK LLP**

Dean N. Panos (Ill. Bar No. 6203600)
dpanos@jenner.com
353 N. Clark Street
Chicago, IL 60654
Tel.: (312) 222-9350

*-and-*

Kenneth K. Lee (admitted *pro hac vice*)
klee@jenner.com
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
Tel.: (213) 239-5100

*Attorneys for Defendant*
The Kraft Heinz Company

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................. 1

BACKGROUND .................................................................................................. 3

I.     The FDA's Standard of Identity Defining "Grated Cheese" Includes Cellulose
Powder and Potassium Sorbate Ingredients .................................................. 3

II.    Plaintiffs Sue Kraft Heinz for Using Ingredients Allowed by the FDA ......................... 5

ARGUMENT ....................................................................................................... 6

I.     Plaintiffs Have Not Plausibly Shown That the "100% Grated Parmesan" Label
Is Likely to Deceive a Reasonable Consumer ............................................... 7

II.    Plaintiffs' Claims Are Barred By the Safe Harbor Doctrine Because the FDA
Already Approved Kraft Heinz's Use of the Term "100% Parmesan." ...................... 11

III.   Plaintiffs' Claims Are Preempted By Federal Law Because FDA Regulations
Expressly Allow the Use of Cellulose Powder and Potassium Sorbate ...................... 14

IV.   Plaintiffs Lack Standing for Injunctive Relief Because They Face No Future
Harm Now That They Know of All the Ingredients in Kraft Parmesan Cheese .......... 17

V.    Plaintiffs' Unjust Enrichment Claims Must Be Dismissed .......................................... 18

       A.    This Court should dismiss or strike Plaintiffs' nationwide unjust
enrichment claim ........................................................................................ 19

       B.    Plaintiffs' unjust enrichment claims must be dismissed under many of the
state laws ................................................................................................... 19

VI.   Plaintiffs' Various Breach of Warranty Claims Must Be Dismissed ........................... 21

       A.    Plaintiffs cannot maintain a breach of express warranty claim on behalf
of a nationwide class. ................................................................................. 21

       B.    Plaintiffs cannot maintain a breach of implied warranty of
merchantability claim on behalf of a multi-state class .................................... 23

       C.    Plaintiffs' breach of express warranty claims fail for lack of privity. .............. 23

       D.    Plaintiffs have failed to allege a breach of the implied warranty of
merchantability. .......................................................................................... 24

CONCLUSION .................................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aliano v. Fifth Generation, Inc.*,
No. 14-10086, 2015 WL 5675423 (N.D. Ill. Sept. 24, 2015) ........................................................14

*Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*,
390 F. Supp. 2d 1170 (M.D. Fla. 2005)........................................................20

*Arena Dev. Grp., LLC v. Naegele Commc'ns, Inc.*,
No. 06-2806, 2008 WL 1924179 (D. Minn. April 29, 2008) ........................................................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................2, 6, 10

*B. B. P. Ass'n, Inc. v. Cessna Aircraft Co.*,
91 Idaho 259 (1966)........................................................22

*Baldwin v. Star Sci., Inc.*,
78 F. Supp. 3d 724 (N.D. Ill. 2015) ........................................................24

*Barre v. Gulf Shores Turf Supply, Inc.*,
547 So. 2d 503 (Ala. 1989)........................................................22, 24

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*,
448 F.3d 573 (2d Cir. 2006)........................................................20

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009) ........................................................24

*Bober v. Glaxo Wellcome PLC*,
246 F.3d 934 (7th Cir. 2001) ........................................................7, 9, 11

*Bohac v. General Mills, Inc.*,
No. 12-05280, 2014 WL 1266848 (N.D. Cal. Mar. 26, 2014) ........................................................24

*Bohn v. Boiron, Inc.*,
No. 11-08704, 2013 WL 3975126 (N.D. Ill. Aug. 1, 2013) ........................................................18

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
761 F.3d 732 (7th Cir. 2014) ........................................................18

*Chiasson v. Winnebago Indus.*,
No. 01-74809, 2002 WL 32828652 (E.D. Mich. May 16, 2002) ........................................................23

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*,
70 N.Y.2d 382 (1987)........................................................20

*Cleary v. Philip Morris, Inc.*,
    656 F.3d 511 (7th Cir. 2011) ...................................................................................21

*Cole v. Gen. Motors Corp.*,
    484 F.3d 717 (5th Cir. 2007) ...................................................................................23

*Curtis v. Philip Morris Cos..*,
    No. 01-018042, 2004 WL 2776228 (Minn. Dist. Ct. Nov. 29, 2004) ............................7

*Cytyc Corp. v. Neuromedical Sys., Inc.*,
    12 F. Supp. 2d 296 (S.D.N.Y. 1998).........................................................................12

*Democratic Republic of Congo v. Air Capital Grp., LLC*,
    614 F. App'x 460 (11th Cir. 2015) ...............................................................................7

*Dix v. Am. Bankers Life Assur. Co. of Fla.*,
    429 Mich. 410 (1987) ...................................................................................................7

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) ........................................................................................7

*Engurasoff v. Coca-Cola Co.*,
    No. 13-03990, 2014 WL 4145409 (N.D. Cal. Aug. 21, 2014) ....................................25

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013).........................................................................................7

*First Wis. Trust Co. v. Schroud*,
    916 F.2d 394 (7th Cir.1990) ...............................................................................2, 8, 19

*Florida v. Tenet Healthcare Corp.*,
    420 F. Supp. 2d 1288 (S.D. Fla. 2005) .....................................................................12

*Fonseca v. Goya Foods Inc.*,
    No. 16-02559, 2016 WL 4698942 (N.D. Cal. Sept. 8, 2016) .....................................20

*Fraiser v. Stanley Black & Decker, Inc.*,
    109 F. Supp. 3d 498 (D. Conn. 2015)........................................................................24

*Fredrick v. Simmons Airlines, Inc.*,
    144 F.3d 500 (7th Cir. 1998) ......................................................................................19

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) .......................................................................................7, 8

*Freydl v. Meringolo*,
    No. 09-7196, 2013 WL 1285286 (S.D.N.Y. Mar. 29, 2013)......................................19

*Galanis v. Starbucks Corp.*,
    No. 16-4705, 2016 WL 6037962 (N.D. Ill. Oct. 14, 2016) ..........................................7

Garrison v. Whole Foods Mkt. Grp.,
No. 13-05222, 2014 WL 2451290 (N.D. Cal. June 2, 2014) ..................................18

Gershman v. Bayer HealthCare LLC,
No. 14-05332, 2015 WL 2170214 (N.D. Cal. May 8, 2015) ..................................18

Gillson v. City of Sparks,
No. 06-00325, 2007 WL 839252 (D. Nev. Mar. 19, 2007) ..................................23

Gold'n Plump Poultry, Inc. v. Simmons Eng'g Co.,
805 F.2d 1312 (8th Cir. 1986) ..................................22

Gorman v. Am. Honda Motor Co.,
302 Mich. App. 113 (2013) ..................................22

Gray v. Abbott Labs., Inc.,
No. 10-6377, 2011 WL 3022274 (N.D. Ill. July 22, 2011) ..................................23

Hauk v. JP Morgan Chase Bank USA,
552 F.3d 1114 (9th Cir. 2009) ..................................11

Henderson v. Gruma Corp.,
No. 10-04173, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ..................................11

Hillcrest Country Club v. N.D. Judds Co.,
236 Neb. 233 (1990) ..................................22

Hoyte v. Yum! Brands, Inc.,
489 F. Supp. 2d 24 (D.D.C. 2007) ..................................24

Ibarrola v. Kind, LLC,
83 F. Supp. 3d 751 (N.D. Ill. 2015) ..................................9, 10

In re Fluidmaster, Inc.,
149 F. Supp. 3d 940 (N.D. Ill. 2016) ..................................17

In re Gen. Motors Corp. Dex-Cool Prods. Liab. Litig.,
241 F.R.D. 305 (S.D. Ill. 2007) ..................................21

In re Pepsico, Inc., Bottled Water Mktg. & Sales Practices Litig.,
588 F. Supp. 2d 527 (S.D.N.Y. 2008) ..................................15, 16

In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.,
No. 05-2623, 2006 WL 3754823 (N.D. Ill. Dec. 18, 2006) ..................................19

Kuenzig v. Hormel Foods Corp.,
505 Fed. Appx. 937 (11th Cir. 2013) ..................................13

Licul v. Volkswagen Grp. of Am., Inc.,
No. 13-61686, 2013 WL 6328734 (S.D. Fla. Dec. 5, 2013) ..................................20

iv

*Lombardi v. Cal. Packing Sales Co.*,
　　83 R.I. 51 (1955) ...................................................................................................23

*Manchouck v. Mondelēz Int'l Inc.*,
　　No. 13-02148, 2013 WL 5400285 (N.D. Cal. Sept. 26, 2013), *aff'd*, 603 F. App'x
　　632 (9th Cir. 2015) ...............................................................................................11

*Martin v. Living Essentials, LLC*,
　　160 F. Supp. 3d 1042 (N.D. Ill. 2016), *aff'd*, 653 F. App'x 482 (7th Cir. 2016) ...........................6

*McKinnis v. Kellogg USA*,
　　No. 07-2611, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) ..................................................10, 11

*McKinniss v. Sunny Delight Beverages Co.*,
　　No. 07-02034, 2007 WL 4766525 (C.D. Cal. Sept. 4, 2007) .......................................................9

*Mednick v. Precor, Inc.*,
　　No. 14-3624, 2016 WL 5390955 (N.D. Ill. Sept. 27, 2016) ......................................................18

*Mills v. Giant of Md., LLC*,
　　441 F. Supp. 2d 104 (D.D.C. 2006) ...............................................................................14

*Montgomery v. Kraft Foods Glob., Inc.*,
　　No. 12-00149, 2012 WL 6084167 (W.D. Mich. Dec. 6, 2012), *aff'd*, 822 F.3d 304
　　(6th Cir. 2016) .................................................................................................24

*Morrow v. New Moon Homes, Inc.*,
　　548 P.2d 279 (Alaska 1976) ......................................................................................23

*Muehlbauer v. Gen. Motors Corp.*,
　　431 F. Supp. 2d 847 (N.D. Ill. 2006) ...........................................................................22

*Nemphos v. Nestle Waters N. Am., Inc.*,
　　775 F.3d 616 (4th Cir. 2015) .....................................................................................3

*Norcold, Inc. v. Gateway Supply Co.*,
　　154 Ohio App. 3d 594 (2003) .....................................................................................22

*O'Shea v. Littleton*,
　　414 U.S. 488 (1974) .............................................................................................17

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
　　85 N.Y.2d 20 (1995) ..............................................................................................7

*Pardini v. Unilever U.S., Inc.*,
　　961 F. Supp. 2d 1048 (N.D. Cal. 2013) ..........................................................................14

*Patty Precision Prod. Co. v. Brown & Sharpe Mfg. Co.*,
　　846 F.2d 1247 (10th Cir. 1988) .................................................................................23

v

*Pearson's Pharmacy, Inc. v. Express Scripts, Inc.*,
  505 F. Supp. 2d 1272 (M.D. Ala. 2007) ...................................................20

*Peviani v. Hostess Brands, Inc.*,
  750 F. Supp. 2d 1111 (C.D. Cal. 2010) ...................................................15

*Prohias v. Pfizer, Inc.*,
  490 F. Supp. 2d 1228 (S.D. Fla. 2007) ..........................................12, 13, 14

*Red v. Kraft*,
  No. 10-1028, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012), *adopted as final order*,
  2012 WL 5502359 (C.D. Cal. Oct. 26, 2012) .............................................11

*Reid v. Johnson & Johnson*,
  780 F.3d 952 (9th Cir. 2015) ..................................................................8

*Rikos v. Procter & Gamble Co.*,
  No. 11-226, 2012 WL 641946 (S.D. Ohio Feb. 28, 2012) ...............................21

*Romero v. Flowers Bakeries, LLC*,
  No. 14-5189, 2016 WL 469370 (N.D. Cal. Feb. 8, 2016) ...........................16, 17

*Rooney v. Cumberland Packing Corp.*,
  No. 12-0033, 2012 WL 1512106 (S.D. Cal. Apr. 16, 2012)................................7

*Scherr v. Marriott Int'l, Inc.*,
  703 F.3d 1069 (7th Cir. 2013) ...............................................................17

*Sensible Foods, LLC v. World Gourmet, Inc.*,
  No. 11-2819, 2012 WL 566304 (N.D. Cal. Feb. 21, 2012) ..............................11

*Sessa v. Riegle*,
  427 F. Supp. 760 (E.D. Pa. 1977) ...........................................................22

*Smith v. Allmax Nutrition, Inc.*,
  No. 15-00744, 2015 WL 9434768 (E.D. Cal. Dec. 24, 2015) ......................22, 23

*Smith v. Glenmark Generics, Inc., USA*,
  No. 315898, 2014 WL 4087968 (Mich. Ct. App. Aug. 19, 2014)......................20

*Smith v. Wells Fargo Bank, N.A.*,
  158 F. Supp. 3d 91 (D. Conn. 2016)..........................................................7

*Spector v. Mondelēz Int'l, Inc.*,
  178 F. Supp. 3d 657 (N.D. Ill. 2016) ....................................................6, 21

*Speed Fastners, Inc. v. Newsom*,
  382 F.2d 395 (10th Cir. 1967) ...............................................................22

*Sportmart, Inc. v. Spirit Mfg., Inc.*,
  No. 97-7120, 1999 WL 350662 (N.D. Ill. May 17, 1999)...............................24

vi

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
   No. 14-3826, 2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) ........................9

*Storey v. Attends Healthcare Prods., Inc.*,
   No. 15-13577, 2016 WL 3125210 (E.D. Mich. June 3, 2016) .....................20

*Stuart v. Cadbury Adams USA, LLC*,
   458 F. App'x 689 (9th Cir. 2011) ................................................6

*Suchanek v. Sturm Foods, Inc.*,
   764 F.3d 750 (7th Cir. 2014) ...................................................7

*T.W.M. v. Am. Med. Sys., Inc.*,
   886 F. Supp. 842 (N.D. Fla. 1995)............................................24

*TD Props., LLC v. VP Bldgs., Inc.*,
   602 F. Supp. 2d 351 (D. Conn. 2009) ........................................23

*Tomasino v. Estee Lauder Cos., Inc.*,
   44 F. Supp. 3d 251 (E.D.N.Y. 2014) .........................................18

*Trazo v. Nestlé USA, Inc.*,
   No. 12-2272, 2013 WL 4083218 (N.D. Cal. Aug. 9, 2013) ...................13

*Trujillo v. Apple Computer, Inc.*,
   581 F. Supp. 2d 935 (N.D. Ill. 2008) .........................................9

*Turek v. Gen. Mills, Inc.*,
   662 F.3d 423 (7th Cir. 2011) .................................................15

*Tylka v. Gerber Prod. Co.*,
   No. 96-1647, 1999 WL 495126 (N.D. Ill. July 1, 1999) .......................7

*U.S. Roofing, Inc. v. Credit All. Corp.*,
   228 Cal. App. 3d 1431 (1991) .............................................12, 23

*Unified School Dist. No. 500 v. U.S. Gypsum Co.*,
   788 F. Supp. 1173 (D. Kan. 1992)............................................22

*United States v. Bame*,
   721 F.3d 1025 (8th Cir. 2013) ...............................................20

*United States v. United Techs. Corp.*,
   51 F. Supp. 2d 167 (D. Conn. 1999)..........................................20

*Veal v. Citrus World, Inc.*,
   No. 12-801, 2013 WL 120761 (N.D. Ala. Jan. 8, 2013)......................10, 16

*Viggiano v. Hansen Natural Corp.*,
   944 F. Supp. 2d 877 (C.D. Cal. 2013) .......................................24

*Weng v. Allison*,
  287 Ill. App. 3d 535 (1997) ............................................................................................22

*Williams Foods, Inc. v. Eastman Chem. Co.*,
  No. 99-16680, 2001 WL 1298887 (D. Kan. Aug. 8, 2001) .............................................5

*Workman v. Plum, Inc.*,
  141 F. Supp. 3d 1032 (N.D. Cal. 2015) .......................................................................8, 9

*Wynn v. Davison Design & Dev., Inc.*,
  No. 09-0790, 2010 WL 891905 (S.D. Ala. Mar. 8, 2010) .............................................20

STATUTES

21 U.S.C. § 301 *et seq.* ..........................................................................................3, 14, 15, 16

OTHER AUTHORITIES

21 C.F.R. § 100.1(c)(4) .......................................................................................................15

21 C.F.R. § 101.22(j) .............................................................................................................5

21 C.F.R. § 133.146 .............................................................................................3, 4, 12, 15

21 C.F.R. § 133.165(d) ..........................................................................................................4

*Cheeses; Amendment of Standards of Identity to Permit Use of Antimycotics on the
  Exterior of Bulk Cheeses During Curing & Aging*, 54 Fed. Reg. 32050-01 (Aug. 4,
  1989) ..........................................................................................................................4, 15

*Grated Cheeses; Amendment of the Standard of Identity*, 51 Fed. Reg. 30210-01 (Aug.
  25, 1986) ...................................................................................................................4, 15

*Grated Parmesan Cheese Deviating From Identity Standard; Temporary Permit For
  Market Testing; Extension of Temporary Permit*, 65 Fed. Reg. 16743 (March 17,
  1999) .............................................................................................................................12

*Grated Parmesan Cheese Deviating From Identity Standard; Temporary Permit For
  Market Testing; Extension of Temporary Permit*, 65 Fed. Reg. 83040 (Dec. 29,
  2000) .............................................................................................................................12

H. R. Rep. No. 101–538, reprinted in 1990 U.S.C.C.A.N. 3336 ........................................14

## INTRODUCTION

This lawsuit is based solely on Plaintiffs' unreasonable reading of the name of Kraft Heinz's well-known product, "100% Grated Parmesan Cheese."

For decades, Kraft Heinz has made a popular line of grated cheese products found in the aisles of supermarkets across the country. These grated cheese products are packaged in an iconic green-colored plastic container that bears the name of the product, "100% Grated Parmesan Cheese." As is obvious from its name, Kraft Heinz uses only grated Parmesan cheese, and it does not blend the Parmesan cheese with other types of cheese (such as processed American cheese).[1] But like most packaged food products that remain on supermarket shelves for weeks, Kraft Heinz Grated Parmesan Cheese includes a small amount of other ingredients that help ensure that it remains shelf-stable and palatable. For example, it includes cellulose powder, an anticaking agent that prevents the grated Parmesan from clumping together and allows consumers to easily sprinkle the cheese on their food through the plastic container's window-flap opening. It also includes potassium sorbate, an antimycotic preservative that helps maintain flavor in the cheese product.

Plaintiffs suggest that cellulose powder and potassium sorbate should not be in 100% grated cheese. But the FDA's very *definition* of grated cheese under its standard of identity regulations explicitly *includes* anticaking agents (cellulose powder) and antimycotics (potassium sorbate). Notably, Plaintiffs do not argue that cellulose powder and potassium sorbate are unlawful or unhealthy. Nor could they. The FDA has issued regulations stating that both are "safe and suitable" ingredients that are expressly allowed in grated cheese. Plaintiffs also cannot argue that Kraft Heinz hid the fact that its Grated Parmesan Cheese contains these two ingredients: the only reason why Plaintiffs know that Kraft Heinz Grated Parmesan Cheese contains those ingredients is that the ingredient list on the packaging discloses them. Rather, Plaintiffs argue that they were misled by the term "100% Grated

---

[1] Kraft Heinz also makes other grated Parmesan cheese products that contain one or two additional identified cheeses, including the "100% Grated Parmesan and Romano Cheese" (which contains only those two identified types of cheese) and "100% Three Cheese Blend - Grated Parmesan, Romano, and Asiago Cheese Blend" (which contains only those three identified cheeses). The three products at issue in this case will be collectively referred to as "Kraft Heinz Grated Parmesan Cheese."

Parmesan Cheese" because they subjectively understood that term to mean that Kraft Heinz Grated Parmesan Cheese had only cheese and no other ingredients whatsoever.

This lawsuit should be dismissed for the following reasons:

First, the statement "100% Grated Parmesan Cheese" is factually true: Kraft Heinz Grated Parmesan Cheese contains only Parmesan cheese (and no other type of cheese). Plaintiffs' contorted and out-of-context reading of that term is implausible and does not pass muster under *Iqbal/Twombly*. Courts have repeatedly held that packaging must be reviewed "as a whole" at the pleading stage in determining whether it is deceptive. Kraft Heinz Grated Parmesan Cheese's ingredient list — which is familiar to anyone who has bought a food product before and can be easily located on the packaging — explicitly discloses that it contains cellulose powder and potassium sorbate, which are part of the FDA's definition of grated cheese. As courts in similar food labeling cases have noted, any ambiguity about the meaning of the term "100% Grated Parmesan Cheese" would be dispelled by examining the entire packaging, including the ingredient list. Doing so would make clear that the term "100%" refers to the fact that the products contain only Parmesan (and no other types of cheese), and does not mean that the product has no other non-cheese ingredients. Plaintiffs cannot fixate on one word — "100%" — and cast a blind eye to the rest of the packaging to claim they have been deceived.

Moreover, Plaintiffs' reading of the term defies common sense, which the U.S. Supreme Court in *Iqbal* said that courts must apply at the pleading stage to root out implausible cases. Common sense dictates that most packaged food products that remain on store shelves for an extended period of time routinely contain ingredients intended to make them shelf-stable and palatable. And Kraft Heinz Grated Parmesan Cheese is no different. It has other ingredients (than just cheese) that FDA expressly has approved for use in grated cheese as "safe and suitable" ingredients.

Second, Plaintiffs' lawsuit must be dismissed under the safe harbor doctrine, which shields a party from liability if its conduct was approved by the government. In notices published in the Federal Register in 1999 and again in 2000, the FDA stated that it had reviewed and approved the "100% Grated Parmesan Cheese" label, even though it knew that the product contains cellulose powder and potassium sorbate. In light of the FDA's imprimatur, Plaintiffs cannot invoke state law to upend the FDA's authority and impose liability on Kraft Heinz for relying on FDA's guidance.

Third, Plaintiffs' claims are preempted under the broad preemption provision of the Nutrition Labeling and Education Act ("NLEA"). The federal regulations for grated cheese expressly allow the use of anticaking agents (such as cellulose powder) and antimycotics (such as potassium sorbate), and these ingredients are part of the FDA standard of identity that defines "grated cheese." Notably, the FDA explicitly rejected a proposal banning the use of cellulose powder in grated cheese, stating that its use is "clearly advantageous to consumers." Plaintiffs' lawsuit contravenes these federal requirements and therefore is preempted.

Fourth, Plaintiffs lack Article III standing to seek injunctive relief. Now that they know that Kraft Heinz Grated Parmesan Cheese contains cellulose powder and potassium sorbate, they no longer face any reasonable threat of future harm. Numerous federal courts have dismissed claims for injunctive relief in food labeling cases based on lack of standing.

Finally, Plaintiffs attempt to apply an unidentified state's common law to assert claims for unjust enrichment and various breach-of-warranty claims on behalf of a nationwide class. But courts have struck similar nationwide class allegations in food labeling cases, ruling that a single state's law cannot be applied nationwide due to the differences in the laws among the fifty states. Plaintiffs alternatively seek to certify dozens of subclasses of various state laws, but that effort fares no better because their unjust enrichment and warranty claims lack merit even under individual state laws.

## BACKGROUND

### I.    The FDA's Standard of Identity Defining "Grated Cheese" Includes Cellulose Powder and Potassium Sorbate As Ingredients.

The FDA has established a standard of identity definition for "grated cheese," setting forth what ingredients may be included in it.[2] 21 C.F.R. § 133.146. Critically, the definition of "grated cheese"

---

[2] "A standard of identity specifies the defining characteristics of a given food." *Nemphos v. Nestle Waters N. Am., Inc.*, 775 F.3d 616, 621 (4th Cir. 2015) (citing 21 U.S.C. § 341). In addition to specifying those ingredients that manufacturers *must* place in a given food, a standard of identity "may also distinguish 'optional' ingredients that manufacturers can add to a food." *Id.* at 622 (citing 21 U.S.C. §§ 341 & 343(g)). In either case, the purpose of a standard of identity is to promote uniformity in food labeling and to insure "that individuals will encounter a label reflecting the food's actual contents — that consumers 'will get what they may reasonably expect to receive.'" *Id.* (quoting *Fed. Sec. Adm'r v. Quaker Oats Co.*, 318 U.S. 218, 232 (1943)).

under the FDA's standard of identity regulation includes "anticaking agents" (*e.g.*, cellulose powder) and "antimycotics" (*e.g.*, potassium sorbate). 21 C.F.R. § 133.146(c). The FDA expressly allows the use of anticaking agents (such as cellulose powder) because it prevents grated cheese from sticking together. The FDA has declared that the use of anticaking agents is often "necessary" because it is "clearly advantageous to consumers" and "promote[s] honesty and fair dealing in the interest of the consumers":

> The use of anticaking agents is necessary in some cases if industry is to provide consumers with grated cheese products having the characteristic flavor and texture of freshly grated cheese. For example, prior to the use of anticaking agents, grated cheeses were dried to reduce the moisture content. The drying process altered the flavor and texture of the cheese, thereby limiting many of the uses of grated cheese products. The use of safe and suitable anticaking agents avoids the limitation, presents no safety concerns, and is clearly advantageous to consumers. The agency, therefore, concludes that it is reasonable to provide for the optional use of safe and suitable anticaking agents in these products and that doing so will promote honesty and fair dealing in the interest of consumers.

*Grated Cheeses; Amendment of the Standard of Identity*, 51 Fed. Reg. 30210-01 (Aug. 25, 1986) (attached as Exhibit A to Kraft Heinz's Request for Judicial Notice (RJN)). Importantly, in revising the standard of identity to allow anticaking agents, the FDA explicitly *rejected* a public comment that argued "consumers expect grated cheeses to be pure and not to contain ingredients such as cellulose." *Id.* As explained above, the FDA decided that cellulose is not only permissible but also "clearly advantageous to consumers."

Three years later, the FDA rejected a similar comment expressing concern over the use of antimycotic agents in cheese manufacturing. *See Cheeses; Amendment of Standards of Identity to Permit Use of Antimycotics on the Exterior of Bulk Cheeses During Curing & Aging*, 54 Fed. Reg. 32050-01 (Aug. 4, 1989) (attached as Exhibit B to Kraft Heinz's RJN). Although a commenter "expressed concern about the expanded use of antimycotics," the FDA found that the "safe and suitable" use of antimycotics did not present health concerns. *Id.* at 32051. The FDA emphasized that because "label declaration is required for all optional ingredients, including antimycotics . . . consumers will have a means of avoiding those substances if they so choose." *Id.*; *see also* 21 C.F.R. § 133.165(d) (setting forth standard of identity for Parmesan cheese and listing antimycotics as an ingredient).

## II.    Plaintiffs Sue Kraft Heinz for Using Ingredients Allowed by the FDA.

Kraft Heinz produces several varieties of grated Parmesan cheese products, including "100% Grated Parmesan," a Parmesan-Romano blend, and a three-cheese variety with Parmesan, Romano, and Asiago cheeses.  These grated cheese products are shelf-stable and packaged in a convenient, easy-to-use plastic cylinder with a perforated lid:




*See* Decl. of Alexander M. Smith, ¶¶ 2-4.  As disclosed in the ingredient list, these products contain a small amount of cellulose powder — a fiber naturally found in fruits and vegetables — to prevent the grated cheese from clumping together and allowing consumers to sprinkle Parmesan onto their favorite dishes directly from the container.  *See id.* (disclosing in the ingredient list that cellulose powder is "to prevent caking").  Small amounts of potassium sorbate, a white salt, are also added as an antimycotic to prevent the growth of fungus and to protect the cheese from losing its flavor after it is grated.  *Id.* (disclosing in the ingredient list that potassium sorbate is "to protect flavor").[3]

---

[3] An antimycotic is an antifungal substance intended to inhibit fungal or mold growth.  *See generally* http://www.dictionary.com/browse/antimycotic.  Potassium sorbate is a type of antimycotic that is used to preserve the cheese and protect flavor.  *See Williams Foods, Inc. v. Eastman Chem. Co.*, No. 99-16680, 2001 WL 1298887, at *1 (D. Kan. Aug. 8, 2001) (describing potassium sorbate as a "preservative[] used primarily as mold-inhibitors in high-moisture . . . food products, such as . . . cheeses"); 21 C.F.R. § 101.22(j) (allowing use of a "mold inhibitor" to "help[] protect flavor").  Target and ICCO's brief contains an extended overview of the FDA's explanation of why potassium sorbate

Although the ingredient list on the back of each container clearly discloses the presence of cellulose powder and potassium sorbate, Plaintiffs allege that that they were misled by the "100% Grated Parmesan Cheese," "100% Grated Parmesan & Romano Cheese," and "100% Three Cheese Blend - 100% Real Grated Parmesan, Romano, and Asiago Cheeses" labels because Kraft Heinz's products contain ingredients other than the identified cheese(s).  Compl. ¶¶ 1-2.  On behalf of a nationwide class and eight state-specific classes, Plaintiffs allege causes of action for breach of express warranty, breach of implied warranty of merchantability, unjust enrichment, and violations of various state consumer protection statutes.  Plaintiffs seek injunctive relief, restitution, and disgorgement, as well as actual, compensatory, statutory, and consequential damages.  Compl. at 32 (Prayer for Relief).

<u>**ARGUMENT**</u>

To survive a motion to dismiss, a complaint "must 'contain sufficient factual allegations to state a claim to relief that is plausible on its face.'"  *Spector v. Mondelēz Int'l, Inc.*, 178 F. Supp. 3d 657, 661 (N.D. Ill. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief' under Rule 8."  *Martin v. Living Essentials, LLC*, 160 F. Supp. 3d 1042, 1045 (N.D. Ill. 2016), *aff'd*, 653 F. App'x 482 (7th Cir. 2016).  Rather, the pleader must "allege more by way of factual content to 'nudg[e]' his claim" of unlawful action "'across the line from conceivable to plausible.'"  *Iqbal*, 556 U.S. at 683 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Moreover, "[d]etermining whether a complaint states a plausible claim for relief . . . requires the reviewing court to draw on its judicial experience and *common sense*."  *Iqbal*, 556 U.S. at 679 (emphasis added).  In light of that guidance from the Supreme Court, courts have regularly dismissed lawsuits where common sense belies the allegations in the complaint.  *See, e.g., Stuart v. Cadbury Adams USA, LLC*, 458 F. App'x 689, 690 (9th Cir. 2011) (affirming dismissal of false advertising lawsuit that "def[ied] common sense"); *Spector*, 178 F. Supp. 3d at 670-71 (applying "common sense" standard to dismiss false advertising lawsuit under Illinois law).

---

is an antimycotic and cellulose powder is an anticaking agent.

## I. Plaintiffs Have Not Plausibly Shown That the "100% Grated Parmesan" Label Is Likely to Deceive a Reasonable Consumer.

To prevail on their statutory consumer fraud claims, Plaintiffs "must establish that [Kraft Heinz's] allegedly deceptive statements were likely to mislead a reasonable consumer acting reasonably under the circumstances." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013).[4] This is an objective standard, under which a challenged statement is actionable only if it "can be read to create a likelihood of deception or to have the capacity to deceive." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001). In this context, "'[l]ikely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Rooney v. Cumberland Packing Corp.*, No. 12-0033, 2012 WL 1512106, at *3 (S.D. Cal. Apr. 16, 2012) (citation and internal quotation marks omitted). "Rather, the phrase indicates that the ad is such that it is probable that *a significant portion of the general consuming public* or of target consumers, acting reasonably in the circumstances, could be misled." *Id.* (emphasis added); *see also Tylka v. Gerber Prod. Co.*, No. 96-1647, 1999 WL 495126, at *6 (N.D. Ill. July 1, 1999) ("In matters of advertising . . . [t]he critical question is whether the ads would be likely to mislead reasonable consumers.") (citation and internal quotation marks omitted).

Moreover, a court must look at the packaging "as a whole," and should not look at a single statement in isolation in deciding a motion to dismiss. *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995) (ruling that looking at the entire advertisement would have "dispelled" any "ambiguity"); *see also, e.g., Fink*, 714 F.3d at 742 ("[I]n determining whether a reasonable consumer would have

---

[4] The state laws invoked by Plaintiffs require proof that the challenged statement is likely to mislead a reasonable consumer. *See Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) ("Plaintiff's claims under the California consumer protection statutes are governed by the 'reasonable consumer' test."). *Smith v. Wells Fargo Bank, N.A.*, 158 F. Supp. 3d 91, 101 (D. Conn. 2016) (same for CUTPA claim); *Democratic Republic of Congo v. Air Capital Grp., LLC*, 614 F. App'x 460, 470 (11th Cir. 2015) (same for FDUTPA claim); *Galanis v. Starbucks Corp.*, No. 16-4705, 2016 WL 6037962, at *2 (N.D. Ill. Oct. 14, 2016) (same for ICFA claim); *Dix v. Am. Bankers Life Assur. Co. of Fla.*, 429 Mich. 410, 418 (1987) (same for MCPA claim"); *Curtis v. Philip Morris Cos..*, No. 01-018042, 2004 WL 2776228, at *4 (Minn. Dist. Ct. Nov. 29, 2004) (same for Minnesota law); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995) (same for New York's GBL); *see also Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 755 (7th Cir. 2014) (applying reasonable consumer test to multi-state class action where putative class included Alabama consumers).

been misled by a particular advertisement, context is crucial . . . the presence of a disclaimer or similar clarifying language may defeat a claim of deception.").

Plaintiffs' claims must be dismissed because the challenged "100% Grated Parmesan Cheese" statement is a factually true statement: the products contain *only* grated Parmesan cheese as defined by the FDA, and not any other varieties of other cheese (such as processed American cheese).[5] Plaintiffs, however, fixate on "100%" to the exclusion of the rest of the packaging, taking the unreasonable position that they believed that "100% Grated Parmesan Cheese" meant that it was made solely of Parmesan cheese — without any other ingredients.

Plaintiffs' out-of-context interpretation of "100%" is implausible for two key reasons:

First, as one federal appellate court explained, any "ambiguity" that Plaintiffs "would read into any particular statement [*i.e.*, "100%"] is dispelled by" looking at the package "as a whole." *Freeman*, 68 F.3d at 290. The ingredient list on the Kraft Heinz Grated Parmesan Cheese packaging explicitly discloses that it has cellulose powder and potassium sorbate, two ingredients that the FDA has included as part of the standard of identity that defines a "grated cheese." *See* Smith Decl., ¶ 2. As courts have emphasized, "every reasonable consumer knows" that the "ingredient list contains more detailed information about the product that confirms other representations on the packaging." *Workman v. Plum, Inc.*, 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015). Indeed, the ingredient list is a "familiar and ubiquitous" feature "found on most food packages." *Reid v. Johnson & Johnson,* 780 F.3d 952, 959 (9th Cir. 2015) (referring to Nutrition Facts panel on food packages).

A reasonable consumer who views the Kraft Heinz Grated Parmesan Cheese packaging "as a whole" would understand that "100%" refers to the fact that it has only Parmesan Cheese and no other types of cheese, and does not mean it has no other non-cheese ingredients. In fact, the only reason that Plaintiffs know that Kraft Heinz Grated Parmesan Cheese has these two other ingredients is because Kraft Heinz discloses them on the packaging. In false advertising cases, "it is necessary to consider not only the allegedly misleading statement but also the surrounding context based on the content of

---

[5] The same reasoning applies to the two other products at issue, "100% Grated Parmesan and Romano Cheese" and "100% Three Cheese Blend - Grated Parmesan, Romano, and Asiago Cheese Blend." They contain only the identified cheeses, and no other types of cheese.

the entire label or advertisement at issue." *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-3826, 2015 WL 5579872, at *16 (E.D.N.Y. Sept. 22, 2015). "If other information disclosed or available to the consumer dispels any tendency to deceive, there is no deception." *Trujillo v. Apple Computer, Inc.*, 581 F. Supp. 2d 935, 938 (N.D. Ill. 2008) (citing *Bober*, 246 F.3d at 938); *see also Bober*, 246 F.3d at 938 (affirming dismissal of ICFA claim where "information available to" consumers "would dispel" any potential misunderstanding).

The recent decision in *Workman v. Plum Inc.* is instructive. In that case, the plaintiff alleged that the packaging of Plum's Organics puree pouches and fruit bars were deceptive because they prominently depicted high-quality ingredients, such as pumpkin, pomegranate, quinoa, and yogurt, but were predominantly made of lower-cost apple, pear, or banana puree. 141 F. Supp. 3d at 1034. After reviewing the labels at issue, the court determined that "a reasonable consumer would not be deceived by them" because "all of the items pictured are actually present in the product," and "any potential ambiguity" could "be resolved by the back panel of the products, which lists all ingredients in order of predominance, as required by the FDA." *Id.* at 1035.

Similarly, in *Ibarrola v. Kind, LLC*, Judge Ellis rejected the plaintiff's claim that the "No Refined Sugars" label on Kind's Vanilla Blueberry Clusters misled her into believing that the product contained only "naturally occurring sugars" that had not been refined at all. 83 F. Supp. 3d 751, 756–57 (N.D. Ill. 2015). Judge Ellis found plaintiff's assertion implausible because the ingredients panel listed a type of refined sugar (evaporated cane juice) as an ingredient. *Id.* Moreover, Judge Ellis explained that since reasonable consumers "would know that all sugar cane-derived sweeteners suitable for human consumption must be at least partially refined…the only reasonable conclusion after reading *the entire* Vanilla Blueberry Clusters label is that Kind used the word 'refined' as a term of art to distinguish partially refined sugars like evaporated cane juice and molasses from fully refined sugars like table sugar." *Id.* at 758 (emphasis added); *see also McKinniss v. Sunny Delight Beverages Co.*, No. 07-02034, 2007 WL 4766525, at *4 (C.D. Cal. Sept. 4, 2007) (dismissing false advertising claim where any ambiguity about the fruit content of defendant's products could "readily and accurately" be resolved "by reading the front and back of the label.").

Here, it is undisputed that Kraft Heinz accurately listed cellulose powder and potassium sorbate

as ingredients on the back panel of its Grated Parmesan Cheese products. Any potential ambiguity about the meaning of "100% Grated Parmesan Cheese" would readily be dispelled by reviewing the package as a whole which clearly shows that there are other ingredients than just cheese. *See, e.g., McKinnis v. Kellogg USA*, No. 07-2611, 2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007) (holding that no reasonable consumer would be deceived by depictions of fruit on the front panel "[w]here a consumer can readily and accurately determine the nutritional value and ingredients of a product") (citation and internal quotation marks omitted). Accordingly, Plaintiffs' statutory consumer protection claims must be dismissed. *See Ibarrola*, 83 F. Supp. 3d at 759 (dismissing ICFA claim because plaintiff "ha[d] not plausibly alleged that Kind's packages contained any deceptive statements").

Second, even if Plaintiffs unreasonably focused on the term "100%" and ignored the rest of the packaging, their claim must be dismissed because their theory of the case defies common sense. Kraft Heinz Grated Parmesan Cheese is not a freshly grated cheese sold by a cheesemaker at a farmer's market. Rather, it is a *packaged* cheese product in a *plastic* container that has been manufactured and then shipped to supermarkets across the country, where it then sits on the shelves for weeks, if not months. A reasonable consumer understands that such a packaged product could contain other ingredients, such as cellulose powder to keep the grated cheese from sticking together during shipment or when the packages are placed on a shelf at the supermarket aisle. Indeed, as discussed further below, the FDA has expressly declared that cellulose powder and potassium sorbate are permitted in grated cheese products to avoid clumping and to protect the flavor. *See infra* § III. These ingredients have been traditionally such important components of grated cheese, particularly in the shelf-stable and packaged varieties at issue here, that these two ingredients are part of the very *definition* of what constitutes a grated cheese under the FDA's standard of identity regulation. *See id.*

Numerous courts have applied "common sense" (as urged by the Supreme Court in *Iqbal*) in ruling that most packaged food products typically contain multiple ingredients to make them shelf-stable and palatable. For example, in *Veal v. Citrus World, Inc.*, the plaintiff claimed that the label "100% orange juice" label on Florida's Natural pasteurized orange juice was misleading because it had been processed and included "flavorings and aroma." No. 12-801, 2013 WL 120761 (N.D. Ala. Jan. 8, 2013). Relying on "common sense," the court dismissed the complaint and said that the plaintiff

"paid for orange juice mass produced and supplied to grocery stores all over the country, and that is exactly what he received." *Id.* at *4 n.7; *see also id.* at *4 n.4 (rejecting a similar challenge to the term "fresh squeezed orange juice" because "common sense dictates that by the time the [bottled orange juice] makes it way to a grocery store and sits on a shelf waiting purchase, it is no longer 'fresh.'"). Likewise, in *Red v. Kraft*, the court recognized the "fact" that Vegetable Thins "is a box of crackers" and noted that a "reasonable consumer will be familiar with the fact of life that a cracker is not composed of primarily fresh vegetables" and is made with other ingredients, even if it is labeled as "made with real vegetables." No. 10-1028, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012), *adopted as final order*, 2012 WL 5502359 (C.D. Cal. Oct. 26, 2012). As in *Red*, the fact remains that the product is a packaged cylinder of cheese, and "a reasonable consumer will be familiar with the fact of life" that a packaged cheese product may contain ingredients other than just cheese. *Id.*

In sum, the phrase "100% Grated Parmesan Cheese" — when viewed "as a whole" and read with "common sense" — merely indicates that the product contains only Parmesan cheese and no other type of cheese (such as processed American cheese). In similar food labeling lawsuits, courts have routinely held that product packaging which highlights an ingredient is not misleading as a matter of law if the statements are factually true and the ingredient is actually in the product.[6]

## II.    Plaintiffs' Claims Are Barred By the Safe Harbor Doctrine Because the FDA Already Approved Kraft Heinz's Use of the Term "100% Parmesan."

Under the "safe harbor" doctrine, a plaintiff cannot use state consumer protection laws to challenge labeling statements that are specifically permitted by the FDA. As the Seventh Circuit put it, the safe harbor doctrine protects defendants who are "doing something specifically authorized by federal law . . . from liability" under state law. *Bober*, 246 F.3d at 941; *see also, e.g., Hauk v. JP*

---

[6] *See, e.g., Henderson v. Gruma Corp.*, No. 10-04173, 2011 WL 1362188, at *12 (C.D. Cal. Apr. 11, 2011) (dismissing lawsuit challenging "With Garden Vegetables" on a guacamole dip because the "product does in fact contain vegetables that can be grown in a garden" and accurately "speaks to the presence" of vegetables in the dip); *Manchouck v. Mondelēz Int'l Inc.*, No. 13-02148, 2013 WL 5400285, at *3 (N.D. Cal. Sept. 26, 2013), *aff'd*, 603 F. App'x 632 (9th Cir. 2015) (holding that "Made with Real Fruit" label on Newton cookies was factually true because the cookies contained raspberry and strawberry purée); *Sensible Foods, LLC v. World Gourmet, Inc.*, No. 11-2819, 2012 WL 566304, at *6 (N.D. Cal. Feb. 21, 2012) (dismissing claim challenging use of word "apple" in the name of Apple Straws snacks because the products contained puréed apples).

*Morgan Chase Bank USA*, 552 F.3d 1114, 1122 (9th Cir. 2009) (holding that "conduct affirmatively authorized by another statute" is immune from liability under California's consumer protection statutes) (citation omitted); *Florida v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1310 (S.D. Fla. 2005) (holding that the safe harbor doctrine shields defendants from liability when "a specific federal or state law affirmatively authorized it to engage in the conduct").

Further, the challenged statement need not be identical to that approved by the FDA so long as it "generally comport[s] with the approved label." *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1235 (S.D. Fla. 2007); *see also Cytyc Corp. v. Neuromedical Sys., Inc.*, 12 F. Supp. 2d 296, 301 (S.D.N.Y. 1998) (holding that statements that are "similar enough to the approved statements" are shielded by the safe harbor doctrine, even if not "precisely" the same as the labels approved by the FDA).

Here, the safe harbor doctrine shields Kraft Heinz from liability because the FDA has explicitly approved its use of the "100% Grated Parmesan Cheese" label, even though it was aware that Kraft Heinz was using cellulose powder and potassium sorbate in its cheese. As an initial matter, the FDA was obviously aware of the use of cellulose powder and potassium sorbate in Kraft Heinz Parmesan Cheese because anticaking and antimycotics are ingredients that are included as part of the very standard of identity definition of what constitutes a "grated cheese" under FDA regulation. *See* 21 C.F.R. §133.146.

Further, the FDA in 1999 and then again in 2000 issued Kraft Foods, Inc. a permit to market Parmesan cheese products that used a six-month curing process, as opposed to a ten-month curing process, on a temporary basis. *Grated Parmesan Cheese Deviating From Identity Standard; Temporary Permit For Market Testing; Extension of Temporary Permit*, 65 Fed. Reg. 16743 (March 17, 1999) (attached as Exhibit C of Kraft Heinz's RJN); 65 Fed. Reg. 83040 (Dec. 29, 2000) (attached as Exhibit D of Kraft Heinz's RJN). As part of the approval process, the FDA was provided the entire packaging, including the ingredient list disclosing all of the ingredients. Critically, the FDA stated in the Federal Register that "the test products will bear the name '100% Grated Parmesan Cheese'" and found that the test product "meets *all* of the requirements of the *standard* [of identity for Parmesan cheese] with the exception of this deviation [regarding curing time period]." 65 Fed. Reg. 16743 (emphasis added); *see also* 65 Fed. Reg. 83040 (same). As noted above, the FDA's standard of identity for grated cheese

includes cellulose powder and potassium sorbate as ingredients. Put another way, the FDA gave its stamp of approval for the name "100% Grated Parmesan Cheese," even though it knew that the product had non-cheese ingredients in compliance with FDA's standard of identity regulation for grated cheese. Because the FDA has expressly approved the use of the "100% Grated Parmesan Cheese" statement, Kraft Heinz cannot be held liable under state law for using this label or similar labels.

Numerous courts have applied the safe harbor doctrine to shield defendants from liability under state consumer protection laws when their conduct was expressly approved by an administrative agency. In *Prohias*, for instance, the plaintiffs alleged that Pfizer engaged in false and misleading advertising of its cholesterol-lowering drug, Lipitor, because its advertisements made unsubstantiated claims designed to "create the impression that Lipitor protects against heart disease, thus misleading consumers as to the benefits of Lipitor." 490 F. Supp. 2d at 1229-30. The court held that these claims were barred because the FDA had specifically approved a label stating that Lipitor was indicated to reduce the risk of heart attacks. *Id.* at 1234. Because "the alleged advertisements derive from, and largely comport with, the approved label," the court concluded that Pfizer was entitled to the safe harbor. *Id.*

Likewise, in *Trazo v. Nestlé USA, Inc.*, the plaintiffs alleged that Nestlé misrepresented numerous products, including Hot Pockets and Lean Pockets breakfast sandwiches, as "healthful." No. 12-2272, 2013 WL 4083218, at *1 (N.D. Cal. Aug. 9, 2013). The court noted that both products had been "pre-approved by the USDA, which first reviews the labels, considers whether they are false or misleading, and approves them." *Id.* at *7. Accordingly, the court concluded, the plaintiffs' claims were barred because "[t]he Hot Pockets and Lean Pockets in question have the USDA-approved sticker on the label, indicating that they have gone through the process." *Id.* Although the court noted that the outcome "might be different if the USDA had not already passed judgment on these products," it reasoned that imposing liability on Nestlé for pre-approved labels "would improperly 'trump' the USDA's authority." *Id.* at *8.

Similarly, in *Kuenzig v. Hormel Foods Corp.*, the Eleventh Circuit relied on the safe harbor doctrine to uphold the dismissal of a false advertising claim challenging the statement "98% Fat Free – 50 calories per misleading" on Oscar Mayer Honey Ham. 505 Fed. Appx. 937, 938 (11th Cir. 2013).

The Eleventh Circuit held that the ham "labels . . . were approved by the FSIS [the USDA's Food Safety and Inspection Service] prior to their commercial use" and "[a]ccordingly, Kraft and Hormel could not be liable pursuant" to the "safe harbor" doctrine. *Id.* at 939.

And even more recently, Judge Der-Yeghiayan applied the safe harbor doctrine to bar a lawsuit alleging that the manufacturer of Tito's Handmade Vodka misrepresented its products as "handmade," "microdistill[ed]," and "crafted in an old fashioned pot still." *Aliano v. Fifth Generation, Inc.*, No. 14-10086, 2015 WL 5675423, at *1 (N.D. Ill. Sept. 24, 2015). The court observed that the Alcohol and Tobacco Tax and Trade Bureau ("TTB") had "reviewed and expressly approved Tito's label" and held that this approval "exempt[ed] FGI from any liability." *Id.* at *4. Because TTB representatives had "consistently approved [the defendant's] applications for the precise labeling and language on each bottles of Tito," he concluded, the defendant was entitled to safe harbor from claims based on the labeling of its products and its online advertising. *Id.*

Here, as in *Prohias*, *Trazo*, *Kuenzig*, and *Aliano*, Kraft Heinz is entitled to safe harbor because the FDA specifically approved both the use of the "100% Grated Parmesan Cheese" moniker and the label bearing that name. This Court should accordingly dismiss Plaintiffs' state-law claims.

## III. Plaintiffs' Claims Are Preempted By Federal Law Because FDA Regulations Expressly Allow the Use of Cellulose Powder and Potassium Sorbate.

The FDCA establishes a comprehensive and uniform federal scheme of food regulation to ensure that food is safe and labeled in a manner that does not mislead consumers. See 21 U.S.C. § 301 *et seq.* In 1990, Congress amended the FDCA by passing the NLEA, which was enacted to "clarify and to strengthen the Food and Drug Administration's legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients in foods." H. R. Rep. No. 101–538, at 7, reprinted in 1990 U.S.C.C.A.N. 3336, 3337. To promote its goal of nationwide uniformity in food labeling, the NLEA includes a broad express preemption provision directing that "no State or political subdivision of a State *may directly or indirectly establish . . . any requirement for . . . labeling of food . . . that is not identical* to the requirement[s]" set forth in the statute. 21 U.S.C. § 343-1(a) (emphasis added).

As numerous courts have emphasized, this is a "broad preemption provision." *Pardini v.*

*Unilever U.S., Inc.*, 961 F. Supp. 2d 1048, 1053 (N.D. Cal. 2013); *see also Mills v. Giant of Md., LLC*, 441 F. Supp. 2d 104, 106-09 (D.D.C. 2006) (noting the expansive scope of the NLEA preemption clause).  As the FDA stated, "'[n]ot identical to' does not refer to the specific words in the requirement but instead means that the State requirement directly or indirectly imposes obligations or contains provisions" that are "not imposed by or contained in" or that "[d]iffer from those specifically imposed by or contained in" the statute or its implementing regulations.  21 C.F.R. § 100.1(c)(4).  In other words, states cannot impose their own unique labeling standards that go "beyond, or [are] different from" the federal labeling standards that Congress has established.  *In re Pepsico, Inc., Bottled Water Mktg. & Sales Practices Litig.*, 588 F. Supp. 2d 527, 532 (S.D.N.Y. 2008); *see also Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 427 (7th Cir. 2011) ("Even if the disclaimers that the plaintiff wants added would be consistent with the requirements imposed by the Food, Drug, and Cosmetic Act, consistency is not the test [for NLEA preemption]; identity is.").  As a result, state "[c]onsumer protection laws . . . are . . . preempted if they seek to impose requirements that contravene the requirements set forth by federal law."  *Peviani v. Hostess Brands, Inc.,* 750 F. Supp. 2d 1111, 1118 (C.D. Cal. 2010).

Here, the gravamen of Plaintiffs' claim is that Kraft Heinz's "100% Grated Parmesan Cheese" products are mislabeled because they contain cellulose and potassium sorbate.  But that claim is expressly preempted under the NLEA because federal law allows the use of cellulose as an anticaking agent and the use of potassium sorbate as an antimycotic.  *See* 21 C.F.R. § 133.146(c).

When the FDA revised the standard of identity for grated cheeses, it rejected a public comment raising the exact argument Plaintiffs now make. One comment to the FDA argued that "consumers expect grated cheeses to be pure and not to contain ingredients such as cellulose."  *Grated Cheeses; Amendment of the Standard of Identity*, 51 Fed. Reg. 30210-01 (Aug. 25, 1986).  The FDA rejected that requirement.  Without anticaking agents, the FDA explained, manufacturers would have to dry out grated cheeses prior to packaging them, thereby "alter[ing] the flavor and texture of the cheese" and "limiting many of the uses of grated cheese products."  *Id.*  Accordingly, the FDA took the position that "[t]he use of anticaking agents is necessary in some cases if industry is to provide consumers with

grated cheese products having the characteristic flavor and texture of freshly grated cheese."[7]  *Id.*  In light of the FDA's explicit guidance that grated cheeses may include both anticaking agents and antimycotic agents, Plaintiffs may not invoke state consumer protection laws to argue that the inclusion of these substances rendered Kraft Heinz's labeling of its grated cheese products misleading.

Kraft Heinz's choice to label those products "100% Grated Parmesan Cheese," "100% Grated Parmesan and Romano Cheese," and "100% Three Cheese Blend" does not change this result.  Because the products contain nothing other than a substance that meets the FDA's standard of identity for grated cheese, it is accurate and not misleading to label those products as "100%" grated cheese.  Indeed, numerous federal courts have rejected the theory that inserting a term like "100%" renders a food misbranded where the food otherwise complies with a federally-established standard of identity.  *Cf. PepsiCo*, 588 F. Supp. 2d at 539 (rejecting argument that NLEA "permit[s] state requirements that go beyond federal law as long as federal law does not expressly prohibit or permit the specific labeling at issue" and holding that, "where the product is the subject of a federal standard of identity, state requirements are not permitted unless they are identical to federal standards").

In *Veal*, for example, the plaintiff alleged that the defendant, which manufactures Florida's Natural Orange Juice, mislabeled its products as "pure" and "100%" orange juice, even though it "manipulate[d] the flavor of its orange juice through the addition of various compounds to mask the taste that results from extensive processing."  2013 WL 120761, at *1.  Although the plaintiff admitted that the FDA regulations required the defendant to label its product as "pasteurized orange juice," he alleged that "all of [the] defendant's other representations are voluntary, and thus not within the protections of the FDA."  *Id.* at *7.  The court dismissed the plaintiff's claims and concluded that the defendant "labels its orange juice in accordance with FDA regulations."  *Id.*  The court noted that the defendant's orange juice complied with the FDA standard of identity for pasteurized orange juice, which expressly allowed the addition of pulp, orange oil, "optional concentrated orange juice

---

[7] Likewise, the FDA has rejected "health concerns" associated with the use of antimycotic agents in cheese manufacturing.  See 54 Fed. Reg. 32050-01.  The FDA emphasized that because a "label declaration is required for all optional ingredients, including antimycotics . . . consumers will have a means of avoiding these substances if they so choose."  *Id.* at 32051.

ingredients," and "optional sweetening ingredients." *Id.* at \*8. Thus, the court concluded that the use of the terms "100%" and "pure" was consistent with the FDA regulations. *Id.* at \*9.

Likewise, in *Romero v. Flowers Bakeries, LLC*, the plaintiff alleged that the defendant mislabeled several of its enriched bread products by using brand names like "Honey Wheat" and "Whitewheat," thereby suggesting that the products were made from "entirely whole wheat." No. 14-5189, 2016 WL 469370, at \*2 (N.D. Cal. Feb. 8, 2016). The court held that this claim was preempted. Although the relevant standard of identity required the defendant to label its products as "enriched bread," the court held, it "does *not* preclude use of the word 'wheat' to label bread not made entirely of whole wheat flour." *Id.* at \*9. Because the defendant complied with the standard of identity for enriched bread and labeled its products as "enriched bread," the court concluded, it could not be held liable under state law for using the term "wheat" on those product labels. *Id.*

Here, as in *Veal* and *Romero*, there is no dispute that Kraft Heinz Grated Parmesan Cheese complied with the federally mandated standard of identity for grated cheese products. Even if the term "100%" is not *mandated* by the standard of identity, its use is consistent with the standard of identity and cannot give rise to a claim under state law. Accordingly, Plaintiff's claims that the challenged products are mislabeled are preempted by federal law and should be dismissed.

## IV. Plaintiffs Lack Standing for Injunctive Relief Because They Face No Future Harm Now That They Know of All the Ingredients in Kraft Parmesan Cheese.

To establish Article III standing when seeking prospective injunctive relief, a plaintiff "must allege a 'real and immediate' threat of *future* violations of [her] rights." *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)) (emphasis added); *see also In re Fluidmaster, Inc.*, 149 F. Supp. 3d 940, 958 (N.D. Ill. 2016) ("[P]laintiffs in federal court must establish Article III standing in order to pursue injunctive relief, regardless of whether the plaintiffs are raising consumer protection claims."). "Past exposure to illegal conduct does not in itself show a present case or controversy…if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).

Plaintiffs have not plausibly alleged that they are likely to suffer future harm from Kraft Heinz's alleged misrepresentations. Without providing any factual support, Plaintiffs conclusively assert that

they "will likely be deceived in the future when they shop for Defendant's Products, not knowing the truth about the representations Defendant makes." Compl. ¶ 87. This assertion is plainly contradicted by other portions of the Complaint, which make clear that Plaintiffs now understand that Kraft Heinz's grated Parmesan cheese products contain cellulose powder and potassium sorbate (as disclosed in the ingredient list on the packaging). *See id.* ¶ 2. Having learned the "truth" about the ingredients in Kraft Heinz's products, there is "no danger that [Plaintiffs] will be misled in the future." *Garrison v. Whole Foods Mkt. Grp.*, No. 13-05222, 2014 WL 2451290, at *5 (N.D. Cal. June 2, 2014) (dismissing claim for injunctive relief where plaintiffs could not plausibly allege a threat of future deception); *see also Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740-41 (7th Cir. 2014) (rejecting Plaintiffs' "speculative claim that he will be harmed again" as implausible "[s]ince [Plaintiff] is now aware of [Defendant's allegedly misleading] sales practices [and] is not likely to be harmed by the practices in the future").

Moreover, Plaintiffs' assertion that they would not have purchased Kraft Heinz's products had they known that they "contained substances other than the cheese," Compl. ¶ 63, makes clear that they are unlikely to purchase the products again in the future and therefore lack Article III standing to seek injunctive relief.[8]

V. **Plaintiffs' Unjust Enrichment Claims Must Be Dismissed.**

Plaintiffs assert an unjust enrichment claim (based on an unspecified state's common law) on behalf of the nationwide class, or in the alternative, individual states' unjust enrichment claims on behalf of Plaintiffs' respective state classes. Compl. ¶¶ 43-49. Both attempts fail.

---

[8] *See, e.g., Bohn v. Boiron, Inc.*, No. 11-08704, 2013 WL 3975126, at *3 (N.D. Ill. Aug. 1, 2013) (holding that plaintiff lacked standing when she alleged that she would not have purchased defendants' homeopathic product "had she known the truth about defendants' misrepresentation and omissions") (internal quotation marks omitted); *Gershman v. Bayer HealthCare LLC*, No. 14-05332, 2015 WL 2170214, at *8 (N.D. Cal. May 8, 2015) (holding that the threat of future injury was "entirely implausible" given plaintiffs' assertion that they "would not have purchased the Product had they known that Bayer's brain function and brain support representations were false and misleading"); *Tomasino v. Estee Lauder Cos., Inc.*, 44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014) (holding that plaintiff who "made clear . . . that she would not have purchased [the challenged products] in the first place absent the allegedly misleading advertisements" lacked standing); *Mednick v. Precor, Inc.*, No. 14-3624, 2016 WL 5390955, at *8 (N.D. Ill. Sept. 27, 2016) (holding that plaintiffs lacked standing where they did "not allege that, having discovered Precor's deception, they may still buy Precor's products").

A.    This Court should dismiss or strike Plaintiffs' nationwide unjust enrichment claim.

Illinois choice-of-law rules bar Plaintiffs from applying a single state's unjust enrichment claim to a *nationwide* class.  To determine which state's unjust enrichment law applies, Illinois courts must apply "the most significant relationship" test.  *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, No. 05-2623, 2006 WL 3754823, at *2 (N.D. Ill. Dec. 18, 2006) (citing *Fredrick v. Simmons Airlines, Inc.*, 144 F.3d 500, 503-04 (7th Cir. 1998)).  "In practice, this means that 'the law of the place of injury controls unless Illinois has a more significant relationship with the occurrence and with the parties.' . . . A court is to determine whether Illinois has the more significant relationship by examining the following factors: (1) the place of the injury, (2) the place where the injury-causing conduct occurred, (3) the domicile of the parties, and (4) the place where the relationship between the parties is centered."  *Frederick*, 144 F.3d at 503-04.  The court must also consider "the interests and public policies of potentially concerned states . . . as they relate to the transaction in issue."  *Id.*

Here, all of the relevant factors dictate that the laws of each Plaintiffs' home state applies to his or her unjust enrichment claim.  Plaintiffs' alleged injuries occurred in their home states where they purchased Kraft Heinz Grated Parmesan Cheese.  The relationship between the parties is also centered in Plaintiffs' home states, where Plaintiffs viewed Kraft Heinz's allegedly misleading packaging and purchased the challenged products.  *See First Wis. Trust Co. v. Schroud*, 916 F.2d 394, 399 (7th Cir.1990) (holding that Indiana law governed when unjust enrichment claim arose from the purchase of property in Indiana because the relationship between the parties was centered there).  In addition, Plaintiffs' home states have a strong interest in "regulating business conduct that takes place within their borders," as well as "and preventing remedying unjust enrichment that occurs at the expense of their citizens."  *In re Sears, Roebuck & Co.*, 2006 WL 3754823, at *3.  In other words, it is improper to apply one state's unjust enrichment law across the country in a nationwide class.  Courts have repeatedly struck or dismissed claims for a nationwide application of a particular state's law at the pleading stage.  *See id.* (dismissing Illinois unjust enrichment claim brought on behalf of a nationwide class because "the laws of each of the plaintiffs' home states apply to their unjust enrichment claims").

B.    Plaintiffs' unjust enrichment claims must be dismissed under many of the state laws.

Plaintiffs' alternative unjust enrichment claims on behalf of several of Plaintiffs' respective

state classes must also be dismissed for various reasons.

**Alabama, California, Connecticut, Florida, Minnesota, and New York**: In these states, "unjust enrichment is unavailable where there is an adequate remedy at law." *Freydl v. Meringolo*, No. 09-7196, 2013 WL 1285286, at *11 (S.D.N.Y. Mar. 29, 2013).[9]  Plaintiffs have an adequate remedy at law because they allege the exact same harm based on warranty claims and violations of various state consumer protection states.[10]

**Michigan:** A plaintiff alleging unjust enrichment under Michigan law must establish two elements: "(1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Storey v. Attends Healthcare Prods., Inc.*, No. 15-13577, 2016 WL 3125210, at *12 (E.D. Mich. June 3, 2016).  Critically, "a plaintiff can establish the first element of the unjust enrichment claim only by proof that the plaintiff *directly* conferred a benefit on the defendant." *Id.*  Here, Plaintiffs do not allege any direct contact or transactions between themselves and Kraft Heinz.  Rather, they plead that they purchased the products

---

[9] *See also Wynn v. Davison Design & Dev., Inc.*, No. 09-0790, 2010 WL 891905, at *9 (S.D. Ala. Mar. 8, 2010) ("In Alabama, the doctrine of unjust enrichment is an equitable remedy which issues only where there is no adequate remedy at law."); *Fonseca v. Goya Foods Inc.*, No. 16-02559, 2016 WL 4698942, at *7 (N.D. Cal. Sept. 8, 2016) (dismissing unjust enrichment claim "because Plaintiff has an adequate remedy at law"); *United States v. United Techs. Corp.,* 51 F. Supp. 2d 167, 200 (D. Conn. 1999) ("In Connecticut, unjust enrichment is available wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract."); *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005) ("It is well settled in Florida that unjust enrichment is an equitable remedy and is, therefore, not available where there is an adequate legal remedy."); *United States v. Bame*, 721 F.3d 1025, 1030 (8th Cir. 2013) (Minnesota law).  Accordingly, the existence of a contract "ordinarily precludes recovery in quasi-contract for events arising out of the same subject matter." *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388–89 (1987); *accord Pearson's Pharmacy, Inc. v. Express Scripts, Inc.*, 505 F. Supp. 2d 1272, 1278 (M.D. Ala. 2007) (Alabama law).

[10] *See Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (dismissing unjust enrichment claims where contracts "governed the particular subject matter of the case"); *Wynn*, 2010 WL 891905, at *9 (dismissing unjust enrichment claim "because an express contract exists regarding the same subject matter"); *Arena Dev. Grp., LLC v. Naegele Commc'ns, Inc.*, No. 06-2806, 2008 WL 1924179, at *5 (D. Minn. April 29, 2008) (dismissing an unjust enrichment claim because a Minnesota fraud statute provided an adequate remedy at law); *Licul v. Volkswagen Grp. of Am., Inc.*, No. 13-61686, 2013 WL 6328734, at *8 (S.D. Fla. Dec. 5, 2013) (dismissing unjust enrichment claim where "the express warranty supporting Plaintiffs' warranty claims exists to govern the relationship between the parties").

through retail locations. Compl. ¶ 25. As Plaintiffs have not alleged that they directly conferred any benefit on Kraft Heinz, their unjust enrichment claim must be dismissed. *See Smith v. Glenmark Generics, Inc., USA*, No. 315898, 2014 WL 4087968, at *1 (Mich. Ct. App. Aug. 19, 2014) (affirming dismissal of unjust enrichment claim where "plaintiff did not purchase the product directly from defendant").

**Illinois:** Under Illinois law, "where the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent claim of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well." *Spector*, 178 F. Supp. 3d at 674. Here, Plaintiffs' unjust enrichment claim is predicated on the same factual allegations of deceptive and fraudulent advertising as their breach of express warranty, breach of implied warranty, and state consumer law claims. For the same reasons that these claims fail, Plaintiffs' unjust enrichment claim fails as well. *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) (holding that a plaintiff's unjust enrichment claim "will stand or fall" with related claims of "the same [alleged] improper conduct").

## VI. Plaintiffs' Various Breach of Warranty Claims Must Be Dismissed.

### A. Plaintiffs cannot maintain a breach of express warranty claim for a nationwide class.

Plaintiffs seek to assert a breach of express warranty claim on behalf of the nationwide class, or in the alternative, on behalf of Plaintiffs' respective state classes. Compl. ¶¶ 35-42. Although Plaintiffs do not specify which state's law applies to the national class, they conclusively assert that the law governing breach of express warranty is "identical or substantially similar…in each and every state." *See id.* ¶ 37. This bald assertion ignores the material and significant differences in express warranty laws across the fifty states. *See Rikos v. Procter & Gamble Co.*, No. 11-226, 2012 WL 641946, at *6 (S.D. Ohio Feb. 28, 2012) ("No discovery will change the simple fact that different states have different elements for claims of breach of express warranty, and the Court finds that these variations are material."); *In re Gen. Motors Corp. Dex-Cool Prods. Liab. Litig.*, 241 F.R.D. 305, 317 (S.D. Ill. 2007) (noting "significant variations in the law governing express warranties").

The laws of the states regarding breach of express warranty vary with respect to the issues of reliance, pre-litigation notice, and privity. For example, in some jurisdictions, reliance is not an

element of an express warranty claim.[11]  In other states, plaintiffs must demonstrate specific reliance on the seller's statements.[12]  And some states (including Illinois) hold that a seller's affirmations and promises relating to goods create a rebuttable presumption of reliance by a buyer.[13]  Likewise, only some states require a showing of privity to assert a breach of express warranty claim.[14]  And states widely differ on if and how pre-suit notice must be provided.[15]  Given these significant differences, Illinois choice of law rules dictate that that each Plaintiff's claim is governed by the law of state in which he or she purchased Kraft's products and where the purported injury occurred.  Accordingly, the breach of express warranty claim on behalf of the nationwide class must be dismissed.  *See Smith v. Allmax Nutrition, Inc.*, No. 15-00744, 2015 WL 9434768, at *10 (E.D. Cal. Dec. 24, 2015) (dismissing nationwide warranty claim where the court could not "plausibly find that California contract law would

---

[11] *See, e.g.*, *Unified School Dist. No. 500 v. U.S. Gypsum Co.*, 788 F. Supp. 1173, 1177 (D. Kan. 1992) (holding that reliance is not an element of an action for breach of express warranty under the Kansas UCC); *Norcold, Inc. v. Gateway Supply Co.*, 154 Ohio App. 3d 594, 601 (2003) (collecting cases and noting that "[a] decisive majority of courts…have reached the similar conclusion that reliance is not an element in a claim for breach of an express written warranty").

[12] *See, e.g.*, *Hillcrest Country Club v. N.D. Judds Co.*, 236 Neb. 233, 241 (1990) ("[S]ince an express warranty must have been 'made part of the basis of the bargain,' it is essential that the plaintiffs prove reliance upon the warranty."); *Speed Fastners, Inc. v. Newsom*, 382 F.2d 395, 397 (10th Cir. 1967) (applying Oklahoma law) (holding that the plaintiff could not maintain an action for breach of warranty because "[n]othing shows that [he] relied on any statement in the pamphlet" when making his purchase).

[13] *See, e.g.*, *Weng v. Allison*, 287 Ill. App. 3d 535, 538 (1997) ("The burden is upon the seller to establish by clear, affirmative proof that the affirmations did not become part of the basis of the bargain."); *Sessa v. Riegle*, 427 F. Supp. 760, 766 (E.D. Pa. 1977) ("[A]ll statements of the seller became part of the basis of the bargain unless clear affirmative proof is shown to the contrary.").

[14] *Compare Barre v. Gulf Shores Turf Supply, Inc.*, 547 So. 2d 503, 504 (Ala. 1989) ("The plaintiff must prove privity of contract in an action on an express warranty where no injuries to natural persons are involved.") *with B. B. P. Ass'n, Inc. v. Cessna Aircraft Co.*, 91 Idaho 259, 263-64 (1966) (holding that "[p]rivity of contract … was not essential" for plaintiff's breach of warranty claim); *Gold'n Plump Poultry, Inc. v. Simmons Eng'g Co.*, 805 F.2d 1312, 1321 (8th Cir. 1986) (applying Minnesota law and holding that "[l]ack of privity…does not bar [plaintiff] from enforcing the express warranty").

[15] *Compare Gorman v. Am. Honda Motor Co.*, 302 Mich. App. 113, 123 (2013) ("[F]ailure to notify the alleged breaching party within a reasonable period defeats Plaintiff's breach claims[.]") *with Muehlbauer v. Gen. Motors Corp.*, 431 F. Supp. 2d 847, 857 (N.D. Ill. 2006) (interpreting Maine law) (explaining that no "Maine court . . . has held that notice is an element of a breach of warranty claim, as opposed to an affirmative defense").

apply to any individual who purchased the Product outside of California").

B.  Plaintiffs cannot maintain a breach of implied warranty of merchantability claim on behalf of a multi-state class.

Plaintiffs assert a claim for breach of implied warranty of merchantability on behalf of themselves and other class members from 36 states.  Compl. ¶¶ 50-58.  This multi-state claim fails for the same reason as its nationwide breach of warranty claim: there are significant, material differences among states' laws concerning the scope and application of implied warranty claims.  *See Cole v. Gen. Motors Corp.*, 484 F.3d 717, 726 (5th Cir. 2007) ("There are numerous variations in the substantive laws of . . . implied warranty among the fifty-one jurisdictions[.]").  Among the 36 states selected by Plaintiffs for the multi-state class, there are significant differences in requirements for privity.  In some states, privity is an essential element of a breach of implied warranty claim, while it is not in others.[16] These differences preclude the application of one state's law to the multi-state class.  *See Gray v. Abbott Labs., Inc.*, No. 10-6377, 2011 WL 3022274, at *3 (N.D. Ill. July 22, 2011) (applying Illinois choice of law rules and determining that breach of implied warranty of merchantability claim was governed by the law of state where plaintiff purchased the challenged product and suffered the alleged injury); *Smith*, 2015 WL 9434768, at *3 (E.D. Cal. Dec. 24, 2015) (dismissing warranty claim brought on behalf of a nationwide class).

C.  Plaintiffs' breach of express warranty claims fail for lack of privity.

Plaintiffs' Alabama, Connecticut, Florida, Illinois, and Michigan claims for breach of express

---

[16] *See, e.g.*, *U.S. Roofing, Inc. v. Credit All. Corp.*, 228 Cal. App. 3d 1431, 1441 (1991) ("Vertical privity is a prerequisite in California for recovery on a theory of breach of the implied warranties of fitness and merchantability."); *TD Props., LLC v. VP Bldgs., Inc.*, 602 F. Supp. 2d 351, 362 (D. Conn. 2009) (Connecticut law); *Gillson v. City of Sparks*, No. 06-00325, 2007 WL 839252, at *5 (D. Nev. Mar. 19, 2007) (Nevada law); *Lombardi v. Cal. Packing Sales Co.*, 83 R.I. 51, 54 (1955) (Rhode Island law); *Chiasson v. Winnebago Indus.*, No. 01-74809, 2002 WL 32828652, at *9 (E.D. Mich. May 16, 2002) (Michigan law).  In other states, privity is not required.  *See, e.g.*, *Morrow v. New Moon Homes, Inc.*, 548 P.2d 279, 289 (Alaska 1976) ("[A] manufacturer may be held liable for a breach of the implied warranties . . . without regard to privity of contract between the manufacturer and the consumer."); *Patty Precision Prod. Co. v. Brown & Sharpe Mfg. Co.*, 846 F.2d 1247, 1254 (10th Cir. 1988) (Oklahoma law).

warranty fail for lack of privity.[17] Plaintiffs admit that they purchased Kraft Heinz's products at retail stores such as Costco, Target, and Wal-Mart. *See* Compl. ¶¶ 7-15.

> D. <u>Plaintiffs have failed to allege a breach of the implied warranty of merchantability.</u>

Plaintiffs' breach of implied warranty of merchantability claim fails because they cannot show that Kraft Heinz's Parmesan Cheese products lacked "even the most basic degree of fitness of ordinary use." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009).[18] In the case of challenged food ingredients, courts have routinely rejected claims for breach of implied warranty of merchantability where (as here) the plaintiff does not claim that the foods were inedible, but were mislabeled or simply not as expected.

In *Viggiano v. Hansen Natural Corp.*, for example, the court dismissed plaintiff's implied warranty claims because plaintiff did not "allege any facts suggesting that [defendant's] soda is not merchantable or fit for use as a diet soft drink[.]" 944 F. Supp. 2d 877, 896 (C.D. Cal. 2013). In particular, the court noted that plaintiff had not "alleged that the beverage was not drinkable, that it was contaminated or contained foreign objects[.]" *Id.* Similarly, in *Bohac v. General Mills, Inc.*, the court found that plaintiff had failed to state a claim for breach of implied warranty of merchantability because he had failed to allege any facts showing that defendant's granola bars "were not edible or contaminated." No. 12-05280, 2014 WL 1266848, at *10 (N.D. Cal. Mar. 26, 2014); *see also Hoyte v. Yum! Brands, Inc.*, 489 F. Supp. 2d 24, 28 (D.D.C. 2007) (same).

Here, Plaintiffs do not claim that the Kraft Heinz Grated Parmesan Cheese products they purchased were inedible, contaminated, or unpalatable, or that they suffered ill effects immediately after consuming them. Rather, their sole complaint is the Parmesan cheese products "do not conform

---

[17] *See Barre*, 547 So. 2d at 504 ("The plaintiff must prove privity of contract in an action on an express warranty where no injuries to natural persons are involved."); *Fraiser v. Stanley Black & Decker, Inc.*, 109 F. Supp. 3d 498, 506 (D. Conn. 2015) (Connecticut law); *T.W.M. v. Am. Med. Sys., Inc.*, 886 F. Supp. 842, 844 (N.D. Fla. 1995) (Florida law); *Baldwin v. Star Sci., Inc.*, 78 F. Supp. 3d 724, 740-41 (N.D. Ill. 2015) (Illinois law); *Montgomery v. Kraft Foods Glob., Inc.*, No. 12-00149, 2012 WL 6084167, at *13 (W.D. Mich. Dec. 6, 2012), *aff'd*, 822 F.3d 304 (6th Cir. 2016) (Michigan law).

[18] *See also, e.g., Sportmart, Inc. v. Spirit Mfg., Inc.*, No. 97-7120, 1999 WL 350662, at *3 (N.D. Ill. May 17, 1999) ("Under the implied warranty of merchantability, goods must be fit for the ordinary purposes for which such goods are used.") (citing 810 Ill. Comp. Stat. 5/2-314).

to the promises and affirmations of facts made on their containers and labels[.]" Compl. ¶ 56. "A mere alleged labeling violation" however, "in the absence of any allegation regarding the product's basic degree of fitness for ordinary use, is sufficient to state a claim for breach of implied warranty." *Engurasoff v. Coca-Cola Co.*, No. 13-03990, 2014 WL 4145409, at *5 (N.D. Cal. Aug. 21, 2014). Accordingly, Plaintiffs' implied warranty claims must be dismissed. *See id.* (dismissing breach of implied warranty claim where plaintiffs challenged the ingredients label on Coca-Cola beverages but did not allege that the products lacked the most basic degree of fitness).[19]

## CONCLUSION

For the foregoing reasons, Defendant The Kraft Heinz Company respectfully requests that the Court dismiss Plaintiffs' Consolidated Class Action Complaint.

Dated: January 6, 2017

Respectfully submitted,

JENNER & BLOCK LLP

By:  */s/ Dean N. Panos*
    Dean N. Panos
    353 N. Clark Street
    Chicago, IL 60654-3456
    Tel.:  (312) 222-9350
    dpanos@jenner.com

Attorneys for Defendant
The Kraft Heinz Company

---

[19] Additionally, any claims under California, Connecticut, Michigan, Nevada, Oregon, Rhode Island, and Vermont law would fail for lack of privity.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing document was filed on January 6, 2017 with the Clerk of the Court by using the CM/ECF system which will effect electronic service on all parties and attorneys registered to receive notifications via the CM/ECF system.


Dated:  January 6, 2017                     By:  */s/ Dean N. Panos*

                                                                Dean N. Panos