**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| **IN RE: 100% GRATED PARMESAN CHEESE MARKING AND SALES PRACTICES LITIGATION** | ) ) ) | Case No.: 1:16-CV-05802 (MDL No. 2705) |
| | ) | |
| ***This Document Relates to All Cases on the Target and Wal-Mart Tracks*** | ) ) | The Hon. Gary S. Feinerman |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINTS AGAINST
<u>TARGET CORPORATION AND ICCO-CHEESE COMPANY, INC.</u>**

**BOWIE & JENSEN, LLC**

Joshua A. Glikin (General Bar No.: 008107)
glikin@bowie-jensen.com
Patrick R. Buckler (admitted *pro hac vice*)
buckler@bowie-jensen.com
Bowie & Jensen, LLC
29 W. Susquehanna Avenue, Suite 600
Towson, Maryland 21204
(410) 583-2400 Telephone

*Attorneys for Defendants Target
Corporation and ICCO-Cheese
Company, Inc.*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

I.  STATEMENT OF THE CASE ................................................................. 3

II.  APPLICABLE LAW AND LEGAL STANDARD ........................................ 5

III.  PLAINTIFFS' CLAIMS ARE PREEMPTED AS A MATTER OF LAW ............ 5

  A.  Plaintiffs' Claims are Expressly Preempted ............................................. 6

    1.  Pertinent Regulatory Standards ............................................................. 6

      (a)  FDA Definition and Standard of Identity for Grated Cheeses ............ 7

        (i)  Powdered Cellulose and Corn Starch ............................................. 8

        (ii)  Potassium Sorbate ......................................................................... 9

      (b)  Applicable FDA Labeling Requirements for Grated Cheeses ....................... 10

    2.  The NLEA's Express Preemption Provisions ........................................ 11

    3.  Plaintiffs' Claims are Expressly Preempted by the NLEA ................................. 13

      (a)  The Complaints Seek to Impose Requirements That Are
Not Identical to the FDA's Definition and SOI for Grated Cheeses ..................... 13

      (b)  The Complaints Also Seek to Impose a New Mislabeling Standard............ 14

  B.  Plaintiffs' Claims are also Conflict Preempted ............................................. 15

IV.  THE COMPLAINTS DO NOT STATE A PLAUSIBLE CLAIM FOR RELIEF 17

  A.  Plaintiffs do not Plausibly Allege that the Products' Labels are
Likely to Deceive a Reasonable Consumer ................................................... 17

  B.  Plaintiffs' Group Pleading Also Fails to State any Plausible Claim as to Target . 17

  C.  Plaintiffs' Allegations of Injury are Equally Deficient ................................... 18

V.  PLAINTIFFS LACK STANDING TO BRING THEIR CLAIMS ...................... 19

  A.  Plaintiffs do not Satisfy the Article III Injury Prong ................................... 19

  B.  Plaintiffs do not Satisfy the Article III Causation Prong ................................. 21

  C.  Plaintiffs Lack Standing to Represent a Nationwide Class or to Request an
Injunction....................................................................................................... 21

VI.  PLAINTIFFS' WARRANTY CLAIMS SHOULD BE DISMISSED ................ 21

  A.  Failure to Allege Pre-Suit Notice ................................................................. 22

  B.  Plaintiffs' Warranty Claims are Implausible................................................... 23

  C.  Plaintiffs' Implied Warranty Claims are not Adequately Alleged........................ 23

VII.  PLAINTIFFS' UNJUST ENRICHMENT CLAIMS ARE DEFICIENT ............. 24

VIII.  PLAINTIFFS' CONSUMER FRAUD ACT CLAIMS SHOULD BE
DISMISSED ........................................................................................................ 24

CONCLUSION ................................................................................................................. 25

## TABLE OF AUTHORITIES

**Cases**

*Adams v. One Park Place Investors, LLC*, 315 S.W.3d 742 (Mo. Ct. App. 2010) ...................... 24

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................. 17, 19

*Askin v. Quaker Oats Co.*, 818 F. Supp. 2d 1081 (N.D. Ill. 2011) ........................................ 19, 21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................. 18, 19

*Bond v. Utreras*, 585 F.3d 1061 (7th Cir. 2009) .......................................................................... 19

*Budach v. NIBCO, Inc.*, Case No. 2:14-cv-04324-NKL,
    2015 U.S. Dist. LEXIS 150714 (W.D. Mo. Nov. 6, 2015) .................................................... 22

*Chi. Faucet Shoppe, Inc. v. Nestlé Waters N. Am. Inc.*, 24 F. Supp. 3d 750 (N.D. Ill. 2014) ...... 15

*Design Inc. v. Synthetic Diamond Tech., Inc.*, 674 F. Supp. 1564 (N.D. Ill. 1987) .................... 18

*Destfino v. Reiswig*, 630 F.3d 952 (9th Cir. 2011) ...................................................................... 18

*Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141 (1982) .............................................. 6

*Flextronics Int'l USA, Inc. v. Sparkling Drink Sys. Innovation Ctr.*,
    Civil No. 15C4904, 2016 U.S. Dist. LEXIS 59084 (N.D. Ill. May 4, 2016) ............................ 4

*Frye v. L'Oréal USA, Inc.*, 583 F. Supp. 2d 954 (N.D. Ill. 2008) ................................................ 20

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88 (1992) ..................................................... 15

*Geinosky v. City of Chicago*, 675 F.3d 743 (7th Cir. 2012) .......................................................... 4

*Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587 (2007) ............................................ 19

*Hertz Corp. v. RAKS Hospitality, Inc.*, 196 S.W.3d 536 (Mo. 2006) .......................................... 24

*Hobbs v. Gen. Motors Corp.*, 134 F. Supp. 2d 1277 (M.D. Ala. 2001) ........................................ 22

*Ibarrola v. Kind, LLC*, No. 13 C 50377,
    2014 U.S. Dist. LEXIS 95833 (N. D. Ill. July 14, 2014) ...................................................... 20

*In re Fruit Juice Prods. Mktg. & Sales Practices Litig.*, 831 F. Supp. 2d 507 (D. Mass. 2011) .. 20

*Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754 (W.D. Mo. 2015) ................................ 25

*Lubin v. Sybdeon Corp.*, 688 F. Supp. 1425 (C.D. Cal. 1988) ................................................... 18

*Mann v. Vogel*, 707 F.3d 872 (7th Cir. 2013) ............................................................................. 17

*Mercado v. Bayer Healthcare Pharms., Inc.*, No. 14 C 6699,
    2015 U.S. Dist. LEXIS 73383 (N.D. Ill. June 5, 2015) ........................................................ 23

*Mills v. Giant of Md., LLC*, 441 F. Supp. 2d 104 (D.D.C. 2006) .......................................... 14, 15

*Owen v. Gen. Motors Corp*, 533 F.3d 913 (8th Cir. 2008) ........................................................ 25

*Pace Am., Inc. v. Elixir Indus.*, No. 06 C 5661,
    2009 U.S. Dist. LEXIS 6281 (N.D. Ill. Jan. 27, 2009 ......................................................... 23

*POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228 (2014) ................................................ 6

*Prime Media Grp. LLC v. Acer Am. Corp.*, CASE NO. 5:12-cv-05020 EJD,
    2013 U.S. Dist. LEXIS 22437 (N.D. Cal. Feb. 19, 2013) ..................................................... 18

*Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688 (7th Cir. 2015) .................................. 19, 21

*Sears v. Liken*, 912 F.2d 889 (7th Cir. 1990) ............................................................................. 18

*Turek v. Gen. Mills, Inc.*, 662 F.3d 423 (7th Cir. 2011) ................................................. 11, 12, 14

*Turek v. Gen. Mills, Inc.*, 754 F. Supp. 2d 956 (N.D. Ill. 2010) .......................................... 12, 14

*Veal v. Citrus World, Inc.*, Case No. 2:12-CV-801-IPJ,
    2013 U.S. Dist. LEXIS 2620 (N.D. Ala. Jan. 8, 2013 ......................................................... 20

*Wachovia Bank, N.A. v. Burke*, 414 F.3d 305 (2d Cir. 2005) ...................................................... 6

*Winkler v. Gates*, 481 F.3d 977 (7th Cir. 2007) ......................................................................... 21

*Wis. Elec. Power Co. v. Reilly*, 893 F.2d 901 (7th Cir. 1990) ...................................................... 6

*Wyeth v. Levine*, 555 U.S. 555 (2009) ....................................................................................... 15

**Constitutional Provisions**

U.S. Const. Art. III ................................................................................................. 2

**Statutes**

21 U.S.C. § 343 ........................................................................................... 11, 14
21 U.S.C. § 343-1 ........................................................................................ 11, 12
21 U.S.C. § 393 ................................................................................................... 6
810 ILCS 5/2-314 ............................................................................................... 23
810 ILCS 5/2-607 ............................................................................................... 22
Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010, *et seq.* ................. 25
The Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301, *et seq.* ............................... 1
The Nutrition Labeling and Education Act, 21 U.S.C. §§ 341, *et seq.* ................ 1, 6, 10
Uniform Commercial Code, U.C.C. § 2-313 .......................................................... 21
Uniform Commercial Code, U.C.C. § 2-607 .......................................................... 23

**Regulations**

21 C.F.R. § 101.2 ............................................................................................... 12
21 C.F.R. § 101.22 ............................................................................................. 12
21 C.F.R. § 101.4 ............................................................................................... 12
21 C.F.R. § 133.146 (2016) ........................................................................... passim
21 C.F.R. § 133.165 ....................................................................................... 7, 18
21 C.F.R. § 133.187 ........................................................................................... 11
21 C.F.R. § 182.3640 ......................................................................................... 11
21 C.F.R. § 19.791 (1971) ............................................................................... 9, 11
21 C.F.R. §§ 101.1 .............................................................................................. 12
35 Fed. Reg. 7791 (May 21, 1970) ........................................................................ 9
42 Fed. Reg. 14302 (March 15, 1977) .................................................................... 9
49 Fed. Reg. 3270 (Jan. 26, 1984) ......................................................................... 9
50 Fed. Reg. 43720 (Oct. 29, 1985) ................................................................... 9, 10
51 Fed. Reg. 30210 (Aug. 25, 1986) ..................................................................... 10
51 Fed. Reg. 42088 (Nov. 21, 1986) ..................................................................... 10
60 Fed. Reg. 57076 (Nov. 13, 1995) ..................................................................... 17
60 Fed. Reg. 67492 (Dec. 29, 1995) ..................................................................... 11
64 Fed. Reg. 16734 (Apr. 6, 1999) ....................................................................... 18
65 Fed. Reg. 83040 (Dec. 29, 2000) ..................................................................... 19

**Other Authorities**

Citizen Petition to Dockets Management Branch, Food and Drug Administration (April 15, 1985) ............................................................................................................ 8
Mosby's Medical Dictionary 112 (10th ed. 2017) ..................................................... 9
New Oxford American Dictionary (3rd ed. 2010) ...................................................... 9
Select Comm. On GRAS Substances, SCOGS Report No. 115, Opinion: Starches, Cereal Starches, Pregelatinized Starch (1979) .................................................................. 9

iv

## INTRODUCTION

The fundamental flaw with Plaintiffs' Consolidated Complaints against Target, Wal-Mart, and their grated cheese product manufacturer, ICCO (collectively, "Defendants"),[1] is that they establish that Defendants' product labels are *true*.[2]  In other words, the allegations in the Complaints that underpin the state consumer protection act, warranty, and unjust enrichment claims about Wal-Mart's Great Value "100% Grated Parmesan Cheese" and "Parmesan 100% Grated Cheese" products (the "Wal-Mart Products"), and Target's Market Pantry "100% Grated Parmesan Cheese" and "Parmesan 100% Grated Cheese" products (the "Target Products") (collectively, the "Products"), establish that the Products are "100% Grated Parmesan Cheese" and "Parmesan 100% Grated Cheese" as their labels represent.  The presence of cellulose, corn starch and/or potassium sorbate in the Products does not contradict this conclusion, but supports it.

The foundation for this conclusion lies in the controlling Food and Drug Administration ("FDA") regulation that provides a "standard of identity" for grated cheese, which is the FDA's way of defining what grated cheese is and what it contains.  According to the FDA, "grated parmesan cheese," by definition, includes: (1) parmesan cheese; (2) anticaking agents (such as cellulose and corn starch); and (3) antimycotics (such as potassium sorbate).  21 C.F.R. § 133.146 (2016).  The Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301, *et seq.* ("FDCA"), as amended by the Nutrition Labeling and Education Act, 21 U.S.C. §§ 341, *et seq.* ("NLEA"), expressly preempts any state (and, by extension, private plaintiffs who assert any state law claim) from attempting to impose a different definition or standard.  Yet this is precisely what the Complaints attempt to do by asserting that the Products cannot be labeled 100% "grated parmesan cheese" if they do not

---

[1]  This Memorandum seeks dismissal of the Target Complaint in its entirety, and of the Wal-Mart Complaint as to ICCO.  Wal-Mart elected to submit a separate Motion to Dismiss.

[2]  The capitalized terms used in this brief are defined in Defendants' Motion to Dismiss.

contain 100% "parmesan cheese." Plaintiffs' claims are expressly preempted because the factual allegations that support them, accepted as true for purposes of this Motion, establish that the Products are 100% *of what the FDA defines to be grated parmesan cheese*. Any mistaken belief that Plaintiffs had about the difference between "cheese" and "grated cheese" derives from the FDA's standard of identity for grated cheese, not the Products' labels. Plaintiffs' claims also are conflict preempted because the FDA has repeatedly stated that it is proper to label a grated parmesan cheese product that falls within the regulatory definition of that food as "100%" grated parmesan cheese. The conflict preemption doctrine prohibits Plaintiffs from creating a situation in which acting consistent with the FDA's guidance gives rise to state law liability.

Although preemption warrants dismissal of all claims in the Complaints, the Complaints' allegations of fraud and deception also are implausible and thus insufficient as a matter of law. Beginning with the Target Complaint, there are *no* facts pleaded that attribute the manufacturing, formulation, packaging, and labeling of the Target Products (nor any knowledge thereof) to Target. Plaintiffs attempt to overcome this deficiency through "group pleading" that lumps the Defendants together. But their "everyone-did-everything" approach fails as a matter of law. Furthermore, Plaintiffs' strained, subjective interpretation of the "100% grated cheese" statements on the Products' labels is implausible because the labels also disclose the presence of cellulose and other "non-cheese" ingredients. Courts have repeatedly found that all statements on a package must be viewed together to properly consider whether a reasonable consumer would be deceived. Additionally, Plaintiffs fail to sufficiently allege an economic injury and cannot plausibly claim to have been injured by purchasing the precise product they wished to purchase.

Plaintiffs also lack standing pursuant to Article III of the U.S. Constitution to bring their claims. They do not plead facts that, if true, would satisfy the required "injury-in-fact" and

"causation" elements of standing, and they do not possess standing to bring any claims on behalf of a putative "nationwide" class or to request injunctive relief. Finally, the Complaints' warranty, unjust enrichment, and individual state consumer protection act claims cannot survive dismissal for a number of independent reasons.

## I.     STATEMENT OF THE CASE

Each Plaintiff contends that it is false or misleading to label the Products "100%" grated parmesan cheese because they are not, in fact, "100% parmesan cheese." [Wal-Mart Complaint, Dkt. 123, at ¶¶7-12; Target Complaint, Dkt. 122, at ¶¶7-12]. Each purchased the Products many times over the past four years, some of them at least a dozen times, "believing [they were] 100% Parmesan cheese." [Dkt. 123, at ¶¶7-12; Dkt. 122, at ¶¶7-12]. The Complaints allege that "cellulose is an organic polymer [that] is not cheese or any other type of dairy product" that is mostly used "in the production of paperboard and paper," is not digestible, and provides no "nutritional calories." [Dkt. 123, at ¶18; Dkt. 122, at ¶16]. They also allege that "[c]ellulose is often used as a filler," but do not in any way tie that generic statement to the Products at issue. [Dkt. 123, at ¶18; Dkt. 122, at ¶16].

Potassium sorbate, Plaintiffs allege, "is a synthetic chemical additive used in some foods or personal care products." [Dkt. 123, at ¶18; Dkt. 122, at ¶16]. The Target Complaint alleges that the Target Products contain corn starch, which is "a derivative of corn grain or kernels used as an additive in food and medical products." [Dkt. 122, at ¶16]. The Complaints do not include any allegation regarding the reasons that Defendants add cellulose, corn starch, or potassium sorbate to the Products or the purposes that these substances serve in the Products, including any of the

benefits they may provide.  [Dkt. 123 at ¶18; Dkt. 122, at ¶16 ].[3]  The Complaints do not allege that these ingredients are unsafe or harmful.

The Complaints also give the impression that cellulose, corn starch, and potassium sorbate are concealed ingredients in the Products.  Not so.  They are disclosed on the ingredient panel portion of the Products' labels, as depicted in the images attached hereto at **Exhibit 1**.[4]  The labels state that cellulose and corn starch are "ADDED TO PREVENT CAKING" and that potassium sorbate is "ADDED TO PROTECT FLAVOR."  (**Exhibit 1**).  The Complaints do not allege that these descriptions are untrue or misleading in any way.  Although Plaintiffs allege that Defendants represented that their Products were "100% cheese" or "100% parmesan cheese," the Products' labels do not contain either of those statements.  (**Exhibit 1**).

Also missing from the Complaints, in the absence of any label statement to that effect, is any explanation of how each Plaintiff apparently formed his or her "belief" that a product called "100% Grated Parmesan Cheese" or "Grated 100% Parmesan Cheese" would be "100% cheese."  Plaintiffs make no attempt to explain how or why their alleged "belief" was reasonable in light of the number of times that each of them must have viewed the Products' labels over the many years that they purchased and used the Products.  [Dkt. 123, at ¶22; Dkt. 122, at ¶20 (both alleging that each Plaintiff "has seen the Products' labels")].

---

[3]  The Wal-Mart Complaint also alleges that "an independent testing facility determined that a sample of Wal-Mart's Products allegedly consisting of 100% grated Parmesan cheese actually contained 7.8% cellulose." [Dkt. 123, at ¶ 20].  It does not, however, allege that the methodology used by this unidentified facility was reliable or accurate.  There is no similar allegation in the Target Complaint.  [Dkt. 122, at ¶17].

[4]  It is proper for the Court to consider, in the context of a Rule 12 motion, "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice[.]"  *Flextronics Int'l USA, Inc. v. Sparkling Drink Sys. Innovation Ctr.*, Civil No. 15C4904, 2016 U.S. Dist. LEXIS 59084, at *2 (N.D. Ill. May 4, 2016) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)).  **Exhibit 1** contains the representative principal display panels copied from the Consolidated Complaints and their corresponding representative ingredient lists.

Even though Plaintiffs are a group of long-term and, until recently, satisfied customers, the Complaints allege that Plaintiffs "did not receive that which was promised and represented to them" and "overpaid for the Products they purchased." [Dkt. 123, at ¶22; Dkt. 122, at ¶20]. The Complaints do not, however, provide any explanation of how the presence of non-cheese ingredients resulted in the Products being overpriced.

Finally, aside from the conclusory legal allegation that Target is a "co-participant[] in committing the acts of consumer fraud alleged," the Complaints allege that ICCO alone manufactured, packaged, and labeled the Products "with the type and amount of substances other than cheese used in the Products" and "packaged and labeled the Products with the representation that the Products consisted of '100%' Parmesan cheese, knowing the label was false." [Dkt. 123, at ¶16; Dkt. 122, at ¶14]. The Complaints specify that, "because of ICCO's actions in adding substances other than Parmesan to its "100%" Parmesan cheese products … the representations it made on the packaging … are false, misleading and deceptive to consumers." [Dkt. 123, at ¶17; Dkt. 122, at ¶15]. Yet each Complaint then lumps the Defendants together as a group for purposes of attempting to establish joint liability. [Dkt. 123, at ¶¶ 20-21; Dkt. 122, at ¶¶ 18-19 ("Contrary to *Defendants'* 100% claims, the Products are not 100% cheese" and "*Defendants'* advertising, including *their* labels, is false, misleading, unfair, deceptive…") (emphasis added)].

## II.     APPLICABLE LAW AND LEGAL STANDARD

Target and ICCO adopt and incorporate by reference the legal standards set forth in Section I of the brief by Defendant Albertsons.

## III.    PLAINTIFFS' CLAIMS ARE PREEMPTED AS A MATTER OF LAW

Two types of federal preemption are applicable in this case: (1) express preemption, which is "where Congress has expressly preempted state law;" and (2) implied conflicts preemption,

which is "where federal law conflicts with state law" such that "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Wachovia Bank, N.A. v. Burke*, 414 F.3d 305, 313-14 (2d Cir. 2005). Although preemption typically speaks of federal statutes, a preemption analysis must also include federal agency regulations. *E.g.*, *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982) ("Federal regulations have no less pre-emptive effect than federal statutes."). In addition, courts ordinarily will defer to a federal agency's interpretation and construction of its own regulations. *Wis. Elec. Power Co. v. Reilly*, 893 F.2d 901, 907 (7th Cir. 1990).

## A.      Plaintiffs' Claims are Expressly Preempted

Plaintiffs' claims are expressly preempted by the FDCA, as amended by the NLEA, because each claim effectively seeks to impose requirements that are not identical to the FDA's standard of identity for grated cheeses, and attempts to expand the NLEA misbranding standard.

### 1.      Pertinent Regulatory Standards

The goal of the FDCA is to "protect the health and safety of the public at large." *POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228, 2234 (2014). To achieve this goal, Congress tasked the FDA with broad and exclusive authority to ensure that foods are "properly labeled." 21 U.S.C. § 393(b)(2)(A). Section 401 of the FDCA provides that, "[w]henever in the judgment of the Secretary such action will promote honesty and fair dealing in the interest of consumers, he shall promulgate regulations fixing and establishing for any food ... a reasonable definition and standard of identity[.]" 21 U.S.C. § 341. If the FDA elects to establish a definition and standard of identity for a food, it must "for any food or class of food in which optional ingredients are permitted … designate the optional ingredients which shall be named on the label." *Id.*

6

(a)     **FDA Definition and Standard of Identity for Grated Cheeses**

Pursuant to its authority, the FDA elected to establish a comprehensive definition and standard of identity for grated cheeses.  21 C.F.R. § 133.146 (the "SOI") defines "grated cheeses" as the "class of foods prepared by grinding, grating, shredding, or otherwise comminuting cheese of one variety or a mixture of two or more varieties."  *Id.* at 133.146(a).  The SOI applies to "[t]he cheese varieties … for which there are definitions and standards of identity[.]"  *Id.*  Parmesan is a cheese variety for which there is a definition and standard of identity.  *Id.* at § 133.165 (standard of identity for parmesan cheese).

The SOI also establishes various requirements for how the cheese used must be made and permits that "[o]ne or more of the optional ingredients specified in paragraph (c) of this section may be used." *Id.* at § 133.146(a).  Paragraph (c) of the SOI lists four optional ingredients that may be used in all grated cheeses: "(1) Antimycotics, (2) Anticaking agents, (3) Spices, and (4) Flavorings …." *Id.* at § 133.146(c).  Thus, a food that meets the requirements of paragraphs (a) and (b) of Section 133.146—and which may include any one or more of the four "optional ingredients" listed in paragraph (c)—is by definition, "grated cheese." *Id.* at § 133.146(d)(1).  The SOI also provides that "[i]f only one variety of cheese is used, the name of the food is 'grated ---- -------- cheese', the name of the cheese filling in the blank." *Id.* at § 133.146(d)(3)(i).  It also requires the name of the food to be accompanied "by a declaration indicating the presence of any added spice or flavoring."  It does not require a declaration indicating the presence of anticaking agents and antimycotics. *Id.* at § 133.146(d)(1).  Rather, these two ingredients need only be "declared on the label as required by the applicable sections of parts 101 and 130 of this chapter." *Id.* at § 133.146(e).

7

Although the SOI does not identify specific anticaking agents and antimycotics that may be used in grated cheese, its regulatory history and other applicable FDA pronouncements about these substances make it clear that cellulose is an anticaking agent; that there are no FDA regulations or pronouncements that contradict the representations on the Products' labels that cellulose and corn starch are used to prevent caking; and that potassium sorbate is an antimycotic.

### (i)     Powdered Cellulose and Corn Starch

The FDA first published the SOI in 1971.  35 Fed. Reg. 7791, 7791–92 (May 21, 1970) (to be codified at 21 C.F.R. § 19.791).  Even then, the SOI allowed a grated cheese product to contain "one or more" of certain listed "optional ingredients" that included "[a]n anticaking agent," which the FDA originally limited to three substances: "silicon dioxide …, calcium silicate …, [and] sodium silicoaluminate …." 21 C.F.R. § 19.791(a)(1) & (b)(2) (1971).  By 1977, the FDA had added a fourth anticaking agent, microcrystalline cellulose, to the list.  42 Fed. Reg. 14302, 14378-79 (March 15, 1977) (to be codified at 21 C.F.R. § 133.146).

In 1984, the FDA granted permission to three grated cheese manufacturers to "market test" grated cheese containing powdered cellulose as an anticaking agent.  49 Fed. Reg. 3270, 3270–71 (Jan. 26, 1984).  The following year, a number of manufacturers petitioned the FDA to amend the SOI "to permit use of powdered cellulose as an additional optional anti-caking ingredient."  Citizen Petition to Dockets Management Branch, Food and Drug Administration (April 15, 1985), at 2. The FDA issued a Proposed Rule on October 29, 1985, proposing to amend the standard of identity for grated cheeses to permit the use of "safe and suitable anticaking agents including powered cellulose."  50 Fed. Reg. 43720, 43720–21 (Oct. 29, 1985).

In proposing this rule change, the FDA also announced that "limiting a manufacturer's choice of ingredients by specifically listing each optional ingredient that may be used is unduly

restrictive" and that "providing for functional categories of safe and suitable optional ingredients … will benefit consumers by allowing a manufacturer to select less expensive or more readily available ingredients that are equally appropriate for a functional purpose." *Id*. at 43721. An amendment to the SOI that took effect on November 21, 1986, eliminated reference to any specific anticaking ingredients, including powdered cellulose, 51 Fed. Reg. 30210 (Aug. 25, 1986) (to be codified at 21 C.F.R. § 133.146); 51 Fed. Reg. 42088 (Nov. 21, 1986), but the FDA's statements leave no room for doubt that powdered cellulose is among the safe and suitable anticaking agents that may be used in grated parmesan cheese.

Finally, the labels on the Target Products identify corn starch as an anticaking ingredient and neither the Plaintiffs' allegations nor any FDA regulation or pronouncement contradicts that description. The FDA also classifies corn starch to be "generally recognized as safe," or a "GRAS substance" that may be used in food.[5]

### (ii) Potassium Sorbate

Another class of "optional ingredients" that the original, 1971 version of the SOI permitted was "mold-inhibiting ingredient[s];" namely, "sorbic acid, <u>potassium sorbate</u>, sodium sorbate, or any combination of two or more of these …." 21 C.F.R. § 19.791(b)(1) (1971) (emphasis added). Although the current version of the SOI uses the term "antimycotics" instead of the phrase "mold-inhibiting ingredients," antimycotics means anti-fungals or mold inhibitors.[6] Indeed, the FDA specifically identifies potassium sorbate as an antimycotic in the context of the types of mold-

---

[5] The FDA's Select Committee on Generally Recognized as Safe (or "GRAS") Substances found, in 1979, that there is no evidence that "cornstarch" poses a "hazard to the public when [it is] used at levels that are now current or that might reasonably be expected in the future." Select Comm. On GRAS Substances, SCOGS Report No. 115, Opinion: Starches, Cereal Starches, Pregelatinized Starch (1979).

[6] Mosby's Medical Dictionary 111 (10th ed. 2017) ("**antifungal**. 1. Pertaining to a substance that kills fungi or inhibits their growth or reproduction. … Also called antimycotic."); *see also* New Oxford American Dictionary 704 (3rd ed. 2010) (defining "fungus" to include molds).

inhibiting substances that are safe to use in cheese. 60 Fed. Reg. 67492, 67497 (Dec. 29, 1995) (recognizing that the standards of identity for certain cheeses still "specify antimycotics by name (*e.g.,* sorbic acid, potassium sorbate…)") (parenthetical in original); *see also, e.g.,* 21 C.F.R. § 133.187(d) (permitting, in the standard of identity for "semisoft cheeses," an "optional mold-inhibiting ingredient consisting of sorbic acid, potassium sorbate, [or other ingredients]"). The agency also deems potassium sorbate safe for use in food. 21 C.F.R. § 182.3640.

### (b)       Applicable FDA Labeling Requirements for Grated Cheeses

Although the Complaints do not allege that the Products violate the SOI's labeling requirements for anticaking agents and antimycotics, the labels themselves establish that "[e]ach of the ingredients used in the food [are] declared on the label as required by the applicable sections of parts 101 and 130 of this chapter." 21 C.F.R. § 133.146(e); *see also* 21 U.S.C. § 341 (requiring the FDA to "designate the optional ingredients which shall be named on the label" when establishing a standard of identity for a food). The FDA defines the "label" to encompass a "principal display panel" or "PDP," which is the "part of a label that is most likely to be displayed, presented, shown, or examined under customary conditions of display for retail sale," and an "information panel," which is the label panel immediately to the right of the PDP, as displayed to the consumer. 21 C.F.R. §§ 101.1 (PDP) and 101.2(b) (information panel).

All of the information that is required to appear on the label of any packaged food must appear either on the PDP or on the information panel. *Id.* at § 101.2(b). Ingredients "required to be declared on the label … of a food" must be "listed by common or usual name in descending order of predominance by weight[.]" *Id.* at § 101.4(a)(1). A food to which a chemical preservative, such as potassium sorbate, is added must also "bear a label declaration stating both the common or usual name of the ingredient(s) and a separate description of its function, e.g., 'preservative',

'to retard spoilage', 'a mold inhibitor', 'to help protect flavor' or 'to promote color retention.'" *Id.* at § 101.22(j). The Products' labels comply with all of these requirements, and there is no allegation to the contrary.

### 2. The NLEA's Express Preemption Provisions

In 1990, Congress amended the FDCA by enacting the NLEA to establish a regulatory scheme for food labeling and impose a series of express preemption provisions. 21 U.S.C. § 343-1(a)(1)–(5). The following preemption provision applies specifically to a food that is subject to a definition and standard of identity, as grated cheeses are:

> (a) … no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce—
>
> (1) any requirement for a food which is the subject of a standard of identity established under section 401 [21 USCS § 341] that is not identical to such standard of identity or that is not identical to the requirement of section 403(q) [21 USCS § 343(g)] …[.]

21 U.S.C. § 343-1(a)(1) (brackets in original).

Although the FDCA "does not create a private right of action," federal courts have found that the NLEA's proscription does not prohibit a private plaintiff from "enforc[ing] a violation of the [FDCA] as a violation of state law," so long as the private plaintiff seeks only to "impose the *identical* requirement or requirements" of the FDCA and its implementing regulations. *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011) (emphasis in original). Thus, the NLEA prohibits any state from imposing "any requirement" regarding grated cheeses "that is not identical to" the SOI published at 21 C.F.R. § 133.146, or any requirement that differs from the misbranding standard in Section 403(q) of the FDCA, codified at 21 U.S.C. § 343.

The NLEA misbranding standard applies to foods "for which a definition and standard of identity has been prescribed[.]" 21 U.S.C. § 343(g). That statute provides in relevant part that

11

"food shall be deemed misbranded … <u>unless</u> (1) it conforms to such definition and standard [of identity], <u>and</u> (2) its label bears the name of the food specified in the definition and standard, and, insofar as may be required by such regulations, the common names of optional ingredients (other than spices, flavoring, and coloring) present in such food." *Id.* (emphasis added).  Because this is the only misbranding provision in the FDCA that applies to foods for which a definition and standard of identity have been prescribed, Plaintiffs may bring an action that seeks to establish and enforce a violation of the identical misbranding standard in 21 U.S.C. § 343(g),[7] but are preempted from attempting to expand this standard.  21 U.S.C. § 343-1(a)(1); *see also Turek*, 662 F.3d at 426.

Numerous district and appellate court decisions leave no doubt that the phrase in the NLEA, "not identical to," is one that "sweeps broadly" and includes "positive enactments, such as statutes and regulations, as well as common-law duties and judge-made rules." *Turek v. Gen. Mills, Inc.*, 754 F. Supp. 2d 956, 958 (N.D. Ill. 2010) (internal quotation marks and citations omitted), *aff'd*, 662 F.3d 423 (2011).  And according to the FDA, "'not identical to' does not refer to the specific words" in a federally imposed requirement for a food, "but instead means that the State requirement <u>directly or indirectly</u> imposes obligations or contains provisions concerning the composition or labeling of food, or concerning a food container" that either "[a]re not imposed by or contained in the applicable provision (including any implementing regulation) of section 401 or 403 of the act," <u>or</u> that "[d]iffer from those specifically imposed by or contained in the applicable provision (including any implementing regulation) of section 401 or 403 of the act."  21 C.F.R. §100.1(c)(4) (emphasis added).

---

[7]  This assumes, of course, the existence of a state statute that would permit such a claim.

3.      **Plaintiffs' Claims are Expressly Preempted by the NLEA**

Plaintiffs' allegations, if true, establish that Defendants' Products meet the SOI and are not misbranded under 21 U.S.C. § 343 (g).  Accordingly, their only path to success is through the imposition of grated cheese composition, labeling, and misbranding standards that are not identical to those of the FDCA and its implementing regulations.

(a)      **The Complaints Seek to Impose Requirements That Are Not Identical to the FDA's Definition and SOI for Grated Cheeses**

The Complaints' allegation that the Products do not contain "100% parmesan cheese" is irrelevant.  Plaintiffs can only succeed on their claims by proving, and can survive dismissal on preemption grounds only by alleging, that the Products were not "100%" of what the FDA's SOI *defines to be* "grated cheese" or "grated parmesan cheese."  Put in this proper context, Plaintiffs' allegations backfire.  Their contention that the Products contain parmesan cheese, plus anticaking agents (cellulose and corn starch),[8] plus an antimycotic (potassium sorbate) *establishes* that the Products satisfy the applicable SOI and that the Products are, by definition, "grated parmesan cheese."  One hundred percent.

The Complaints' allegations also demonstrate that the Products' labels conform to the SOI's requirement that they "bear the name of the food," which is "grated cheese" (and optionally, "grated parmesan cheese"), and declare the permitted optional ingredients on the Products' information panel.  Because the SOI does not contain any additional declaration requirement for anticaking agents and antimycotics but requires only that these other ingredients appear somewhere on a grated cheese product's label (as they do on the Products' labels in this case), Plaintiffs are preempted from attempting to impose any new or different requirements.  They are

---

[8]  Again, there are no allegations in the Complaints that call into question the accuracy of the labels' identification of cellulose and corn starch as anticaking agents.

likewise prohibited from requesting new labeling requirements directly or indirectly, whether by asking for injunctive relief or seeking to impose damages or other remedies against the Defendants for failing to more prominently disclose the presence of these ingredients in the Products. *E.g., Turek*, 662 F.3d at 427 ("The disclaimers that the plaintiff wants added to the labeling of the defendants' inulin-containing chewy bars are not identical to the labeling requirements imposed on such products by federal law, and so they are barred."); *see also Mills v. Giant of Md., LLC*, 441 F. Supp. 2d 104, 105-06 (D.D.C. 2006) (preempting state law claims seeking to prohibit milk products from being sold without warning labels about the possible risks of lactose intolerance).

#### (b)    The Complaints Also Seek to Impose a New Mislabeling Standard

Under the controlling FDCA misbranding provision, Defendants' Products are deemed misbranded only if they: (1) fail to conform with the definition and standard of identity established by 21 C.F.R. § 133.146, and (2) bear a label that declares the Products to be "grated cheese" or "grated parmesan cheese" but fails to identify the "common names of optional ingredients … present in [the] food." 21 U.S.C. § 343(g). The allegations in the Complaints cannot satisfy the first prong of the misbranding test, for the reasons explained above. Furthermore, Plaintiffs do not allege that cellulose, corn starch, and potassium sorbate are not the "common names" for these optional ingredients. Because the Complaints cannot possibly establish a violation of 21 U.S.C. § 343(g), Plaintiffs' only possible avenue for establishing liability for Defendants' use of "100% Grated Parmesan Cheese" or "Grated 100% Parmesan Cheese" on the Products' labels is to "recover under a broader definition of 'misbranding' than provided for in [the] NLEA," which would "result[] in an inconsistent standard for labeling." *Turek*, 754 F. Supp. 2d at 959 (internal quotation marks and citation omitted). For that reason, all of their claims are preempted.

14

In reality, Plaintiffs' mistaken belief that 100% "grated parmesan cheese" is synonymous with 100% "cheese" stems from the differences between the FDA's standards of identity for "parmesan cheese" and "*grated* parmesan cheese," not from the Products' labels. Plaintiffs mistakenly believed that they were buying "parmesan cheese that was grated" but in fact were buying a different food product, called "grated parmesan cheese." Plaintiffs may believe that the FDA should do more to distinguish these two foods or change the labeling requirements for grated cheeses, but the NLEA preempts them from using any state law as a means to "fill what [they] perceive to be gaps in the regulatory requirements imposed by federal law." *Chi. Faucet Shoppe, Inc. v. Nestlé Waters N. Am. Inc.*, 24 F. Supp. 3d 750, 759 (N.D. Ill. 2014). The FDA itself recognizes that, "[o]ne of the goals of the national uniformity provisions of the 1990 amendments" was to "give industry some relief from some types of State requirements that interfere with their ability to market products in all 50 States in an efficient and cost-effective manner" but that "the net benefits from national uniformity … outweigh the loss in consumer protection that may occur as a result." 60 Fed. Reg. 57076, 57120 (Nov. 13, 1995). Plaintiffs' claims threaten to undermine the very purpose of the NLEA. *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (in preemption cases, the "purpose of Congress is the ultimate touchstone").

## B.   Plaintiffs' Claims are also Conflict Preempted

The Court should find that Plaintiffs' claims are also conflict preempted. "Implied conflicts preemption" is "applicable 'where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Mills*, 441 F. Supp. 2d at 106 (quoting *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992)). The FDA has repeatedly approved the use of the label "100% Grated Parmesan Cheese" on a product that meets the definition and standard of

15

identity for grated parmesan cheese. Granting the relief that Plaintiffs demand would directly contradict these FDA pronouncements.[9]

In 1999, the FDA expressly recognized that grated parmesan cheese products containing anticaking and antimycotic ingredients may be labeled as "100% Grated Parmesan Cheese," when it issued a temporary, 15-month permit to Kraft Foods, Inc. ("Kraft") "to market test a product designated as '100% Grated Parmesan Cheese' that deviates from the U.S. standards of identity for parmesan cheese and grated cheeses." 64 Fed. Reg. 16734 (Apr. 6, 1999). The FDA's permit allowed Kraft to sell a grated parmesan cheese product that "is formulated by using a different enzyme technology that fully cures the [parmesan] cheese in 6 months rather than 10 months"[10] but that otherwise met "all the requirements of the standards [of identity] with the exception of this deviation." *Id.* In doing so, the FDA stated that the product would be "marketed as grated parmesan cheese" and would "bear the name '100% Grated Parmesan Cheese.'" *Id.*

The following year, the FDA found that "it is in the interest of consumers to issue an extension of the time period" for Kraft's temporary permit, and again noted that the name of the product would continue to be "100% Grated Parmesan Cheese." 65 Fed. Reg. 83040 (Dec. 29, 2000) (setting the expiration date of the temporary permit as "either … the effective date of a final rule amending the standard of identity for parmesan cheese" based on a petition filed by Kraft, "or 30 days after denial of the petition, whichever the case may be") (emphasis added). The temporary permit remains in effect to this day.

The FDA's repeated approval of the use of "100% Grated Parmesan Cheese" to describe grated parmesan cheese products that meet "all the requirements of the standards [of identity]"

---

[9] Kraft presents a similar "safe harbor doctrine" argument in Argument Section II of its brief, with which Target and ICCO agree.

[10] The SOI for parmesan cheese, 21 C.F.R. § 133.165(a), requires parmesan to be "cured for not less than 10 months," and so Kraft applied for and was granted a temporary permit to deviate from that requirement.

impliedly preempts all of Plaintiffs' claims. Put differently, if Plaintiffs' claims were successful, it would be impossible for Defendants to abide by the agency's guidance without also violating state law. This is the very circumstance in which the conflict preemption doctrine applies.

## IV.     THE COMPLAINTS DO NOT STATE A PLAUSIBLE CLAIM FOR RELIEF

"'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Complaints fail this standard for a variety of different reasons discussed below.

### A.     Plaintiffs do not Plausibly Allege that the Products' Labels are Likely to Deceive a Reasonable Consumer

For the reasons explained in the Memorandum supporting Kraft's Motion to Dismiss, Plaintiffs' factual allegations, even if true, do not establish that a reasonable consumer acting reasonably under the circumstances would be misled by the Products' labels. Defendants adopt and incorporate herein by reference Kraft's brief at Argument Section I.

### B.     Plaintiffs' Group Pleading Also Fails to State any Plausible Claim as to Target

Plaintiffs' allegations also fail to plead sufficient facts to state a claim against Target that is plausible on its face. The Target Complaint alleges that ICCO, not Target, manufactured, packaged, and labeled the Target Products "with the representation that the Products consisted of '100%' Parmesan cheese, knowing the label was false," and that, "because of ICCO's actions in adding substances other than Parmesan to its '100%' Parmesan cheese products … the representations it made on the packaging … are false, misleading and deceptive to consumers." [Dkt. 122 at ¶¶ 14-15].[11] The only allegation that attributes any of these alleged acts to Target is

---

[11]   Perhaps recognizing that the FDA defines "grated parmesan cheese" to be very different than "parmesan cheese" and the fallacy of their claims because of that fact, the Complaints repeatedly misrepresent that the Defendants labeled their products as "100% cheese" and "100% Parmesan cheese." This begs the question:

a single, unsupported legal conclusion that it is a "co-participant[] in committing the acts of consumer fraud alleged." [Dkt. 122 at ¶ 14]. Yet "labels and conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice to satisfy even the notice pleading requirements of Federal Rule of Civil Procedure ("Rule") 8(a), much less the heightened pleading requirements of Rule 9(b) that apply to all claims sounding in fraud in the Complaints. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiffs cannot overcome this deficiency merely by referring to Target and ICCO as a single group of "Defendants" because a "complaint that attributes misrepresentations to all defendants, lumped together for pleading purposes, generally is insufficient." *Sears v. Liken*, 912 F.2d 889, 893 (7th Cir. 1990) (quoting *Design Inc. v. Synthetic Diamond Tech., Inc.*, 674 F. Supp. 1564, 1569 (N.D. Ill. 1987)). "[W]ithin the realm of Rule 9(b), 'everyone did everything' allegations are not countenanced." *Prime Media Grp. LLC v. Acer Am. Corp.*, CASE NO. 5:12-cv-05020 EJD, 2013 U.S. Dist. LEXIS 22437, at *9 (N.D. Cal. Feb. 19, 2013) (citing *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011)); *see also Lubin v. Sybdeon Corp.*, 688 F. Supp. 1425, 1443 (C.D. Cal. 1988) ("Courts must be especially attentive to a plaintiff's 'dragnet' tactic of indiscriminately grouping all of the individual defendants into one wrongdoing monolith.").[12]

## C. Plaintiffs' Allegations of Injury are Equally Deficient

Plaintiffs' claims also fall short of alleging any facts that establish a connection between the presence of non-cheese ingredients in the Products and the allegation that they "overpaid" for the Products that they had purchased repeatedly before suing the Defendants. The Complaints do not consider whether these optional ingredients actually provided benefits or attributes that might

---

if Defendants' *actual* label statements were false, deceptive, or misleading, why do Plaintiffs so frequently misquote them in their Complaints?

[12] Plaintiffs' allegations against Wal-Mart suffer from the same deficiency, as Wal-Mart correctly points out in Sections IV.A & V of its brief, which Target adopts and incorporates by reference.

have been important to the Plaintiffs, nor whether and, if so, how the addition of cellulose, corn starch, and potassium sorbate impacted the prices charged for the Products over the years. Instead, the Complaints leap to the unsupported conclusion that the presence of one or more "non-cheese" ingredients resulted in overpriced Products. These are "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" that cannot meet even the Rule 8(a) pleading standard. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

## V.  PLAINTIFFS LACK STANDING TO BRING THEIR CLAIMS

A federal court may exercise jurisdiction "only in live 'cases' or 'controversies,' and 'one of the controlling elements in the definition of a case or controversy under Article III' is standing." *Bond v. Utreras*, 585 F.3d 1061, 1068–69 (7th Cir. 2009) (quoting *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 598 (2007)). To establish standing, Plaintiffs bear the burden of proving that each of them "has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 691 (7th Cir. 2015) (internal quotation marks and citation omitted). The allegations in the Complaint do not satisfy this critical test.

## A.  Plaintiffs do not Satisfy the Article III Injury Prong

For reasons similar to why Plaintiffs' bare-bones allegations that they "overpaid" for the Products lack plausibility, they also fail to establish that Plaintiffs have suffered a concrete injury sufficient to establish Article III standing to bring any of their claims. For example, they do not allege what they would have been willing to pay had they known that the Products were not "100% cheese." *E.g.*, *Askin v. Quaker Oats Co.*, 818 F. Supp. 2d 1081, 1084 (N.D. Ill. 2011) (stating that a price differential can be a "concrete injury-in-fact" when a plaintiff alleges "he paid more for those products than he would have had he known they contain an ingredient he was determined to

19

avoid"). Nor do Plaintiffs allege how or why the Products had a "diminished value" to them because of the presence of cellulose, corn starch, and potassium sorbate. *E.g., Frye v. L'Oréal USA, Inc.*, 583 F. Supp. 2d 954, 958 (N.D. Ill. 2008) (granting, on the basis of standing, a motion to dismiss claims brought against a manufacturer that allegedly failed to disclose that its lipstick contained "dangerous levels of lead" because the plaintiff did not allege that she would not have purchased lipstick generally, that she would have purchased a cheaper product, or that the lipstick she did purchase had "diminished value" because of the lead).

Plaintiffs do not even allege that they purchased Defendants' Products to the exclusion of other grated cheese products, or identify alternative products they would have purchased had they actually read Defendants' labels and discovered the presence of "non-cheese" ingredients in the Products. *E.g., Ibarrola v. Kind, LLC*, No. 13 C 50377, 2014 U.S. Dist. LEXIS 95833, at *11–13 (N. D. Ill. July 14, 2014) (no standing because plaintiff failed to "allege that she would have purchased a less expensive snack or no snack at all had she known that [the product] contained cane syrup," or that the product "had a diminished value because [it] contained sugar cane syrup," or would be "more valuable—either to her or to the reasonable consumer—if the product did not contain cane syrup"); *Veal v. Citrus World, Inc.*, Case No. 2:12-CV-801-IPJ, 2013 U.S. Dist. LEXIS 2620, at *10–13 (N.D. Ala. Jan. 8, 2013) (no standing when plaintiff's claim against a maker of orange juice alleged only "general grievances" and not a "concrete and particularized injury"); *In re Fruit Juice Prods. Mktg. & Sales Practices Litig.*, 831 F. Supp. 2d 507, 512 (D. Mass. 2011) (no standing when plaintiffs alleged only that they did not receive the "benefit of the bargain" when they purchased fruit juice).

**B.      Plaintiffs do not Satisfy the Article III Causation Prong**

Plaintiffs' allegations also fall short of alleging facts sufficient to create a "causal connection" between their alleged injury and Defendants' conduct, *Winkler v. Gates*, 481 F.3d 977, 979 (7th Cir. 2007), or an injury that is "fairly traceable" to the conduct complained of, *Remijas*, 794 F.3d at 691.  The Complaints are devoid of any allegation (or any facts in support thereof) that Plaintiffs purchased the Products in reliance on the "100%" statements on the labels.  Instead, all of the Plaintiffs allege that they "purchased the [Products] *believing* [they were] 100% Parmesan cheese."  [Dkt. 123, at ¶¶ 7-12; Dkt. 122, at ¶¶ 7-10 (emphasis added)].  They do not allege how or why they formed that belief, particularly when the Products' labels do not contain "100% cheese" representations but do disclose the "non-cheese" ingredients.  Plaintiffs do not even allege that they intended to purchase a product that contained only cheese.  *E.g.*, *Askin*, 818 F. Supp. 2d at 1084 (price differential can be a "concrete injury-in-fact" when a plaintiff alleges that "he paid more for those products than he would have had he known they contain an ingredient he was determined to avoid").

**C.      Plaintiffs Lack Standing to Represent a Nationwide Class or to Request an Injunction**

Target and ICCO adopt and incorporate Sections III.B–C of Albertsons' brief and Argument Sections IV, V.A, & VI.A–B of Kraft's brief that explain why Plaintiffs lack standing to pursue any claims on behalf of a nationwide class, or standing to seek injunctive relief.

**VI.      PLAINTIFFS' WARRANTY CLAIMS SHOULD BE DISMISSED**

Each Plaintiff asserts claims for breaches of express and implied warranties under their respective home states' adopted versions of Article 2 of the Uniform Commercial Code ("UCC") Section 2-313, which the Complaints allege to be "identical or substantially similar … in each and

every state." [Dkts. 122 & 123, at Counts I & III (collectively, the "Warranty Claims")]. The factual allegations, however, are insufficient to state any Warranty Claim.

## A.    Failure to Allege Pre-Suit Notice

The UCC requires buyers to provide sellers with notice of alleged breaches of express and implied warranty as a prerequisite to bringing suit. *E.g.,* 810 ILCS 5/2-607(3)(a) (requiring buyer, "within a reasonable time after he discover[ed] or should have discovered any breach" to "notify the seller of breach or be barred from any remedy").[13]  The Complaints do not allege that Plaintiffs complied with their obligation.  Because Wal-Mart and Target are each defendants to warranty claims brought under California and Florida laws, Target adopts and incorporates Wal-Mart's pre-suit notice arguments as to those two states at Section VI.A of Wal-Mart's brief.  Albertsons and Target face warranty claims under Illinois law, and so Target incorporates Section VI.A of Albertsons' brief explaining why the Illinois warranty claims also fail for lack of pre-suit notice.

The Missouri law claims against Target should be dismissed for the same reason. *E.g.,* *Budach v. NIBCO, Inc.*, Case No. 2:14-cv-04324-NKL, 2015 U.S. Dist. LEXIS 150714, at *12 (W.D. Mo. Nov. 6, 2015) (dismissing plaintiff's claims for breaches of express and implied warranties for failure to allege "minimal pre-suit notice of breach in order to assert a warrant claim."). Finally, Alabama's courts also require pre-suit notice to manufacturers. *Hobbs v. Gen. Motors Corp.*, 134 F. Supp. 2d 1277, 1285 (M.D. Ala. 2001) ("[R]emote manufacturers should be afforded the same protections as sellers, either by way of notice provided directly to them, or through notice provided to them by the direct seller from the buyer."). The Court should dismiss all Warranty Claims against Target and the Alabama claims against ICCO.[14]

---

[13] As the Complaints allege that every state's applicable UCC provisions are "identical or substantially similar" this Memorandum cites only to the Illinois UCC to avoid repetition and for purposes of brevity.

[14]  Because each Plaintiff repeatedly purchased the Products over a period of years before bringing suit, each of them *should have* long ago discovered the presence of the so-called "non-cheese" ingredients for

**B.      Plaintiffs' Warranty Claims are Implausible**

The Warranty Claims also fail as a matter of law as to Target and ICCO because none of the Products' labels at issue represents or warrants that Products are "100% cheese," or "contain only cheese" - which are the putative "warranty" statements upon which Plaintiffs rely.  [Dkt. 123 at ¶¶ 33, 34 & 52; Dkt. 122 at ¶¶ 31-32].  For the same reasons that the other defendants point out in their respective briefs, no defendant can be liable for warranties that they did not make, and that are based upon subjective interpretations that ignore the ingredient list on the Products' labels. ICCO and Target adopt and incorporate by reference Argument Section VI.A of Kraft's brief, Section VI.B of Albertsons' brief, and Section VI.B of Wal-Mart's brief.  Indeed, if Defendants warranted anything, it was that the Products contained *all* ingredients identified on the labels.

**C.      Plaintiffs' Implied Warranty Claims are not Adequately Alleged**

Plaintiffs' allegations that Defendants breached the implied warranty of merchantability are deficient because the Complaints do not allege that the Products Plaintiffs purchased were unfit for their ordinary purpose, which is a fundamental element of the claim.  *E.g.,* 810 ILCS 5/2-314(2)(c) (providing that, "to be merchantable" goods must be … "fit for the ordinary purposes for which such goods are used"); *see also, e.g., Mercado v. Bayer Healthcare Pharms., Inc.*, No. 14 C 6699, 2015 U.S. Dist. LEXIS 73383, at * 4–5 (N.D. Ill. June 5, 2015) (dismissing breach of implied warranty claim because the complaint at issue contained "merely formulaic recitations of elements, unadorned by specific facts.")  In fact, Plaintiffs' repeated Product purchases over the years more plausibly establish that Defendants' Products *were* fit for their ordinary purpose.

---

purposes of UCC § 2-607.  Their delay is unreasonable as a matter of law.  *E.g., Pace Am., Inc. v. Elixir Indus.*, No. 06 C 5661, 2009 U.S. Dist. LEXIS 6281, at *14–16 (N.D. Ill. Jan. 27, 2009) (purchaser that waited years to allege breach of warranty arising from the manner in which seller's coils were weighed - a fact that was readily discoverable - failed as a matter of law to provide timely, reasonable notice).

## VII.    PLAINTIFFS' UNJUST ENRICHMENT CLAIMS ARE DEFICIENT

Plaintiffs' unjust enrichment claims against Target and ICCO under the laws of California and Florida, and against ICCO under the laws of Alabama, Minnesota, New Jersey and New York, all fail as a matter of law for the reasons stated in Wal-Mart's brief at Section VIII.B (Minnesota law); Section IX.B (New York law); Section X.B (Florida law); Section XI.B (New Jersey law); Section XII.B (Alabama law); and Section XIII.B (California law), which Target and ICCO adopt and incorporate by reference.  They also adopt Section VII.A of Defendant Albertsons' brief, which provides a thorough analysis of the reasons why Plaintiffs' Illinois unjust enrichment claims are deficient.

The Court should also dismiss the Missouri unjust enrichment claim against Target and ICCO.  In Missouri, "[a] claim for unjust enrichment has three elements: a benefit conferred by a plaintiff on a defendant; the defendant's appreciation of the fact of the benefit; and the acceptance and retention of the benefit by the defendant in circumstances that would render that retention inequitable."  *Hertz Corp. v. RAKS Hospitality, Inc.*, 196 S.W.3d 536, 543 (Mo. 2006).  It is not enough to allege that a defendant received a benefit; rather, there must be a showing that "that it would be unjust for the defendant to retain the benefit." *Adams v. One Park Place Investors, LLC*, 315 S.W.3d 742, 749 (Mo. Ct. App. 2010).  No such showing has been made or alleged here.

## VIII.    PLAINTIFFS' CONSUMER FRAUD ACT CLAIMS SHOULD BE DISMISSED

Finally, Plaintiffs' consumer protection act claims against Target and ICCO under the laws of California and Florida, and against ICCO under the laws of Alabama, Minnesota, New Jersey and New York, also fail as a matter of law for the reasons stated in Wal-Mart's brief at Section VIII.A (Minnesota law); Section IX.A (New York law); Section X.A (Florida law); Section XI.A (New Jersey law); Section XII.A (Alabama law); and Section XIII.A (California law), which

24

Target and ICCO adopt and incorporate by reference. They also adopt Albertsons' argument in Section V.A.1 of its brief, in support of their argument that the statements on the Wal-Mart and Target Products are not actionable as a matter of Illinois law.

Plaintiff Zachary fails to a state a consumer fraud claim under the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. §§ 407.010, *et seq*. The MMPA "demands a causal connection between the ascertainable loss and the unfair or deceptive merchandising practice." *Owen v. Gen. Motors Corp*, 533 F.3d 913, 922 (8th Cir. 2008). Zachary does not plausibly allege that the Target Products' labels were false or deceptive because the labels describe the exact contents of the container (100% grated parmesan cheese, as federally defined), and disclose every ingredient. *E.g.*, *Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 762 (W.D. Mo. 2015) ("The Court agrees that the federally-compliant ingredient label on the back of the Chips defeats Plaintiff's claims that the Chips' [100% Natural] labeling constitutes an unlawful practice under the MMPA."). Nor do his allegations establish any link between the labeling on the Target Products, his belief that the products contained only cheese, and his assertion that he "overpaid" for them. Without any "causal connection" between a "deceptive" practice and an "ascertainable loss," the MMPA is deficient. *Owen*, 533 F.3d at 922.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiffs' Consolidated Class Action Complaints in their entirety, with prejudice, and grant Defendants any other relief as this Court deems just and proper.

Dated:  January 6, 2017                           Respectfully submitted,


                                                    /s/ Joshua A. Glikin
                                                  Joshua A. Glikin
                                                  Patrick R. Buckler
                                                  Bowie & Jensen, LLC
                                                  29 W. Susquehanna Avenue, Suite 600
                                                  Towson, Maryland  21204
                                                  (410) 583-2400  Telephone
                                                  (410) 583-2437  Facsimile
                                                  glikin@bowie-jensen.com
                                                  buckler@bowie-jensen.com

                                                  *Attorneys for Defendants Target Corporation*
                                                  *and ICCO Cheese Company, Inc.*




## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was filed on January 6, 2017, with the Clerk of the Court by using the CM/ECF system, which will send a notice of the filing to all counsel of record.

                                                    /s/ Joshua A. Glikin
                                                  Joshua A. Glikin

26