## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **IN RE:  100% GRATED PARMESAN CHEESE MARKETING AND SALES PRACTICES LITIGATION** | **Civil Action No. 16 CV 5802** |
| | **MDL 2705** |
| *This Document Relates to all Cases on The Publix Super Markets, Inc. Track* | **Judge Gary S. Feinerman** |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
## CONSOLIDATED CLASS ACTION COMPLAINT

Gary Hansen (admitted *pro hac vice*)
Heidi A.O. Fisher (admitted *pro hac vice*)
FOX ROTHSCHILD LLP
222 South Ninth Street
Suite 2000
Minneapolis, MN  55402-3338
Phone: 612.607.7000
Facsimile:  612.607.7100
ghansen@foxrothschild.com
hfisher@foxrothschild.com

Joseph E. Collins
FOX ROTHSCHILD LLP
353 N. Clark Street, Suite 3650
Chicago, Illinois 60654
Phone: 312.517.9227
Facsimile:  312.517.9201
jcollins@foxrothschild.com

*Counsel for Defendant Publix Super Markets, Inc.*

## TABLE OF CONTENTS

**Page**

PRELIMINARY NOTE ................................................................................................. 1

INTRODUCTION ....................................................................................................... 1

FACTUAL ALLEGATIONS ......................................................................................... 2

ARGUMENT .............................................................................................................. 5

I.      LEGAL STANDARD .......................................................................................... 5

II.     GOVERNING FDA STATUTES AND REGULATIONS ............................................. 5

III.    STANDING ..................................................................................................... 5

IV.    PREEMPTION .................................................................................................. 5

V.     COUNT I (VIOLATION OF FDUTPA) FAILS TO STATE A CLAIM ........................ 5

       A.    The Alleged Statements Are Not Misleading as a Matter of Law ........................ 6

            1.    The Statements Are Not Actionable Under § 501.212(1) ........................ 6

            2.    No Reasonable Consumer Would Be Misled By Publix's Labels ............ 7

       B.    Plaintiffs Have Failed to Sufficiently Plead Causation and Damages ................. 8

VI.    COUNTS II AND III (BREACH OF EXPRESS AND IMPLIED WARRANTIES)
        FAIL TO STATE A CLAIM ................................................................................ 9

       A.    Plaintiffs' Failure to Provide Pre-Suit Notice Bars Plaintiffs' Breach of
            Warranty Claims ..................................................................................... 9

       B.    Plaintiffs' Express Warranty Claims Should be Dismissed Because No
            Express Warranties Were Breached .......................................................... 10

       C.    Plaintiffs Fail To Allege a Breach of Implied Warranty ..................................... 12

VII.   COUNT IV (UNJUST ENRICHMENT) FAILS TO STATE A CLAIM BECAUSE
        PLAINTIFFS HAVE AN ADEQUATE REMEDY AT LAW ......................................... 14

CONCLUSION ........................................................................................................... 15

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*American Honda Motor Co., Inc. v. Motorcycle Information Network, Inc.*,
  390 F. Supp. 2d 1170 (M.D. Fla. 2005) ...............................................................................14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...............................................................................................................4

*Berenguer v. Warner-Lambert Co.*,
  No. 02-05242, 2003 WL 24299241 (Fla. Cir. Ct. July 31, 2003).......................................6, 7

*Blair v. Wachovia Mortgage Corp.*,
  No. 5:11-CV-566-Oc-37TBS, 2012 WL 868878 (M.D. Fla. Mar. 14, 2012) .........................6

*Burns v. Winnebago Industries, Inc.*,
  492 Fed. App'x 44 (11th Cir. 2012)...............................................................................10, 11

*Caribbean Cruise Line, Inc. v. Better Business Bureau of Palm Beach County, Inc.*,
  169 So. 3d 164 (Fla. Dist. Ct. App. 2015) .............................................................................9

*Chin v. General Mills, Inc.*,
  No. 12-2150, 2013 WL 2420455 (D. Minn. June 3, 2013) ...................................................12

*Dunham-Bush, Inc. v. Thermo-Air Service, Inc.*,
  351 So. 2d 351(Fla. Dist. Ct. App. 1977)............................................................................11

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995) .................................................................................................12

*General Matters, Inc. v. Paramount Canning Co.*,
  382 So. 2d 1262 (Fl. Dist. Ct. App. 1980).............................................................................10

*Herazo v. Whole Foods Market, Inc.*,
  No. 14-61909-CIV, 2015 WL 4514510 (S.D. Fla. July 23, 2015) .......................................14

*J. C. Penney Company, Inc. v. Koff*,
  345 So. 2d 732 (Fla. Dist. Ct. App. 1977)......................................................................11, 12

*Jovine v. Abbott Laboratories, Inc.*,
  795 F. Supp. 2d 1331 (S.D. Fla. 2011)............................................................... 9, 10, 11, 14

*Kuenzig v. Hormel Foods Corp.*,
  505 F. App'x 937 (11th Cir. 2013) ........................................................................................7

*PNR, Inc. v. Beacon Property Management, Inc.*,
   842 So. 2d 773 (Fla. 2003) ........................................................................................... 6, 7

*Prohias v. AstraZeneca Pharmaceuticals, L.P.*,
   958 So. 2d 1054 (Fla. Dist. Ct. App. 2007) ...................................................................... 7

*Pye v. Fifth Generation, Inc.*,
   No. 4:14CV493-RH/CAS, 2015 WL 5634600 (N.D. Fla. Sept. 23, 2015) ...................... 8, 13

*Randolph v. J.M. Smucker Co.*,
   No. 13-80581-CIV, 2014 WL 1018007 (S.D. Fla. Mar. 14, 2014) ................................. 9, 10

*Rollins, Inc., v. Butland*,
   951 So. 2d 860 (Fla. Dist. Ct. App. 2006) ....................................................................... 6, 9

*Rosenblum v. Travelbyus.com Ltd.*,
   299 F.3d 657 (7th Cir. 2002) ......................................................................................... 3

*Specialized Machinery Transport, Inc. v. Westphal*,
   872 So. 2d 424 (Fla. Dist. Ct. App. 2004) ....................................................................... 11

*U.S. Rubber Products v. Clark*,
   200 So. 385 (Fla. 1941) ................................................................................................. 12

*Virgilio v. Ryland Group, Inc.*,
   680 F.3d 1329 (11th Cir. 2012) ...................................................................................... 9

*William Ryan Homes Florida, Inc. v. Whitney National Bank*,
   No. 8:12-CV-1575-T-33TGW, 2012 WL 4328769 (M.D. Fla. Sept. 30, 2012) ................. 14

*Workman v. Plum, Inc.*,
   141 F. Supp. 3d 1032 (N.D. Cal. 2015) ........................................................................... 12

*Zlotnick v. Premier Sales Group, Inc.*,
   480 F.3d 1281 (11th Cir. 2007) ...................................................................................... 6, 7

**Statutes**

Fla. Stat. Ann. § 501.202(2) ............................................................................................. 6

Fla. Stat. Ann. § 501.204(1) ............................................................................................. 5

Fla. Stat. Ann. § 501.211(1) ............................................................................................. 8

Fla. Stat. Ann. § 501.211(2) ............................................................................................. 8

Fla. Stat. Ann. § 501.212(1) ............................................................................................. 6

Fla. Stat. Ann. § 672.313 ................................................................................................. 9, 11

Fla. Stat. Ann. § 672.314 ........................................................................................9, 13

Fla. Stat. Ann. § 672.317 ..............................................................................................12

Fla. Stat. Ann. § 672.607(3)(a) ..............................................................................9, 10

Fla. Stat. § 672.313 ........................................................................................................11

Fla. Stat. § 672.314(c) ...................................................................................................13

**Other Authorities**

21 C.F.R. § 133.146 ..........................................................................................................3

21 C.F.R. § 133.165 ..........................................................................................................4

21 C.F.R. § 133.183 ..........................................................................................................4

Federal Rule of Civil Procedure 9(b) .........................................................................6

## PRELIMINARY NOTE

On December 12, 2016, the Joint Panel on Multidistrict Litigation transferred three lawsuits pending against Publix Super Markets, Inc. ("Publix") in the federal courts of Florida to this MDL proceeding. After the Court granted Plaintiffs' motion to file a Consolidated Class Action Complaint ("Complaint" or "Publix Complaint"), Plaintiffs filed their Complaint on December 27, 2016. (ECF 143.)

Publix is represented by the same law firm that represents the Defendants on the Albertsons and Supervalu Track of this Multidistrict Litigation. The Albertsons/Supervalu defendants filed their motion to dismiss the complaint pending against them ("Supervalu Complaint") on January 5, 2017. Though the Publix Complaint and the Supervalu Complaint assert claims under the laws of different states,[1] they are otherwise very similar. For that reason, Publix will rely substantially on the memorandum submitted in support of the Albertsons/Supervalu motion to dismiss. (ECF 157.) This memorandum will be limited to noting the slight factual distinctions between the two complaints and discussing the application of Florida law to Plaintiffs' claims.

## INTRODUCTION

Both Supervalu and Publix sell grated Parmesan and grated Romano and Parmesan cheese products. Publix sells its grated cheese products labeled: "100% Real Grated Parmesan Cheese" and "100% Real Grated Romano Parmesan Cheese."[2] Supervalu sells its grated cheese product as "100% Grated Parmesan Cheese." Thus, the only "front of the label" difference between the

---

[1] The Publix Complaint implicates Florida law while the Supervalu Complaint implicates Alabama and Illinois law.

[2] The claims asserted with respect to "100% Real Grated Parmesan Cheese" are the same as the claims asserted with respect to "100% Real Romano Parmesan Cheese." For ease of reference, this memorandum will refer to the products collectively as Grated Parmesan Cheese, with the arguments applying equally to Grated Parmesan and Grated Romano Parmesan Cheese.

Publix and Supervalu grated cheese products is the addition of "Real" in describing the Publix products. The "back of the label" differences between the Supervalu and Publix products are also very slight, and both labels prominently disclose the presence of cellulose as an anticaking agent.

All of Plaintiffs' claims are premised on the incorrect assumption that Publix Grated Parmesan Cheese is not, in fact, 100% Real Grated Parmesan Cheese. Because that assumption is wrong as a matter of law, each of the claims in the Complaint fails to state a claim upon which relief can be granted and should be dismissed. Moreover, Plaintiffs' attacks on FDA's required nomenclature are at heart an attack on FDA regulations and should be dismissed under the doctrine of preemption and under the safe harbor doctrine. For these reasons and for other reasons set forth in this memorandum, Publix requests the Court to dismiss the Complaint with prejudice.

## FACTUAL ALLEGATIONS

Plaintiffs Pellitteri and Rudder are citizens of Florida. (Compl. ¶¶ 7–8.) They each purchased Publix Grated Parmesan Cheese from retailers in their state. *Id.* As required by law, the principal display panel on the containers identified the product as Grated Parmesan Cheese. (Compl. ¶ 12.) That product identifier was preceded with the designation "100% Real." *Id.* The label's ingredients panel provided full information on the product ingredients—**INGREDIENTS**: PARMESAN CHEESE (PASTEURIZED PART SKIM MILK, CHEESE CULTURES, SALT, ENZYMES), ***POWDERED CELLULOSE (ADDED TO PREVENT CAKING)***, POTASSIUM SORBATE (ADDED TO PROTECT FLAVOR).



(Declaration of Steve O'Hara, ¶¶ 3–4, Exs. A, B) [3] (emphasis added).

The standard of identify for "Grated Parmesan Cheese" is established by FDA regulation and defines the product as Parmesan cheese and additional ingredients, including antimycotics, anticaking agents such as cellulose, spices, and flavorings.  21 C.F.R. § 133.146.  Plaintiffs allege that Publix Grated Parmesan Cheese did in fact contain the cellulose permitted by FDA regulation. (Compl. ¶¶ 2, 13.)  Plaintiffs do not allege the product they purchased was anything other than what FDA defines as Grated Parmesan Cheese—in other words, Parmesan cheese and other ingredients, including cellulose to prevent caking.  They do not explain how the product they purchased could be accurately described as Grated Parmesan Cheese and not also be described as

---

[3] The Publix Complaint presented images of the front of the Grated Parmesan Cheese container but not of the back of the container.  (Compl. ¶ 12.)  Images of the entire label of the containers are attached as Exhibits A and B to the Declaration of Steve O'Hara and are properly considered by the Court in this motion because they are documents referenced in the Complaint.  *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002).

100% Real Grated Parmesan Cheese. Nonetheless, entirely ignoring the ingredients information panel portion of the label, they claim the product labeling misled them to believe the product consisted *only* of Parmesan cheese. (Compl. ¶¶ 1–2, 7–8, 14–15.)[4]

In fact, Plaintiffs' argument is logically and internally inconsistent. Plaintiffs' chief complaint is that they purchased 100% Real Grated Parmesan Cheese "believing it was ***100% Parmesan cheese***." (Compl. ¶¶ 7–8) (emphasis added). But "Parmesan cheese" is itself merely the name of a food product that consists of other ingredients. The legal requirements for production of the food product called "Parmesan cheese" are found at 21 C.F.R. § 133.165. Among other things, these regulations specify the ingredients and manufacturing processes involved in creating cheeses that may properly be identified as "Parmesan." *See* 21 C.F.R. § 133.165(a) ("Parmesan cheese . . . is the food prepared from milk and other ingredients specified in this section, by the procedure set forth in . . . this section . . . .").[5] Yet Plaintiffs fail to explain why it is proper to describe a product as "100% Parmesan cheese" to mean "100% of the food product defined by the FDA as Parmesan cheese" but it is, in their view, improper to describe 100% of the food product defined by the FDA as Grated Parmesan cheese as "100% Real Grated Parmesan cheese."

---

[4] Plaintiffs make the entirely unsupported allegation that "a significant portion of Defendant's products is cellulose" (Compl. ¶ 12) and then conclude that "omitting the fact that the Products contained cellulose and other adulterants and additives at unnecessary and excessive levels, constitutes an unfair or deceptive practice (Compl. ¶ 28). But Plaintiffs do not plead what is a "significant portion," how they know this or when they learned it. Nor do they support their conclusion that the amount of cellulose was unnecessary or excessive. Such conclusory statements and naked assertions are insufficient to state a claim, and courts do not presume a plaintiff's legal conclusions are true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, Plaintiffs' Complaint asserts no more than the Supervalu Complaint—the issue is the very presence of cellulose, not the amount—notwithstanding that it was disclosed on the product label.

[5] The similar requirements for Romano cheese are found at 21 C.F.R. § 133.183.

Plaintiffs assert claims for themselves and for national and Florida classes of purchasers. They seek damages based on the differential between the price they paid and the price they believe they would have been willing to pay had they understood Publix Grated Parmesan Cheese properly contained other ingredients, including cellulose as an anticaking agent. (Compl. ¶¶ 4, 15–17, 32, 42, 50.)

## ARGUMENT

### I. LEGAL STANDARD.

Publix adopts the Albertsons/Supervalu discussion of the applicable legal standards.

### II. GOVERNING FDA STATUTES AND REGULATIONS.

Publix adopts the Albertsons/Supervalu discussion of the governing FDA statues and regulations.

### III. STANDING.

Publix adopts the Albertsons/Supervalu discussion of standing and its incorporation by reference of the discussion of those issues in the memoranda submitted by other defendants in this MDL proceeding.

### IV. PREEMPTION.

Publix adopts the Albertsons/Supervalu discussion of preemption and the safe harbor doctrine and its incorporation by reference of the discussion of those issues in the memoranda submitted by other defendants in this MDL proceeding.

### V. COUNT I (VIOLATION OF FDUTPA) FAILS TO STATE A CLAIM.

Plaintiffs assert a claim under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §§ 501.201-.213 (2016) ("FDUTPA"). FDUTPA provides a civil cause of action for "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. Ann. § 501.204(1).

To properly plead a violation of FDUTPA, the plaintiff must allege: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *See Rollins, Inc., v. Butland*, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006). These allegations must be pled with particularity under the heightened pleading standard of Federal Rule of Civil Procedure 9(b). Fed. R. Civ. P. 9(b); *Blair v. Wachovia Mortg. Corp.*, No. 5:11-CV-566-Oc-37TBS, 2012 WL 868878, at *2–4 (M.D. Fla. Mar. 14, 2012) (applying Rule 9(b) to traditional FDUTPA claims). Plaintiffs' allegations fall far short of satisfying the heightened standard.

## A. The Alleged Statements Are Not Misleading as a Matter of Law.

"The Florida Supreme Court has noted that 'deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.'" *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc*., 842 So. 2d 773, 777 (Fla. 2003)). The Complaint must be dismissed because there is no deceptive representation or omission on which to base the claim.

### 1. The Statements Are Not Actionable Under § 501.212(1).

FDUTPA is a consumer protection law intended to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the course of any trade or commerce." Fla. Stat. Ann. § 501.202(2). It was not intended to circumvent or second guess the legislative or regulatory processes of federal law. FDUTPA does not apply to "[a]n act or practice required or specifically permitted by federal or state law." Fla. Stat. Ann. § 501.212(1).

The statement "100% Real Grated Parmesan Cheese" cannot be misleading as a matter of law because it complies with standards of identity under applicable federal law. *Berenguer v. Warner-Lambert Co.*, No. 02-05242, 2003 WL 24299241, at *3–4 (Fla. Cir. Ct. July 31, 2003),

(plaintiff failed to state a claim under FDUTPA where alleged misrepresentation was required by FDA regulations because the claim was barred by FDUTPA's safe harbor provisions).[6]  Therefore, Plaintiffs' FDUTPA claims necessarily must be dismissed.  *See Prohias v. AstraZeneca Pharms., L.P.*, 958 So. 2d 1054, 1056 (Fla. Dist. Ct. App. 2007) (affirming dismissal of FDUTPA claim "because the promotional and advertising activity attacked in the Complaint is supported by FDA-approved labeling for Nexium and thus, is 'specifically permitted' by federal law"); *Kuenzig v. Hormel Foods Corp.*, 505 F. App'x 937, 939 (11th Cir. 2013) (affirming dismissal of false labeling claim where labels were specially permitted by federal law and therefore FDUTPA did not apply).

### 2.  No Reasonable Consumer Would Be Misled By Publix's Labels.

Even if Publix's compliance with FDA labeling practices was not legally dispositive of Plaintiffs' FDUTPA claims, Plaintiffs' FDUTPA claims should be dismissed because Plaintiffs have failed to plausibly plead that Publix's label are "likely to mislead the consumer acting reasonably in the circumstances.'"  *Zlotnick*, 480 F.3d at 1284 (quoting *PNR, Inc.*, 842 So. 2d at 777).

Plaintiffs allege Publix's use of "100% Real Grated Parmesan Cheese" is somehow misleading because the products contained cellulose.  That statement cannot be misleading as a matter of law because no reasonable consumer would understand "100% Real Grated Parmesan

---

[6] Though Plaintiffs also allege misleading advertisements (Compl. ¶¶ 14–15), they do not identify any such advertisements.  In context, it is clear they are referring only to the statements on the product labels (Compl. ¶¶ 7–8).  Plaintiff cannot state a claim under FDUTPA based on Publix advertising because they have not identified either the advertising or the misrepresentation or that an advertisement was the proximate cause of any injury.  *See Berenguer*, 2003 WL 24299241, at *2 (dismissing plaintiff's claims alleging misleading advertisement for failure to plead causation under FDUTPA where plaintiffs "d[id] not allege that they saw any of the advertisements [complained of in complaint]—let alone that they saw an alleged misrepresentation in an advertisement that caused them to purchase [the products]").

Cheese" to mean that the products contain "100% cheese" (as Plaintiffs allege), rather than (as it actually reads) 100% grated Parmesan cheese, particularly when cellulose is listed in the product ingredients in capital letters. *See Pye v. Fifth Generation, Inc.*, No. 4:14CV493-RH/CAS, 2015 WL 5634600, at \*3 (N.D. Fla. Sept. 23, 2015) (finding that no reasonable person would understand "handmade" in the context of making vodka, to mean literally made by hand without the use of substantial equipment). The statements targeted by the Plaintiffs are not deceptive or misleading. Accordingly, Plaintiffs' FDUTPA claim should be dismissed with prejudice for failure to state a claim.[7]

**B.      Plaintiffs Have Failed to Sufficiently Plead Causation and Damages.**

FDUTPA only authorizes a private cause of action for actual damages, fees and costs to a person "who has suffered a loss as a result of a [FDUTPA] violation." Fla. Stat. Ann. § 501.211(2). Likewise, only a person "aggrieved by a violation of [FDUTPA] may bring an action to … enjoin …." *Id.* § 501.211(1).

Plaintiffs allege their injury as "not receiv[ing] that which was promised" on Publix's labels (Compl. ¶ 15), and having overpaid for the product because it was not as represented. (*Id.* ¶¶ 32, 50.) The crux of Plaintiffs' allegations—from which their alleged injury flows—is that Publix's products "are not 100% cheese" and are not "all cheese." (Compl. ¶¶ 1–2, 14.) That is true, but it is not what Publix's labels promised: they promised "100% Real Grated Parmesan Cheese" not "100% Cheese." FDA has drawn a clear and legally recognizable difference between those two statements. Publix's labels were in full compliance with FDA regulations, identified the grated cheese products and all of their ingredients as mandated, and were complete and accurate.

---

[7] Publix adopts the Albertsons/Supervalu discussion supporting its argument that no reasonable consumer would be misled by the labels and also relies on and incorporates by reference of the discussion of that issue in the memoranda submitted by other defendants in this MDL proceeding.

The premise on which Plaintiffs' allegations depend is faulty. They have not been damaged "as a result of" nor have they been "aggrieved by" a Publix violation of FDUTPA. *See Virgilio v. Ryland Grp., Inc.,* 680 F.3d 1329, 1338 n.25 (11th Cir. 2012) (causation is an element of a FDUTPA damage claim) (quoting *Rollins, Inc.,* 951 So. 2d at 869; *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty, Inc.*, 169 So. 3d 164, 166–67 (Fla. Dist. Ct. App. 2015) (plaintiff must allege he was aggrieved by the defendant's conduct). Plaintiffs' FDUTPA claim, as well as their other claims—all of which require them to plead an injury or damages—should be dismissed with prejudice.

## VI. COUNTS II AND III (BREACH OF EXPRESS AND IMPLIED WARRANTIES) FAIL TO STATE A CLAIM.

Plaintiffs allege breaches of express and implied warranties under Florida statutes codifying the Uniform Commercial Code ("UCC"). Fla. Stat. Ann. § 672.313–314 (2016). Those claims should be dismissed with prejudice for failure to provide pre-suit notice and failure to plead both express and implied warranties that were breached by Publix.

### A. Plaintiffs' Failure to Provide Pre-Suit Notice Bars Plaintiffs' Breach of Warranty Claims.

The claims in Count II (Breach of Express Warranty) and Count III (Breach of Implied Warranty) are barred by Plaintiffs' failure to provide pre-litigation notice to Publix. Florida law requires pre-suit notice as a condition precedent to asserting a breach of warranty claim. Fla. Stat. Ann. § 672.607(3)(a) (2016); *Randolph v. J.M. Smucker Co.*, No. 13-80581-CIV, 2014 WL 1018007, at *7 (S.D. Fla. Mar. 14, 2014) ("To plead a breach of express warranty in Florida, the [c]omplaint must include an allegation that notice was given to the seller of the breach."); *Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1340 (S.D. Fla. 2011) ("Here, Plaintiff does not allege that he ever notified Defendants of the alleged breach of a warranty. Plaintiff, therefore, has failed to state a claim for breach of express warranty.")

9

The purpose of pre-suit notice is to give the manufacturer the opportunity to remedy the defect and minimize the buyer's loss. *See Gen. Matters, Inc. v. Paramount Canning Co.*, 382 So. 2d 1262, 1264 (Fl. Dist. Ct. App. 1980) (one important reason for the notice requirement under Fla. Stat. Ann. § 672.607(3)(a) is that it enables the seller to make adjustments or replacements, or to suggest opportunities for cure to the end of minimizing the buyer's loss and reducing the sellers' own liability to the buyer) (quotation omitted). Notice must be provided in advance of litigation, not merely in advance of asserting a warranty claim. *See Jovine*, 795 F. Supp. 2d at 1340; *Randolph*, 2014 WL 1018007, at *7.

Plaintiffs have not pled (and they cannot accurately plead) that they had any pre-suit communication with Publix, let alone communications that satisfy the pre-suit notice requirement. It is too late now to effectively meet that requirement. *See Jovine*, 795 F. Supp. 2d at 1340 (holding that the plaintiff did not allege that he ever notified the defendants of the alleged breach of a warranty and therefore failed to state a claim for breach of express warranty) (citing *Gen. Matters, Inc.*, 382 So. 2d at 1263)). The failure to provide pre-litigation notice requires dismissal of warranty claims with prejudice. *See Burns v. Winnebago Indus., Inc*., 492 Fed. App'x 44, 49 (11th Cir. 2012) (plaintiffs did not have a viable state warranty claim when they failed to give proper notice to the manufacturer); *Gen. Matters, Inc.*, 382 So. 2d at 1264-65 (plaintiff's failure to notify defendant of the alleged breach ran counter to the purposes of Fl. Stat. Ann. § 672.607(3)(a) and barred plaintiff from any remedy for the alleged breach).

**B.      Plaintiffs' Express Warranty Claims Should be Dismissed Because No Express Warranties Were Breached.**

To state a claim for breach of express warranty under Florida law, "a complaint must allege: (1) the sale of goods; (2) the express warranty; (3) breach of the warranty; (4) notice to seller of the breach; and (5) the injuries sustained by the buyer as a result of the breach of the express

warranty." *Jovine,* 795 F. Supp. 2d at 1339–40 (footnote omitted) (citing *Dunham-Bush, Inc. v. Thermo-Air Serv., Inc.*, 351 So. 2d 351, 353 (Fla. Dist. Ct. App. 1977)). In addition to their failure to plead notice and injury, Plaintiffs also fail to allege the existence of an express warranty that was breached by Publix.

Plaintiffs allege that "Defendants' 100% claims are affirmations of fact and descriptions of the Products, including that the container in which the Product was sold consisted of only cheese" and that "[t]hese affirmations of fact and descriptions formed the basis of the bargain . . . creating an express warranty" under the UCC. (Compl. ¶ 37). *See* Fla. Stat. § 672.313. However, as discussed above, the product labels at issue do not describe, promise or affirm that there is no cellulose or other ingredients in Publix's grated cheese products. In fact, just the opposite is true––the product labels disclose the ingredients in exactly the form and format required by FDA, and cellulose is a listed ingredient. Plaintiffs cannot complain that the labels formed an express warranty without taking into consideration the *entire label*, and when the entire label is considered, the express warranty claim unravels.

"Florida courts generally treat warranties like contracts, where the terms of the warranty dictate the parties' respective rights and obligations." *Burns*, 492 F. App'x at 48. Under canons of contract construction, intent is to be discerned from the entire contract—or in this case, the entire label. "Thus, the meaning is not to be gathered from any one phrase, but from a general view of the whole writing, with all of its parts being compared, used, and construed, each with reference to the others." *Specialized Mach. Transp., Inc. v. Westphal*, 872 So. 2d 424, 426 (Fla. Dist. Ct. App. 2004); *J. C. Penney Co., Inc. v. Koff*, 345 So. 2d 732, 735 (Fla. Dist. Ct. App. 1977) ("In reviewing the contract in an attempt to determine its true meaning, the court must review the entire contract without fragmenting any segment or portion."). The court must review the entire

warranty and construe it in a way that will give meaning to all of its terms. *Id.* In addition, Florida law addresses the "[c]umulation and conflict of warranties express or implied", Fla. Stat. Ann. § 672.317 (2016), and provide that warranties "shall be construed as consistent with each other and as cumulative" and "technical specifications displace an inconsistent sample or model or general language of description." *Id.*

Plaintiffs cannot ignore the express and unambiguous statement on the labels that the grated cheese products included cellulose as an anticaking agent and claim a directly contradictory subjective expectation that the products contained "all cheese." (Compl. ¶¶ 2, 14.) *U.S. Rubber Prods. v. Clark*, 200 So. 385, 388 (Fla. 1941) (it is "not enough to look to an isolated phrase or paragraph of the contract in an effort to determine" its meaning). Put another way, because the label discloses the presence of cellulose, there can be no breach of warranty on the premise that the labels warranted an absence of cellulose. *Chin v. Gen. Mills, Inc.*, No. 12-2150 (MJD/TNL), 2013 WL 2420455, at *7 (D. Minn. June 3, 2013) (finding that "100% Natural" claim on label "cannot be viewed in isolation and must be read in the context of the entire package, including the ingredient panel"); *see generally Workman v. Plum, Inc.*, 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015) (dismissing deception claims as implausible where ingredient list disclosed predominance of ingredients); *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995) (finding sweepstakes mailer must be read in its entirety; it would unreasonable to review only information in large type while ignoring qualifying information in smaller type on same document.) Accordingly, Plaintiffs' express warranty claims fail and should be dismissed with prejudice.

### C. Plaintiffs Fail To Allege a Breach of Implied Warranty.

Similarly, Plaintiffs fail to state a claim for breach of implied warranty of merchantability because they fail to adequately allege that the product was not merchantable. Plaintiffs allege that Publix breached the implied warranty of merchantability because the products were not

12

"adequately contained, packaged, or labeled because they are misbranded," and that they did not "conform to the promises or affirmations of fact made on the container or label." (Compl. ¶¶ 47–48.) *See* Fla. Stat. Ann. § 672.314 (products "must be . . . (e) . . . adequately contained, packaged, and labeled *as the agreement may require*; and (f) Conform to the promises or affirmations of fact made on the container or label if any.") (emphasis added). This claim fails because the product packaging expressly discloses the ingredients, including the presence of cellulose, in accordance with FDA standards. Moreover, there is no allegation that the product does not conform with the product label—in other words, the packaging contains a product that includes the ingredients listed on the label and which conforms with the statement of identity established by FDA, also declared on the label. Plaintiff has not alleged any "agreement" that requires otherwise.

The weakness of Plaintiffs' claims is highlighted by that fact that they do not allege, nor could they, that the contents of the container itself are not "fit for the ordinary purposes for which such goods are used." Fla. Stat. § 672.314(c); *see Pye*, 2015 WL 5634600, at *5 ("Unless a seller modifies or excludes the warranties, a seller impliedly warrants that its goods are merchantable and fit for the ordinary purpose for which such goods are used."). Here, that means that the grated cheese was of merchantable quality and fit to consume as grated cheese. *Pye*, 2015 WL 5634600, at *5. The Complaint has no allegation suggesting the product could not be used as grated parmesan cheese is ordinarily used. *Id.* (noting that "by selling Tito's vodka, the defendants warranted that the vodka was of merchantable quality and fit to drink as vodka" and that whether the vodka was "handmade or made in an old-fashioned pot still" would be an express warranty, not an implied warranty). The contents of the container were perfectly merchantable, and the labels accurately described the contents. Plaintiffs' implied warranty claims should be dismissed with prejudice.

13

## VII.    COUNT IV (UNJUST ENRICHMENT) FAILS TO STATE A CLAIM BECAUSE PLAINTIFFS HAVE AN ADEQUATE REMEDY AT LAW.

Because Plaintiffs seek redress for Publix's alleged wrongs under FDUTPA and breach of warranty theories, both of which provide adequate remedies at law, their unjust enrichment claims must be dismissed.  "It is well settled in Florida that unjust enrichment is an equitable remedy and is, therefore, not available where there is an adequate legal remedy.  Thus, to properly state a claim for unjust enrichment, a party must allege that no adequate legal remedy exists."  *Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005) (footnote omitted); *William Ryan Homes Fla., Inc. v. Whitney Nat'l Bank*, No. 8:12-CV-1575-T-33TGW, 2012 WL 4328769, at *5 (M.D. Fla. Sept. 30, 2012) (finding that because the parties did not contest the validity of the contract between the two parties, the plaintiff could not also assert a claim for unjust enrichment).

Here, Plaintiffs allege a contract exists between the parties, i.e., the express warranty, and they assert breach of express warranty claims.  For purposes of this motion, Publix does not deny that an express warranty was created.  Plaintiffs would have an adequate remedy of law if they would recover on their warranty claim.  Their unjust enrichment claim is duplicative of their breach of express warranty claim, as well as the remedies they seek under their FDUTPA claims, and should be dismissed with prejudice.  *Herazo v. Whole Foods Market, Inc*., No. 14-61909-CIV, 2015 WL 4514510, at *2 (S.D. Fla. July 23, 2015) (rejecting contention that unjust enrichment could be pled in the alternative and stating that "[a]n unjust enrichment claim can exist only if the subject matter of that claim is not covered by a valid and enforceable contract."); *Jovine*, 795 F. Supp. 2d at 1341–42 (dismissing unjust enrichment claim where plaintiff sought "recovery for the exact same wrongful conduct as in his other claims").

14

## CONCLUSION

Plaintiffs' complaint should be dismissed in its entirety and with prejudice.


Dated: January 10, 2017              Respectfully submitted,


                              /s/ Gary Hansen

Gary Hansen (admitted *pro hac vice*)
Heidi A.O. Fisher (admitted *pro hac vice*)
FOX ROTHSCHILD LLP
222 South Ninth Street - Suite 2000
Minneapolis, MN 55402-3338
Phone: 612.607.7000
Facsimile: 612.607.7100
Email: ghansen@foxrothschild.com
        hfisher@foxrothschild.com

and

Joseph E. Collins
FOX ROTHSCHILD LLP
353 N. Clark St., Suite 3650
Chicago, Illinois 60654
Phone: 312.517.9227
Facsimile: 312.517.9201
Email: jcollins@foxrothschild.com

*Counsel for Defendant Publix Super Markets, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing document was filed on January 10, 2017, with the Clerk of the Court by using the CM/ECF system which will send a notice of filing to all counsel of record.

/s/ Heidi A.O. Fisher
Heidi A.O. Fisher