# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| IN RE: 100% GRATED PARMESAN CHEESE MARKETING AND SALES PRACTICES LITIGATION | Civil No. 1:16-cv-05802 MDL 2705 |
| | Judge Gary S. Feinerman |
| *This Document Relates to All Cases* | |

**PLAINTIFFS' CONSOLIDATED OPPOSITION TO MOTIONS TO DISMISS BY DEFENDANTS ALBERTSONS COMPANIES, INC., ALBERTSONS LLC, AND SUPERVALU, INC. (NO. 156); TARGET CORPORATION AND ICCO-CHEESE COMPANY, INC. (NO. 163); WAL-MART STORES, INC. (NO. 167); KRAFT <u>HEINZ COMPANY (NO. 160); AND PUBLIX SUPER MARKETS, INC. (NO. 173)</u>**

00116521

# TABLE OF CONTENTS

**Page**

INTRODUCTION………………………………………………………………………..1

FACTUAL BACKGROUND……………………………………………………..………..2

LEGAL STANDARD……………………………………………………………..………..4

ARGUMENT…………………………………………………………………….………..4

I.  PLAINTIFFS' CLAIMS ARE NOT PREEMPTED BY FEDERAL LAW
   OR BARRED BY THE SAFE HARBOR DOCTRINE...................................................4

    A.  Plaintiffs' Claims Are Not Barred by Express or Conflict Preemption...............5

        1.  Plaintiffs' Claims Are Not Expressly Preempted ....................................7

        2.  Plaintiffs' Claims Are Not Barred by Conflict Preemption...................11

    B.  The Safe Harbor Doctrine Does Not Bar Plaintiffs' Claims...............................13

II. PLAINTIFFS ADEQUATELY PLEAD CLAIMS UNDER STATE
   CONSUMER PROTECTION STATUTES ....................................................................17

    A.  Plaintiffs Plausibly Plead the 100% Claims Are Likely to Deceive a
       Reasonable Consumer.......................................................................................17

    B.  Federal Requirements that Defendants List All Ingredients Do
       Not Preclude Liability for Misleading Claims Displayed on the
       Front of the Products........................................................................................19

    C.  Defendants' Interpretation of the 100% Claims Defies Common Sense...........21

    D.  Plaintiffs' Allegations Satisfy the Heightened Pleading Standard ....................22

    E.  Defendants' Remaining Challenges to Individual Claims Are Without
       Merit.................................................................................................................24

        1.  Plaintiff Rollinger Adequately Pleads a Minnesota Deceptive
          Trade Practices Claim ...........................................................................24

        2.  The New York General Business Law Claims Are Adequately
          Pleaded.................................................................................................25

        3.  Plaintiffs Sikes, Fata, Pellitteri, and Rudder Have Adequately
          Pleaded Florida Deceptive Trade Practices Claims................................26

i

4.     Plaintiff Schmoll Adequately Pleads a New Jersey Consumer Fraud Claim ...................................................................................27

5.     Plaintiff Wills Adequately Pleads an Alabama Consume Fraud Claim ...................................................................................28

6.     The California CLRA and UCL Claims Are Adequately Pleaded .........28

7.     Plaintiff Zachary Adequately Pleads a Missouri Merchandising Practices Claim ....................................................................................29

8.     The Illinois Consumer Fraud Claims Are Adequately Pled .................30

III.     PLAINTIFFS STATE CLAIMS FOR BREACH OF WARRANTY ...........................30

    A.     The 100% Claims Constitute Express Warranties ...............................30

    B.     The Warranty Claims Do Not Fail for Lack of Privity.......................32

    C.     Defendants' Arguments Regarding Pre-Suit Notice Are Premature ................34

    D.     Plaintiffs Properly Allege a Claim for Breach of Implied Warranty ................35

IV.     PLAINTIFFS STATE A CLAIM FOR UNJUST ENRICHMENT ...........................37

V.     PLAINTIFFS HAVE ARTICLE III STANDING .........................................................41

    A.     Plaintiffs Adequately Allege Injury In Fact And Causation...............................41

    B.     Plaintiffs Have Standing to Seek Injunctive Relief ............................................44

    C.     Plaintiffs Have Standing to Assert Their Claims on a Classwide Basis............47

CONCLUSION..................................................................................................................49

00116521

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*520 S. Mich. Ave. Assocs., Ltd. v. Shannon*,
  549 F.3d 1119 (7th Cir. 2008) ..................................................................................6

*Abels v. JPMorgan Chase Bank, N.A.*,
  678 F. Supp. 2d 1273 (S.D. Fla. 2009) ...................................................................40

*Ackerman v. Coca-Cola Co.*,
  No. 09-cv-00395, 2010 WL 2925955 (E.D.N.Y. July 21, 2010)........................25, 26

*Adams v. Target Corp.*,
  No. 13-cv-05944, 2014 WL 12558290 (C.D. Cal. Mar. 3, 2014)......................43, 44

*Adkins v. Nestle Purina PetCare Co.*,
  973 F. Supp. 2d 905 (N.D. Ill. 2013) .......................................................................33

*Aliano v. Fifth Generation, Inc.*,
  No. 14-cv-10086, 2015 WL 5675423 (N.D. Ill. Sep. 24, 2015) ..................13, 16, 17

*In re Aqua Dots Prod. Liab. Litig.*,
  654 F.3d 748 (7th Cir. 2011) ...................................................................................43

*Arreola v. Godinez*,
  546 F.3d 788 (7th Cir. 2008) .............................................................................44, 45

*Arroyo v. TP-Link USA Corp.*,
  No. 14-cv-04999, 2015 WL 5698752 (N.D. Cal. Sept. 29, 2015)...........................39

*Astiana v. Hain Celestial Grp., Inc.*,
  783 F.3d 753 (9th Cir. 2015) .......................................................................37, 38, 39

*Atik v. Welch Food, Inc.*,
  15-cv-05405, 2016 WL 5678474 (E.D.N.Y. Sept. 30, 2016)..................................18

*Ault v. J.M. Smucker Co.*,
  No. 13-cv-03409, 2014 WL 1998235 (S.D.N.Y. May 15, 2014) ..........................8, 9

*Bailey v. Kind, LLC*,
  No. 16-cv-00168, 2016 WL 3456981 (C.D. Cal. June 16, 2016)............................39

*Bedi v. BMW of N. Am., LLC*,
  No. 15-cv-01898, 2016 WL 324950 (D.N.J. Jan. 27, 2016)...................................41

*Bietsch v. Sergeant's Pet Care Prod., Inc.*,
No. 15-cv-05432, 2016 WL 1011512 (N.D. Ill. Mar. 15, 2016) ...........................................48

*Biffar v. Pinnacle Foods Grp., LLC*,
No. 16-cv-00873, 2016 WL 7429130 (S.D. Ill. Dec. 22, 2016) ...........................................34

*Boatwright v. Walgreen Co.*,
No. 10-cv-03902, 2011 WL 843898 (N.D. Ill. Mar. 4, 2011) ...............................................48

*Bober v. Glaxo Wellcome Plc*,
246 F.3d 934 (7th Cir. 2001) ...................................................................................13, 15

*Bohac v. Gen. Mills, Inc.*,
No. 12-cv-05280, 2014 WL 1266848 (N.D. Cal. Mar. 26, 2014) .....................................31, 32

*Bohlke v. Shearer's Foods, LLC*,
No. 14-cv-80727, 2015 WL 249418 (S.D. Fla. Jan. 20, 2015).........................................31, 32

*Boswell v. Costco Wholesale Corp.*,
No. 16-cv-00278, 2016 WL 3360701 (C.D. Cal. June 6, 2016).............................................36

*Boysen v. Walgreen Co.*,
No. 11-cv-06262, 2012 WL 2953069 (N.D. Cal. July 19, 2012) ...........................................42

*Braynina v. TJX Cos., Inc.*,
15-cv-05897, 2016 WL 5374134 (S.D.N.Y. Sept. 26, 2016) ................................................25

*Bruesewitz v. Wyeth LLC*,
562 U.S. 223 (2011)...........................................................................................................5, 11

*Bruton v. Gerber Prods. Co.*,
961 F. Supp. 2d 1062 (N.D. Cal. 2013) ...............................................................................29

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
761 F.3d 732 (7th Cir. 2014) .........................................................................................22, 47

*Canadian Pac. Ry. Co. v. Williams-Hayward Protective Coatings, Inc.*,
No. 02-cv-08800, 2005 WL 782698 (N.D. Ill. Apr. 6, 2005)................................................32

*Castrol Inc. v. Pennzoil Co.*,
987 F.2d 939 (3d Cir. 1993)..................................................................................................30

*CBS Inc. v. Ziff-Davis Pub. Co.*,
75 N.Y.2d 496 (1990) ...........................................................................................................32

*Chicago. Faucet Shoppe, Inc. v. Nestlé Waters N. Am. Inc.*,
24 F. Supp. 3d 750 (N.D. Ill. 2014) .....................................................................................11

*Chicago Heights Venture v. Dynamit Nobel of Am., Inc.*,
575 F. Supp. 214 (N.D. Ill. 1983) ........................................................................33

*Chin v. Gen. Mills, Inc.*,
No. 12-cv-02150, 2013 WL 2420455 (D. Minn. June 3, 2013) ............................32

*Cleary v. Philip Morris Inc.*,
656 F.3d 511 (7th Cir. 2011) ...............................................................................38

*Colgan v. Leatherman Tool Grp., Inc.*,
38 Cal. Rptr. 3d 36 (Cal. Ct. App. 2006) ............................................................18

*Collins v. Minn. Sch. of Bus., Inc.*,
655 N.W.2d 320 (Minn. 2003)..............................................................................24

*Colon v. Wal-Mart Stores, Inc.*,
No. 13-cv-00464, 2014 WL 1588463 (M.D. Fla. Apr. 21, 2014)..........................34

*In re ConAgra Foods Inc.*,
908 F. Supp. 2d 1090 (C.D. Cal. 2012) ...............................................................36

*Conrad v. Nutramax Labs., Inc.*,
No. 13-cv-03780, 2013 WL 5288152 (N.D. Ill. Sept. 18, 2013)...........................47

*Cooper v. Bristol-Myers Squibb Co.*,
No. 01-cv-00885, 2009 WL 5206130 (D.N.J. 2009) .............................................28

*Corsello v. Verizon N.Y., Inc.*,
18 N.Y.3d 777 (2012) ...........................................................................................41

*Cox v. Sears Roebuck & Co.*,
647 A.2d 454 (N.J. 1994)......................................................................................18

*Cytyc Corp. v. Neuromedical Sys., Inc.*,
12 F. Supp. 2d 296 (S.D.N.Y. 1998).....................................................................16

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
No. 09-cv-03690, 2013 WL 4506000 (N.D. Ill. Aug. 23, 2013) ...........................48

*Dean v. Colgate-Palmolive Co.*,
No. 15-cv-00107, 2015 WL 3999313 (C.D. Cal. June 17, 2015)..........................45

*Dzielak v. Whirlpool Corp.*,
26 F. Supp. 3d 304 (D.N.J. 2014) .........................................................................36

*Ebin v. Kangadis Food Inc.*,
297 F.R.D. 561 (S.D.N.Y. 2014) ...........................................................................46

v

*Egelhoff v. Egelhoff*,
    532 U.S. 141 (2001) ...................................................................................5

*Ellis v. J.P. Morgan Chase & Co.*,
    950 F. Supp. 2d 1062 (N.D. Cal. 2013) ..................................................49

*Fed. Hous. Fin. Agency v. City of Chicago*,
    962 F. Supp. 2d 1044 (N.D. Ill. 2013) ...............................................6, 12

*In re Ferrero Litig.*,
    794 F. Supp. 2d 1107 (S.D. Cal. 2011) ............................................35, 36

*Fifth Third Bank v. CSX Corp.*,
    415 F.3d 741 (7th Cir. 2005) ...................................................................5

*Firestone Fin. Corp. v. Meyer*,
    796 F.3d 822 (7th Cir. 2015) ...................................................................4

*Flynn v. FCA US LLC*,
    No. 15-cv-00855, 2016 WL 5341749 (S.D. Ill. Sept. 23, 2016) .............34

*In re Fruit Juice Prod. Mktg. & Sales Practices Litig.*,
    831 F. Supp. 2d 507 (D. Mass. 2011) ...................................................42

*Frye v. L'Oreal USA, Inc.*,
    583 F. Supp. 2d 954 (N.D. Ill. 2008) ...................................................42

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*,
    505 U.S. 88 (1992) .............................................................................6, 11

*Garcia v. Kashi Co.*,
    43 F. Supp. 3d 1359 (S.D. Fla. 2014) ..................................................9, 32

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*,
    8 F. Supp. 3d 467 (S.D.N.Y. 2014) .......................................................25

*Gomez-Jimenez v. N.Y. Law Sch.*,
    956 N.Y.S. 2d 54 (App. Div. 2012) ......................................................26

*Gubala v. CVS Pharmacy, Inc.*,
    No. 14-cv-09039, 2016 WL 1019794 (N.D. Ill. Mar. 15, 2016) .......18, 19

*Halperin v. Int'l Web Servs., LLC*,
    123 F. Supp. 3d 999 (N.D. Ill. 2015) ...................................................48

*Hamon v. Digliani*,
    174 A.2d 294 (Conn. 1961) ..................................................................33

vi

*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*,
61 Cal. 4th 988 (2015) ...................................................................................39

*Hoffman v. Liquid Health Inc.*,
No. 14-cv-01838, 2014 WL 2999280 (D.N.J. July 2, 2014) ...................................27

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
545 N.E.2d 672 (Ill. 1989) .............................................................................37

*Ibarrola v. Kind, LLC*,
83 F. Supp. 3d 751 (N.D. Ill. 2015) ...................................................................19

*Ibarrola v. Kind, LLC*,
No. 13-cv-50377, 2014 WL 3509790 (N.D. Ill. July 14, 2014) ...........................42

*Johnson v. Anderson Ford, Inc.*,
686 So. 2d 224 (Ala. 1996) .............................................................................33

*Kelly v. Cape Cod Potato Chip Co.*,
81 F. Supp. 3d 754 (W.D. Mo. 2015) ................................................................30

*Kosta v. Del Monte Corp.*,
No. 12-cv-01722, 2013 WL 2147413 (N.D. Cal. May 15, 2013) ...........................42

*Kostovetsky v. Ambit Energy Holdings, LLC*,
No. 15-cv-02553, 2016 WL 105980 (N.D. Ill. Jan. 8, 2016) ...............................49

*Kraft, Inc. v. Fed. Trade Comm'n*,
970 F.2d 311 (7th Cir. 1992) .........................................................................17

*Krzykwa v. Campbell Soup Co.*,
946 F. Supp. 2d 1370 (S.D. Fla. 2013) ..............................................................26

*Kuenzig v. Hormel Foods Corp.*,
505 Fed. Appx. 937 (11th Cir. 2013) ...............................................................16

*Landlock Nat'l Paving, Inc. v. Desin L.P.*,
No. 12-cv-02893, 2013 WL 4854361 (N.D. Ill. Sept. 11, 2013) ...........................38

*Le v. Kohls Dep't Stores, Inc.*,
160 F. Supp. 3d 1096 (E.D. Wis. 2016) ............................................................47

*Leiner v. Johnson & Johnson Consumer Cos., Inc.*,
No. 15-cv-05876, 2016 WL 128098 (N.D. Ill. Jan. 12, 2016) ...............................45

*Lilly v. Jamba Juice Co.*,
No. 13-cv-02998, 2015 WL 1248027 (N.D. Cal. Mar. 18, 2015) ...........................46

*Lipton v. Chattem, Inc.*,
  No. 11-cv-02952, 2012 WL 1192083 (N.D. Ill. Apr. 10, 2012)..............................................42

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)...................................................................................................................42

*Lynch v. Tropicana Prods., Inc.*,
  No. 11-cv-07382, 2013 WL 2645050 (D.N.J. June 12, 2013)..........................................21, 22

*McCauley v. City of Chicago*,
  671 F.3d 611 (7th Cir. 2011) ......................................................................................................4

*McDonald v. Adamson*,
  840 F.3d 343 (7th Cir. 2016) ....................................................................................................34

*Medtronic, Inc. v. Lohr*,
  518 U.S. 470 (1996)....................................................................................................................6

*Mervyn v. Nelson Westerberg, Inc.*,
  76 F. Supp. 3d 715 (N.D. Ill. 2014) .........................................................................................38

*Midcoast Aviation, Inc. v. Gen. Elec. Credit Corp.*,
  907 F.2d 732 (7th Cir. 1990) ....................................................................................................37

*Miller v. Janssen Pharmaceutica Prod., L.P.*,
  No. 05-cv-04076, 2006 WL 488636 (S.D. Ill. Feb. 28, 2006)..........................................48, 49

*Mills v. Giant of Md., LLC*,
  441 F. Supp. 2d 104 (D.D.C. 2006) .......................................................................................9, 10

*Morgan v. AT & T Wireless Servs., Inc.*,
  99 Cal. Rptr. 3d 768 (Cal. Ct. App. 2009) ...............................................................................29

*Morris Pumps v. Centerline Piping, Inc.*,
  729 N.W.2d 898 (Mich. Ct. App. 2006) ...................................................................................40

*Morrison v. YTB Int'l, Inc.*,
  649 F.3d 533 (7th Cir. 2011) ....................................................................................................48

*Muir v. NBTY, Inc.*,
  No. 15-cv-09835, 2016 WL 5234596 (N.D. Ill. Sept. 22, 2016)........................22, 23, 38, 47

*Muir v. Playtex Prod., LLC*,
  983 F. Supp. 2d 980 (N.D. Ill. 2013) ..................................................................................42, 43

*Murphy v. Stonewall Kitchen, LLC*,
  503 S.W.3d 308 (Mo. Ct. App. 2016)...................................................................................29, 30

viii

*N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
  514 U.S. 645 (1995) ................................................................................................5

*Nartron Corp. v. Hamilton/Avnet Elecs. of Ariz., Inc.*,
  No. 90-cv-00060, 1991 WL 303604 (W.D. Mich. Nov. 1, 1991) ...........................................34

*Nuss v. Sabad*,
  No. 10-cv-00279, 2016 WL 4098606 (N.D.N.Y. July 28, 2016) ...........................................41

*Overen v. Hasbro, Inc.*,
  No. 07-cv-01430, 2007 WL 2695792 (D. Minn. Sept. 12, 2007) ...........................................24

*Patriotic Veterans, Inc. v. Indiana*,
  736 F.3d 1041 (7th Cir. 2013) ...............................................................................12

*In re PepsiCo, Inc.*,
  588 F. Supp. 2d 527 (S.D.N.Y. 2008) ...................................................................8, 11

*Perez v. Monster Inc.*,
  149 F. Supp. 3d 1176 (N.D. Cal. 2016) ......................................................................39

*Piro v. Exergen Corp.*,
  No. 15-cv-11834, 2016 WL 1255630 (D. Mass. Mar. 29, 2016) ...........................................36

*Prohias v. Pfizer, Inc.*,
  490 F. Supp. 2d 1228 (S.D. Fla. 2007) ......................................................................15

*Red v. Kraft Foods, Inc*,
  No. 10-cv-01028, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) ...........................................22

*Reger Dev., LLC v. Nat'l City Bank*,
  592 F.3d 759 (7th Cir. 2010) .................................................................................4

*Reid v. Johnson & Johnson*,
  780 F.3d 952 (9th Cir. 2015) ................................................................................20

*Reid v. Unilever U.S., Inc.*,
  964 F. Supp. 2d 893 (N.D. Ill. 2013) ........................................................................31

*Remijas v. Neiman Marcus Grp., LLC*,
  794 F.3d 688 (7th Cir. 2015) ................................................................................43

*Rent-A-PC, Inc. v. Rental Mgmt., Inc.*,
  901 A.2d 720 (Conn. App. Ct. 2006) .....................................................................39, 40

*Ries v. Ariz. Beverages USA LLC*,
  287 F.R.D. 523 (N.D. Cal. 2012) ............................................................................46

ix

*Romero v. Flowers Bakeries, LLC,*
 No. 14-cv-05189, 2016 WL 469370 (N.D. Cal. Feb. 8, 2016) ................................................9

*In re Rust-Oleum Restore Mktg., Sales Practices & Prod. Liab. Litig.,*
 155 F. Supp. 3d 772 (N.D. Ill. 2016) ....................................................................31, 32, 34, 35

*Scherr v. Marriott Int'l, Inc.,*
 703 F.3d 1069 (7th Cir. 2013) ............................................................................................46

*Scrushy v. Tucker,*
 955 So. 2d 988 (Ala. 2006)................................................................................................39

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.,*
 No. 05-cv-02623, 2006 WL 3754823 (N.D. Ill. Dec. 18, 2006)............................................49

*Shedd v. Wells Fargo Home Mortg., Inc.,*
 No. 14-cv-00275, 2014 WL 6451245 (S.D. Ala. Nov. 17, 2014)...........................................39

*Smith v. Apple, Inc.,*
 No. 08-AR-1498-S, 2009 WL 3958096 (N.D. Ala. Nov. 4, 2009) .........................................39

*Spagnola v. Chubb Corp.,*
 574 F.3d 64 (2d Cir. 2009)................................................................................................17

*Stoltz v. Fage Dairy Processing Indus. S.A.,*
 No. 14-cv-03826, 2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) .........................................23

*Suchanek v. Sturm Foods, Inc.,*
 764 F.3d 750 (7th Cir. 2014) ............................................................................................17

*Swanson v. Citibank, N.A.,*
 614 F.3d 400 (7th Cir. 2010) ..............................................................................................4

*Tanoh v. Dow Chem. Co.,*
 561 F.3d 945 (9th Cir. 2009) ............................................................................................47

*Time Warner Cable, Inc. v. DIRECTV, Inc.,*
 497 F.3d 144 (2d Cir. 2007)..............................................................................................30

*Trazo v. Nestlé USA, Inc.,*
 No. 12-cv-02272, 2013 WL 4083218 (N.D. Cal. Aug. 9, 2013) .......................................7, 16

*Trujillo v. Apple Computer, Inc.,*
 581 F. Supp. 2d 935 (N.D. Ill. 2008) ..............................................................................20, 21

*Turek v. Gen. Mills, Inc.,*
 754 F. Supp. 2d 956 (N.D. Ill. 2010) ..........................................................................9, 10, 11

*U.S. Fire Ins. Co. v. Minn. State Zoological Bd.*,
   307 N.W.2d 490 (Minn. 1981)................................................................................40

*U.S. v. Kloess*,
   251 F.3d 941 (11th Cir. 2001) ...........................................................................27

*Utica Mut. Ins. Co. v. Denwat Corp.*,
   778 F. Supp. 592 (D. Conn. 1991).....................................................................33

*Veal v. Citrus World, Inc.*,
   No. 12-cv-00801, 2013 WL 120761 (N.D. Ala. Jan. 8, 2013) ......................9, 21, 42

*Victor v. R.C. Bigelow, Inc.*,
   No. 13-cv-02976, 2014 WL 1028881 (N.D. Cal. Mar. 14, 2014) ...........................7

*Wheeler v. Sunbelt Tool Co.*,
   537 N.E.2d 1332 (Ill. App. Ct. 1989) ................................................................36

*Williams v. Gerber Prods., Co.*,
   552 F.3d 934 (9th Cir. 2008) .......................................................................18, 20

*Workman v. Plum, Inc.*,
   141 F. Supp. 3d 1032 (N.D. Cal. 2015) .............................................................20

*Wyeth v. Levine*,
   555 U.S. 555 (2009)...........................................................................................11

*York v. Andalou Nats., Inc.*,
   No. 16-cv-00894, 2016 WL 7157555 (S.D. Ill. Dec. 8, 2016) .............................31

*Zeigler v. Sony Corp. of Am.*,
   849 A.2d 19 (Conn. Super. Ct. 2004) ................................................................40

*Zlotnick v. Premier Sales Grp., Inc.*,
   480 F.3d 1281 (11th Cir. 2007) ........................................................................17

## Constitutional Provisions

U.S. Const. Art. III.............................................................................. *passim*

## Statutes

21 U.S.C. §§ 301, *et seq.*.................................................................. *passim*

21 U.S.C. § 331....................................................................................6, 13

21 U.S.C. § 341.................................................................................7, 8, 13

21 U.S.C. § 343 ..................................................................................................7, 10

21 U.S.C. § 343-1 ....................................................................................................7

21 U.S.C. § 350 ......................................................................................................10

28 U.S.C. § 1332 ....................................................................................................47

104 Stat. 2353, 101 P.L. 535 ......................................................................... *passim*

810 Ill. Comp. Stat. Ann. 5/2-313 ..........................................................................31

810 Ill. Comp. Stat. Ann. 5/2-314 ..........................................................................36

Ala. Code § 7-2-314 ...............................................................................................36

Ala. Code § 8-9-10 .................................................................................................28

Cal. Com. Code § 2314 ...........................................................................................36

Conn. Gen. Stat. Ann. § 42a-2-314 ........................................................................36

Fla. Stat. § 501.211 ................................................................................................27

Fla. Stat. Ann. § 672.314 ........................................................................................36

Mich. Comp. Laws Ann. § 440.2314 ......................................................................36

Minn. Stat. Ann. § 336.2-314 .................................................................................36

Mo. Ann. Stat. § 400.2-314 ....................................................................................36

N.J. Stat. Ann. § 12A:2-314 ...................................................................................36

N.Y. Gen. Bus. Law §§ 349, *et seq.* .....................................................................25

N.Y. U.C.C. § 2-314 ...............................................................................................36

**Regulations**

21 C.F.R. § 101.18 .............................................................................................10, 18

21 C.F.R. § 133.146 ..........................................................................................12, 15

21 C.F.R. § 133.165 ..........................................................................................12, 15

21 C.F.R. § 133.183 ................................................................................................12

65 Fed. Reg. 16743 ...............................................................................14, 15, 16, 17

00116521

65 Fed. Reg. 83040 ...................................................................................................14, 15, 16, 17

**Rules**

Fed. R. Civ. P.

Rule 8 .................................................................................................................................4, 38
Rule 9 ...............................................................................................................................28, 29
Rule 12 ....................................................................................................................................4
Rule23 ..................................................................................................................................48

00116521

Plaintiffs Ann Bell, Alan Ducorsky, Alfonso Fata, Karen Ford, Dan Lang, Samantha Lewin, Yvette Nash, Carmen Pellitteri, Rosemary Quinn, Nancy Reeves, Erin Rudder, Larry Rollinger, Jr., Rita Schmoll, Becky Sikes, Adam Weiss, Michael Wills, and Rodney Zachary ("Plaintiffs") submit the following consolidated opposition to defendants Albertsons Companies, Inc., Albertsons LLC, and Supervalu, Inc. ("Albertsons"); Target Corporation and ICCO-Cheese Company, Inc. ("Target"); Wal-Mart Stores, Inc. ("Wal-Mart"); Kraft Heinz Company ("Kraft"); and Publix Super Markets, Inc.'s ("Publix") (collectively, "Defendants") motions to dismiss Plaintiffs' consolidated class action complaints against Albertsons, Target, Wal-Mart, Kraft, and Publix.[1]

## INTRODUCTION

For the most part, Defendants' motions to dismiss are not based on the merits of Plaintiffs' claims – whether Defendants falsely labeled the products – but on highly technical and generally disfavored defenses, with preemption their primary argument followed by the safe harbor doctrine and standing. Tellingly, they cannot pinpoint the statutes or case law that supports their arguments, instead stitching together vague statutory references or inapposite regulatory action and cases for their defenses. The reason for that is clear: the statutes and case law do not support Defendants. There is no express or other type of preemption or available safe harbor. Nonetheless, if there were, Plaintiffs' claims would be 100% consistent with the laws Defendants attempt to invoke because they also prohibit false and misleading advertising.

---

[1] Plaintiffs' consolidated class action complaints against Defendants will be referred to as: Kraft, ECF No. 120 ("Kraft Compl."); Albertsons, ECF No. 121 ("Albertsons Compl."); Target, ECF No. 122 ("Target Compl."); Wal-Mart, ECF No. 123 ("Wal-Mart Compl."); and Publix, ECF No. 143 ("Publix Compl."). Defendants' motions to dismiss will be referred to as follows: Albertsons Mot. to Dismiss, ECF No. 157 ("Albertsons MTD"); Target Mot. to Dismiss, ECF No. 164 ("Target MTD"); Wal-Mart Mot. to Dismiss, ECF No. 168 ("Wal-Mart MTD"); Kraft Mot. to Dismiss, ECF No. 170-1 ("Kraft MTD"); and Publix Mot. to Dismiss, ECF No. 174 ("Publix MTD").

00116521

For the remaining arguments, Defendants ignore well-established law. For example, in a false advertising case, a plaintiff has standing to bring a consumer protection claim if he or she purchased a falsely advertised product. Further, one cannot lawfully make a false or misleading statement on the front of a label, only to disclaim it elsewhere. Deceit is not so easily erased.

Defendants' remaining attacks are on various elements of Plaintiffs' claims. These attacks are based either on a mischaracterization of the facts alleged or a mischaracterization of applicable law. The facts in this case are straightforward: Defendants label the subject products as containing 100% of the type of cheese promised. Plaintiffs assert the products contain substances other than cheese, while Defendants waffle between disputing the obvious and arguing that it does not matter. Either way, what is left is a factual issue that cannot be resolved on a pleadings motion.

Defendants' motions should be denied.

## FACTUAL BACKGROUND

This is a false advertising and consumer protection action where Defendants represent that their grated cheese products contain "100%" of the particular type of cheese advertised, when in fact they also contain non-cheese chemicals and fillers. *See* Kraft Compl., ¶¶ 16-17; Albertsons Compl., ¶¶ 10-14; Target Compl., ¶¶ 11-12, 14; Wal-Mart Compl., ¶¶ 13-14, 16; and Publix Compl., ¶ 9. Together, their grated cheese products (the "Products") populate grocery store shelves across the country. *Id.*

Defendants Kraft and ICCO-Cheese manufacture, label, and supply the grated cheese products to retailers – Kraft under its own brand name, and ICCO-Cheese under private, store-brand labels, including Wal-Mart's Great Value label and Target's Market Pantry label. *See* Kraft Compl., ¶¶ 16-17; Wal-Mart Compl., ¶¶ 14, 16; Target Compl., ¶¶ 12, 14.

2

Kraft sells Kraft "100% Grated Parmesan Cheese," "100% Grated Parmesan and Romano Cheese," and "100% Grated Three Cheese Blend." Kraft Compl., ¶¶ 1, 20. Albertsons and Supervalu sell "100% Grated Parmesan Cheese" and "100% Grated Parmesan & Romano Cheese" under the "Essential Everyday" private label. Albertsons Compl., ¶¶ 1, 13, 17. Target sells "100% Grated Parmesan Cheese" and "Parmesan 100% Grated Cheese" under its Market Pantry label. Target Compl., ¶¶ 1, 11, 17. Wal-Mart sells "100% Grated Parmesan Cheese" and "100% Parmesan Grated Cheese" under its Great Value label. Wal-Mart Compl., ¶¶ 1, 13, 19. Publix sells "100% Real Grated Parmesan Cheese" and "100% Real Grated Romano Parmesan Cheese" under its private label. Publix Compl., ¶¶ 1, 9, 12. Unless a specific label is referenced or the context requires otherwise, these statements will be referred to as the "100% Claims."

Each Plaintiff purchased at least one of the Products, believing that the Product actually contained "100%" of the type of cheese purchased. Kraft Compl., ¶¶ 2, 22; Albertsons Compl., ¶ 18; Target Compl., ¶ 18; Wal-Mart Compl., ¶ 20; Publix Compl., ¶ 13. However, in addition to the particular type of cheese, the Products also contain cellulose and potassium sorbate. Kraft Compl., ¶ 22; Albertsons Compl., ¶ 18; Target Compl., ¶ 18; Wal-Mart Compl., ¶ 20; Publix Compl., ¶ 13. Cellulose is an organic polymer used in the production of paperboard and paper and is occasionally used as a filler in food products. *See*, *e.g.*, Kraft Compl., ¶ 19. Potassium sorbate is a synthetic chemical additive that is used as a preservative. *Id.*

Plaintiffs allege that the 100% Claims are incorrect, false, and misleading. As a result, they did not receive that which they were promised and overpaid because they received less than 100% of the advertised cheese. They assert claims under the consumer protection statutes of their states of residence and states of purchase, as well as breach of warranty and unjust enrichment claims.

00116521

## LEGAL STANDARD

All that is required of a complaint is that it provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. To survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege 'sufficient factual matter to state a claim to relief that is plausible on its face,'" *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826 (7th Cir. 2015) (quoting *Gogos v. AMS Mech. Sys., Inc.*, 737 F.3d 1170, 1172 (7th Cir. 2013) (per curiam)), and "give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). "Making the plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chicago,* 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). All well-pleaded facts are accepted as true and viewed in the light most favorable to the nonmoving party, and factual inferences are drawn in favor of the nonmovant. *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010).

## ARGUMENT

### I. PLAINTIFFS' CLAIMS ARE NOT PREEMPTED BY FEDERAL LAW OR BARRED BY THE SAFE HARBOR DOCTRINE

Each Defendant argues that Plaintiffs' claims are expressly or impliedly preempted by regulations promulgated by the FDA pursuant to the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301, *et seq.*,[2] as amended by the Nutrition Labeling and Education Act of 1990

---

[2] *See* Albertsons MTD at 15-18, 20-21; Target MTD at 5-6, 9-21; Wal-Mart MTD at 13, 24; Kraft MTD at 14, 27-30; and Publix MTD at 7, 10. Publix adopts and incorporates the preemption and safe harbor arguments discussed in the Albertsons MTD (*see* Publix MTD at 10), which in turn incorporates the arguments made in Kraft and Target's MTDs (*see* Albertsons MTD at 20-21). Since Wal-Mart also incorporates the preemption and safe harbor arguments made in Kraft and Target's MTDs (*see* Wal-Mart MTD at 24), this Opposition will focus on those arguments, found in Sections II and III of the Kraft MTD and in Section III of the Target MTD (*see* Kraft MTD at 24-30 and Target MTD at 9-21).

4

("NLEA"), 104 Stat. 2353, 101 P.L. 535.[3] As suggested by Defendants' inability to clearly articulate the type of preemption that applies (express or conflict preemption), Plaintiffs' claims are not preempted. To the contrary, like the state false advertising statutes at issue, the FDCA prohibits false and misleading statements.

Defendants also argue that Plaintiffs' claims are barred by the safe harbor doctrine because the FDA permitted Kraft to shorten its Parmesan cheese-curing process from ten to six months. They assert that the FDA approved the use of "100%" because Kraft named the product to be tested "100% Parmesan Cheese," the FDA used that name in identifying the product, and the FDA approved the labeling for different reasons.

### A. Plaintiffs' Claims Are Not Barred by Express or Conflict Preemption

Preemption is an exacting doctrine interpreted narrowly by the courts. In fact, the Supreme Court "address[es] claims of pre-emption with the starting presumption that Congress does not intend to supplant state law." *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654–55 (1995) (citing *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)). It is "an affirmative defense upon which the defendants bear the burden of proof." *Fifth Third Bank v. CSX Corp.*, 415 F.3d 741, 745 (7th Cir. 2005); *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 251 n.2 (2011) (same). Where Congress has made clear its desire for preemption, the presumption against preemption can be overcome (*see Egelhoff v. Egelhoff*, 532 U.S. 141, 151 (2001)), but "[n]othing in [the FDCA] denies [States] the right to provide a traditional damages remedy for violations of common-law duties when those duties parallel federal requirements."

---

[3]     The NLEA was enacted to establish nutrition labeling requirements for most packaged foods; standardize nutrition information, serving sizes, and terms (*i.e.*, "low fat" and "light"); and provide for health claims. *See* Michelle Meadows, *A Century of Ensuring Safe Foods and Cosmetics*, FDA Consumer magazine, Jan.-Feb. 2006, available at http://www.fda.gov/AboutFDA/WhatWeDo/History/FOrgsHistory/CFSAN/ucm083863.htm (last visited Jan. 28, 2017).

*Medtronic, Inc. v. Lohr*, 518 U.S. 470, 495 (1996).

Preemption "may be either express or implied, and 'is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.'" *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992) (quoting *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977)); *see also 520 S. Mich. Ave. Assocs., Ltd. v. Shannon*, 549 F.3d 1119, 1125 (7th Cir. 2008) (same). The two types of implied preemption are conflict preemption and field preemption. *See Fed. Hous. Fin. Agency v. City of Chicago*, 962 F. Supp. 2d 1044, 1057 (N.D. Ill. 2013). Here, Defendants assert only conflict preemption. Conflict preemption "arises when state law conflicts with federal law to the extent that 'compliance with both federal and state regulations is a physical impossibility,' or the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (quoting *Planned Parenthood of Ind., Inc. v. Comm'r of the Ind. State Dep't of Health*, 699 F.3d 962, 984 (7th Cir. 2012)).

Neither express nor implied preemption applies in this case because there is no regulation requiring Defendants to label the Products as "100%" cheese. Moreover, the 100% Claims violate federal regulations that prohibit misbranding and misleading statements. *See* 21 U.S.C. § 331(a), (b), (c), and (g) (prohibiting the misbranding of any food, the manufacture of any misbranded food, and the delivery into or receipt in interstate commerce of any misbranded food). Plaintiffs' allegations that the 100% Claims on the Products' labels violate state law are therefore not expressly preempted. Likewise, the arguments for conflict preemption fail because there is no conflict: removing the 100% Claims would remain in full compliance with federal regulations and would help, not hinder, Congress' purposes because NLEA prohibits misbranding and misleading statements. *See id.*

### 1. Plaintiffs' Claims Are Not Expressly Preempted

Under the FDCA, as amended by the NLEA, a state may not "directly or indirectly" establish or continue in effect "any requirement for a food which is the subject of a standard of identity established under section 401 [21 USCS § 341] that is not identical to such standard of identity or that is not identical to the requirement of section 403(q) [21 USCS § 343(q)]." 21 U.S.C. § 343-1(a)(1). "Numerous courts have concluded that Congress did not intend the FDCA as a 'sweeping preemption' of all unfair competition and false and misleading advertisement claims related to nutritional labels." *Trazo v. Nestlé USA, Inc.*, No. 12-cv-02272, 2013 WL 4083218, at *6 (N.D. Cal. Aug. 9, 2013); *see also* Kraft MTD at 27. Instead, the NLEA "contemplates state enactment and enforcement of labeling requirements as long as they are identical to or parallel NLEA requirements." *Victor v. R.C. Bigelow, Inc.*, No. 13-cv-02976, 2014 WL 1028881, at *10 (N.D. Cal. Mar. 14, 2014) (citation omitted).

Defendants argue that Plaintiffs' claims are preempted because they seek to impose requirements that are not identical to the standards of identity ("SOIs") for Parmesan and grated cheeses, and because Defendants' use of the 100% Claims is "not *mandated* by the standard of identity" but is consistent with it. Target MTD at 17; Kraft MTD at 30 (emphasis in original). But this is not a standard of identity issue. The purpose of SOIs is to benefit consumers, not manufacturers or retailers. "Originally, these requirements were set forth to protect consumers from contaminated products and economic fraud. Later, the standards were also used to improve nutrition."[4] An SOI is established whenever "such action will promote honesty and fair dealing in the interest of consumers" so that "a reasonable definition and standard of identity" and "a reasonable standard of quality" will be associated with a food's "common or usual name."

---

[4] *See* http://www.fda.gov/ForConsumers/ConsumerUpdates/ucm094559.htm (last visited Jan. 31, 2017).

00116521

21 U.S.C. § 341. Importantly, the SOIs do not require the Products to state they are "100%" cheese, and Defendants' use of that claim on their labels and advertisements does not and cannot conform to the SOI's requirement because no such requirement exists. Such a requirement would not "promote honesty and fair dealing in the interest of consumers;" rather, it would solely benefit Defendants at the expense of consumers. Thus, a requirement prohibiting the use of the 100% Claims on the Products' labels would not in any way conflict with the applicable SOI. *See* Target MTD at 17.

Defendants argue the theory that "inserting a term like '100%' renders a food misbranded" has been rejected, but the cases they cite do not support this contention. Kraft MTD at 29. For example, *In re PepsiCo, Inc.*, 588 F. Supp. 2d 527 (S.D.N.Y. 2008), had nothing to do with a "100%" claim, but instead involved claims that the labels on Pepsi's Aquafina water implied that the water came from a mountain source when it was actually purified tap water. *See* Kraft MTD at 29. The court held that the claims were preempted because "the FDA specifically addressed the disclosure of source information and determined . . . that representations of source are immaterial in the context of purified water." *PepsiCo*, 588 F. Supp. 2d at 535.

Here, the FDCA does not mention or otherwise address the 100% Claims. Therefore, "[s]ince no federal standard exists for the use of [the term '100%'], Defendant's reliance on *PepsiCo* is unavailing." *Ault v. J.M. Smucker Co.*, No. 13-cv-03409, 2014 WL 1998235, at *4 (S.D.N.Y. May 15, 2014) (distinguishing *PepsiCo* and denying defendant's motion to dismiss, including preemption claims, where plaintiff argued that "the phrase 'All Natural' is misleading to describe foods containing GMOs and that no FDA regulations specifically address this

00116521

representation").[5]

Defendants also argue preemption applies because the SOIs for Parmesan and grated cheeses allow them to contain cellulose powder, corn starch, and potassium sorbate. Kraft MTD at 27-30; Target MTD at 9-21. Target argues that "[a]ny mistaken belief that Plaintiffs had about the difference between 'cheese' and 'grated cheese' derives from the FDA's standard of identity for grated cheese, not the Products' labels." Target MTD at 6. This logically flawed argument has no basis in fact, for as accurately stated by Target, Plaintiffs are not claiming the Products are not grated cheeses pursuant to the applicable SOIs. *Id.* at 14. In fact, as the Court correctly noted during the status hearing on January 9, 2017, if Defendants had left off the "100%" and merely labeled the Products "grated cheese," we likely would not be here. But Defendants overhype the false representations on their Products' labels and advertise their Products as "100%" cheese when they are not.[6]

Defendants' arguments also find no support in either *Turek v. Gen. Mills, Inc.*, 754 F. Supp. 2d 956 (N.D. Ill. 2010) or *Mills v. Giant of Md., LLC*, 441 F. Supp. 2d 104 (D.D.C. 2006). The court in *Turek* found the plaintiff's claims expressly preempted since the plaintiff there, unlike Plaintiffs here, "want[ed] to change the labeling on defendants' products because she question[ed] the nutritional science behind current disclosure requirements and not because of

---

[5] Likewise, *Veal v. Citrus World, Inc.*, No. 12-cv-00801, 2013 WL 120761 (N.D. Ala. Jan. 8, 2013) and *Romero v. Flowers Bakeries, LLC*, No. 14-cv-05189, 2016 WL 469370 (N.D. Cal. Feb. 8, 2016) are inapposite. "The court in *Veal* dismissed the plaintiff's complaint for lack of standing for failure to allege a concrete injury, not because Plaintiff's claims were preempted." *Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1374 n.5 (S.D. Fla. 2014) (citing *Veal*, 2013 WL 120761, at *10). And in *Romero*, the plaintiff's allegations were "based on a misreading of the applicable standards of identity" that "the only time the federal regulations allow the word 'wheat' to appear in the product name is when the bread is made exclusively with whole wheat flour and has absolutely no ordinary flour." 2016 WL 469370, at *9. Here, Plaintiffs do not argue that Defendants' labeling of the Products as "Parmesan" or "Parmesan and Romano" violates the SOIs; rather, they allege it is the addition of the 100% Claims that is misleading and deceptive.

[6] *See generally* Kraft Compl., Albertsons Compl., Target Compl., Wal-Mart Compl., and Publix Compl.

any fraudulent statements made for the purposes of commercial marketing." 754 F. Supp. 2d at 961. Also unlike Plaintiffs here, Ms. Turek sought "new requirements . . . to label certain fiber nutrients as 'non-natural' and to disclose alleged lack of health benefits" which were "materially different from the current NLEA requirements." *Id*. at 961–62. Likewise, the court in *Mills* found express preemption applied because "a warning label of the nature requested by plaintiffs would far exceed the labeling requirements mandated by the [SOI]," because "conspicuously absent from [the SOI] is a warning against the dangers of lactose intolerance." 441 F. Supp. 2d at 108-09. Here, Plaintiffs are not seeking any disclosure or warning; they are simply arguing that Defendants' 100% Claims are false and misleading and do not adhere to the SOI.

Finally, Plaintiffs do not "seek to impose a new mislabeling standard" as argued by Defendants. Target MTD at 18. Defendants cite 21 U.S.C. § 343(g) regarding representation as to definition and SOI, but conveniently ignore subsection (a), which addresses false and misleading labels. Section 343(a) states: "A food shall be deemed to be misbranded-- . . . [i]f (1) its labeling is false or misleading in any particular, or (2) in the case of a food to which section 411 [21 USCS § 350] applies, its advertising is false or misleading in a material respect or its labeling is in violation of section 411(b)(2) [21 USCS § 350(b)(2)]." 21 U.S.C. § 343(a).[7] Plaintiffs' complaints repeatedly allege that Defendants' label and representations were "false and misleading,"[8] not that Defendants failed to conform with the definition and SOI of the Products or that the labels fail to identify "common names of optional ingredients" in the

---

[7]    Similarly, 21 C.F.R. § 101.18 prohibits "a false or misleading representation" and "labeling by a name which includes or suggests the name of one or more but not all [] ingredients, even though the names of all such ingredients are stated elsewhere in the labeling." 21 C.F.R. § 101.18(a) and (b).

[8]    *See, e.g.*, Kraft Compl., ¶¶ 1, 3, 23; Albertsons Compl., ¶¶ 1, 3, 19; Target Compl., ¶¶ 1, 3, 14-15, 19; Wal-Mart Compl., ¶¶ 1, 3, 16-17, 21; and Publix Compl., ¶¶ 1, 3, 14.

10

Products.[9] Target MTD at 18 (quoting 21 U.S.C. § 343(g)).

Contrary to Defendants' assertions, this case is not like *Turek*, where the plaintiff sought new requirements that fell far outside the scope of the SOI. 754 F. Supp. 2d at 961-62. Nor do the other cases cited by Defendants, *Chicago. Faucet Shoppe, Inc. v. Nestlé Waters N. Am. Inc.*, 24 F. Supp. 3d 750, 761 (N.D. Ill. 2014) and *Wyeth v. Levine*, 555 U.S. 555 (2009), lend any support to Defendants' arguments. *See* Target MTD at 19. In *Chicago Faucet*, though the court found the omission-of-source claim regarding purified water to be expressly preempted (similar to *PepsiCo*, 588 F. Supp. 2d at 535), it stated "the question remains whether . . . the plaintiff nevertheless states a claim for relief on another theory of fraud." *Chicago Faucet*, 24 F. Supp. 3d at 761. And the *Wyeth* court, which addressed drug labeling under the FDCA, held that Vermont's failure-to-warn claims against an antihistamine manufacturer were not preempted by the FDCA. 555 U.S. 574-76.

There is no command by the FDCA that Defendants use "100%" on the Products' labels that is "explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Gade*, 505 U.S. at 98. Therefore, express preemption does not apply in this case to bar Plaintiffs' claims that using the term "100%" violates consumer protection and other state laws.

## 2. Plaintiffs' Claims Are Not Barred by Conflict Preemption[10]

Defendants state that Plaintiffs' claims are also barred under conflict preemption, but they make no arguments in support of this statement, aside from Target appearing to confuse conflict preemption with the safe harbor doctrine (which will be addressed in detail below). *See* Albertsons MTD at 20-21; Target MTD at 6, 9-10, 19-21. Regardless, Plaintiffs will briefly

---

[9]     Plaintiffs do not concede that any Product meets any SOI.

[10]     Kraft does not raise a conflict preemption argument in its motion to dismiss. *See generally* Kraft MTD.

11

address conflict preemption and why it does not apply here.

"In addition to starting with a presumption against preemption, in order for a court to find conflict preemption it must either be impossible for a private party to comply with both the state and federal law, or the state law must stand 'as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1049 (7th Cir. 2013) (quoting *Hillman v. Maretta*, _U.S._133, S. Ct. 1943, 1950 (2013)) (internal citation omitted); *see also Fed. Hous. Fin. Agency*, 962 F. Supp. 2d at 1057 (same). Conflict preemption does not arise when a state merely has more stringent regulations than a federal law; "[o]therwise every time a state chose to apply a more rigorous standard when regulating conduct within the state, the result would be impermissible." *Patriotic Veterans*, 736 F.3d at 1049.

To find conflict preemption, complying with both federal and state law must be a "complete impossibility – not mere inconvenience or hardship." *Id.* at 1050. Here, federal and state law would work in perfect harmony: removal of the 100% Claims from the Products' labels will not in any way interfere with the SOIs for Parmesan and grated cheese since there is no requirement that the labels include such a claim. *See* 21 C.F.R. § 133.146 (SOI for grated cheeses); 21 C.F.R. § 133.165 (SOI for Parmesan and reggiano cheese); 21 C.F.R. § 133.183 (SOI for Romano cheese).

Similarly, "before the Supremacy Clause will demand that state law surrenders to federal regulation," the presumption against preemption "dictates that a law must do 'major damage' to clear and substantial federal interests." *Patriotic Veterans*, 736 F.3d at 1050 (quoting *Hillman*, 133 S. Ct. at 1950). Removal of the 100% Claims from the Products' labels will not pose any obstacle, let alone do "major damage," to federal interests because it was not Congress' purpose

to have such claims on products satisfying the applicable SOIs – if it was, it would have so stated in the SOIs. Moreover, in establishing SOIs, Congress explicitly intends to protect consumers, not to allow food manufacturers and retailers to mislead consumers. *See* 21 U.S.C. § 341. Further, as addressed above, Plaintiffs' claims are entirely consistent with the NLEA, which prohibits misbranding. *See* 21 U.S.C. § 331(a), (b), (c), and (g).

Plaintiffs' allegations and requested relief would not make compliance with federal law impossible or wreak "major damage" on federal interests. Instead, the claims are consistent with federal law. Therefore, conflict preemption does not bar Plaintiffs' claims.

### B. The Safe Harbor Doctrine Does Not Bar Plaintiffs' Claims

As Defendants state, the safe harbor doctrine generally holds that defendants who "are doing something specifically authorized by federal law, . . . will [be] protect[ed] from liability under" state law. *Bober v. Glaxo Wellcome Plc*, 246 F.3d 934, 941 (7th Cir. 2001); Kraft MTD at 24. But federal law does not specifically authorize the use of "100%."

Defendants also ignore the very next sentence in *Bober* that states this "exemption is not available for statements that manage to be in technical compliance with federal regulations, but which are so misleading or deceptive in context that federal law itself might not regard them as adequate." *Bober*, 246 F.3d at 941; *Aliano v. Fifth Generation, Inc.*, No. 14-cv-10086, 2015 WL 5675423, at *4 (N.D. Ill. Sep. 24, 2015) ("mere compliance with the rules applicable to labeling and advertising is not sufficient to trigger the exemption") (citation omitted).

Defendants argue that "the safe harbor doctrine shields [Defendants] from liability because the FDA has explicitly approved its use of the '100% Grated Parmesan Cheese' label, even though it was aware that [they were] using cellulose powder and potassium sorbate in its cheese." Kraft MTD at 24; *see also* Target MTD at 19-21 and n.9 (agreeing with Kraft's safe

harbor arguments).[11] These arguments are incorrect because there is no legislation or regulation authorizing the conduct alleged by Plaintiffs. Further, the regulatory action Defendants point to – evaluating whether shortening the aging process still allows Kraft's cheese to be called "Parmesan" – did not encompass a review of the 100% Claims, nor was the FDA authorized to do so.

According to Defendants themselves, the FDA did not issue Kraft a permit to use "100%" on their labels; rather, the FDA issued Kraft "a permit to market Parmesan cheese products" that deviated from the identity standard because they "used a six-month curing process, as opposed to a ten-month curing process." Kraft MTD at 24-25 (citing Grated Parmesan Cheese Deviating From Identity Standard; Temporary Permit For Market Testing; Extension of Temporary Permit, 65 Fed. Reg. 16743 (March 17, 1999) (ECF No. 165-3); 65 Fed. Reg. 83040 (Dec. 29, 2000) (ECF No. 165-4). The FDA found the "test product meets all the requirements of the standards [for Parmesan and grated cheeses] with the exception of this [six-month curing] deviation." 65 Fed. Reg. 16743; 65 Fed. Reg. 83040. In its application, Kraft named the product "100% Grated Parmesan Cheese," and so the FDA, in referring to the product, called it "100% Grated Parmesan Cheese." The FDA even included the name in quotation marks whenever it called it by name. *See* 65 Fed. Reg. 16743 and 65 Fed. Reg. 83040.

Further, as detailed above, Plaintiffs' argument has nothing to do with whether the Products meet the SOIs for grated cheeses; their argument is that the label promoting the Products as "100%" cheese is misleading and deceitful. The fact that Kraft included the Product label, which contained the term "100%," in its permit request, does not mean the FDA reviewed,

---

[11]    Target relies solely on the permit granted and then extended to Kraft regarding shortened curing time for its assertion that "[t]he FDA has repeatedly approved the use of the label '100% Grated Parmesan Cheese' on a product that meets the definition and standard of identity for grated parmesan cheese." Target MTD at 19-21.

considered, or approved the use of the 100% Claims. Instead, the FDA merely evaluated whether the cheese with a shortened curing time could still be called "Parmesan."

Contrary to Defendants' description of the permit, the FDA did not "explicitly approve[]" the product label in conjunction with an investigation of Defendants' 100%" Claims. Kraft MTD at 24. As stated in the permit:

> The permit covers 86 million pounds of interstate marketing tests products identified as ''grated parmesan cheese'' that deviate from the U.S. standard of identity for parmesan cheese (21 CFR 133.165) and grated cheeses (21 CFR 133.146) in that the product is formulated by using a different enzyme technology that fully cures the cheese in 6 months rather than 10 months.

65 Fed. Reg. 16743. The purpose of the permit was "to facilitate market testing of foods deviating from the requirements of the standard of identity for parmesan cheese." 65 Fed. Reg. 83040. Thus, all that Defendants are "specifically authorized by federal law" to do is deviate from the standards of identity for Parmesan and grated cheeses by using a six-month curing process. *Id.*; *Bober*, 246 F.3d at 941.

None of the cases cited by Defendants supports their argument.[12] For example, in *Prohias*, the FDA, operating under a very different regulatory framework and after investigating the claimed benefits of Lipitor and determining that the information was not false or misleading, "approved Lipitor to reduce the risk of heart attacks in patients," and "[i]ts FDA approved label specifically includes this indication." 490 F. Supp. 2d at 1234-35. Here, the FDA did not investigate the 100% Claims by Defendants; it merely determined whether a shorter curing time for Parmesan and grated cheeses still met the applicable SOIs. *See* 65 Fed. Reg. 16743; 65 Fed. Reg. 83040.

---

[12]  *See* Kraft MTD at 24-27 (citing *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1229-30, 1234-35 (S.D. Fla. 2007); *Cytyc Corp. v. Neuromedical Sys., Inc.*, 12 F. Supp. 2d 296, 301 (S.D.N.Y. 1998); *Trazo*, 2013 WL 4083218, at *1, 7-8; *Kuenzig v. Hormel Foods Corp.*, 505 Fed. Appx. 937, 938-39 (11th Cir. 2013); *Aliano*, 2015 WL 5675423, at *1, 4).

Likewise, in *Cytyc Corp.*, the FDA, again under an entirely different regulatory framework, reviewed clinical data regarding the effectiveness of the ThinPrep product versus a conventional Pap smear and, *inter alia*, "approved the statement that the ThinPrep system is 'significantly more effective than the conventional Pap smear,'" so statements expressing "the fact that ThinPrep is 'significantly more effective than the conventional pap smear'" were non-actionable. 12 F. Supp. 2d at 299, 301. Here, the FDA analyzed the test products to determine if they still could be identified as Parmesan and grated cheeses, despite using a different enzyme to shorten the curing process, and it approved the test products as meeting the standards despite the deviation. *See* 65 Fed. Reg. 16743; 65 Fed. Reg. 83040. Again, there was no investigation into whether the 100% Claims were accurate, false, or misleading. *Id*.

Defendants also cite *Trazo* and *Kuenzig* for support, but those cases actually bolster Plaintiffs' argument. In *Trazo*, the court held that the plaintiffs' claims regarding false and misleading labeling on Hot Pockets and Lean Pockets were barred, but that was because "*[u]nlike non-meat packaged food products, meat products are pre-approved* by the USDA, which first reviews the labels, considers whether they are false or misleading, and approves them." 2013 WL 4083218, at *7 (emphasis added). The *Kuenzig* case also involved meat products whose labels were subject to the same review required by the USDA to ensure they were not false or misleading. 505 Fed. Appx. at 938-39. Thus, the products in *Trazo* and *Kuenzig* went through and passed the USDA label-approval process, unlike the non-meat packaged food products here whose labels are not, and have not been, pre-reviewed to determine whether they are "false or misleading." *Trazo*, 2013 WL 4083218, at *7-8; *Kuenzig*, 505 Fed. Appx. at 938-39.

Finally, the *Aliano* case is similarly supportive of the arguments made by Plaintiffs – not Defendants. 2015 WL 5675423. The court there found the defendant was exempted from liability

for the plaintiffs' allegations of false and misleading representations because the Alcohol and Tobacco Tax and Trade Bureau ("TTB") "regulates the labels and advertising for liquors such as Tito's" and "has reviewed and expressly approved Tito's label." *Id.*, at *4. The TTB had "personally inspected the manufacturing process at [FGI]'s facility multiple times," and "repeatedly approved Tito's label as truthful and appropriate." *Id.* Here, the FDA does not regulate advertising of products, and no such review or approval of Defendants' 100% Claims was granted – Defendants were merely permitted to shorten the curing time on Parmesan cheese. *See* 65 Fed. Reg. 16743; 65 Fed. Reg. 83040.[13]

Defendants are not specifically authorized or required by federal law to use the term "100%" on their labels. Therefore, the safe harbor exemption does not apply to bar Plaintiffs' claims.

## II. PLAINTIFFS ADEQUATELY PLEAD CLAIMS UNDER STATE CONSUMER PROTECTION STATUTES

### A. Plaintiffs Plausibly Plead the 100% Claims Are Likely to Deceive a Reasonable Consumer

Generally, state consumer protection claims alleging deceptive trade practices may be satisfied by proof that a statement is likely to mislead a reasonable consumer. *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 761-62 (7th Cir. 2014). An advertisement is deceptive if it is likely to mislead consumers, acting reasonably under the circumstances, in a material respect. *Kraft, Inc. v. Fed. Trade Comm'n*, 970 F.2d 311, 314 (7th Cir. 1992).[14]

---

[13] The safe harbor claims by Albertsons, Target, Wal-Mart, and Publix fail for the additional reason that the SOI deviation permit was issued to Kraft only and does not apply to them.

[14] *See also Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) ("Deceptive acts are defined objectively [] as acts likely to mislead a reasonable consumer acting reasonably under the circumstances."); *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) ("[t]he Florida Supreme Court has noted that deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's

17

"In determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." *Atik v. Welch Food, Inc.*, 15-cv-05405, 2016 WL 5678474, at *8 (E.D.N.Y. Sept. 30, 2016) (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013)); *see also Williams v. Gerber Prods., Co.*, 552 F.3d 934, 938-39 and n.3 (9th Cir. 2008) (must look "to the deceptive context of the packaging as a whole" when viewing challenged statements and images). Whether a label is misleading or not is rarely determined at the pleading stage, and dismissal is appropriate only in the rare situations where the advertisement itself made it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived. *See Williams*, 553 F.3d at 939.

FDA regulations single out misleading labels that misrepresent a product's contents and explain what makes Defendants' 100% Claims misleading:

> The labeling of a food which contains two or more ingredients may be misleading by reason (among other reasons) of the designation of such food in such labeling by a name which includes or suggests the name of one or more but not all such ingredients, even though the names of all such ingredients are stated elsewhere in the labeling.

21 C.F.R. § 101.18(b). Defendants' labels state "100%" cheese, but the Products contain ingredients other than those that are claimed to make up 100% of the Products. The Products are not 100% grated cheese, as stated, because the Products contain other non-cheese ingredients, including cellulose and potassium sorbate.

In *Gubala v. CVS Pharmacy, Inc.*, No. 14-cv-09039, 2016 WL 1019794, at *11-12 (N.D. Ill. Mar. 15, 2016), the district court held that a protein supplement named "Whey Protein Powder" violated section 101.18(b) and was misleading by suggesting that the product was

---

detriment") (internal quotation marks omitted); *Colgan v. Leatherman Tool Grp., Inc.*, 38 Cal. Rptr. 3d 36, 48 (Cal. Ct. App. 2006) ("To prevail on a false advertising claim, a plaintiff need only show that members of the public are likely to be deceived."); *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994) ("The capacity to mislead is the prime ingredient of all types of consumer fraud.").

00116521

comprised exclusively of pure whey protein, as opposed to whey protein mixed with other kinds of protein-like substances. Because the product actually contained other protein-like substances, the suggestion that whey protein was the only protein was deceptive. *Id*. at *12. Here, the 100% Claims are misleading for the same reason.

The holding in *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751 (N.D. Ill. 2015) does not aid Defendants.[15] In *Ibarrola*, the plaintiff interpreted the phrase "no refined sugars" to mean that the product contained only naturally occurring sugars that had not been refined at all. *Id*. at 756. The district court pointed out that unrefined sugar cane is an "indigestible" "stalk" of "fibrous flesh surrounded by bark" "resembling bamboo," and before it "can be used as an ingredient in food, sucrose must be extracted from the flesh of the sugar cane stalk and processed over the course of several stages." *Id*. at 757. Because the sugar must be refined in some way to become a food product, the district court determined that a reasonable consumer would not adopt Ibarrola's interpretation. Contrary to *Ibarrola*, Plaintiffs' interpretation that 100% cheese means an edible food product that consists entirely of cheese is a reasonable interpretation of the 100% Claims. Defendants need not refer to the Products as "100%" cheese when they contain ingredients that are not cheese.

**B.    Federal Requirements that Defendants List All Ingredients Do Not Preclude Liability for Misleading Claims Displayed on the Front of the Products**

Defendants believe they can disclaim falsehoods that are prominently displayed on the front label by including information on the back label that implies the front label claim is false. They argue that because non-cheese ingredients, such as cellulose and potassium sorbate, are listed on the required ingredient list, they bear no liability to consumers for the false 100% Claims prominently displayed on the front.

---

[15]    *See*, *e.g.*, Kraft MTD at 21-22; Wal-Mart MTD at 19 n.10; Albertsons MTD at 24-25.

Defendants rely on *Workman v. Plum, Inc.*, 141 F. Supp. 3d 1032 (N.D. Cal. 2015), for the proposition that "reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging." *Id*. at 1035. The ingredient list, however, may only "confirm" other representations, or clarify "potential ambiguities." *Id*. at 1035. It cannot correct misstatements on the front of the package. Reasonable consumers are not expected to "look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Williams*, 552 F.3d at 939. The FDA does not require ingredient lists "so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception." *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) (quoting *Williams*, 552 F.3d at 939).

Unlike this case, *Workman* did not concern affirmative misrepresentations about a product's contents, but instead concerned allegedly misleading pictures of featured ingredients. The problem for the plaintiff in *Workman*, however, was that "all of the items pictured are actually present in the product." *See Workman*, 141 F. Supp. 3d at 1035. The court concluded that no reasonable consumer would expect the size of the pictures to directly correlate with the flavor's predominance in the product. *Id*. Here, the 100% Claims are boldly pronounced on the Products' front label and in their advertising, and Plaintiffs reasonably correlated those claims with the expectation that the Products are 100% cheese.

Likewise, *Trujillo v. Apple Computer, Inc.*, 581 F. Supp. 2d 935, 938 (N.D. Ill. 2008) provides no support for Defendants. There, the court held that no reasonable consumer would be deceived by Apple's alleged omissions regarding the iPhone's battery life because the product disclosed the fact that the battery had a limited life and the potential need for replacement outside

20

00116521

the warranty period. *Id*. at 939. Apple did not make an affirmative representation about battery life, only to be disclaimed elsewhere. Unlike here, *Trujillo* did not involve false and deceptive representations about the contents of the packaging or a back-of-the-label ingredient list.

### C. Defendants' Interpretation of the 100% Claims Defies Common Sense

Defendants contend that no reasonable consumer would believe the Products were cellulose-free because the Products sit on store shelves in plastic containers. But there is no contention that cellulose has anything to do with the Products' shelf life or that a reasonable consumer should be expected to know whether or not cellulose is connected to shelf life. Defendants claim that cellulose acts as an anti-caking agent to prevent clumping but do not explain how cellulose extends shelf life. However, Plaintiffs allege the statement misled them and misleads reasonable consumers because the Products are not 100% cheese. *See* Kraft Compl., ¶ 1; Albertsons Compl., ¶ 1; Target Compl., ¶ 1; Wal-Mart Compl., ¶ 1; Publix. Compl., ¶ 1. Reasonable consumers are likely to believe the 100% Claims; the fact that the Products are packaged and sit on store shelves would not indicate that the 100% Claims are false.

The *Veal* case presents no obstacle to Plaintiffs' claims. 2013 WL 120761. The plaintiff in *Veal* did not claim that the product did not contain 100% orange juice, but instead complained that the defendant's "100% orange juice" was not fresh-squeezed orange juice. *Id*. at *2. The district court found the plaintiff's interpretation of the defendant's label untenable because "the fact that the plaintiff may have believed defendant hired individuals to hand squeeze fresh oranges one by one into juice cartons, then boxed up and delivered the same all over the country does not translate into a concrete injury to plaintiff." *Id*. at *11. Unlike *Veal*, the court in *Lynch v. Tropicana Prods., Inc.*, No. 11-cv-07382, 2013 WL 2645050 (D.N.J. June 12, 2013) declined to dismiss consumer fraud claims stemming from the defendants' "100% pure and natural orange

juice." The district court there determined there was no supporting evidence for the proposition that consumers understood the intricacies relating to the shelf life and processing of the orange juice so as to destroy a reasonable expectation of the product's freshness as represented. *Id.* at *7. The same goes for grated cheese. Even if there were supporting evidence, it would not be a basis for dismissal; it would be a question for the trier of fact.

Nor is this a case like *Red v. Kraft Foods, Inc.*, where the plaintiff argued that the phrase "made with real vegetables" on a box of crackers connoted a healthy product with significant amounts of vegetables. No. 10-cv-01028, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012). Plaintiffs do not claim the 100% Claims connote any particular health or nutritional benefit. Plaintiffs claim the 100% Claims represent the Products contain nothing but cheese.

Defendants' interpretation defies common sense and merely presents a factual issue that cannot be resolved on a motion to dismiss. They make the circular argument that the 100% Claims speak only to the percentage of cheese in the Products, and not to any other ingredients in the product. By this logic, they could have called the products "100% Cellulose" because the cellulose consists only of cellulose. No reasonable person would read the 100% Claims so strictly, and even if it were a reasonable construction, it would be an issue for the trier of fact to decide, not a basis for dismissal.

### D.    Plaintiffs' Allegations Satisfy the Heightened Pleading Standard

To satisfy the requirements for pleading claims under certain consumer fraud statutes, Plaintiffs must state "the identity of the person making the representation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated." *Muir v. NBTY, Inc.*, No. 15-cv-09835, 2016 WL 5234596, at *8 (N.D. Ill. Sept. 22, 2016). Precise allegations of date, time, and location are not required. *Camasta v. Jos. A.*

22

*Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014).[16]

In *Muir*, the district court found the fraud pleading standard was met with respect to false labeling claims. 2016 WL 5234596, at *8. The court explained:

> Plaintiff has identified the "who and what" of his claim by providing images of each of the manufacturers' products, each bearing labels prominently assuring the consumer of the products' hypericin content. The "when and where" questions are arguably answered, as well: the allegedly misleading statements were made at the point of sale of the product, when consumers purchased bottles of St. John's Wort in reliance on claims appearing on the labels.

*Id.*

Plaintiffs here meet the heightened pleading standard. The identities of the persons making the representation are the Defendants, who place their names on the labels of their Products.[17] The time of the misrepresentation was when Plaintiffs were shopping. The place of the misrepresentation was on the label of the Product that was at the retail location where Plaintiffs purchased the Products. The content of the misrepresentation is the 100% Claim. And the misrepresentations were communicated by Defendants by placing them on the Products' labels and in advertisements for the Products.

Certain Defendants claim the complaints impermissibly lump together multiple Defendants. But the claims against Wal-Mart, Target, and ICCO are clear and adequately pleaded. ICCO manufactures, packages, and labels certain Products sold under private labels owned by Target and Wal-Mart. Target Compl., ¶¶ 14-15; Wal-Mart Compl., ¶¶ 16-17. Target and Wal-Mart sell the Products under their Market Pantry and Great Value private labels, respectively. Target Compl., ¶ 11; Wal-Mart Compl., ¶ 13. The Products are the retailers'

---

[16]   The heightened pleading standard does not apply to the claims under New York law. *See Stoltz v. Fage Dairy Processing Indus. S.A.*, No. 14-cv-03826, 2015 WL 5579872, at *21 (E.D.N.Y. Sept. 22, 2015).

[17]   ICCO-Cheese is the only Defendant who does not include its name on the Products.

00116521

Products, and they, with the help of ICCO, make the false 100% Claims regarding the Products. Defendants' participation in the unlawful conduct is adequately pleaded, and Defendants are on notice as to the basis of Plaintiffs' allegations of unlawful conduct.

### E.    Defendants' Remaining Challenges to Individual Claims Are Without Merit

#### 1.    Plaintiff Rollinger Adequately Pleads a Minnesota Deceptive Trade Practices Claim

Wal-Mart makes four arguments against Plaintiff Rollinger: (i) he fails to allege an injury fairly traceable to Wal-Mart's conduct; (ii) the heightened pleading standard is not satisfied; (iii) his claims are not brought for the benefit of the public; and (iv) he lacks standing to obtain injunctive relief. Wal-Mart MTD at 24-27. The first, second, and fourth arguments are addressed and refuted in Sections V.A., II.D., and V.B., respectively. The third argument fails for the reasons set forth below.

In *Collins v. Minn. Sch. of Bus., Inc.*, the Minnesota Supreme Court articulated the standard for pleading the requisite public benefit under Minnesota's private attorney general statute. 655 N.W.2d 320, 329-30 (Minn. 2003). In finding public benefit present in that case, the court zeroed in on the fact that the defendant "misrepresented the nature of its [sports medicine educational] program to the public at large," as opposed to only the plaintiff. *Id.* at 330.

As in *Collins*, and unlike *Overen v. Hasbro, Inc.*, No. 07-cv-01430, 2007 WL 2695792 (D. Minn. Sept. 12, 2007) (cited by Wal-Mart for support), Plaintiff Rollinger seeks to vindicate the rights of Minnesota consumers and end Defendants' continuing deceptive practices through injunctive relief. Whereas in *Overen*, the defendant had discontinued the alleged false advertising and was no longer selling the product that caused his daughter's injury, *see id.* at *3, Wal-Mart continues to assert the 100% Claims in connection with sales of its Products. The complaint makes clear that Plaintiff Rollinger is prosecuting his case on behalf of the public. Wal-Mart

24

Compl., ¶ 4 ("Plaintiffs bring this action on behalf of themselves and all other similarly situated consumers to recover the amounts [they] overpaid, to prevent Defendants from continuing to engage in this conduct, and to correct the false perception Defendants have created in the marketplace."); *see also id.*, ¶¶ 73, 82, 90, 96, and Request for Relief (seeking, among other things, damages, equitable, declaratory, and injunctive relief). Because Plaintiff Rollinger seeks to enjoin unlawful deceptive trade practices that uniformly harm the public, he is serving a public benefit.

### 2.    The New York General Business Law Claims Are Adequately Pleaded

Wal-Mart contends that Plaintiff Ducorsky's claims under N.Y. Gen. Bus. Law §§ 349, *et seq.* fail because all of the ingredients were stated on the package. For the reasons set forth above in Section II.A-C. and for the additional reasons stated below, the argument fails. Whether the 100% Claims are misleading is a question of fact. *See Braynina v. TJX Cos., Inc.*, 15-cv-05897, 2016 WL 5374134, at *5 (S.D.N.Y. Sept. 26, 2016) (whether a practice is deceptive is usually a question of fact). That question cannot be answered on a motion to dismiss.

As discussed above, the Product's ingredient list does not bar Plaintiff Ducorsky's claims, and cases applying New York law agree. *See Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 479-80 (S.D.N.Y. 2014) (defendants' description of its products as "Active Naturals" was plausibly misleading, even though synthetic ingredients were listed elsewhere on the packaging); *Ackerman v. Coca-Cola Co.*, No. 09-cv-00395, 2010 WL 2925955, at *16 (E.D.N.Y. July 21, 2010) ("The fact that the actual sugar content of vitaminwater [*sic*] was accurately stated in an FDA-mandated label on the product does not eliminate the possibility that reasonable consumers may be misled.").

The *Gomez-Jimenez v. N.Y. Law Sch.* case does not help Wal-Mart. 956 N.Y.S. 2d 54 (App. Div. 2012). There, the court held that a law school's statements regarding employment statistics that "likely left some consumers with an incomplete, if not false, impression of the schools' job placements success" were not materially misleading in violation of the law. *Id.* at 59. But unlike the law school's employment statistics, the 100% Claims here are affirmative representations regarding the contents of the Products. The law school did not offer a law degree and then deliver an engineering degree, for example. The 100% Claims do not imply certain results can be achieved by consuming the Products.

Wal-Mart argues in passing that Plaintiff Ducorsky is uninjured. Plaintiff Ducorsky was injured because he paid for a falsely advertised product. *See Ackerman*, 2010 WL 2925955, at *23 (payment of artificially inflated price of product caused by misrepresentations constitute injury); *see also* Wal-Mart Compl., ¶ 59. Plaintiff Ducorsky's allegations are more than sufficient to show injury.

### 3. Plaintiffs Sikes, Fata, Pellitteri, and Rudder Have Adequately Pleaded Florida Deceptive Trade Practices Claims

Wal-Mart lays out a laundry list of arguments against the FDUTPA claims, which Target and ICCO incorporate by reference with respect to Plaintiff Fata's claims. The arguments are conclusory and should be rejected. Further, for the reasons set forth in Section V.A., Plaintiffs allege an injury fairly traceable to Defendants' conduct. For the reasons set out in Section II.D., Plaintiffs meet the heightened pleading standard. For the reasons set forth in Section I., federal law does not bar or limit Plaintiffs' entitlement to pursue their FDUTPA claims. *See Krzykwa v. Campbell Soup Co.*, 946 F. Supp. 2d 1370, 1375 (S.D. Fla. 2013) (claims that are not preempted are not subject to FDUTPA's safe harbor).

26

Publix relies on previously addressed arguments in seeking dismissal of Plaintiffs Pellitteri and Rudder's FDUTPA claims. For the reasons set forth in Section I., federal standards of identity do not bar Plaintiffs' claims. For the reasons set forth in Section II.A-C., Publix cannot rely on the ingredient list to disclaim the 100% Claims. Publix's argument that causation and damages are not adequately pled also rely on the FDA's standard of identity. Because the regulations do not require the 100% Claims, or allow the 100% Claims if they are misleading, Publix's argument should be rejected.

Defendants are not entitled to the good faith retailer exception as an affirmative defense. The statutory framework of the exception, including its opening with the word "however," signals that it is not an element of liability but an affirmative defense. The fact that Defendants are in a better position to adduce the relevant evidence of what they knew weighs in favor of its treatment as an affirmative defense. *See U.S. v. Kloess*, 251 F.3d 941, 946 (11th Cir. 2001). In any event, the 100% Claims are Wal-Mart's and Target's own misrepresentations. They are not "claims of a manufacturer or wholesaler." Fla. Stat. § 501.211(2). The exception does not apply to their 100% Claims.

### 4. Plaintiff Schmoll Adequately Pleads a New Jersey Consumer Fraud Claim

Wal-Mart repeats numerous arguments in challenging Plaintiff Schmoll's New Jersey Consumer Fraud claim. It argues the labels disclosed the presence of cellulose. That argument fails for the same reasons discussed in Section II.B. Wal-Mart next argues that Plaintiffs fail to plead an ascertainable loss. An ascertainable loss occurs "when a consumer receives less than what was promised." *Hoffman v. Liquid Health Inc.*, No. 14-cv-01838, 2014 WL 2999280, at *7 (D.N.J. July 2, 2014) ("Plaintiff adequately pleads that for the amount of money he spent, he received something far less than and far different from what he reasonably expected . . . .").

27

00116521

Plaintiffs allege they received wood pulp in place of cheese. Wal-Mart claimed the Products were 100% cheese, not partially wood. That constitutes an injury under the CFA. Plaintiff Schmoll's claim succeeds under Rule 9(b) for the reasons stated in Section II.D.

### 5. Plaintiff Wills Adequately Pleads an Alabama Consumer Fraud Claim

Albertsons and Wal-Mart's challenges to Plaintiff Wills's ADTPA claim fail. They argue that the Products' labels complied with federal law, but as established above, that argument is wrong. They also argue that the labels are not misleading, but as established in Section II.A-C., that argument fails.

Moreover, neither Defendant has shown it maintained a place of business or held any assets in Alabama fifteen days prior to filing the action. *See* Ala. Code § 8-9-10(e) ("The demand requirements of this subsection shall not apply if the prospective respondent does not maintain a place of business or does not keep assets within the state . . . ."). Therefore, they have not established that they were entitled to the pre-suit demand for relief. *See Cooper v. Bristol-Myers Squibb Co.*, No. 01-cv-00885, 2009 WL 5206130, at *6 (D.N.J. 2009). Furthermore, the pre-suit written demand does not affect Defendants' rights to offer a written tender of settlement. *See* Ala. Code § 8-9-10(e). Defendants were not harmed by the failure of pre-suit notice because they could have tendered a settlement offer anyway, but chose not to. Even if Defendants had alleged a mere procedural violation (they do not), they have shown no harm resulted from such a violation. Kraft does not raise a failure of notice as a basis for dismissal, so Plaintiff Wills's claims against Kraft should not be dismissed on this ground.

### 6. The California CLRA and UCL Claims Are Adequately Pleaded

Wal-Mart's attacks on the California claims should be rejected. Wal-Mart's assumption that the Rule 9(b) standard applies to every element of Plaintiffs' claims is not accurate. The

element of fraud and mistake are the only elements that must be pleaded with particularity, and as discussed above, that has been done here. *See Bruton v. Gerber Prods. Co.*, 961 F. Supp. 2d 1062, 1076 (N.D. Cal. 2013) (claims sounding in fraud must allege time, place, content of misrepresentations, identities of person making misrepresentations, and why statement is false). Moreover, Wal-Mart's argument that knowledge or a fiduciary relationship is not pleaded with particularity misunderstands the pleading requirements, because knowledge may be averred generally. *See* Fed. R. Civ. P. 9(b). Likewise, Wal-Mart's contention that this is somehow an omissions case is off base, and its duty to disclose argument is a red herring. This case is based on the 100% Claims prominently appearing on the labels of the Products.

Defendants also complain that they received a CLRA notice letter too late. That is not so. Plaintiff Reeves does not yet seek damages for Defendants' violation of the CLRA. *See* Target Compl. ¶ 92; Wal-Mart Compl., ¶ 144. Plaintiffs Reeves, Lewin, and Weiss will request leave to amend the complaints to seek damages in accordance with the procedure approved by California courts. *See*, *e.g.*, *Morgan v. AT & T Wireless Servs., Inc.*, 99 Cal. Rptr. 3d 768, 789 (Cal. Ct. App. 2009) ("statute contemplates that a consumer may amend a complaint for injunctive relief to add a request for damages under the CLRA").

### 7. Plaintiff Zachary Adequately Pleads a Missouri Merchandising Practices Claim

Target and ICCO argue that Plaintiff Zachary's consumer fraud claim must be dismissed because the Product's label is accurate and every ingredient is disclosed. As argued above, Plaintiffs have plausibly pleaded a reasonable consumer is likely to be misled by the 100% Claims. Missouri courts are in accord with the proposition established above that the fact that cellulose is indicated in the ingredient list on the back of the packaging is not a shield against liability. *See Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308 (Mo. Ct. App. 2016) ("the

29

00116521

'ingredient list' defense cannot, as a matter of law, defeat an MMPA claim"). Defendants cite *Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754 (W.D. Mo. 2015), but *Murphy* "expressly reject[ed]" the aspect of *Kelly* that Defendants rely upon here. *Murphy*, 503 S.W.2d at 312. *Kelly* should not be followed. Also, Plaintiff Zachary plausibly alleges injury because his overpayment for the Products was proximately caused by Defendants' misrepresentations that the Products contained 100% of one ingredient when they did not.

### 8. The Illinois Consumer Fraud Claims Are Adequately Pled

Albertsons and Supervalu argue that they are entitled to invoke the Illinois safe harbor against the ICFA claims of Plaintiffs Bell and Lang. Target and ICCO adopt by reference their arguments, presumably with respect to Plaintiff Bell. For the reasons argued in Section I., that argument must be rejected. Defendants' argument that no reasonable consumer would be misled should be rejected for the reasons set forth in Section II.A-C. As a result, Plaintiffs' ICFA claims should not be dismissed.

## III. PLAINTIFFS STATE CLAIMS FOR BREACH OF WARRANTY

### A. The 100% Claims Constitute Express Warranties

Defendants Albertsons, Target, and Publix argue that Plaintiffs fail to state a claim for breach of express warranty because the 100% Claims do not constitute warranties. This argument lacks merit. The 100% Claims are precise and objective statements of fact that describe the Products and are actionable because they are "specific and measurable," *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 946 (3d Cir. 1993), and a "reasonable buyer would be justified in relying on [them] . . . in navigating the marketplace." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 161 (2d Cir. 2007).

The 100% Claims are "affirmation[s] of fact or promise[s]" and "description[s] of the goods" such that they can form the basis of an express warranty. *See* 810 ILCS 5/2-313; *see also In re Rust-Oleum Restore Mktg., Sales Practices & Prod. Liab. Litig.*, 155 F. Supp. 3d 772, 787 (N.D. Ill. 2016) ("An explicit promise by the seller with respect to the quality of the goods and that is part of the bargain between the parties creates an express warranty 'that the goods shall conform to the affirmation or promise.'" (quoting U.C.C. § 2-313)). Each Product label affirms and promises the central assertion that the Product is "100% Grated Parmesan Cheese" or "100% Grated Parmesan & Romano Cheese." Plaintiffs and other consumers reasonably understood these statements to mean the Products were 100% cheese.

Whether a statement constitutes an express warranty is a question of fact. *See, e.g., Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 906 (N.D. Ill. 2013). "[A] reasonable consumer could plausibly read these terms to be specific, factual representations that the products contain" 100% cheese. *Bohac v. Gen. Mills, Inc.*, No. 12-cv-05280, 2014 WL 1266848, at *9 (N.D. Cal. Mar. 26, 2014), and Defendants cannot rely on their own self-serving interpretations of the claim to obtain dismissal. *See York v. Andalou Nats., Inc.*, No. 16-cv-00894, 2016 WL 7157555, at *4 (S.D. Ill. Dec. 8, 2016) (rejecting defendant's argument "that by utilizing the name 'Andalou Naturals', Defendant does not seek to convey that its products are devoid of synthetic or unnatural ingredients," and explaining "Defendant's intentions in branding its products with the phrase 'natural' are not a proper inquiry at this stage in the litigation").

Defendants' reliance on the ingredients list to shield themselves from liability is also unavailing. As explained in *Bohlke v. Shearer's Foods, LLC*:

> Defendant [] argues that because Defendant expressly informed consumers of the allegedly artificial ingredients by including them in the ingredient list, it cannot be in breach of an express warranty. . . . Plaintiff[] alleges that the statements "All Natural" and "No Artificial Ingredients," which were displayed on the front of the

31

Products' packaging, were an express warranty which Defendant breached by including "unnatural, synthetic, and/or artificial ingredients" in the Products. At this stage, the Court's inquiry is complete; "[t]he existence of an express warranty is a factual issue for the jury to decide."

No. 14-cv-80727, 2015 WL 249418, at *10-11 (S.D. Fla. Jan. 20, 2015) (rejecting *Chin v. Gen. Mills, Inc.*, No. 12-cv-02150, 2013 WL 2420455 (D. Minn. June 3, 2013)) (internal citations omitted); *see also Bohac*, 2014 WL 1266848, at *9 (denying motion to dismiss express warranty claim, finding "General Mills may not rely on the ingredients list 'to correct those misinterpretations'").[18]

## B.    The Warranty Claims Do Not Fail for Lack of Privity

Kraft argues that Plaintiffs' express warranty claims fail for lack of privity under Alabama, Connecticut, Florida, Illinois, and Michigan law. Albertsons seeks dismissal of the Illinois warranty claims and the Alabama implied warranty claims. Defendants' arguments fail because various exemptions to the privity requirements apply. Thus, "a summary dismissal of Plaintiffs' claims at this stage would be improper." *In re Rust-Oleum*, 155 F. Supp. 3d at 807 (denying dismissal of express and implied warranty claims for states requiring privity).

First, privity is not required where a plaintiff relies on the manufacturer's written representations in labels or advertising materials. *See*, *e.g.*, *Canadian Pac. Ry. Co. v. Williams-Hayward Protective Coatings, Inc.*, No. 02-cv-08800, 2005 WL 782698, at *15 (N.D. Ill. Apr. 6, 2005) (exception to privity requirement for express warranty because "the assertions become part of the basis of the bargain unless clear affirmative proof shows otherwise"); *Garcia*, 43 F. Supp.

---

[18]    Wal-Mart also contends that because its label discloses the ingredients, Plaintiff Ducorsky cannot have relied on the warranty under New York law. Wal-Mart MTD at 23. However, New York's law reflects the "prevailing perception" in that reliance "requir[es] no more than reliance on the express warranty as being a part of the bargain between the parties . . . ." *CBS Inc. v. Ziff-Davis Pub. Co.*, 75 N.Y.2d 496, 503 (1990). "The express warranty is as much a part of the contract as any other term." *Id.* Here, plaintiff Ducorsky alleges he would not have purchased the product or would not have paid as much for it had he known the 100% Claims were false. Wal-Mart Compl., ¶¶ 8, 22, 54, 59. This is sufficient to satisfy any "reliance" requirement under New York law.

3d at 1389 (recognizing exception with respect to express warranty under Florida law where representations appear on packaging and "middle man" has no special knowledge regarding product); *Hamon v. Digliani*, 174 A.2d 294, 297 (Conn. 1961) ("There appears to be no sound reason for depriving a plaintiff of the right to maintain an action against the manufacturer where the plaintiff alleges that he was induced to purchase the product by the representations in the manufacturer's advertising and that he sustained harm when the product failed to measure up to the express or implied representations."). Here, Plaintiffs allege that they viewed and believed the 100% Claims, which appear prominently on the Product labels.

Second, courts recognize an exception to the privity requirement where the plaintiff is an intended beneficiary of the contract for sale. *See, e.g.*, *Johnson v. Anderson Ford, Inc.*, 686 So. 2d 224, 228 (Ala. 1996) (defendant "intended to extend the express warranty directly to the ultimate purchaser"); *Chicago Heights Venture v. Dynamit Nobel of Am., Inc.*, 575 F. Supp. 214, 219 (N.D. Ill. 1983), *aff'd*, 782 F.2d 723 (7th Cir. 1986) ("[W]here there is a direct relationship between the manufacturer and the seller, or where the manufacturer knew the identity, purpose and requirements of the dealer's customer and delivered the goods specifically to meet those requirements, a warranty suit between a buyer and such a manufacturer will lie.").

Third, privity is not a required element for breach of implied warranties for sealed food products. *See, e.g.*, *Hamon*, 174 A.2d at 297-98.[19] "The fact that these packages were sealed by the manufacturer demonstrates that the defect existed when the product left defendants' control – this is what justifies the privity exception . . . ." *Adkins v. Nestle Purina PetCare Co.*, 973 F. Supp. 2d 905, 922 (N.D. Ill. 2013) (denying motion to dismiss implied warranty claims under

---

[19]     Connecticut also recognizes an exception to the privity requirement where other avenues of recovery are foreclosed. *See, e.g.*, *Utica Mut. Ins. Co. v. Denwat Corp.*, 778 F. Supp. 592, 596 (D. Conn. 1991) ("If in fact the plaintiff has suffered a loss redressable in warranty, it should be able to proceed under that theory absent another available cause of action, despite the lack of privity . . . .").

00116521

Illinois, New York, Connecticut, Florida, and Alabama law for lack of privity).

Finally, privity is satisfied where a consumer purchases a product from an agent of the manufacturer. Whether an agency relationship exists is a factual issue. *See, e.g.*, *Flynn v. FCA US LLC*, No. 15-cv-00855, 2016 WL 5341749, at *7 (S.D. Ill. Sept. 23, 2016) ("[A] lack of explicit privity doesn't doom a claim if the seller was an agent of the defendant."); *Nartron Corp. v. Hamilton/Avnet Elecs. of Ariz., Inc.*, No. 90-cv-00060, 1991 WL 303604, at *2 (W.D. Mich. Nov. 1, 1991) ("If Avnet were acting as ITT's agent in connection with the sale of the diodes, then privity of contract would exist," and "whether an agency relationship exists is a question of fact . . . ."). Here, Plaintiffs allege that Albertsons operates the retail stores where Plaintiffs purchased the Products and that Supervalu distributes the Products through those stores for sale. *See* Albertsons Compl., ¶¶ 7-14. At this stage, Plaintiffs' allegations are sufficient to avoid dismissal based on privity.

## C. Defendants' Arguments Regarding Pre-Suit Notice Are Premature

Each Defendant except Kraft seeks dismissal of certain warranty claims for lack of pre-suit notice. However, as courts in this District and others have held, Defendants' arguments regarding pre-suit notice are premature. *See In re Rust-Oleum*, 155 F. Supp. 3d at 801-02. Compliance with a statutory notice requirement is an affirmative defense. *See Colon v. Wal-Mart Stores, Inc.*, No. 13-cv-00464, 2014 WL 1588463, at *2 (M.D. Fla. Apr. 21, 2014). A motion to dismiss based on an affirmative defense should fail where "there is a conceivable set of facts, consistent with the complaint, that would defeat the defense." *McDonald v. Adamson*, 840 F.3d 343, 347 (7th Cir. 2016) (alterations omitted).

Further, "[p]arties may be excused from the pre-litigation notice requirement when . . . the defendant had actual knowledge of the product's defect." *Biffar v. Pinnacle Foods*

34

*Grp., LLC*, No. 16-cv-00873, 2016 WL 7429130, at *5 (S.D. Ill. Dec. 22, 2016) (in case where "Defendant ha[d] actual knowledge that its Product contains artificial ingredients and . . . others ha[d] already alerted Defendant to the issues with its Product," finding "[w]hether and to what extent notice is sufficient is a question of fact not susceptible to a motion to dismiss"); *In re Rust-Oleum*, 155 F. Supp. 3d at 801-02 (noting "the sufficiency and reasonableness of notice provided to the defendant is usually a fact question for the jury in many of the states at issue," including New Jersey, Alabama, Florida, Illinois, Minnesota, and New York, and denying motion to dismiss as premature) (internal quotations omitted).

Here, dismissal is not warranted at this stage given Plaintiffs' allegations that all conditions precedent have been fulfilled, coupled with the fact that Defendants have actual knowledge of the ingredients in their Products.[20] The Wal-Mart and Albertsons complaints additionally include allegations that product testing was conducted prior to the filing of the complaints in February 2016,[21] which was widely publicized. Further, Wal-Mart was sent a pre-suit notice letter from another plaintiff in this multi-district proceeding.[22] Nothing more is necessary at the pleading stage.

### D. Plaintiffs Properly Allege a Claim for Breach of Implied Warranty

Defendants argue that Plaintiffs cannot state a claim for breach of implied warranty of merchantability because they cannot show the Products lacked fitness for ordinary use. However, Defendants' argument would read the other definitions of merchantability out of the law. "Merchantability has several meanings." *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1118 (S.D.

---

[20]   *See*, *e.g.*, Wal-Mart Compl., ¶ 36; Target Compl., ¶ 34; Publix Compl., ¶ 39; Albertsons Compl., ¶ 36.

[21]   *See* Wal-Mart Compl., ¶ 20; Albertsons Compl., ¶ 20.

[22]   *See Bustamante, et al., v. Wal-Mart Stores, Inc., et al.*, No. 16-cv-05804, Class Action Complaint (ECF No. 1), ¶ 139.

00116521

Cal. 2011) (quoting *Hauter v. Zogarts*, 14 Cal. 3d 104, 118 (1975)). Merchantability also requires that goods "(a) Pass without objection in the trade under the contract description; and (b) In the case of fungible goods, are of fair average quality within the description; and . . . (e) Are adequately contained, packaged, and labeled as the agreement may require; and (f) Conform to the promises or affirmations of fact made on the container or label . . . ." Cal. Com. Code § 2314(2).

The Products here satisfy none of these criteria. In particular, they do not conform to the promise made on their label that they are 100% cheese. *See* Cal. Com. Code § 2314(2)(f);[23] *see also In re Ferrero Litig.*, 794 F. Supp. 2d at 1118 (denying motion to dismiss implied warranty claim, even though food product was fit for consumption, because it did not conform to label representation under Cal. Com. Code § 2314(2)(f)); *In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1112 (C.D. Cal. 2012) ("Plaintiffs have alleged that Wesson Oils do not conform to the representation on their labels that they are '100% Natural.' This allegation plainly falls within the ambit of the statutes, and plaintiffs' claims cannot be dismissed on this basis as a result.") (applying New Jersey and Texas law); *Wheeler v. Sunbelt Tool Co.*, 537 N.E.2d 1332, 1341 (Ill. App. Ct. 1989) ("A description of the product may create an implied warranty of merchantability.") (Illinois law).[24] Plaintiffs paid for "100%" cheese and received a product that

---

[23]  *See also* Ala. Code § 7-2-314(2)(f); Conn. Gen. Stat. Ann. § 42a-2-314(2)(f); Fla. Stat. Ann. § 672.314(2)(f); 810 Ill. Comp. Stat. Ann. 5/2-314(2)(f); Mich. Comp. Laws Ann. § 440.2314(2)(f); Minn. Stat. Ann. § 336.2-314(2)(f); Mo. Ann. Stat. § 400.2-314(2)(f); N.J. Stat. Ann. § 12A:2-314(2)(f); N.Y. U.C.C. Law § 2-314(2)(f).

[24]  *See also Boswell v. Costco Wholesale Corp.*, No. 16-cv-00278, 2016 WL 3360701, at *10 (C.D. Cal. June 6, 2016) (denying motion to dismiss implied warranty claim under California law where defendant argued plaintiffs could not plead the "coconut oil they purchased could not be consumed or used to assist with cooking"); *Piro v. Exergen Corp.*, No. 15-cv-11834, 2016 WL 1255630, at *11 (D. Mass. Mar. 29, 2016) (applying California and Massachusetts law); *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 329-30 (D.N.J. 2014) (finding plaintiffs stated a claim under New Jersey law, where although clothes dryer dried clothes, it did not conform to Energy Star Label on packaging).

was comprised partially of non-cheese filler and thus not merchantable as such. Defendants'
motions to dismiss on this basis should be denied.

## IV.    PLAINTIFFS STATE A CLAIM FOR UNJUST ENRICHMENT

Plaintiffs state a claim for unjust enrichment under each applicable state law, as detailed
below. The principle underlying the doctrine of unjust enrichment is that "[a] person who has
been unjustly enriched at the expense of another is required to make restitution to the other."
*Midcoast Aviation, Inc. v. Gen. Elec. Credit Corp.*, 907 F.2d 732, 737 (7th Cir. 1990) (quoting
Restatement of Restitution § 1 (1937)). At the pleading stage, Plaintiffs' unjust enrichment claim
should be interpreted as a quasi-contract claim seeking restitution. *See id.*; *see also*, *e.g.*, *Astiana
v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). To state a cause of action based
on the theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained
a benefit to the plaintiff's detriment, and that the defendant's retention of the benefit violates
fundamental principles of justice, equity, and good conscience. *See*, *e.g.*, *HPI Health Care
Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989). Plaintiffs have done this.

Defendants marketed their Products as "100%" grated cheese. Plaintiffs and proposed
Class members purchased the Products expecting to receive a product containing only cheese.
Instead, the containers held less than 100% of the advertised cheeses. Defendants knew the
actual ingredients in the Products; thus, allowing Defendants to retain the benefits resulting from
their deception while Plaintiffs and other Class members suffer the detriment of paying a price
they would not have paid had they not been deceived by Defendants' labels violates the
fundamental principles of justice, equity, and good conscience.

Defendants seek dismissal of Plaintiffs' unjust enrichment claims, in part, on the basis
that Plaintiffs have an adequate remedy at law. However, Plaintiffs are permitted to plead an

00116521

unjust enrichment claim in the alternative. *See* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.")); *see also*, *e.g.*, *Astiana*, 783 F.3d at 762; *Mervyn v. Nelson Westerberg, Inc.*, 76 F. Supp. 3d 715, 721 (N.D. Ill. 2014) (Feinerman, J.) (finding dismissal of unjust enrichment claim premature and noting parties are permitted to set forth as many separate claims as they have).

Kraft and Albertsons contend that because the unjust enrichment claims are based on the same alleged wrongdoing as Plaintiffs' other claims, the claims must fall together. Kraft MTD at 33 (as to Illinois law); Albertsons MTD at 32-34 (as to Illinois and Alabama law). Defendants rely on *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 513 (7th Cir. 2011), for this proposition, but as this Court has recognized, *Cleary* should not be read so broadly. *See Muir*, 2016 WL 5234596, at *9 ("This court is uncertain that *Cleary* establishes what Defendants say it does: that when an unjust enrichment claim rests on the same facts alleged in support of a consumer fraud action, dismissal of the consumer fraud claim dooms the unjust enrichment claim, as well."). Rather, *Cleary* simply shows that dismissal of a fraud claim may necessitate dismissal of the unjust enrichment claim where the basis for dismissal negates plaintiff's theory that defendant engaged in an unfair practice. *See id.*; *see also Landlock Nat'l Paving, Inc. v. Desin L.P.*, No. 12-cv-02893, 2013 WL 4854361, at *5 (N.D. Ill. Sept. 11, 2013) (Feinerman, J.) ("[A]bsent that the defendants engaged in an unfair practice, Siegel's unjust enrichment claim is not viable." (quoting *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010)). Regardless, Plaintiffs' claims for breach of warranty and violation of the consumer fraud statutes do not fail, so neither does their unjust enrichment claim. Wal-Mart's similar arguments also fail for the same reason. *See* Wal-Mart MTD at 26-27, 34-36. For this, and the reasons applicable to each state law below,

Defendants' arguments should be rejected.

<u>Alabama</u>: Kraft and Albertsons contend unjust enrichment is unavailable because Plaintiffs have an adequate remedy at law. Defendants are wrong. First, "alternative theories of recovery may be presented to, and decided by, the trier of fact." *Shedd v. Wells Fargo Home Mortg., Inc.*, No. 14-cv-00275, 2014 WL 6451245, at *6 (S.D. Ala. Nov. 17, 2014). Second, where the parties are not in agreement as to the existence of a written warranty, dismissal of an unjust enrichment claim should be denied. *See Smith v. Apple, Inc.*, No. 08-AR-1498-S, 2009 WL 3958096, at *2 (N.D. Ala. Nov. 4, 2009). Third, even if the express warranty in this case equated to an "express contract" governing the parties' relationship, an unjust enrichment claim is not precluded where it would not contravene the contract. *See Scrushy v. Tucker*, 955 So. 2d 988, 1009 (Ala. 2006) ("Because we conclude that the employment contract does not contain any provision that is inconsistent with the provision in the annual proxy statement preventing the award of bonuses in the absence of net income, this argument has no merit.").

<u>California</u>: The same arguments applicable to the Alabama claim also support Plaintiffs' claim under California law. *See Astiana*, 783 F.3d at 762 (alternative pleading permitted); *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988, 1001 (2015) (claim for unjust enrichment permitted where it "does not contravene or alter any term of the contract[]"); *Perez v. Monster Inc.*, 149 F. Supp. 3d 1176, 1186 (N.D. Cal. 2016) (the "quasi-contract claim survives just as the express and implied warranty claims survive"); *Bailey v. Kind, LLC*, No. 16-cv-00168, 2016 WL 3456981, at *7 (C.D. Cal. June 16, 2016); *Arroyo v. TP-Link USA Corp.*, No. 14-cv-04999, 2015 WL 5698752, at *11 (N.D. Cal. Sept. 29, 2015).

<u>Connecticut</u>: As explained in *Rent-A-PC, Inc. v. Rental Mgmt., Inc.*, 901 A.2d 720, 723 (Conn. App. Ct. 2006), where a plaintiff also pleads breach of express warranty, "[a]lthough the

lack of a remedy under the contract is a precondition for recovery . . . the existence of a contract, in itself, does not preclude equitable relief which is not inconsistent with the contract." *See also id.* at 723 ("Unjust enrichment is . . . a broad and flexible remedy."); *Zeigler v. Sony Corp. of Am.*, 849 A.2d 19, 25 (Conn. Super. Ct. 2004).

Florida: Again, even if an express warranty was equivalent to an "express contract," Plaintiffs are permitted at this stage to pursue alternative theories of relief. *See Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273, 1279 (S.D. Fla. 2009) ("Defendant has not conceded that Plaintiffs are entitled to recovery under the contract, and it is possible that if their contractual claim fails, Plaintiffs may still be entitled to recovery under the unjust enrichment count."). The Court should reject arguments to the contrary by Kraft, Publix, Target, and Wal-Mart.

Michigan: Kraft contends that under Michigan law, an unjust enrichment claim stands only where the plaintiff directly conferred a benefit on the defendant. However, with respect to a third-party beneficiary such as Kraft, the true inquiry is whether the defendant's retention of a benefit was "innocent, just, or equitable" under the particular circumstances of the case. *See Morris Pumps v. Centerline Piping, Inc.*, 729 N.W.2d 898, 905 (Mich. Ct. App. 2006).

Minnesota: Kraft and Wal-Mart again argue that Plaintiffs cannot bring a claim for unjust enrichment where there is an adequate remedy at law. However, at this stage, there has been no determination as to whether Plaintiffs have such a remedy. Moreover, the express warranty in this case does not amount to a contract governing the rights of the parties such that it would preclude equitable relief. *Cf. U.S. Fire Ins. Co. v. Minn. State Zoological Bd.*, 307 N.W.2d 490, 497 (Minn. 1981).

40

New Jersey: Wal-Mart argues "New Jersey does *not* recognize unjust enrichment as an independent tort cause of action." Wal-Mart MTD at 32 (quoting *Warma Witter Kreisler, Inc. v. Samsung Elecs. Am., Inc.*, No. 08-cv-05380, 2009 WL 4730187, at *7 (D.N.J. Dec. 3, 2009) (emphasis in original)). However, here, where there is a direct relationship between Plaintiffs and Wal-Mart, Plaintiffs' claim for unjust enrichment does not sound purely in tort, and a claim for unjust enrichment is not precluded. *See Bedi v. BMW of N. Am., LLC*, No. 15-cv-01898, 2016 WL 324950, at *5 (D.N.J. Jan. 27, 2016) ("This cause of action sounds in contract, not tort, and so there must be a direct relationship between the parties.").

New York: Wal-Mart and Kraft argue that the unjust enrichment claim must be dismissed as duplicative. This is incorrect. Defendants fail to establish "that no reasonable trier of fact could find unjust enrichment or constructive trust without establishing all the elements for one of [Plaintiffs'] claims sounding in law." *Nuss v. Sabad*, No. 10-cv-00279, 2016 WL 4098606, at *11 (N.D.N.Y. July 28, 2016) (distinguishing *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012)). Plaintiffs should be permitted to pursue their claims for restitution at this stage, where both Defendants seek dismissal of Plaintiffs' claims sounding in law.

## V.    PLAINTIFFS HAVE ARTICLE III STANDING

### A.    Plaintiffs Adequately Allege Injury In Fact And Causation

Defendants Albertsons,[25] Wal-Mart, Target, and Publix argue that Plaintiffs do not have standing to bring certain claims because they do not allege an injury in fact.[26] Target additionally

---

[25]    Part of Albertsons argument does not speak to Plaintiffs' standing at all; instead, it attacks the merits of Plaintiffs' claims by challenging Plaintiffs' interpretation of the label in light of FDA regulations. *See* Albertsons MTD at 18 (claiming "'100% cheese' is *not* what Supervalu's labels promised" (emphasis in original)). This is not a basis for dismissal for the reasons discussed in Section II.A-C.

[26]    *See* Albertsons MTD at 18-19; Target MTD at 23-25; Wal-Mart MTD at 16-17; and Publix MTD at 10.

00116521

argues Plaintiffs do not sufficiently allege causation. These arguments are meritless. A plaintiff has Article III standing if: (1) he or she suffered an "injury in fact"; (2) there is a causal connection between the injury and the defendant's actions; and (3) the injury can be redressed by a favorable decision for the plaintiff. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Here, each Plaintiff has standing to assert his or her respective claims because each alleges an injury in fact in the form of purchasing a falsely advertised product, which was caused by Defendants' labeling misrepresentations, and which a favorable decision would redress.[27] These allegations establish standing. *See*, *e.g.*, *Muir v. Playtex Prod., LLC*, 983 F. Supp. 2d 980, 986 (N.D. Ill. 2013) (Feinerman, J.) (collecting cases); *Lipton v. Chattem, Inc.*, No. 11-cv-02952, 2012 WL 1192083, at *5 (N.D. Ill. Apr. 10, 2012) (Feinerman, J.) ("Lipton was injured because she purchased a product that was worth less than she paid for it.").

Albertsons and Target rely on cases where the plaintiffs did not clearly allege diminished value due to false or misleading advertising. Their reliance on such decisions is misplaced.[28] In this case, Plaintiffs alleged they paid for 100% cheese based on Defendants' misleading labeling,

---

[27]    *See*, *e.g.*, Kraft Compl., ¶¶ 3, 7-15, 24; Albertsons Compl., ¶¶ 3, 7-9, 20; Target Compl., ¶¶ 3, 7-10, 20; Wal-Mart Compl., ¶¶ 3, 7-12, 22; Publix Compl., ¶¶ 3, 7-8, 15 (each complaint alleges Plaintiffs overpaid for the Products, believing they were 100% cheese, when, in fact, they were not).

[28]    For example, in *Veal*, 2013 WL 120761, at *4-6, the Northern District of Alabama found it significant that plaintiff did "not state a claim for any deceptive trade practice in the labeling," instead proceeding purely on a "benefit of the bargain" theory, and did not show he received anything other than orange juice. That is not the case here. Albertsons' reliance on *Boysen v. Walgreen Co.*, No. 11-cv-06262, 2012 WL 2953069 (N.D. Cal. July 19, 2012), is unpersuasive for similar reasons. *See Kosta v. Del Monte Corp.*, No. 12-cv-01722, 2013 WL 2147413, at *11 (N.D. Cal. May 15, 2013) (distinguishing *Boysen* where "misleading labeling and advertising . . . caused [plaintiffs] to purchase products or pay premiums they would not have otherwise").The cases cited by Target (Target MTD at 24) are similarly inapposite. *See Frye v. L'Oreal USA, Inc.*, 583 F. Supp. 2d 954, 958 (N.D. Ill. 2008) (plaintiffs did not allege product "had a diminished value because of the lead"); *Ibarrola v. Kind, LLC*, No. 13-cv-50377, 2014 WL 3509790, at *4 (N.D. Ill. July 14, 2014) ("Ibarrola does not allege . . . the Vanilla Blueberry Clusters had a diminished value because they contained sugar cane syrup."); *In re Fruit Juice Prod. Mktg. & Sales Practices Litig.*, 831 F. Supp. 2d 507, 512 (D. Mass. 2011) ("Plaintiffs paid for fruit juice, and they received fruit juice . . . . The products had no diminished value due to the presence of the lead. Thus, Plaintiffs received the benefit of the bargain, as a matter of law, when they purchased these products.").

42

but they did not receive 100% cheese. They did not receive all that they were promised. Stated another way, they were shorted on the amount of cheese they received. To the extent any of Defendants' cases suggest that standing cannot be premised on an overpayment, that is not the law. *See In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748, 751 (7th Cir. 2011).

Additionally, Plaintiffs are not required to plead alternative products that they might have purchased, contrary to Target's suggestion. *See* Target MTD at 24; *see also Playtex Prod.*, 983 F. Supp. 2d at 987. Nor must Plaintiffs use particular words to establish that their injury was traceable to Defendants' conduct. Plaintiffs allege that because of Defendants' mislabeling, they did not receive what they were promised, and they overpaid for the Products. Target Compl., ¶ 20. This is sufficient to establish causation. *See Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 696 (7th Cir. 2015) (allegations of causation need only be "plausible for pleading purposes"). Accordingly, Target's argument that Plaintiffs do not allege causation should be rejected. *See* Target MTD at 25.

Finally, Wal-Mart contends that Plaintiffs lack standing to assert fraud-based claims because the allegations suggest Wal-Mart was simply "an unknowing distributor and seller of Products that ICCO manufactured." Wal-Mart MTD at 17. Wal-Mart's argument is factually false. This is Wal-Mart's private label brand – not a name brand that it merely placed on its shelves. Together with ICCO, it falsely labeled the Products and then sold them under its Great Value brand. *See* Wal-Mart Compl., ¶¶ 1, 13, 16, 19. Plaintiffs purchased the Products directly from Wal-Mart. *Id.* ¶¶ 7-12. The causal connection in this case is clear and straightforward. *See Adams v. Target Corp.*, No. 13-cv-05944, 2014 WL 12558290, at *3 (C.D. Cal. Mar. 3, 2014) ("The causal chain linking Target's conduct and Plaintiff's injury is not particularly complicated: Target continued to sell Banzai-brand products after being directly notified that these products

used misleading photos on their packaging. As a direct result of Target's continued use of deceptive photographs to sell its products, Plaintiff purchased a falsely advertised product from one of its stores. . . . Article III's requirements are plainly satisfied."). Here, the causal chain is even stronger than in *Adams* because Wal-Mart engaged ICCO to manufacture and label so-called "100% Grated Parmesan Cheese" and "100% Parmesan Grated Cheese" in order to be sold under Wal-Mart's very own "Great Value" brand. Wal-Mart Compl., ¶¶ 16, 19. Drawing all reasonable inferences in Plaintiffs' favor, Wal-Mart gave its stamp of approval on the Products' labels and was well aware of the Products' formulation. Plaintiffs' injuries are directly traceable to Wal-Mart's actions.

### B.   Plaintiffs Have Standing to Seek Injunctive Relief

As shown above, Plaintiffs each have standing to assert their causes of action, yet Defendants argue Plaintiffs lack standing to seek injunctive relief. Specifically, Kraft asserts that because Plaintiffs now know of Defendants' false labeling and the true contents of the Products, Plaintiffs cannot allege a threat of future harm. Kraft MTD at 30-31. All other Defendants incorporate Kraft's argument by reference.[29] Defendants are wrong for multiple reasons.

First, Defendants' argument conflates the issue of standing with the question of entitlement to relief, but they are not the same thing. "Standing is a prerequisite to *filing suit*, while the underlying merits of a claim (and the laws governing its resolution) determine whether the plaintiff is *entitled to relief*." *Arreola v. Godinez*, 546 F.3d 788, 794-95 (7th Cir. 2008) (emphasis in original). Plaintiffs have standing based on their alleged violations of each consumer protection statute, and prospective injunctive relief is available under those statutes. Their request for injunctive relief is a potential remedy, not a stand-alone claim.

---

[29]   *See* Albertsons MTD at 19 n.6; Target MTD at 25; Wal-Mart MTD at 17-18; Publix MTD at 10.

00116521

The flaw in Defendants' argument is that it impermissibly requires the Court to "become[] too enmeshed in the plaintiff's entitlement to relief," resulting in it "stray[ing] beyond the standing inquiry into the merits." *See Leiner v. Johnson & Johnson Consumer Cos., Inc.*, No. 15-cv-05876, 2016 WL 128098, at *1 (N.D. Ill. Jan. 12, 2016); *Arreola*, 546 F.3d at 795. This Court should reject Defendants' argument because "it is best to confine the term 'standing' to the Article III inquiry and thus to keep it separate from the plaintiff's entitlement to relief." *Arreola*, 546 F.3d at 795. *See Leiner*, 2016 WL 128098, at *1 (recognizing division among courts, but holding to the "better view" and the one consistent with *Arreola*); *see also Dean v. Colgate-Palmolive Co.*, No. 15-cv-00107, 2015 WL 3999313, at *8 (C.D. Cal. June 17, 2015) (finding standing to pursue injunctive relief and noting, "[w]hen determining what constitutes the same type of relief or the same kind of injury, [courts] must be careful not to employ too narrow or technical an approach") (citations omitted).

Second, Plaintiffs plausibly allege continuing harm. The complaints allege that Kraft and the other Defendants continue to engage in the alleged conduct, that Plaintiffs and proposed Class members continue to be harmed by Defendants' conduct, and that Plaintiffs will likely be deceived in the future when they shop for Defendants' products. *See, e.g.*, Kraft Compl., ¶¶ 4, 33, 87.[30] This case involves Products and other foodstuff that are pervasive in grocery stores throughout the United States, which effectively guarantees Plaintiffs will encounter Defendants' goods on store shelves when they go grocery shopping. Kraft Compl., ¶¶ 16-17. Indeed, just for grated cheeses, given the limited options in some grocery stores, it will undoubtedly be difficult for Plaintiffs to avoid the Products when shopping, and they may even be forced to purchase Defendants' Products again because of limited options of comparable alternative products.

---

[30]     *See also* Albertsons Compl., ¶¶ 4, 28; Target Compl., ¶¶ 4, 28, 87; Wal-Mart Compl., ¶¶ 4, 30, 139; Publix Compl., ¶¶ 4, 23.

45

Regardless, Plaintiffs will continue to be harmed by the alleged mislabeling and be susceptible to Defendants' willingness to engage in false advertising and misbranding, generally. *See Lilly v. Jamba Juice Co.*, No. 13-cv-02998, 2015 WL 1248027, at *4 (N.D. Cal. Mar. 18, 2015) ("Basic economics . . . supports the notion that the past-purchaser plaintiff will suffer a potential injury in the absence of an injunction."); *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 568-69 (S.D.N.Y. 2014) ("[H]ere, even if a class member actively wanted to buy pomace instead of 100% pure olive oil, they nevertheless paid too much for it."); *see also Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012) ("Should plaintiffs encounter the denomination 'All Natural' on an Arizona beverage at the grocery store today, they could not rely on that representation with any confidence."). If Plaintiffs succeed in this case and the next day seek to purchase Defendants' Products, they are entitled to a truthful label. And they reasonably would believe that Defendants are not continuing to violate the law after being found liable. Defendants' position would create bad public policy.

Third, Plaintiffs' ability to pursue injunctive relief is not incompatible with their claims that they now know the truth about Defendants' Products. In *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074-75 (7th Cir. 2013), cited by Kraft, the Seventh Circuit explained that the plaintiff had standing to seek injunctive relief as to the hotel she had visited where she stated "that she *would use* the Overland Park Courtyard Marriott *but for the alleged continuing ADA violations there*." 703 F.3d at 1074 (emphasis added). Thus, although the plaintiff was aware the violations were ongoing, her allegations were "sufficient to support a plausible inference that [she] would have liked to return to the hotel but for its continued [violations]." *Id.* Plaintiffs are not precluded from seeking injunctive relief simply because they are now aware of the injurious

00116521

conduct and can theoretically avoid it.[31]

Plaintiffs' allegations are enough to establish that they have standing to seek injunctive relief. *See*, *e.g.*, *Muir*, 2016 WL 5234596, at *10 (standing for injunctive relief established where the complaint alleged that "Defendants continue to advertise . . . and sell the Products in a . . . deceptive manner."); *Le*, 160 F. Supp. 3d at 1111 (plaintiff's allegations sufficed to establish Article III standing where he "alleged a realistic fear that Kohls' misleading marketing scheme will likely continue to cause economic harms to consumers"); *Conrad v. Nutramax Labs., Inc.*, No. 13-cv-03780, 2013 WL 5288152, at *3 (N.D. Ill. Sept. 18, 2013) (denying request to dismiss prayer for injunctive relief as a remedy under the ICFA).

The alternative is for Plaintiffs to split their claims and pursue injunctive relief in state court. While they will do so if necessary, it is wasteful and inconsistent with the purpose of the Class Action Fairness Act to consolidate actions of import beyond a state's borders and create judicial efficiencies through consolidation, not case dispersion. *See*, *e.g.*, *Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 952 (9th Cir. 2009) (purpose of CAFA is to take multi-state and nationwide class actions out of state courts).

### C.    Plaintiffs Have Standing to Assert Their Claims on a Classwide Basis

Defendants Kraft, Wal-Mart, Albertsons, and Publix each challenge Plaintiffs' class allegations. *See* Albertsons MTD at 19-20; Publix MTD at 10; Kraft MTD at 31-32, 34-35; Wal-Mart MTD at 24 n.23, 26 n.26 (adopting Kraft's arguments). These arguments fail.

Albertsons and Publix frame the issue as one of standing, arguing that Plaintiffs lack standing to sue for violations of the laws of states where Plaintiffs do not reside. Plaintiffs have

---

[31]     *Camasta* is not to the contrary. "Interpreting the *Camasta* court's dicta to . . . announce a broad rule that strips a prospective plaintiff of standing to seek an injunction solely because they are aware of a past wrong overreads that court's language and leads to anomalous results." *Muir*, 2016 WL 5234596, at *10 (quoting *Le v. Kohls Dep't Stores, Inc.*, 160 F. Supp. 3d 1096, 1111 (E.D. Wis. 2016)).

Article III standing for the reasons discussed above. *See supra* Section V.A. Whether a certain state's laws apply to Plaintiffs' or Class members' claims depends on an "application of choice-of-law principles [that] has nothing to do with *standing*, though it may affect whether a class should be certified." *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011) (emphasis in original). "Plaintiffs have standing if they have been injured, the defendants caused that injury, and the injury can be redressed by a judicial decision." *Id.* at 536. The primary authority on which Defendants rely, *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 09-cv-03690, 2013 WL 4506000, at *8 (N.D. Ill. Aug. 23, 2013), fails to acknowledge *Morrison*, but as this Court has noted, Defendants' "challenge is more accurately characterized as an attack . . . on [Plaintiffs'] ability under Rule 23 to represent the multi-state class." *Halperin v. Int'l Web Servs., LLC*, 123 F. Supp. 3d 999, 1009 (N.D. Ill. 2015) (Feinerman, J.). "[T]hat question is best deferred to the class certification stage." *Id.*

Kraft's arguments, while not presented as a standing challenge, fail for the same reason: they should not be considered until the class certification stage. Kraft contends that Plaintiffs' claims for breach of express and implied warranties cannot be maintained on behalf of a nationwide or multi-state class, respectively. Kraft MTD at 34-35. Kraft's arguments should be rejected because an inquiry into the impact of state law variations on Plaintiffs' warranty claims is premature – such variations are "not sufficient to demonstrate that a multistate class is 'per se unworkable.'" *Bietsch v. Sergeant's Pet Care Prod., Inc.*, No. 15-cv-05432, 2016 WL 1011512, at *11 (N.D. Ill. Mar. 15, 2016) (internal citations omitted). *See also Boatright v. Walgreen Co.*, No. 10-cv-03902, 2011 WL 843898, at *2 (N.D. Ill. Mar. 4, 2011) ("[A] decision denying class status . . . at the pleading stage is inappropriate."); *Miller v. Janssen Pharmaceutica Prod., L.P.*, No. 05-cv-04076, 2006 WL 488636, at *1 (S.D. Ill. Feb. 28, 2006) ("[I]t is more

00116521

appropriate to handle this issue in a class certification motion . . . .").

Plaintiffs' unjust enrichment claims should be permitted to go forward for these same reasons. *See*, *e.g.*, *Kostovetsky v. Ambit Energy Holdings, LLC*, No. 15-cv-02553, 2016 WL 105980, at *8 (N.D. Ill. Jan. 8, 2016) (Feinerman, J.) ("It may be that the unjust enrichment laws of the various States are different enough to preclude class certification . . . . That inquiry is premature at this point and best left to the class certification stage."); *Miller*, 2006 WL 488636, at *1 (denying motion to strike or dismiss nationwide claims, including claims of unjust enrichment; *Ellis v. J.P. Morgan Chase & Co.*, 950 F. Supp. 2d 1062, 1091 (N.D. Cal. 2013) ("Whether Plaintiffs will succeed with their burden of establishing this claim should be certified as a nationwide class is not appropriate to determine at this time.").[32]

## CONCLUSION

Plaintiffs' claims are not barred by preemption or the safe harbor doctrine. They have demonstrated Article III standing and have adequately pleaded claims for violations of consumer protection statutes, breach of warranty, and unjust enrichment. For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motions to dismiss.

Respectfully submitted,

Dated: February 10, 2017         BLOOD HURST & O'REARDON, LLP

By:  *s/ Timothy G. Blood*
Timothy G. Blood (149343CA)
701 B Street, Suite 1700
San Diego, CA 92101
Tel: 619-338-1100
tblood@bholaw.com

---

[32]    Kraft's reliance on *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, No. 05-cv-02623, 2006 WL 3754823, at *3 (N.D. Ill. Dec. 18, 2006), is unavailing. Although the court found plaintiffs who had not made purchases in Illinois could not assert individual unjust enrichment claims under Illinois law, the decision does not speak to the breadth of the class plaintiffs could represent. *See id.* (dismissing "non-Illinois plaintiffs' unjust enrichment claims that [we]re brought 'under the unjust enrichment laws of the state of Illinois'").

49

Ben Barnow
Erich P. Schork
Jeffrey Blake
Anthony Parkhill
BARNOW AND ASSOCIATES, P.C.
1 North LaSalle Street, Suite 4600
Chicago, IL 60602
Tel: 312-621-2000
b.barnow@barnowlaw.com
e.schork@barnowlaw.com
j.blake@barnowlaw.com
aparkhill@barnowlaw.com

Lori G. Feldman
Andrea Clisura
LEVI & KORSINSKY LLP
30 Broad Street, 24th Floor
New York, NY 10004
Tel: 212-363-7500
lfeldman@zlk.com
aclisura@zlk.com

*Plaintiffs' Interim Co-Lead Counsel*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on February 10, 2017, a copy of the foregoing document was electronically filed with the United States District Court, Southern District of Illinois, via the Court's CM/ECF filing system, which will send notification of such filing to counsel of record, on February 10, 2017.

<i>s/ Timothy G. Blood</i>
TIMOTHY G. BLOOD

00116521