# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| IN RE: 100% GRATED PARMESAN CHEESE MARKETING AND SALES PRACTICES LITIGATION | Case No. 1:16-cv-05802 MDL No. 2705 |
| | The Hon. Gary S. Feinerman |
| *This Document Relates to All Cases on The Kraft Heinz Company Track* | |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT AGAINST THE KRAFT HEINZ COMPANY

**JENNER & BLOCK LLP**

Dean N. Panos (Ill. Bar No. 6203600)
dpanos@jenner.com
353 N. Clark Street
Chicago, IL 60654
Tel.: (312) 222-9350

*-and-*

Kenneth K. Lee (admitted *pro hac vice*)
klee@jenner.com
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
Tel.: (213) 239-5100

*Attorneys for Defendant*
The Kraft Heinz Company

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

ARGUMENT ........................................................................................................................... 3

    I.      Plaintiffs' Claims Against Kraft Heinz Are Barred By The Safe Harbor Doctrine Because the FDA Pre-Approved the "100% Grated Parmesan Cheese" Packaging. .......................................................... 3

    II.     Plaintiffs Do Not Plausibly Allege That the Phrase "100% Grated Parmesan Cheese" Is Likely to Deceive a Reasonable Consumer . ..................................................................................................................... 9

CONCLUSION ...................................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aliano v. Fifth Generation, Inc.*,
    No. 14-10086, 2015 WL 5675423 (N.D. Ill. Sept. 24, 2015) ................................................7, 9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..........................................................................................................2, 10

*Bober v. Glaxo Wellcome PLC*,
    246 F.3d 934 (7th Cir. 2001) .......................................................................................3, 9, 10

*Bush v. Mondelēz Int'l, Inc.*,
    No. 16-2460, 2016 WL 5886886 (N.D. Cal. Oct. 7, 2016) .............................................13, 15

*City of Pittsburgh v. West Penn Power Co.*,
    147 F.3d 256 (3d Cir. 1998)......................................................................................................5

*Cytyc Corp. v. Neuromedical Sys, Inc.*,
    12 F. Supp. 2d 296 (S.D.N.Y. 1998)........................................................................................8

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) .................................................................................................15

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013)......................................................................................................9

*Florida v. Tenet Healthcare Corp.*,
    420 F. Supp. 2d 1288 (S.D. Fla. 2005) ....................................................................................4

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) ......................................................................................................9

*Gubala v. CVS Pharmacy, Inc.*,
    No. 14-9039, 2016 WL 1019794 (N.D. Ill. Mar. 15, 2016) .............................................12, 13

*Hauk v. JP Morgan Bank USA*
    552 F.3d 1114 (9th Cir. 2009) ..................................................................................................3

*Ibarrola v. KIND, LLC*,
    83 F. Supp. 3d 751, 757 (N.D. Ill. 2015) ...............................................................................11

*Kelly v. Cape Cod Potato Chip Co.*,
    81 F. Supp. 3d 754, 759 (W.D. Mo. 2015) .............................................................................11

*Kuenzig v. Hormel Foods Corp.*,
  505 F. App'x 937 (11th Cir. 2013) ..................................................................7

*Lichoulas v. City of Lowell*,
  555 F.3d 10 (1st Cir. 2009) ...........................................................................5

*Lynch v. Tropicana Products, Inc.*,
  No. 11-7382, 2013 WL 2645050 (D.N.J. June 12, 2013) .....................................12

*Lyons v. First Am. Title Ins. Co.*,
  No. 09-4156, 2009 WL 5195866 (N.D. Cal. Dec. 22, 2009) ..................................5

*McKinnis v. Kellogg USA*,
  No. 07-2611, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) ................................13

*Meeker v. Belridge Water Storage Dist.*,
  No. 05-603, 2005 WL 6246803 (E.D. Cal. May 3, 2005) .....................................5

*Prohias v. Pfizer, Inc.*,
  490 F. Supp. 2d 1228 (S.D. Fla. 2007) ..........................................................4, 8

*Red v. Kraft Foods, Inc.*
  No. 10-1028, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012)...................................15

*S.F. Baykeeper v. W. Bay Sanitary Dist.*,
  791 F. Supp. 2d 719 (N.D. Cal. 2011) ............................................................5

*Spector v. Mondelēz Int'l, Inc.*,
  178 F. Supp. 3d 657, 672 (N.D. Ill. 2016) ...............................................9, 10, 11

*Stuart v. Cadbury Adams USA, LLC*,
  458 F. App'x 689 (9th Cir. 2011) ................................................................11

*Trazo v. Nestlé USA, Inc.*,
  No. 12-2272, 2013 WL 4083218 (N.D. Cal. Aug. 9, 2013) ...................................8

*Trujillo v. Apple Computer, Inc.*,
  581 F. Supp. 2d 935 (N.D. Ill. 2008) ............................................................10

*Veal v. Citrus World, Inc.*
  No. 12-801, 2013 WL 120761 (N.D. Ala. Jan. 8, 2013)......................................12

*Williams v. Gerber Products Co.*
  552 F.3d 934 (9th Cir. 2008) ......................................................................14

*Workman v. Plum, Inc.*,
  141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015) ..........................................13, 14, 15

**OTHER AUTHORITIES**

21 C.F.R. § 133.146 ...................................................................................................6, 10

*Grated Cheeses; Amendment of the Standard of Identity*, 51 Fed. Reg. 30210-01
    (Aug. 25, 1986) ....................................................................................................11

*Grated Parmesan Cheese Deviating from Identity Standard: Extension of
    Temporary Permit*, 65 Fed. Reg. 83040 (Dec. 29, 2000) ..................................2, 4, 6

*Grated Parmesan Cheese Deviating from Identity Standard: Temporary Permit
    for Market Testing*, 65 Fed. Reg. 16743 (Mar. 29, 1999).....................................4, 6

https://www.fda.gov/
    ICECI/EnforcementActions/WarningLetters/2015/ucm458824.htm (last
    accessed Feb. 24, 2017) ..........................................................................................6

## <u>INTRODUCTION</u>

In their opposition to Kraft Heinz's motion to dismiss, Plaintiffs do not appear to contest the following undisputed facts:

- Kraft Heinz submitted the packaging for its "100% Grated Parmesan Cheese" to the U.S Food and Drug Administration (FDA) for pre-approval.

- The ingredient list on the packaging of "100% Grated Parmesan Cheese" disclosed the presence of cellulose powder (an anti-clumping agent) and potassium sorbate (a mold inhibitor), both of which are "safe and suitable" ingredients that the FDA's standard of identity for grated cheese expressly allows.

- The FDA reviewed and approved Kraft Heinz's "100% Grated Parmesan Cheese" packaging in 1999 and again in 2000.

As set forth in Kraft Heinz's motion to dismiss, this pre-approval of the packaging by the FDA shields Kraft Heinz from any state law liability under the safe harbor doctrine. Plaintiffs try to evade the safe harbor doctrine by claiming that the FDA "merely evaluated whether the cheese with a shortened curing time [from ten months to six months] could still be called 'Parmesan'" and that it did not address any other issues beyond the curing time. Opp'n at 15. Not so. Kraft Heinz's judicially-noticeable submissions to the FDA make clear that its review was not limited to just the curing issue. Contrary to Plaintiffs' suggestion that Kraft Heinz somehow gratuitously included the packaging in its submission to the FDA, the FDA *explicitly directed* Kraft Heinz to submit it. If the FDA's review had been limited to only the curing issue, then it would not have requested the packaging because it says absolutely *nothing* about the length of the curing period. Further, Kraft Heinz's submissions to the FDA confirm that the FDA scrutinized the "100% Grated Parmesan Cheese" packaging for even the smallest detail. For example, the FDA advised Kraft

Heinz to change the serving size from 5 grams to 4.5 grams, which plainly has nothing to do with the curing time.

The FDA's official statements in the Federal Register further underscore that it conducted a thorough review of the packaging and the applicable laws. The FDA stated that the "products will bear the name '100% Grated Parmesan Cheese'" and that the cheese "meets *all the requirements* of the standards [for grated Parmesan cheese] with the exception of this [time period for curing] deviation." 65 Fed Reg. 83040 (Dec. 29, 2000). Plaintiffs simply have no response to the FDA's finding that the "100% Grated Parmesan Cheese" had met "all the requirements" under the law, except for the curing issue. In similar cases where a government agency has pre-approved a label or packaging, courts have repeatedly held that the safe harbor doctrine bars any state law claims that challenge that packaging for allegedly misleading statements. Likewise here, the FDA's pre-approval of the packaging bars this lawsuit.

Plaintiffs also fail in their opposition brief to articulate why their claims pass muster under the *Iqbal/Twombly* plausibility standard. The Supreme Court in *Iqbal* emphasized that courts must apply "common sense" to root out implausible cases, and Plaintiffs' theory of the case defies common sense. First, Plaintiffs cannot seriously contend that consumers do not know where to look on the label to learn the product's ingredients, which were fully disclosed in this case. Second, the name of the product, "100% Grated Parmesan Cheese," accurately discloses that it has only grated Parmesan cheese, not other types of cheese (such as American processed cheese). And *grated* Parmesan cheese — by definition under the FDA's standard of identity regulation for grated cheese — may include antimycotics and anticaking agents to preserve and prevent the thinly grated cheese from sticking together. Plaintiffs adopt an unreasonable and implausible reading of the term "100%" and ignore the word "grated" to claim that they thought the product did not have any

ingredient other than just cheese. But it is implausible to believe that a packaged cheese in a plastic container — that is known to consumers to be good for use over many months — would not contain some small amounts of other non-cheese ingredients to keep it shelf-stable.

Third, at best, Plaintiffs could attempt to allege that the term "100%" is potentially ambiguous, but courts from California to Chicago have held that the entire packaging must be viewed "as a whole" in a false advertising case and that plaintiffs cannot fixate on one word in isolation from the rest of the packaging. These courts have held that where there is potential ambiguity in the front of the packaging, a reasonable consumer can and should review other parts of the packaging, including the ingredient list, to dispel any such potential ambiguity. Here, the only reason Plaintiffs were able to allege in their complaint that Kraft Heinz's "100% Grated Parmesan Cheese" has cellulose powder and potassium sorbate is because the ingredient list discloses those ingredients. In short, the full packaging "as a whole" makes clear that Plaintiffs' reading of the name of the product is unreasonable and implausible.[1]

## ARGUMENT

**I.** **Plaintiffs' Claims Against Kraft Heinz Are Barred By The Safe Harbor Doctrine Because the FDA Pre-Approved the "100% Grated Parmesan Cheese" Packaging.**

The Seventh Circuit and numerous other courts have made clear that the safe harbor doctrine protects defendants who are "doing something specifically authorized by federal law" from liability under state law. *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 941 (7th Cir. 2001); *see also, e.g.*, *Hauk v. JP Morgan Bank USA*, 552 F.3d 1114, 1122 (9th Cir. 2009) (same rule

---

[1] Kraft Heinz also makes other grated Parmesan cheese products that contain one or two additional identified cheeses, including the "100% Grated Parmesan and Romano Cheese" (which contains only those two identified types of cheese) and "100% Three Cheese Blend - Grated Parmesan, Romano, and Asiago Cheese Blend" (which contains only those three identified cheeses). They will be collectively referred to as "Kraft 100% Grated Parmesan Cheese" or "Kraft Grated Parmesan Cheese."

under California law); *Florida v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1310 (S.D. Fla. 2005) (same rule under Florida law). As Plaintiffs concede, this rule does not require that the challenged statement be identical to that approved by the FDA, as long as it "generally comport[s] with the approved label." *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1235 (S.D. Fla. 2007).

Here, the safe harbor doctrine shields Kraft Heinz from state law liability because the FDA explicitly pre-approved the use of the "100% Grated Parmesan Cheese" packaging, even though it was aware that Kraft Heinz was using cellulose powder and potassium sorbate in its cheese. In 1999 and 2000, Kraft Heinz had sought the FDA's approval to shorten the ten-month curing period for Parmesan cheese to six months. As part of that petition process, it submitted various information, including the packaging for its "100% Grated Parmesan Cheese," to the FDA. The FDA twice granted Kraft Heinz's petition, and, critically, it did *not* limit its review to just the curing issue. Rather, the FDA stated in the Federal Register that "the test products will bear the name '100% Grated Parmesan Cheese'" and held that the test product "meets *all* of the requirements of the standard [for grated parmesan cheese] with the exception of this [curing period] deviation." *Grated Parmesan Cheese Deviating from Identity Standard: Temporary Permit for Market Testing*, 65 Fed. Reg. 16743 (Mar. 29, 1999) (emphasis added); *Grated Parmesan Cheese Deviating from Identity Standard: Extension of Temporary Permit*, 65 Fed. Reg. 83040 (Dec. 29, 2000) (same).

Because the FDA expressly pre-authorized Kraft to sell its grated parmesan cheese under the name "100% Grated Parmesan Cheese," Kraft Heinz cannot be held liable under state law for using this label or similar labels. This is a straightforward application of the safe harbor doctrine. *See* ECF No. 170-1, at 14-16 (cases cited in Kraft Heinz's motion to dismiss). In an attempt to avoid the safe harbor doctrine, Plaintiffs argue that the FDA's approval of the "100% Grated

Parmesan Cheese" packaging "did not encompass a review of the 100% Claim." Opp'n at 14. Instead, Plaintiffs assert, "the FDA merely evaluated whether the cheese with a shortened curing time could still be called 'Parmesan.'" *Id.* at 15. Plaintiffs are flat-out wrong.

First, the fact that the FDA requested the proposed packaging for "100% Grated Parmesan Cheese" demonstrates that the FDA looked beyond the curing issue.[2] The packaging itself says *nothing* about the curing period. *See* ECF No. 162-1, ¶¶ 2-4. If the FDA's review was limited to just the curing period, it would have had no reason to request the proposed packaging from Kraft Heinz.

Second, Kraft Heinz's submissions to the FDA leave no doubt that the FDA carefully reviewed the packaging for even the most minute detail and pre-approved it for use.[3] For example, Kraft Heinz submitted a letter in June 1998 to the FDA's Office of Food Labeling responding to the FDA's "request" for "revised labels for products that would be sold at retail during the period

---

[2] Plaintiffs try to suggest that Kraft Heinz on its own submitted the packaging to the FDA, and that the FDA perhaps did not examine it carefully. *See* Opp'n at 14. In reality, it was the *FDA* that specifically requested the packaging for review, consideration, and approval. *See* SRJN Ex. A (Kraft letter to the FDA Office of Food Labeling submitting packaging "[p]er your request").

[3] Kraft Foods' submission to the FDA is set forth as Exhibit A to its Supplemental Request for Judicial Notice ("SRJN"). It is well-established that courts can take judicial notice of regulatory proceedings related to the subject matter of a lawsuit. *See, e.g., Lichoulas v. City of Lowell*, 555 F.3d 10, 12 (1st Cir. 2009) (taking judicial notice of regulatory proceedings related to case); *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 259 (3d Cir. 1998) (holding that district court properly took judicial notice of regulatory proceedings "at the heart of the instant controversy"). For that reason, many courts have taken judicial notice of letters sent by a party to a regulatory agency. *See, e.g., S.F. Baykeeper v. W. Bay Sanitary Dist.*, 791 F. Supp. 2d 719, 730 n.13 (N.D. Cal. 2011) (taking judicial notice of letters sent to regulatory body where those letters "are not subject to reasonable dispute in that they are capable of accurate and ready determination"); *Lyons v. First Am. Title Ins. Co.*, No. 09-4156, 2009 WL 5195866, at *3 (N.D. Cal. Dec. 22, 2009) (taking judicial notice of letter sent by plaintiff to California Insurance Commissioner requesting that it decline jurisdiction over dispute, as well as Commissioner's response); *Meeker v. Belridge Water Storage Dist.*, No. 05-603, 2005 WL 6246803, at *7 (E.D. Cal. May 3, 2005) (taking judicial notice of letter submitted by plaintiff to local water board).

of the temporary marketing permit [Kraft] ha[s] requested."  SRJN Ex A.  Kraft Heinz noted that

the labels "reflect the changes you requested" with "one exception":  it declined to alter the serving

size for one of its Parmesan cheese products, even though "[y]ou suggested in our conversation

that the serving size . . . should be revised."  *Id.*  That letter shows that the FDA did not narrowly

focus on whether a modified six-month curing period was appropriate,  Instead, it establishes that

the FDA conducted a careful review of the product labels before finally granting Kraft Heinz its

approval to sell "100% Grated Parmesan Cheese."  It is nothing new for the FDA to review

packaging on its own for potentially incorrect or misleading statements: it routinely issues warning

letters to companies for misleading statements on labels.  *See* https://www.fda.gov/

ICECI/EnforcementActions/WarningLetters/2015/ucm458824.htm (last accessed Feb. 24, 2017)

(warning food company of "misleading name and imagery used on the label" of sauce product).

Finally, the FDA's statements in the Federal Register confirm that its review of the "100%

Grated Parmesan Cheese" was not limited to merely the curing issue.  The FDA declared that the

product would "bear the name 100% Grated Parmesan Cheese" and that it "meets *all* of the

requirements of the standard [for grated Parmesan cheese] with the exception of this [curing

period] deviation." 65 Fed. Reg. 16743; 65 Fed. Reg. 83040.  Plaintiffs simply have no response

to the FDA's unequivocal statement that the product "meets *all* of the requirements" for grated

Parmesan cheese, except for the curing issue.  *See id.*  Nor do they try to address the fact that the

FDA expressly noted that the product would "bear the name 100% Grated Parmesan Cheese."  *See

id.*  In sum, the FDA approved the name of the product, even though it was obviously aware that

it contained cellulose powder and potassium sorbate (which are disclosed in the ingredient list on

the packaging and are "safe and suitable" ingredients expressly allowed under the FDA's standard

of identity regulations for grated cheese).  *See* 21 C.F.R. § 133.146.

Plaintiffs have no way to artfully plead around the safe harbor doctrine. The FDA's Office of Food Labeling, the very division within FDA that reviews food labels, gave its blessing to Kraft Heinz to sell products using the "100% Grated Parmesan Cheese" label. Thus, Kraft Heinz cannot be held liable under state law for using that phrase. Numerous courts have held under similar circumstances that pre-approval by the FDA or a similar agency insulates a product from liability under state law:

- The Eleventh Circuit upheld the dismissal of a false advertising claim challenging the statement "98% Fat Free – 50 calories per serving" on Oscar Mayer Honey Ham because the packaging had been pre-approved by a governmental agency. *Kuenzig v. Hormel Foods Corp.*, 505 F. App'x 937, 938 (11th Cir. 2013). Because the "labels . . . were approved by the FSIS [USDA's Food Safety and Inspection Service] prior to their commercial use," the court concluded, "Kraft and Hormel could not be liable pursuant to [the] safe harbor" doctrine. *Id.* at 939.

- Judge Der-Yeghiayan of the Northern District of Illinois dismissed claims based on the alleged mislabeling of Tito's vodka as "handmade" and "microdistilled" because the Alcohol and Tobacco Tax & Trade Bureau had "reviewed and expressly approved Tito's label," holding that this approval "exempt[ed] [the defendant] from any liability." *Aliano v. Fifth Generation, Inc.*, No. 14-10086, 2015 WL 5675423, at *4 (N.D. Ill. Sept. 24, 2015).

- The Northern District of California dismissed claims premised on the labeling of Hot Pockets because the USDA had pre-approved the labeling. Although the court noted that the outcome "might be different if the USDA had not already passed judgment on these products," it reasoned that imposing liability on Nestlé for pre-approved labels "would

improperly 'trump' the USDA's authority." *Trazo v. Nestlé USA, Inc.*, No. 12-2272, 2013 WL 4083218, at *7-8 (N.D. Cal. Aug. 9, 2013).

- The Southern District of Florida held that the safe harbor doctrine barred claims that advertisements for Lipitor, a statin drug used to lower cholesterol, misled consumers into believing that Lipitor prevented heart disease because the FDA had specifically approved a label stating that Lipitor was indicated to reduce the risk of heart attacks. *Prohias*, 490 F. Supp. 2d at 1234. "[E]ven if the advertisements did not comport precisely with Lipitor's approved label by claiming that Lipitor reduces the risk of coronary heart disease," the court reasoned, "the alleged advertisements generally comport with the approved label, and are therefore not misleading as a matter of law." *Id.* at 1235 (citing *Cytyc Corp. v. Neuromedical Sys, Inc.*, 12 F. Supp. 2d 296, 301 (S.D.N.Y. 1998)).

- The Southern District of New York dismissed a lawsuit against the manufacturer of "ThinPrep," a device used to select and screen cervical cells for cancer, because the defendant's allegedly misleading representations "comport substantively with statements approved as accurate by the FDA." *Cyctc Corp.*, 12 F. Supp. 2d at 301.

Plaintiffs attempt to distinguish these cases by arguing that food products (unlike drugs, meat products, medical devices, or liquor) generally do not require FDA pre-approval of the labels. *See* Opp'n at 15-17. That is generally true — and completely beside the point. Plaintiffs are correct that the FDA, unlike the USDA, usually does not require pre-approval of the food packaging. But in *this* instance, it is undisputed that the FDA *did* pre-approve the "100% Grated Parmesan Cheese" packaging. And because Kraft Heinz obtained pre-approval for the very "100%

Grated Parmesan Cheese" label Plaintiffs now challenge, the safe harbor doctrine shields them from liability for using that label.[4]

## II. Plaintiffs Do Not Plausibly Allege That the Phrase "100% Grated Parmesan Cheese" Is Likely to Deceive a Reasonable Consumer.

It is well-established that a plaintiff seeking relief under the Illinois Consumer Fraud Act or other analogous state statute "must show not just the mere possibility of fraud, but that fraud is a 'necessary or probable inference from the facts alleged.'" *Spector v. Mondelēz Int'l, Inc.*, 178 F. Supp. 3d 657, 672 (N.D. Ill. 2016) (citation omitted).

Further, as Plaintiffs concede, a court must evaluate whether a label is false or deceptive by considering the packaging "as a whole," instead of evaluating a single statement in isolation. *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995) (holding that looking at the entire advertisement would have "dispelled" any "ambiguity"); *see also Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013). ("[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial . . . the presence of a disclaimer or similar clarifying language may defeat a claim of deception."). Critically, "[i]f other information

---

[4] Selectively quoting from *Bober* and *Aliano*, Plaintiffs argue that the safe harbor doctrine is inapplicable to statements that are in "technical compliance with federal regulations, but which are *so misleading or deceptive*" in context that federal law itself might not regard them as adequate." Opp'n at 13 (emphasis added). But *Bober* made clear that compliance with the "[t]echnical requirements" of federal law generally entitles a defendant to safe harbor, even if "ordinary consumers" find that the defendant's statements are "confusing, or possibly misleading." 246 F.3d at 942. *Bober* also said that the safe harbor doctrine "would amount to nothing if it applied only to statements that were not susceptible to misunderstanding; those statements would escape liability under the CFA in any event." *Id.* at 942-43. The language Plaintiffs cite from *Bober* is dicta, where the court speculated about a hypothetical scenario where a challenged statement may be "*so* misleading" that technical compliance with the regulations may not be sufficient. But Plaintiffs do not cite a *single* case in which a court held that a product label that obtained pre-approval from the FDA or another agency was nonetheless "*so* misleading or deceptive in context" that it was not entitled to safe harbor. Nor do Plaintiffs explain why Kraft Heinz's "100% Grated Parmesan Cheese" label, which obtained FDA pre-approval after an exhaustive, months-long review process, is "*so* misleading" that it somehow got overlooked by the FDA.

disclosed or available to the consumer dispels any tendency to deceive, there is no deception." *Trujillo v. Apple Computer, Inc.*, 581 F. Supp. 2d 935, 938 (N.D. Ill. 2008) (citing *Bober*, 246 F.3d at 938); *see also Bober*, 246 F.3d at 938 (affirming dismissal of ICFA claim where "information available to" consumers "would dispel" potential misunderstanding).[5]

It cannot be plausibly alleged that consumers are misled to believe the *only* ingredient in the product is Parmesan cheese. And given that it cannot be fairly disputed that consumers know exactly where to find out what ingredients are in the product, Plaintiffs certainly cannot plausibly allege that it is *probable* that reasonable consumers are misled. *See Spector,* 178 F. Supp. 3d at 672 (requiring that deception be "probable"). Here, the phrase "100% Grated Parmesan Cheese" is not misleading because it accurately conveys that the product consists *only* of grated Parmesan cheese and that it does not include any other varieties of cheese, such as processed American cheese. That is an accurate and true statement. It has only grated Parmesan cheese — and grated cheese, by definition under the FDA's standard of identity, may contain mold-inhibiting antimycotics and anticaking agents to preserve and prevent the grated cheese from sticking together. 21 C.F.R. § 133.146(c) (grated cheese standard of identity).

Plaintiffs' claim that they subjectively thought "100%" meant that it had no ingredients other than cheese is implausible because it defies "common sense," which the Supreme Court has directed courts to apply in weeding out implausible complaints at the pleading stage. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). As an initial matter, Plaintiffs ignore the fact that the product was labeled "100% *Grated* Parmesan Cheese" (which by definition may include antimycotics and

---

[5] Plaintiffs attempt to distinguish *Trujillo* by arguing that Apple "did not make an affirmative representation . . . only to be disclaimed elsewhere." Opp'n at 21. But neither did Kraft Heinz. Instead, it made a *correct* representation that the product consisted entirely of grated Parmesan cheese (as that term is defined by the FDA), and it included information on the Nutrition Facts label and ingredients list that clarified the meaning of "100% Grated Parmesan Cheese."

anticaking agents), and they suggest incorrectly that it was labeled "100% Parmesan Cheese" (which meaning arguably would be potentially ambiguous). Further, Plaintiffs do not dispute that Kraft Heinz's Parmesan cheese products — which are packaged in plastic cylinders and are expected by consumers to be in their homes for weeks or months — are designed to be shelf-stable. A reasonable consumer understands that shelf-stable grated cheese products, like any packaged product, might contain other ingredients, such as cellulose powder to keep the grated cheese from clumping or potassium sorbate to prevent the cheese from developing mold and losing flavor. Indeed, the FDA has *rejected* the position that "consumers expect grated cheeses to be pure and not to contain ingredients such as cellulose." *Grated Cheeses; Amendment of the Standard of Identity*, 51 Fed. Reg. 30210-01 (Aug. 25, 1986). Instead, the FDA made clear that anticaking agents are appropriate to make sure that grated cheese products adhere to the expectations of reasonable consumers. *See id.* (noting that "[t]he use of anticaking agents is necessary in some cases if industry is to provide consumers with grated cheese products having the characteristic flavor and texture of freshly grated cheese").

Numerous courts, including those in this district, have applied "common sense" and dismissed consumer fraud lawsuits premised on unreasonable interpretations of a defendant's labeling. *See, e.g.*, *Spector*, 178 F. Supp. 3d at 661 (Durkin, J.) (applying "common sense" standard to dismiss false advertising lawsuit under Illinois law); *Ibarrola v. KIND, LLC*, 83 F. Supp. 3d 751, 757 (N.D. Ill. 2015) (Ellis, J.) (dismissing lawsuit where "no reasonable consumer would think . . . that the sugar contained in Kind's Healthy Grains products was still in its natural, completely unrefined state").[6] And under similar circumstances, courts have dismissed claims

---

[6] *See, e.g.*, *Stuart v. Cadbury Adams USA, LLC*, 458 F. App'x 689, 690 (9th Cir. 2011) (affirming dismissal of false advertising lawsuit that "def[ied] common sense"); *Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 759 (W.D. Mo. 2015) (dismissing lawsuit alleging that potato chips

where plaintiffs claimed that they were unaware that packaged products had other ingredients to keep them shelf-stable. For instance, in *Veal v. Citrus World, Inc.*, the court dismissed the plaintiff's claim that the "100% orange juice" label on Florida's Natural pasteurized orange juice was misleading.[7] No. 12-801, 2013 WL 120761 (N.D. Ala. Jan. 8, 2013). Relying on "common sense," the court rejected the plaintiff's claim that the orange juice he purchased was not "100% orange juice" because it contained other ingredients, including "flavorings and aroma." *Id.* at *4 n.7. Instead, the court held that the plaintiff "paid for orange juice mass produced and supplied to grocery stores all over the country, and that is exactly what he received." *Id.* Likewise, the court rejected the plaintiff's challenge to the term "fresh squeezed orange juice" because "common sense dictates that by the time the [bottled orange juice] makes its way to a grocery store and sits on a shelf awaiting purchase, it is no longer 'fresh.'" *Id.* at *4 n.4; *see also* ECF No. 170-1 (cases cited in Kraft Heinz's motion to dismiss).

Plaintiffs stake their case largely on *Gubala v. CVS Pharmacy, Inc.*, No. 14-9039, 2016 WL 1019794 (N.D. Ill. Mar. 15, 2016), but that case does not support Plaintiff's position. In *Gubala*, the plaintiffs initially alleged that the term "whey protein powder" was misleading because the product contained ingredients other than whey protein. The court dismissed those allegations by reviewing the *entire* packaging: it noted that the product label stated that the product

---

were not "natural" because "the Chips are processed foods, which of course do not exist or occur in nature").

[7] Plaintiffs assert that *Veal* is inapposite because the plaintiff "did not claim that the product did not contain 100% orange juice," but they are wrong: the plaintiff in *Veal*, like Plaintiffs in this case, *did* assert that the products contained ingredients, including "flavorings and aroma," other than orange juice. By contrast, *Lynch v. Tropicana Products, Inc.*, No. 11-7382, 2013 WL 2645050 (D.N.J. June 12, 2013) is distinguishable because the defendant in that case labeled its orange juice products as "100% pure and natural." Here, as in *Veal*, Kraft Heinz has not labeled its products as "pure" or "natural." Instead, it simply (and correctly) represented that its products were "100% Grated Parmesan Cheese.'

"was a Vanilla 'Naturally and Artificially Flavored Drink Mix,' thereby making clear that the Product did in fact include ingredients other than whey protein." *Id.* at *11. The plaintiffs then amended their complaint to assert a *different* theory — namely, that the term "whey protein power" was misleading because the product contained other, purportedly inferior proteins. *Id.* at *12. The court held that *this* theory was sufficient to withstand dismissal.

Here, *Gubala* would assist Plaintiffs only if Kraft Heinz's "100% Grated Parmesan Cheese" also included varieties of other "inferior" cheese, such as processed American cheese, other than grated Parmesan. But Plaintiffs do not (and cannot) allege that Kraft Heinz "100% Grated Parmesan Cheese" contains any other type of cheese. Instead, Plaintiffs ignore the rest of the packaging and simply allege that the phrase "100% Grated Parmesan Cheese" is misleading because the product contains *other* ingredients (*i.e.*, cellulose and potassium sorbate) besides grated Parmesan cheese. That is the *exact* theory the court rejected in *Gubala*. *See id.* at *11.

Even if a consumer would find that the term "100%" when read in isolation from the rest of the packaging as ambiguous,[8] that would not be sufficient for stating a claim as that argument was rejected most recently in another food-labeling case. *See Workman v. Plum, Inc.*, 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015).[9] In that case, the front packaging of a fruit snack prominently

---

[8] Plaintiffs' fixation with the term "100%" — to the exclusion of the rest of the packaging — is particularly off-base because it is clear from the packaging that the "100%" is not labeled to draw consumers' attention. The term is in significantly smaller and less prominent font than other words, such as "Parmesan Cheese," "With Flavor Lock Cap," and the "Kraft" logo. *See* ECF No. 162-1, at ¶¶ 2-4.

[9] *See also McKinnis v. Kellogg USA*, No. 07-2611, 2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007) (holding that no reasonable consumer would be deceived by depictions of fruit on the front panel of Froot Loops "[w]here a consumer can readily and accurately determine the nutritional value and ingredients of a product") (citation omitted); *cf. Bush v. Mondelēz Int'l, Inc.*, No. 16-2460, 2016 WL 5886886, at *3 (N.D. Cal. Oct. 7, 2016) (dismissing consumer fraud claim based on alleged under-filling of container where the "product labels disclose the net weight of included product" and the "product's weight label and nutrition facts panel do not contradict other

featured images of several fruits, even though they were not the main ingredients and were in relatively small amounts in the product. The court ruled that the defendant used a truthful but "potentially ambigu[ous]" image of various fruits on the front of the label, but that any such ambiguity would be "dispelled" by looking at the fruits listed in order of weight in the ingredient list. *See* 141 F. Supp. 3d at 1034-35. Likewise here, any potential ambiguity about the meaning of the term "100%" could be "resolved by the back panel of the products, which lists all ingredients in order or predominance, as required by the FDA." *Id.* at 1035. And as "every reasonable consumer knows," the "ingredient list contains more detailed information about the product that confirms other representations on the packaging." *Id.*

Plaintiffs attempt to distinguish *Workman* by arguing that it applies only to "potential ambiguities," rather than "affirmative misrepresentations" or "misstatements on the front of the package." Opp'n at 20. But that distinction actually proves Kraft Heinz's point. *Workman* establishes that such "potentially ambiguous" labels are not deceptive when the remainder of the packaging would "resolve[]" that ambiguity. 141 F. Supp. 3d at 1035. Here, the ingredient list would clarify any potential ambiguity because it discloses the presence of other ingredients than just cheese. This therefore is not a case like *Williams v. Gerber Products Co.*, which stands for the unremarkable proposition that a company cannot make a *demonstrably false* representation on the front of the package and then try to correct that misrepresentation on the back of the packaging. *See* 552 F.3d 934 (9th Cir. 2008). In that case, Gerber marketed foods targeted at babies by featuring images of fruits that undisputedly were *not* contained in the product, and it tried to justify that false representation by claiming that the "truth" was in the ingredient list. *See id.* at 939. The Ninth Circuit has since emphasized that "*Williams* stands for the proposition that, *if* the defendant

---

representations on or inferences from Mondelēz's packaging").

commits an act of deception, the presence of fine print revealing the truth is insufficient to dispel that deception." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 966 (9th Cir. 2016); *see also Bush*, 2016 WL 5886886, at *3; *Red v. Kraft Foods, Inc.* No. 10-1028, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012). Unlike in *Williams*, there is no such undisputed "act of deception" here, and at best, only a "potential ambiguity" about the meaning of the term "100%" that could be "dispelled" by looking at the rest of the package. *Workman*, 141 F.3d at 1035.

In short, the phrase "100% Grated Parmesan Cheese," when read in context and through the lens of common sense, merely indicates that the product contains *only* grated Parmesan cheese (a term which, as defined by the FDA, can include antimycotics and anticaking agents), as opposed to other types of cheese. Plaintiffs' glib assertion that Kraft Heinz could just as easily call the products "100% Cellulose" is incorrect: leaving aside the fact that it would violate the FDA's labeling guidelines, it would also not accord with reasonable consumer expectations. Here, by contrast, a reasonable consumer would expect "100% Grated Parmesan Cheese" to contain a small amount of other, FDA-approved ingredients designed to preserve the product's flavor and texture.[10]

## CONCLUSION

For the foregoing reasons, as well as those set forth in Kraft Heinz's initial motion to dismiss and the briefs of its co-defendants, this Court should grant Kraft Heinz's motion to dismiss.

---

[10] Kraft Heinz also raised other grounds for dismissal, including preemption and the failure to state a claim under the respective state laws. In the interest of conserving judicial resources, Kraft Heinz incorporates by reference the arguments made in the other defendants' reply briefs.

Dated: March 3, 2017

Respectfully submitted,

JENNER & BLOCK LLP

By: */s/ Dean N. Panos*
      Dean N. Panos
      353 N. Clark Street
      Chicago, IL 60654-3456
      Tel.:  (312) 222-9350
      dpanos@jenner.com

Attorneys for Defendant
The Kraft Heinz Company

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing document was filed on

March 3, 2017 with the Clerk of the Court by using the CM/ECF system which will effect

electronic service on all parties and attorneys registered to receive notifications via the CM/ECF

system.

Dated:  March 3, 2017       By:  *<u>/s/ Dean N. Panos</u>*
                     Dean N. Panos