**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| **IN RE: 100% GRATED PARMESAN CHEESE MARKING AND SALES PRACTICES LITIGATION** | ) ) ) ) | Case No.: 1:16-CV-05802 (MDL No. 2705) |
| ***This Document Relates to All Cases on the Target and Wal-Mart Tracks*** | ) ) ) | The Hon. Gary S. Feinerman |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
AMENDED CONSOLIDATED CLASS ACTION COMPLAINTS AGAINST
<u>TARGET CORPORATION AND ICCO-CHEESE COMPANY, INC.</u>**

**BOWIE & JENSEN, LLC**

Joshua A. Glikin (General Bar No.: 008107)
glikin@bowie-jensen.com
Bowie & Jensen, LLC
210 West Pennsylvania Avenue, Suite 400
Towson, Maryland 21204
(410) 583-2400 Telephone

*Attorney for Defendants Target Corporation
and ICCO Cheese Company, Inc.*

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1

II. STATEMENT OF THE CASE ......................................................................... 2

III. ARGUMENT .................................................................................................... 3

   A. *Plaintiffs' Consumer Protection Act Claims Should be Dismissed, Again.* ................... 3

      1. The Linguists' Opinions are Irrelevant and Flawed. ................................. 4

      2. Plaintiffs' Vague Reference to a Putative "Recent Consumer Survey" is Also Irrelevant to the Purported Ambiguity of Defendants' Advertising Statements, Which is a Question of Law ................................................................................ 10

      3. Plaintiffs' New, Conclusory Allegation that Defendants' Products Contain More Cellulose Than "What is Necessary" Is Deficient. ........................................... 12

   B. *Plaintiffs' AC Fails to State A Claim for Breaches of Express and Implied Warranties, or for Unjust Enrichment.* ...................................................................................... 14

IV. ADOPTION AND INCORPORATION BY REFERENCE OF ARGUMENTS FROM CO-DEFENDANTS' BRIEFS ............................................................. 15

V. CONCLUSION ............................................................................................... 15

i

# TABLE OF AUTHORITIES

**Cases**

*Abt v. Mazda Am. Credit*, 25 F. Supp. 2d 860 (N.D. Ill. 1998) .................................................. 14

*Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606 (6th Cir. 1999) ................................................................................................ 5, 6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................... 9, 12

*Cannon v. Burge*, 752 F.3d 1079 (7th Cir. 2014) ......................................................................... 14

*Cboss, Inc. v. Zerbonia*, Case No. 4:09-cv-00168, 2010 U.S. Dist. LEXIS 103173 (N.D. Ohio Sept. 29, 2010) ........................................................................................................................ 6

*Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016) ..................................................................... 11

*Faust Printing, Inc. v. MAN Capital Corp.*, Case No. 02 C 9345, 2009 U.S. Dist. LEXIS 120301 (N.D. Ill. Dec. 23, 2009) .......................................................................................................... 6

*Fink v. Time Warner Cable*, 714 F.3d 739 (2d Cir. 2013) ............................................................. 5

*Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995) ...................................................................... 5

*Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557 (7th Cir. 2003) .............. 6

*Herman v. Seaworld Parks & Entm't, Inc.*, 320 F.R.D. 271 (M.D. Fla. 2017) ........................... 6

*Honeywell Int'l, Inc. v. ICM Controls Corp.*, 45 F. Supp. 3d 969 (D. Minn. 2014) .................... 5

*In re Conagra Foods, Inc.*, 302 F.R.D. 537 (C.D. Cal. 2014) ...................................................... 7

*Koehler v. Litehouse, Inc.*, Civ. No. 12-04055, 2012 U.S. Dist. LEXIS 176971 (N.D. Cal. Dec. 13, 2012) .................................................................................................................................. 4

*Loeb v. Hammond*, 407 F.2d 779 (7th Cir. 1969) ......................................................................... 6

*Mann v. Vogel*, 707 F.3d 872 (7th Cir. 2013) ............................................................................. 12

*McCauley v. City of Chicago*, 671 F.3d 611 (7th Cir. 2011) ........................................... 9, 12, 15

*Pepper Constr. Co. v. Transcon. Ins. Co.*, 285 Ill. App. 3d 573, 673 N.E.2d 1128 (Ill. App. Ct. 1996) ...................................................................................................................................... 14

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241 (3d Cir. 2011) ..................... 11

*Premcor USA, Inc. v. Am. Home Assurance Co.*, 400 F.3d 523 (7th Cir. 2005) ........................ 14

*Rakowski v. Lucente*, 104 Ill.2d 317, 472 N.E.2d 791 (Ill. 1984) .............................................. 14

*Rexall Sundown, Inc. v. Perrigo Co.*, 651 F. Supp. 2d 9 (E.D.N.Y. 2009) .................................. 6

*Steadfast Ins. Co. v. Auto Mktg. Network, Inc.*, No. 97-C-5696, 2004 U.S. Dist. LEXIS 6938 (N.D. Ill. Jan. 26, 2004) ........................................................................................................... 7

*Swanson v. Citibank, N.A.*, 614 F.3d 400 (7th Cir. 2010) .......................................................... 12

*Utts v. Bristol-Myers Squibb Co.*, Civ. No. 16-cv-5668, 2017 U.S. Dist. LEXIS 70317 (S.D.N.Y. May 8, 2017) ............................................................................................................................. 5

*Varela v. Gonzales*, 773 F.3d 704 (5th Cir. 2014) ....................................................................... 4

*Workman v. Plum, Inc.*, 141 F. Supp. 3d 1032 (N.D. Cal. 2015) ................................................. 5

*Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082 (7th Cir. 2016) ..................................... 4, 12

**Statutes**

21 U.S.C. § 343-1(a)(1) .............................................................................................................. 10

California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ................................ 3

California Unfair Competition Law, Cal. Bus. & Prof. §§ 17200, *et seq.* ................................... 3

Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.* ..................... 3

Illinois Deceptive Practices and Consumer Fraud Act, 815 ILCS 505/2 ..................................... 3

Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.101, *et seq.* ................................ 3

**Other Authorities**

3 Corbin on Contracts, § 554 (1960) ............................................................................... 6

**Rules**

Fed. R. Civ. P. 10(c) ...................................................................................................... 10

Fed. R. Civ. P. 8(a) ........................................................................................................ 12

Fed. R. Evid. 702 ........................................................................................................ 6, 11

**Regulations**

21 C.F.R. § 133.146 ..................................................................................................... 1, 10

## I.    INTRODUCTION

Plaintiffs' Amended Complaint (the "AC") against ICCO Cheese Company ("ICCO") and Target Corporation ("Target") (together, "Defendants") is more like a flawed motion to reconsider. Rather than introduce new, plausible allegations of fact, the AC uses experts to repackage the same arguments that the Court already rejected as a matter of law, and to argue that reasonable consumers are much more discerning than this Court when interpreting the product labels at issue, which of course is not the case.

Expert opinions, however, are irrelevant to the Court's findings on pure questions of law, including that "100% grated parmesan cheese" and other similar statements are ambiguous; that Plaintiffs' "nothing but cheese" interpretation is the weakest of the possible ways to interpret that phrase; and that a reasonable consumer's confusion is dispelled by the list of ingredients on Defendants' labels.  Moreover, these opinions and the "recent consumer survey" that the AC references (but does not attach) are not entitled to any presumption of truth because the Court need only accept well-pleaded *facts* as true for purposes of deciding a Rule 12(b)(6) motion.

All of that aside, the experts' opinions also are the product of legally flawed methodology. None of the linguists consider "100% grated parmesan cheese" in light of the totality of the information available to reasonable consumers.  They instead analyze the phrase in a vacuum, which is the very approach that the Court rejected in its August 24, 2017 Memorandum Opinion and Order.  *See* Dkt. 216 (hereinafter the "Opinion").  The linguists also fail to account for the Food and Drug Administration's definition of "grated parmesan cheese" that appears in 21 C.F.R. § 133.146, and, as a result, present an interpretation that is preempted as matter of federal law. "Grated parmesan cheese" means a combination of parmesan cheese, anticaking agents (such as cellulose), and antimycotics (such as potassium sorbate).  The AC, like the original Complaint,

1

acknowledges that Defendants' products contain nothing but the FDA-approved combination of ingredients. The products are, therefore, 100% grated parmesan cheese, regardless of how a few linguists interpret the phrase after engaging in a hyper-technical analysis that no reasonable consumer would perform.

For these and the other reasons explained below, the Court should dismiss all of the claims of the AC for the same reasons that warranted dismissal in the first place, and the Court should dismiss all claims against ICCO in the Amended Class Action Complaint Against Wal-Mart Stores, Inc., and ICCO [Dkt. 299]—which contain the same allegations against ICCO—for the same reasons. Only this time, the dismissals should be with prejudice.

## II. STATEMENT OF THE CASE

ICCO and Target rely upon, and incorporate by reference, their Statement of the Case in their initial motion to dismiss, *see* Mem. in Supp. of Mot. To Dismiss, Dkt. 164 at pp. 3-5 (hereinafter, "Opposition Memorandum"), and the case background on pages 2-6 of the Opinion.

The AC adds three new allegations to the original Complaint. The first is the presentation of two opinions by linguists who disagree with the Court's conclusion that "100% Grated Parmesan Cheese" is ambiguous to the ordinary, reasonable consumer. *See* AC at ¶ 25 and Exs. A and B (hereinafter, the "Linguists' Opinions"). Plaintiffs present these opinions as a means of repackaging their original argument in support of their "nothing-but-cheese" interpretation, which the Court found to be the weakest of all three possibilities because no reasonable consumer would believe that pure cheese is shelf-stable in an unrefrigerated environment for significant periods of time.

The second new allegation in the AC is that a "recent survey conducted in connection with this litigation" putatively found that more than 90% of consumers believe that "100% grated

parmesan cheese" means a product that is "100% cheese and fully grated." AC at ¶ 3. The AC does not attach this survey and does not offer any other factual detail about how it was conducted or whether it was conducted in the context of the totality of information available on Defendants' product packaging.

The third new allegation is a conclusory assertion that "the Products contain more cellulose powder than needed to achieve anticaking effects" and that Defendants allegedly use cellulose as "filler." AC at ¶ 4. The AC does not include any other allegations of fact that concern this bare-bones assertion. Finally, as in their original Complaint, Plaintiffs' AC alleges that Target and ICCO violated consumer protection laws in Illinois, Missouri, Florida, and California,[1] and the AC misrepresents that the products at issue are labeled "100% cheese" when, clearly, they are not. The AC also alleges that Defendants breached express and implied warranties made to Plaintiffs, and that Defendants were unjustly enriched.

## III. ARGUMENT

### A. Plaintiffs' Consumer Protection Act Claims Should be Dismissed, Again.

Plaintiffs' new allegations do not solve the old problems that warranted dismissal of all their claims as originally pleaded, and do not give any sufficient basis for the Court to reconsider its Opinion.

---

[1] Like their original Complaint, Plaintiffs' AC alleges that Target and ICCO violated the Illinois Deceptive Practices and Consumer Fraud Act, 815 ILCS 505/2 (the "IFCA"); the Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.101, *et seq.* (the "MMPA"); the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.* ("FDUPTA"); the California Unfair Competition Law, Cal. Bus. & Prof. §§ 17200, *et seq.* (the "UCL"); and the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* (the "CLRA"). The AC adds allegations that Plaintiffs also satisfied the pre-suit notice requirements of the CLRA, pursuant to "the letter [that] is attached to the underlying complaints filed in the transferred cases[,]" and Defendants' subsequent failure "to rectify or agree to rectify the problems …[.]" *See* AC at ¶¶ 93-94. Plaintiffs' pre-transfer Complaints against ICCO and Target, however, do not attach any such letters. *See* Complaints in *Yankee v. Target Corp., et al.*, N.D. Ill. Civ. No. 1:16-cv-02873, at Dkt. 1 (filed March 4, 2016); *Lynch v. Target Corp., et al.* N.D. Ill. Civil No. 1:16-cv-02971, at Dkt. 1 (filed March 8, 2016); *Hara v. Target Corp., et al..,* D. Minn. Civ. No. 0:16-cv-00686-JNE-HB, at Dkt. 1 (filed March 17, 2016); and *Saitta v. Target Corp.*, D. Mass. Civ. No. 1:16-cv-10586-WGY (filed March 24, 2016).

### 1. The Linguists' Opinions are Irrelevant and Flawed.

It appears that Plaintiffs intend to assert that the Court must, on a Rule 12(b)(6) motion, assume the truth of the Linguists' Opinions that "100% grated parmesan cheese" is *not* ambiguous and that the *only* plausible way to interpret that statement is in the very manner that this Court found to be *weakest* of the "at least three reasonable ways to interpret" the phrase. Opinion, p. 17. The Court need not—and should not—give any weight to these opinions, and Plaintiffs' reliance on them is misplaced for at least four reasons.

<u>*First*</u>, the Linguists' Opinions are not allegations of fact that the Court must accept as true at this stage. *See* Opinion at p. 1 ("the court assumes the truth of the operative complaints' factual allegations, though not their legal conclusions") (citing *Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016) (additional citations omitted)). The linguists offer no statements of fact, but only opinions. *See* Curzan Report, Ex. A. to the AC (concluding that, "it is our opinion that only one interpretation of this phrase is plausible"); Johnson Report, Ex. B to the AC ("In my opinion, this expression has only one salient interpretation[.]"). It is well established that "opinions cannot substitute as facts." *Varela v. Gonzales*, 773 F.3d 704, 710 (5th Cir. 2014) (considering, on a motion to dismiss, whether an expert report attached to a complaint was a "written instrument" for purposes of Fed. R. Civ. P. 10(c), and finding that, "even if factual portions of an expert's report constitute an instrument under Rule 10, opinions contained in the report may not be considered, as 'opinions cannot substitute for facts'") (citation omitted); *see also Koehler v. Litehouse, Inc.*, Civ. No. 12-04055, 2012 U.S. Dist. LEXIS 176971, at *7 (N.D. Cal. Dec. 13, 2012) (striking references in an amended complaint that quoted from an expert's report in a consumer's amended complaint alleging violations of California's false advertising laws because "[t]he quotes from the Expert Report relay Dr. Carson's expert opinion, but makes no statements

4

of fact"). Thus, the Linguists' Opinions are not entitled to any presumption of truth and the Court should disregard them entirely.

Second, the opinions are irrelevant because the Court's prior determinations regarding (1) whether the challenged advertising is ambiguous and (2) whether the statement would mislead a reasonable consumer are determinations of law. *See* Opinion at p. 14 (recognizing that it "'is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer'" (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013))). Other courts agree that the determination of whether an advertising statement is ambiguous is a question of law. *See, e.g., Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 615 n.2 (6th Cir. 1999) (observing that, in a false advertising case, "[w]hether or not a statement is ambiguous would seem to be a question of law, as it is in contract interpretation" and that, therefore, "the initial determination concerning whether a statement is ambiguous is a matter of law")*; Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995) (affirming district court's determination as a matter of law that "[a]ny ambiguity that Freeman would read into any particular statement [on the advertising at issue] is dispelled by the promotion as a whole" and affirming Rule 12(b)(6) dismissal of plaintiffs' consumer fraud claims); *Utts v. Bristol-Myers Squibb Co.*, Civ. No. 16-cv-5668, 2017 U.S. Dist. LEXIS 70317, at *57 (S.D.N.Y. May 8, 2017) (finding that "[i]nterpretation of the adequacy of a label, 'where extrinsic evidence is unnecessary, is a question of law for the trial court to determine'") (citation omitted); *Workman v. Plum, Inc.*, 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015) (granting a Rule 12(b)(6) motion after "having carefully review[ed] the labels at issue" and finding "that a reasonable consumer would not be deceived by them"); *Honeywell Int'l, Inc. v. ICM Controls Corp.*, 45 F. Supp. 3d 969, 986–87, 987 n.11 (D. Minn. 2014) (in dispute concerning

whether the phrase "Made in the USA" was false or misleading, finding that "the determination of whether the statement is sufficiently unambiguous is an appropriate one for resolution as a matter of law"); *Cboss, Inc. v. Zerbonia*, Case No. 4:09-cv-00168, 2010 U.S. Dist. LEXIS 103173, at *16 (N.D. Ohio Sept. 29, 2010) (determining whether allegedly false advertising statements were ambiguous as a matter of law, and then analyzing them "in the overall context of the entire advertisement in which they were made"); *Rexall Sundown, Inc. v. Perrigo Co.*, 651 F. Supp. 2d 9, 34 (E.D.N.Y. 2009) (finding that "the question of whether an advertising claim is susceptible to more than one reasonable interpretation is a question of law for the court to resolve, similar to the question of whether the terms of a contract are unambiguous") (citing *Am. Council of Certified Podiatric Physicians*, 185 F.3d at 615 n.2).

Expert opinions are irrelevant to decisions regarding questions of law that determine the outcome of the case. *See* Fed. R. Evid. 702 (an expert witness's opinion is relevant if it will "help the trier of fact to understand the evidence or to determine a fact in issue"). As the Seventh Circuit long ago held, "[t]he question of interpretation of the contract is for the jury and the question of legal effect is for the judge. In neither case do we permit expert testimony." *Loeb v. Hammond*, 407 F.2d 779, 781 (7th Cir. 1969) (citing 3 Corbin on Contracts, § 554, 226-27 (1960)); *see also Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003) (holding that "expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible") (citation omitted); *Herman v. Seaworld Parks & Entm't, Inc.*, 320 F.R.D. 271, 282-83 (M.D. Fla. 2017) (striking expert opinion that opined that a phrase used in the contract at issue and in plaintiffs' proposed class definition was ambiguous, because the interpretation was one that the court makes as a matter of law); *Faust Printing, Inc. v. MAN Capital Corp.*, Case No. 02 C 9345, 2009 U.S. Dist. LEXIS 120301, at *12, 20–21 (N.D. Ill. Dec. 23, 2009) (holding, in a

breach of contract dispute governed by Illinois law, that because the "question of whether a contract is ambiguous is entirely a matter of law to be determined by the court," the testimony of an expert who opined that the clause was unambiguous was "irrelevant").[2]  The fact that the advertising at issue is unambiguous to linguistics professors, retained to perform a complex analysis that rebuts the Court's finding about how the average, reasonable consumer would interpret the statements at issue, is irrelevant.

_Third_, the Linguists' Opinions are unreliable as a matter of law because they do not analyze Defendants' advertising "in light of the totality of the information made available to the plaintiff[s]."  Opinion at p. 16 (citations omitted).  They instead analyze "100% grated parmesan cheese" in isolation, without taking into account that reasonable consumers know that "[c]heese is a dairy product . . . are well aware that pure dairy products spoil, grow blue, green, or black fuzz, or otherwise become inedible if left unrefrigerated for an extended period of time," and, as a result, must "suspect that _something_ other than cheese might be in the container" of unrefrigerated, 100% grated parmesan cheese.  Opinion at pp. 16-17 (citations omitted).  The linguists simply ignore these facts of life that led the Court to conclude that "Plaintiffs' nothing-but-cheese reading is, _in context_, the weakest of the three [possible interpretations]."  Opinion at p. 17 (emphasis added).  The linguists also do not consider that the information made available to Plaintiffs includes the

---

[2] In addition to improperly opining as to matters of law, one of the Linguists' Reports even opines that Defendants intended to deceive consumers, which is another improper subject for expert testimony.  _See_ Ex. B to AC, at p. 2 ("Because of the choice of the term "100%" _the author of this expression has designed it_ to communicate the meaning associated with (1a) and not (1b) [1(a) being entirely parmesan cheese that is grated].") (emphasis added); _see also In re Conagra Foods, Inc._, 302 F.R.D. 537, 558 (C.D. Cal. 2014) (striking expert's opinion that defendant had falsely and deceptively labeled its products); _Steadfast Ins. Co. v. Auto Mktg. Network, Inc._, No. 97-C-5696, 2004 U.S. Dist. LEXIS 6938, at *21 (N.D. Ill. Jan. 26, 2004) (barring experts from testifying as to whether an insurance claim was filed in bad faith, as the "experts are in no better position than the jury to assess Steadfast's subjective intent," and explaining that allowing experts to testify about intent would be improper as it "would be little more than 'telling the jury what result to reach.'") (citation omitted).

ingredient panels on Defendants' labels, all of which clearly disclose that the products are not 100% cheese. Thus, these experts make the same analytical mistakes that Plaintiffs made in their first round of briefing.

Plaintiffs attempt to justify their linguists' flawed methodology by quoting from a patent issued to Kraft in 2001 and stating that "[f]ully cured Parmesan cheese is very hard and keeps almost indefinitely." AC at ¶ 21.[3] This excerpt, however, does not state that *unrefrigerated* parmesan keeps almost indefinitely, and so it does not contradict the Court's opinion that consumers are aware that pure cheese is not "shelf-stable at room temperature" and that "reasonable consumers are well aware that pure dairy products spoil … if left *unrefrigerated* for an extended period of time." Opinion, at p. 17 (emphasis added). Moreover, it is utterly implausible to suggest that ordinary consumers are familiar with the language of any patent, or that reasonable consumers know the nuanced differences between cheeses when it comes to their refrigeration requirements, whether that knowledge comes from a 16-year-old patent or from any other source. Nothing in the patent suggests that the concepts enunciated in it are well known to the average consumer. Besides, Plaintiffs already acknowledged that "reasonable consumers cannot be expected to understand 'intricacies relating to the shelf life … of' grated cheese," and the Court agreed with them. Opinion at p. 18 (quoting Plaintiffs' original opposition memorandum).

It is equally implausible to assert that consumers would engage in the same type of detailed analysis that the linguists present, taking into consideration the interplay of "stacking modifiers" and "pragmatic slack" while standing in a store aisle. The fact that it took these linguists several

---

[3]  Although not relevant for purposes of this brief, Defendants dispute Plaintiffs' characterization of this out-of-context statement from Kraft's patent, and are prepared to establish that parmesan, like other cheeses, will indeed spoil if left unrefrigerated.

pages of dense analysis to reach their conclusion is itself evidence that no reasonable consumer would engage in the same mental exercise (even if they could), especially when the alternative is to simply look at the product label. In any event, Professors Curzan and Keshet even conclude that consumers do not believe "100% grated parmesan cheese" consists entirely of cheese: "[i]t is our expert opinion that no reasonable shopper would expect that a container labeled '100% grated parmesan cheese' would contain *significant amounts* of non-cheese substances." AC at Ex. A, at ¶ 9 (emphasis added). Thus, even accepting their opinion as true would lead to the same result that the Court already reached, which is that reasonable consumers would expect that unrefrigerated "100% Grated Parmesan Cheese" contains *something* other than cheese.

As Plaintiffs acknowledge in their prior briefing, "[m]aking the plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chicago,* 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).[4] The Court drew on its experience and common sense when it determined that "100% grated parmesan cheese" and similar statements at issue are ambiguous to a reasonable consumer, and that Plaintiffs' proposed interpretation of the phrase is the weakest of three possibilities because ordinary consumers understand that, unless something is added to cheese to keep it from spoiling, it must be refrigerated.

*Fourth*, the Linguists' Opinions and the AC ignore that the FDA defines "grated parmesan cheese" to mean a mixture of parmesan cheese, anticaking agents such as cellulose, antimycotics (preservatives or mold inhibitors) like as potassium sorbate, and other so-called "optional ingredients," as explained in the initial briefs by ICCO and Target. *See* Opposition Memorandum at pp. 5-17; Reply in Supp. of Mem., Dkt. 191 at pp. 2-11. For the sake of brevity, Defendants

---

[4] *See* Pls.' Consolidated Opp'n to Mot. To Dismiss, Dkt. 185, at p. 4.

adopt these portions of their prior briefs as if repeated herein. *See* Fed. R. Civ. P. 10(c). None of the allegations in the AC avoid the same preemption arguments that the Defendants already made.

The Linguists Opinions' proceed as though the FDA's regulatory requirements do not exist. For example, professors Cruzan and Keshet dissect "grated parmesan cheese" and conclude that [grated] modifies [parmesan cheese], such that "100% grated parmesan cheese" means [100% grated] [parmesan cheese] (or "parmesan cheese that is entirely grated"). Ex. A to AC.[5] "Grated parmesan cheese," however, is not a phrase that can be broken into its constituent words to determine its meaning. It is a singular noun that the FDA defines to mean a combination of parmesan cheese, anticaking agents, and antimycotics. *See* 21 C.F.R. § 133.146(c); *see also* Opposition Memorandum at p. 7. The only plausible interpretation of "100% grated parmesan cheese" that also is consistent with the FDA's definition is "a product that consists entirely of the FDA-sanctioned combination of cheese and non-cheese ingredients." Thus, the AC establishes that the products are, in fact, [100%] [grated parmesan cheese] because they contain parmesan cheese, anticaking agents, and antimycotics. Plaintiffs' attempt to define "grated parmesan cheese" in a manner that conflicts with the FDA's definition is preempted as a matter of law. *See* 21 U.S.C. § 343-1(a)(1) and Opposition Memorandum at pp. 11-15 (ICCO/Target express preemption argument).[6]

### 2. Plaintiffs' Vague Reference to a Putative "Recent Consumer Survey" is Also Irrelevant to the Purported Ambiguity of Defendants' Advertising Statements, Which is a Question of Law.

The AC also references—but does not attach—the results of a "recent survey" of consumers that purportedly concluded that "the vast majority of consumers who purchase the Products believe

---

[5] Professor Johnson does not even consider the meaning of "100% [grated parmesan cheese]."

[6] The linguists also fail to account for the fact that the FDA does not require grated parmesan cheese product labels to indicate the presence of anticaking agents or antimycotics on the front panel of the label. *See* 21 C.F.R. § 133.146(d)(1); *see also* Opposition Memorandum at p. 7.

the Products are 100% cheese and do not contain fillers or artificial ingredients." AC at ¶ 3. Once again, Plaintiffs proffer expert evidence and opinion to contradict the Court's findings on questions of law.[7] Consumer survey evidence might have been relevant had this Court determined that the Target/ICCO product labels as a whole failed to clarify the inherent ambiguity created by the challenged advertising statement at issue. In that scenario, Plaintiffs would need evidence to meet their burden of establishing that a significant portion of the general consuming public interprets the ambiguous statement in a particular way, such as to mean "100% cheese that is grated." *See* Opinion at p. 13 ("[T]here must be 'more than a mere possibility that [a] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather, the reasonable consumer standard requires a probability that a significant portion of the general consuming public … acting reasonably in the circumstances, could be misled.'") (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)) (additional citations and quotation marks omitted). No such evidence is needed or relevant here, of course, because the Court already concluded as a matter of law that Defendants' ambiguous product label is not misleading to the reasonable consumer, when read in the context of the entire label. *See* Opinion at p. 17; *see also Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 250 (3d Cir. 2011) ("[W]e conclude … that the Havana Club label, taken as a whole, could not mislead any reasonable consumer about where Bacardi's rum is made, which means that survey evidence has no helpful part to play on the question of what the label communicates regarding geographic origin.").

---

[7] Such a survey would not be admissible unless supported by a Federal Rule of Evidence 702 witness who conducted the survey or who is qualified by knowledge, skill, experience, training or education to testify regarding the survey's methodology and results. Thus, Plaintiffs' citation to this putative survey's results in their AC represents another attempt to rely on expert opinion in support of their claims.

### 3. Plaintiffs' New, Conclusory Allegation that Defendants' Products Contain More Cellulose Than "What is Necessary" Is Deficient.

Plaintiffs' allegation that "Defendants add powdered cellulose in amounts that exceed what is necessary to achieve anticaking effects in the Products" is not supported by any additional allegations of fact. AC at ¶ 22. It is, therefore, a quintessential example of a conclusory allegation that fails to meet even the most basic requirements of Federal Rule of Civil Procedure 8(a). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). However, the Court need not "accept as true any legal assertions or recital of the elements of a cause of action supported by mere conclusory statements." *Zahn*, 815 F.3d at 1087 (citation omitted).

The Seventh Circuit "ha[s] interpreted *Twombly* and *Iqbal* to require the plaintiff to 'provid[e] some specific facts' to support the legal claims asserted in the complaint." *McCauley*, 671 F.3d at 616 (citation omitted). Although "[t]he degree of specificity required is not easily quantified," a plaintiff must still "give enough details about the subject-matter of the case to present a story that holds together." *Id.* (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)). In practice, "[t]he required level of factual specificity rises with the complexity of the claim," such that "[a] more complex case . . . will require more detail, both to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected." *Id.* at 616–17 (quoting *Swanson*, 614 F.3d at 405).

Plaintiffs' allegation that Defendants' products "contain more cellulose powder than needed to achieve anticaking effects" presents a complex case that requires detailed factual allegations to "present a story that holds together" and put Defendants on notice of what, exactly, the factual foundation is for Plaintiffs' claim. AC at ¶4. No such further factual allegations are presented.

12

The AC does not even allege how much cellulose is in the product that ICCO makes for Target, let alone how much cellulose would be necessary to achieve "anticaking effects." Nor are there allegations regarding how to determine what an acceptable anticaking effect would be to the reasonable consumer, which would necessarily require plausible allegations concerning consumers' desires. Accordingly, the AC's failure to provide *any* factual basis for the conclusory assertions in Paragraphs 4 and 22 renders those allegations legally insufficient to state a claim upon which relief could be granted.

The insufficiency of Plaintiffs' new allegation is particularly glaring when viewed against the backdrop of Plaintiffs' prior representations to the Court on the subject. Plaintiffs' original Complaint alleged that Defendants' products contained "anywhere from 3.8% to 8.8% cellulose, an organic polymer with no nutritional value that is 'often used as a filler.'" Opinion at p. 3 (quoting from the Original Complaint, Dkt. 120 at ¶¶ 19, 22). Yet, Plaintiffs' Opposition to Defendants' Motions to Dismiss the original Complaint acknowledged that, "as the Court correctly noted during the status hearing on January 9, 2017, if Defendants had left off the '100%' and merely labeled the Products 'grated cheese,' we likely would not be here." Plaintiffs' Memorandum, Dkt. 185, at p. 8. It now appears that Plaintiffs, in a last-ditch effort to save their case, have reversed course and ignored their admission that the "100%" advertising presents the only plausible claim related to the products at issue, for the purpose of recasting their previously pleaded "cellulose filler" allegation as an affirmative claim. The Court should not permit this case to move forward on such a scant, conclusory allegation that Plaintiffs themselves acknowledged was not viable.[8]

---

[8] It is also doubtful that Plaintiffs can plausibly claim to have relied on any putative representation or promise that the products only contained enough cellulose powder as necessary to achieve an anticaking effect, in light of the Plaintiffs' allegations that they purchased Defendants' products in reliance on their belief that the labels had promised nothing but cheese.

**B.    Plaintiffs' AC Fails to State A Claim for Breaches of Express and Implied Warranties, or for Unjust Enrichment.**

Finally, the AC does not present any reason why the Court should interpret the product labels at issue any differently than it already has, in the context of evaluating the sufficiency of Plaintiffs' warranty and unjust enrichment claims.  Again, opinion evidence and surveys are irrelevant to the Court's initial determination that the phrase "100% grated parmesan cheese" and similar statements are ambiguous as a matter of law.  *See, e.g., Cannon v. Burge*, 752 F.3d 1079, 1088 (7th Cir. 2014) (finding that under Illinois law, "[b]oth the meaning of the instrument, and the intention of the parties must be gathered from the face of the document without the assistance of parol evidence or any other extrinsic aids") (quoting *Rakowski v. Lucente*, 104 Ill.2d 317, 323, 472 N.E.2d 791, 794 (Ill. 1984)); *see also Abt v. Mazda Am. Credit*, 25 F. Supp. 2d 860, 862 (N.D. Ill. 1998) ("When interpreting a contract, 'a court must first decide, as matter of law, whether the language of the contract is ambiguous.'") (quoting *Pepper Constr. Co. v. Transcon. Ins. Co.*, 285 Ill. App. 3d 573, 575, 673 N.E.2d 1128, 1130 (Ill. App. Ct. 1996)).  The Court made that determination already, and then found that an objective reading of Defendants' label as a whole (as principles of contract interpretation require) reveals to the reasonable consumer that parmesan cheese is not the only ingredient in Defendants' products.  Opinion at p. 22; *see also Premcor USA, Inc. v. Am. Home Assurance Co.*, 400 F.3d 523, 529 (7th Cir. 2005) (contract terms should be interpreted "in light of the contract as a whole" to resolve its "apparent ambiguity" when "viewed out of context").  The AC continues to rely on the same, flawed subjective interpretation of a contract term read in isolation that the Court already rejected.  Nothing now pleaded in the AC changes the fact that Plaintiffs received exactly what Defendants promised them on the labels.  That fact also renders Plaintiffs' renewed unjust enrichment claim implausible for the same reasons that the Court already determined.  Opinion at pp. 23-24.

## IV. ADOPTION AND INCORPORATION BY REFERENCE OF ARGUMENTS FROM CO-DEFENDANTS' BRIEFS

To avoid repetition, ICCO and Target hereby adopt and incorporate herein by reference all of the arguments in the briefs submitted by co-Defendants Wal-Mart Stores, Inc., Albertsons Companies, Inc., *et al*., and The Kraft Heinz Company.

## V. CONCLUSION

The AC does not bring anything new to the table, other than linguistic opinions that contain no statements of fact and that are irrelevant to the findings on questions of law that underpinned the Court's original Opinion dismissing Plaintiffs' claims. The AC otherwise adds only conclusory allegations that lack even the most basic well-pleaded facts that would warrant a presumption of truth at this stage. After excising these irrelevant and implausible allegations, the AC is left with nothing but the same allegations that the Court has already found deficient. *See McCauley*, 671 F.3d at 616 ("After excising the allegations not entitled to the presumption, we determine whether the remaining factual allegations 'plausibly suggest an entitlement to relief.'") (citation omitted). The Court should dismiss the AC with prejudice.


Dated: November 30, 2017                    Respectfully submitted,

                                              /s/ Joshua A. Glikin
                                            Joshua A. Glikin (General Bar No.: 008107)
                                            glikin@bowie-jensen.com
                                            Bowie & Jensen, LLC
                                            210 West Pennsylvania Avenue, Suite 400
                                            Towson, Maryland 21204
                                            (410) 583-2400 Telephone
                                            (410) 583-2437 Facsimile

                                            *Attorney for Defendants Target Corporation and ICCO Cheese Company, Inc.*

15

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing document was filed on November 30, 2017, with the Clerk of the Court by using the CM/ECF system, which will send a notice of the filing to all counsel of record.

                                              /s/ Joshua A. Glikin

                                              Joshua A. Glikin