**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE:  100% GRATED PARMESAN CHEESE MARKETING AND SALES PRACTICES LITIGATION | Civil Action No. 16 CV 5802 |
| | MDL 2705 |
| *This Document Relates to all Cases on the Albertsons and Supervalu Track* | Judge Gary S. Feinerman |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
AMENDED CONSOLIDATED CLASS ACTION COMPLAINT AGAINST
ALBERTSONS COMPANIES, INC., ALBERTSONS LLC, AND SUPERVALU, INC.**

Gary Hansen (admitted *pro hac vice*)
Heidi A.O. Fisher (admitted *pro hac vice*)
FOX ROTHSCHILD LLP
222 South Ninth Street, Suite 2000
Minneapolis, MN  55402-3338
Phone: 612.607.7000
Facsimile:  612.607.7100
ghansen@foxrothschild.com
hfisher@foxrothschild.com

Joseph E. Collins
FOX ROTHSCHILD LLP
353 N. Clark Street, Suite 3650
Chicago, IL 60654
Phone: 312.517.9227
Facsimile:  312.517.9201
jcollins@foxrothschild.com

*Counsel for Defendants Albertsons Companies, Inc., Albertsons LLC, and Supervalu Inc.*

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ............................................................................................. i

TABLE OF AUTHORITIES ....................................................................................... ii

INTRODUCTION ...................................................................................................... 1

FACTUAL ALLEGATIONS ....................................................................................... 1

ARGUMENT ............................................................................................................. 3

I.  THE NEW MATTER IN THE AMENDED COMPLAINT DOES NOT CORRECT THE DEFICIENCIES IDENTIFIED IN THE COURT'S DISMISSAL ORDER. ........... 3

    A.  THE SURVEY ALLEGATIONS DO NOT ALTER THE COURT'S DETERMINATION OF AMBIGUITY. ............................................................ 4

    B.  THE LINGUIST REPORTS ARE OPINIONS AND CONCLUSIONS AND SHOULD HAVE NO BEARING ON THE COURT'S DECISION. ................... 7

    C.  THE AMENDED COMPLAINT'S REFERENCE TO A PATENT IS IRRELEVANT. ...................................................................................... 9

    D.  ALLEGED LABEL CHANGES ARE BOTH IRRELEVANT AND INADMISSIBLE. .....................................................................................10

    E.  THE AMENDED COMPLAINT'S CELLULOSE ALLEGATIONS HAVE ALREADY BEEN REJECTED BY THE COURT AND ARE CONCLUSORY. ........................................................................................10

II.  PREEMPTION. ..................................................................................................12

III.  CONSUMER FRAUD STATUTES. .................................................................12

    A.  COUNT V - IFCA. ....................................................................................12

    B.  COUNT IV - ADTPA. ...............................................................................13

IV.  COUNTS I & III - BREACH OF WARRANTY CLAIMS. .................................14

V.  COUNT II - UNJUST ENRICHMENT ..............................................................15

CONCLUSION .........................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Council of Certified Podiatric Physicians & Surgeons v. American*
    *Board of Podiatric Surgery, Inc.,*
      185 F.3d 606 (6th Cir. 1999) ............................................................... 4-5

*American Italian Pasta Co. v. New World Pasta Co.,*
    371 F.3d 387 (8th Cir. 2004) ................................................................5, 6

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ....................................................................... 6, 9, 11

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ......................................................................... 11, 12

*Bober v. Glaxo Wellcome PLC,*
    246 F.3d 934 (7th Cir. 2001) ................................................................. 13

*Borsellino v. Goldman Sachs Group, Inc.,*
    477 F.3d 502 (7th Cir. 2007) ................................................................. 12

*Camico Mututual Insurance Co. v. Citizens Bank,*
    474 F.3d 989 (7th Cir. 2007) ...................................................................5

*Cleary v. Philip Morris Inc.,*
    656 F.3d 511 (7th Cir. 2011) ................................................................. 15

*Davis v. G.N. Mortgage Corp.,*
    396 F.3d 869 (7th Cir. 2005) ................................................................. 13

*DeMarco v. DepoTech Corp.,*
    149 F. Supp. 2d 1212 (S.D. Cal. 2001) ...................................................9

*Durkin v. Equifax Check Servs., Inc.,*
    406 F.3d 410 (7th Cir. 2005) ...................................................................9

*Financial Acquisition Partners LP v. Blackwell,*
    440 F.3d 278 (5th Cir. 2006) ...................................................................7

*Fink v. Time Warner Cable,*
    714 F.3d 739 (2d Cir. 2013) ...................................................................4

*Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc.,*
    735 F. 3d 735 (7th Cir. 2013) .................................................................6

*Hartford Fire Insurance Co. v. Henry Brothers Construction Managment Services., LLC,*
877 F. Supp. 2d 614 (N.D. Ill. 2012) ...................................................................7

*Ibarrola v. Kind, LLC,*
83 F. Supp. 3d 751 (N.D. Ill. 2015) ...................................................................13

*Mead Johnson & Co. v. Abbot Laboratories,*
201 F.3d 883 (7th Cir. 2000) ........................................................................5, 8

*National Automobile & Casualty Insuance Co. v. Thea Stewart,*
223 Cal. App. 3d 452 (1990) .........................................................................8-9

*Pernod Ricard USA v. Bacardi U.S.A,*
653 F.3d 241, 250 (3rd Cir. 2011) .....................................................................6

*Pugh v. Tribune Co.,*
521 F.3d 686 (7th Cir. 2008) ..........................................................................10

*Suchanek v. Sturm Foods, Inc.,*
764 F.3d 750 (7th Cir. 2014) ..........................................................................14

*Trujilo v. Apple Computer, Inc.,*
581 F. Supp. 2d 935 (N.D. Ill. 2008) ...............................................................13

*United States v. Kupau,*
781 F.2d 740 (9th Cir. 1986) .............................................................................8

*United States v. Devine,*
787 F.2d 1086 (7th Cir. 1986) ...........................................................................8

*Wigod v. Wells Fargo Bank, N.A.,*
673 F.3d 547 (7th Cir. 2012) ..........................................................................12

*Workman v. Plum Inc.,*
141 F. Supp. 3d 1032 (N.D. Cal. 2015) ..............................................................5

**Statutes**

Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1 (2016), *et seq.* ....................... 13, 14

Illinois Deceptive Practices and Consumer Fraud Act, 815 ILCS 505/2 .............................. 12, 13

**Regulations and Rules**

21 C.F.R. § 133.146 ............................................................................................8

21 C.F.R. § 133.146(c) .......................................................................................11

21 C.F.R. § 182.1480 ...................................................................................................... 11

Federal Rule of Evidence 407 ........................................................................................ 10

Federal Rule of Civil Procedure 9(b) ............................................................................ 12

Federal Rule of Civil Procedure 26(a) ............................................................................ 9

## INTRODUCTION

In dismissing Plaintiffs' Consolidated Complaint, this Court determined as a matter of law that the reference on the Albertsons and Supervalu Defendants Essential Everyday® grated cheese products to "100% Grated Parmesan Cheese" is ambiguous. That determination required consideration of the entire label to discern whether Defendants had represented the product to contain only cheese. Observing that the label expressly identified the product's non-cheese ingredients, the Court correctly held Plaintiffs could not have been misled about the contents.

The Court allowed Plaintiffs to file an amended complaint "to attempt to correct the deficiencies identified" in its opinion. Plaintiffs' Amended Complaint does not make those corrections. The new allegations are conclusions, arguments, and opinions improperly presented as factual allegations. Even if they had been properly pled and could be considered by the Court, the additions do nothing to change the analysis under which the Court dismissed the Consolidated Complaint. Because any further amendment would prove futile, the Court should dismiss the Amended Complaint with prejudice.

## FACTUAL ALLEGATIONS

Plaintiffs Bell and Lang are citizens of Illinois, and Plaintiff Wills is a citizen of Alabama. (AC ¶¶ 9–11.)[1] They each purchased Essential Everyday® grated cheese products from retailers in their home states. *Id*. They assert claims for themselves and for national, Illinois, and Alabama classes of purchasers.

Because the factual allegations in the Amended Complaint are largely unchanged from those in the Consolidated Complaint, and for brevity's sake, Defendants incorporate by reference

---

[1] "AC" refers to the Amended Consolidated Class Action Complaint against Defendants (Doc. 227); "CC" refers to the Consolidated Complaint (Doc. 121).

the Factual Allegations section of the memorandum supporting their motion to dismiss the Consolidated Complaint. (Doc. 157 at 2–4.)[2, 3] Plaintiffs' new allegations are described below.

**Survey.** The Amended Complaint adds three sentences about a "recent survey" of unknown third parties performed "in connection with this litigation":

> Nonetheless, according to a recent survey, the vast majority of consumers who purchase the Products believe the Products are 100% cheese and do not contain fillers or artificial ingredients. In fact, in excess of 85% of consumers believe that the label means the Products are 100% cheese and fully grated. Only a very small percentage believed the Products do not consist of 100% cheese.

(AC ¶¶ 3, 24.) The Amended Complaint provides no detail beyond this conclusory summary.

**Linguist Reports.** The Amended Complaint attaches two "reports" from linguists who opine that the phrase "100% Grated Parmesan Cheese" "is linguistically subject to only one plausible interpretation, which is that the Product contains nothing other than grated parmesan cheese." (AC ¶ 25; Doc. 227–1, 227-2.)

**Parmesan Cheese Characteristics.** Plaintiffs allege that "[t]hese cheeses—cured, dried hard Italian cheeses—keep a long time without refrigeration and do not clump." (AC ¶ 22.) Plaintiffs also allege "grated Parmesan cheese usually available in the marketplace is dried after curing to a moisture level of about 12–18%. At this moisture level, 'there is little problem of clumping or agglomeration of the grated cheese product.'" (*Id.*) As support for these allegations, Plaintiffs rely on statements in the "field of the invention" section of U.S. Patent No. 6,242,016

---

[2] References to Defendants' prior briefs cite to the page numbers of the original briefs rather than the page numbers assigned by the electronic filing system.

[3] Defendants also accept, for purpose of this motion, the Court's recitation of facts in the Background section of its Dismissal Order (Doc. 216 at 1–6).

B1. (*Id.*)  The patent application was written and filed on June 30, 1999—eighteen years ago—for a rapid method for the manufacture of grated hard cheese.[4]

**Label Changes.**  The Amended Complaint alleges some of Defendants' competitors have stopped labeling their products as "100% Grated Parmesan Cheese".  (AC ¶¶ 26–27.)

**Cellulose.**  The Amended Complaint repeats the unsupported allegation that an undisclosed testing facility found a sample of Supervalu's grated cheese product contained 8.8% cellulose.  (*Compare* CC ¶ 18 with AC ¶ 19.)[5]  Without adding any new factual allegations, the Amended Complaint adds a conclusory allegation that the products "contain more cellulose powder than needed to achieve anticaking effects".  (AC ¶¶ 4, 23.)

## ARGUMENT

## I.  THE NEW MATTER IN THE AMENDED COMPLAINT DOES NOT CORRECT THE DEFICIENCIES IDENTIFIED IN THE COURT'S DISMISSAL ORDER.

In the Dismissal Order, the Court surveyed the spectrum of case law regarding deceptive labeling and packaging claims and identified the following rule:

> Where a plaintiff contends that certain aspects of a product's packaging are misleading in isolation, but an ingredient label or other disclaimer would dispel any confusion, the crucial issue is whether the misleading content is ambiguous; if so, context can cure the ambiguity and defeat the claim, but if not, then context will not cure the deception and the claim may proceed.

(Doc. 216 at 14–15) (comparing cases).  The Court first examined the description "100% Grated Parmesan Cheese" and found the phrase to be susceptible to at least three different meanings,[6]

---

[4] A copy of the patent is attached as Exhibit 1.  As the Court previously recognized, it may review documents referenced in the Amended Complaint and those documents subject to proper judicial notice. (Doc. 216 at 1–2.)

[5] The Court already considered this allegation in its Dismissal Order. (Doc. 216 at 3.)

[6] Defendants believe there is a fourth meaning.  FDA mandates the use of the phase "Grated Parmesan Cheese" as the statement of the product's identity.  FDA defines that product as containing both cheese and non-cheese ingredients.  Thus, as established by FDA, 100% Grated Parmesan Cheese necessarily means 100% of a grated cheese product with permitted non-cheese ingredients.

rendering it ambiguous. (Doc. 216 at 16.) The Court then considered the entire package, including the ingredients panel, which provided additional context (expressly identifying the non-cheese ingredients) and cured any ambiguity regarding the product's contents. The Court also observed that, given the shelf life of the product, no reasonable consumer would believe the product was pure cheese. (*Id.* at 17.) "Defendants' labeling and marketing, when viewed as a whole, thus are not deceptive." (*Id.*)[7]

The Amended Complaint's new conclusory allegations are both improperly pled and irrelevant to the Court's analysis and conclusions. The Amended Complaint does not remedy the deficiencies in its predecessor. Because any further amendment would be futile, the Court should dismiss the Amended Complaint with prejudice.

### A. The Survey Allegations Do Not Alter the Court's Determination of Ambiguity.

The Amended Complaint refers summarily to a "recent survey" by an anonymous entity of unknown persons "conducted in connection with this litigation." (AC ¶ 3, 24.) Plaintiffs apparently rely on the survey as a basis for the Court to re-examine its determination that "100% Grated Parmesan Cheese" is ambiguous. The survey allegations are not properly alleged and are irrelevant to the Court's analysis and conclusions.

The survey results are legally irrelevant because ambiguity is a determination for the Court to make as a matter of law. (Doc. 216 at 14) (citing *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013)); *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of*

---

[7] The Court's analysis was dispositive of all claims. (Doc. 216 at 11) (finding all state consumer protection statutes require conduct that plausibly could deceive a reasonable consumer); (*Id.* at 20) ("Plaintiffs' warranty claims suffer from the same fatal flaw as their consumer protection claims: A reasonable consumer would not understand Defendants' labels to warranty that the products contain only cheese."); (*Id.* at 22) ("Plaintiffs' implied warranty of merchantability claims fail for the same reason."); (*Id.* at 24) (with respect to unjust enrichment, "[n]o reasonable consumer would think Plaintiffs delivered something other than what their labels promised.")

*Podiatric Surgery, Inc.*, 185 F.3d 606, 612 n.2 (6th Cir. 1999) (finding, in false advertising case, "the initial determination concerning whether a statement is ambiguous is a matter of law"). It is necessarily based on consideration of the words themselves and not on extraneous or parole evidence. *See Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015) ("carefully reviewing [only] the labels at issue"); *see also Camico Mut. Ins. Co. v. Citizens Bank*, 474 F.3d 989, 993 (7th Cir. 2007) (applying "four corners" rule in contract context).

Several courts, including the Seventh Circuit, have rejected similar surveys as unreliable and subjective. For example, *Mead Johnson & Company v. Abbott Laboratories* involved claims of false advertising under the Lanham Act. 201 F.3d 883 (7th Cir. 2000). Recognizing inherent problems with surveys, such as the fact that "respondents in survey research are suggestible," Judge Easterbrook observed that although surveys are an accepted way to probe for things such as confusion about the source of goods, they are not similarly useful in this situation. *Id.* at 886 ("So far as we can tell, however, never before has survey research been used to determine the *meaning of words*, or to set the standard to which objectively verifiable claims must be held." (emphasis added)).

The Eighth Circuit, citing *Mead Johnson*, agreed that survey evidence is unreliable and could not substitute for the Court's interpretation of a word or phrase as a matter of law. *Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387 (8th Cir. 2004). The Eighth Circuit analyzed whether the phrase "America's Favorite Pasta" was deceptive. Having agreed with the district court that the phrase was non-actionable puffery, the court turned to the question of whether the results of a consumer survey changed that analysis to "transform" the phrase and support an actionable claim. *Id.* at 392. It found a consumer survey could not transform a non-actionable statement into an actionable one: "To allow a consumer survey to determine a claim's benchmark

would subject any advertisement or promotional statement to numerous variables, often unpredictable, and would introduce even more uncertainty into the market place." *Id.* at 393. Likewise, in *Pernod Ricard USA v. Bacardi U.S.A.*, the Third Circuit found when a product label, taken as a whole, could not mislead a reasonable consumer, "survey evidence has no helpful part to play." 653 F.3d 241, 250 (3rd Cir. 2011) ("there may be cases, and this is one, in which a court can properly say that no reasonable person could be misled by the advertisement in question.").

Even if the survey allegations were otherwise admissible, they are mere bare-bones conclusions presented without any factual support. As the Seventh Circuit has noted, there is "a wide choice of survey designs, none foolproof, involving such issues as sample selection and size, presentation of the allegedly confusing products to the consumers involved in the survey, and phrasing of questions in a way that is intended to elicit the surveyor's desired response . . . from the survey respondents." *Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F. 3d 735, 741 (7th Cir. 2013). The Amended Complaint does not provide any information about the purported survey beyond its supposed result. If the Amended Complaint had provided facts instead of conclusions, the survey still would not be any more persuasive because "[c]onsumer surveys conducted by party-hired expert witnesses are prone to bias." *Id.* Conclusory allegations of survey results are no different than the conclusory statements in Plaintiffs' Consolidated Complaint purporting to assert what reasonable consumers believe. Such "conclusory statements and naked assertions are insufficient" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

If the survey was supported by properly plead facts and was otherwise appropriate for the Court's consideration, it would not change the analysis that led the Court to dismiss the Consolidated Complaint. A reasonable consumer would have consulted the list of ingredients on

the product label. That list disclosed the presence of cellulose and other non-cheese ingredients. As the Court found, a reasonable consumer would not be deceived when the ingredient panel disclosed the non-cheese ingredients and when it is widely known that shelf-stable products such as grated cheese necessarily contain preservatives and similar ingredients.

**B.      The Linguist Reports Are Opinions and Conclusions and Should Have No Bearing on the Court's Decision.**

The Amended Complaint offers the reports of academic "linguists" to bolster Plaintiffs' contention that the product labels are misleading. In the linguists' opinions, "no reasonable shopper would expect that a container labeled '100% Grated Parmesan cheese' would contain significant amounts of non-cheese-like substances." (Doc. 227-1 at 2.) They conclude "that the contents of a container bearing '100% grated parmesan cheese' on its label contains only Parmesan cheese, and no other ingredient." (Doc. 227-2 at 1.) As with the purported survey, Plaintiffs offer these opinions in an attempt to override the Court's own determination of ambiguity.

While the Court must accept all well-pled allegations of the complaint as true, it need not accept "opinions that are couched as factual allegations." *Hartford Fire Ins. Co. v. Henry Bros. Const. Mgmt. Svcs., LLC* , 877 F. Supp. 2d 614, 619 (N.D. Ill. 2012). For that reason alone, the Court should disregard the linguists' opinions. *See Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 285–86 (5th Cir. 2006) (finding that expert opinions attached to complaint are not well-pled allegations and should be ignored on motion to dismiss). Such opinions do not aid the Court in any regard: they state legal conclusions as to what a "reasonable consumer" would believe and attempt to substitute the linguists' interpretation for those made by consumers and the Court.

The linguists apparently conducted their advanced-placement English exercise in a vacuum. Each of the reports confined its analysis to the phrase "100% grated parmesan cheese," and neither report analyzed or acknowledged the label's comprehensive list of all ingredients or

7

attempted to interpret the phrase in its proper context. The reports present a technical, academic approach to parsing the meaning of "100% grated parmesan cheese." What they do not do, however, is shed any light on how someone not educated in the art of academic linguistics would understand the label. *See United States v. Devine*, 787 F.2d 1086, 1088 (7th Cir. 1986), *cert. denied*, 479 U.S. 848 (1986) (it was not error to refuse to admit linguist's testimony where contents of tape recorded conversation were not outside the average person's understanding). A phrase can unquestionably be ambiguous even though someone with a doctorate degree in English and linguistics might have an opinion on its technically correct, out-of-context meaning.

The reports also ignore the FDA definition of grated Parmesan cheese. FDA regulations define the phrase to mean Parmesan cheese and additional ingredients, including antimycotics and anticaking agents such as cellulose, spices, and flavorings. 21 C.F.R. § 133.146.[8] *See Mead Johnson & Co.*, 201 F.3d at 887 (recognizing consumer understanding (or misunderstanding) cannot displace information required to be placed on labels or package inserts by FDA). The linguists' failure to consider the FDA definition and the context in which the phrase was used on the product label renders their analyses unreliable and irrelevant.

The proffered reports are nothing more than argument and conclusion meant to oppose the Court's analysis in the Dismissal Order. (Doc. 227-1 at 1) ("Judge Gary Feinerman has supplied three possible interpretations of the phrase, and we address the plausibility of each reading below."); (227-2 at 1) ("In my opinion, this expression has only one salient interpretation . . ."). This is not appropriate. *United States v. Kupau*, 781 F.2d 740, 745 (9th Cir. 1986) (excluding linguistic expert seeking to "interpret language in ordinary usage"); *see also Nat'l Auto. & Cas.*

---

[8] While the Court did not address these arguments in its opinion, Defendants incorporate by reference those portions of their prior briefing that discuss FDA regulations and their impact on this issue. (Doc. 157 at 6–9.)

*Ins. Co. v. Thea Stewart*, 223 Cal. App. 3d 452, 458–59 (1990) (finding "the opinion of a linguist or other expert as to the meaning of the policy is irrelevant to the court's task of interpreting the policy as read and understood by the lay person.") The opinions of the linguists are just that— opinions. They are not reliable scientific evidence this Court should consider on this motion. *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 421 (7th Cir. 2005) ("Accordingly, the district court did not abuse its discretion by excluding [the linguist's] untestable say-so.").

Moreover, the contents of such expert disclosures "are susceptible to a panoply of evidentiary and procedural challenges not generally applicable to allegations in a complaint, including objections based on countless federal evidentiary rules governing admissibility and compliance with the expert disclosure and report requirements of Rule 26(a)." *DeMarco v. DepoTech Corp.*, 149 F. Supp. 2d 1212, 1221 (S.D. Cal. 2001). Because the reports are only argument and conclusion, not allegations of fact, the Court should ignore them. *Ashcroft*, 556 U.S. at 678 (conclusions are not entitled to the assumption of truth).

**C.     The Amended Complaint's Reference to a Patent is Irrelevant.**

The Amended Complaint adds new allegations regarding the characteristics of Parmesan cheese based on Patent Number 6,242,016 1B for a rapid method of production. (AC ¶ 15.) Apparently, Plaintiffs believe this technical patent information is pertinent to a consumer's understanding of the nature of Parmesan cheese and offer it to contradict the Court's observation that Defendants' products "are packaged and shelf-stable at room temperature, a quality that reasonable consumers know is not enjoyed by pure cheese. Cheese is a dairy product, after all, and reasonable consumers are well aware that pure dairy products spoil, grow blue, green or black fuzz, or otherwise become inedible if left unrefrigerated for an extended period of time." (Doc. 216 at 17.) The Court found that these are "additional contextual factors" that weighed against a finding of deception. (*Id*. at 19.)

9

The patent application was filed in 1999. The portion cited in the Amended Complaint is even more dated, as it is drawn from the patent's discussion of prior art. The Amended Complaint makes no effort to connect this historical information to today's manufacturing requirements and practices. More to the point, however, it strains credibility and common sense to suggest a consumer purchasing grated Parmesan cheese will even know of, let alone consider, dense language buried in an eighteen-year old patent application. The consumer will consider his own knowledge and have the product in his hand. The label discloses the presence of non-cheese ingredients. A dated patent may discuss the clumping characteristics of "fully cured" Parmesan cheese or how long it might keep (AC ¶ 22), but that information, even if commonly known, cannot possibly outweigh the clearly stated information available to the consumer on the label itself.

### D. Alleged Label Changes Are Both Irrelevant and Inadmissible.

The Amended Complaint adds two sentences alleging that certain of Defendants' competitors have changed their labels to delete "100%". (AC ¶¶ 26–27.) Even if true, this does not indicate those competitors believed the inclusion of "100%" was deceptive in any way. Indeed, it is more likely the competitors did not feel the continued use of "100%" was worth the distraction and expense of being faced with meritless class action litigation. Moreover, the Court should disregard the allegations because "drawing an inference from such facts does not comport with Federal Rule of Evidence 407, which provides that subsequent remedial measures may not be used as evidence of liability." *Pugh v. Tribune Co.*, 521 F.3d 686, 695 (7th Cir. 2008).

### E. The Amended Complaint's Cellulose Allegations Have Already Been Rejected by the Court and Are Conclusory.

The Amended Complaint repeats allegations from the Consolidated Complaint, including a one-sentence allegation that a February 2016 test of "Defendants'" product showed it contained 8.8% cellulose. (Compare CC ¶ 18 to AC ¶ 19.) Once again, however, Plaintiffs fail to provide

any specific information to support their allegation. They do not identify the specific defendant, the product, the testing facility, or anything else about the test. There is no basis to believe the test was conducted by or for Plaintiffs or that they have reviewed or obtained the test results. The Amended Complaint now concludes, based only on this previously-pled allegation, that Defendants add "powdered cellulose in amounts that exceed what is necessary for achieving anticaking effects in Products." (AC ¶ 23.)

The allegation of excess cellulose is a conclusion, not a fact, and the Court may disregard it. *Ashcroft*, 556 U.S. at 678. The Amended Complaint does not set out any new properly-pled facts to support its naked conclusion. There are no facts regarding the amount of cellulose necessary to prevent caking and, therefore, there is no plausible basis to conclude 8.8% cellulose content is excessive, even if that actually was the amount of cellulose in Defendants' product. Significantly, FDA, which regulates the manufacture and labeling of grated Parmesan cheese, does not specify a minimum or maximum level of cellulose. It provides only that "safe and suitable" "anticaking agents" may be added. 21 C.F.R. § 133.146(c). Cellulose is an FDA-recognized safe and suitable anticaking agent. 21 C.F.R. § 182.1480.

The Amended Complaint offers no basis from which to conclude Defendants' grated Parmesan cheese does not comply with FDA regulations. Plaintiffs' conclusory pleading is exacerbated by the equally unsupported reference to a test of an unidentified defendant's unidentified product by an unidentified entity, using unidentified methodologies, with results apparently never even examined by Plaintiffs.

The Amended Complaint's naked assertions and conclusory statements are insufficient and the Court should not presume them to be true. They do not state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court should therefore reject the

11

allegation of "too much" cellulose and should not engage in the speculation Plaintiffs invite and *Twombly* and *Iqbal* prohibit. This is particularly true here, where the Amended Complaint makes averments of fraud, which implicate Rule 9(b) and require Plaintiffs to identify the "who, what, when, where, and how" of the fraud, none of which are alleged in the Amended Complaint. *Borsellino v. Goldman Sachs Grp, Inc.,* 477 F.3d 502, 507 (7th Cir. 2007); *Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 569 (7th Cir. 2012).

## II.      PREEMPTION.

FDA has established the standard of identity for Grated Parmesan Cheese, which includes the presence of the same non-cheese ingredients used in Defendants' products. FDA requires the use of the product name "Grated Parmesan Cheese" on the front of the label, and requires the listing of non-cheese ingredients on the back of the label.[9] Defendants fully complied with these regulations, accurately describing the product as "100% Grated Parmesan Cheese." That is, Defendants accurately described the product using the standard of identity and ingredient panel prescribed by FDA. In these circumstances, FDA regulations preempt Plaintiffs' claims under both express preemption and conflict preemption analyses. While the Court did not address these arguments in its Dismissal Opinion, Defendants reassert them on this motion and incorporate by reference those portions of earlier briefs (and the briefs that they, in turn, incorporate by reference) and ask the Court to dismiss Plaintiffs' Complaint with prejudice for the reasons set forth therein.[10]

## III.     CONSUMER FRAUD STATUTES.

### A.      COUNT V - IFCA.

Plaintiffs Bell and Lang again assert claims under Illinois Deceptive Practices and

---

[9] See *supra*, note 8.

[10] Doc. 157 at 11–12; Doc. 192 at 9.

Consumer Fraud Act, 815 ILCS 505/2 ("ICFA"). Claims asserting violations of the ICFA should be dismissed for failure to state a claim when the totality of information available to the consumer would dispel any likelihood of a reasonable person or reasonable consumer being deceived by any alleged misrepresentation or omission. *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 940 (7th Cir. 2001), *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 753 (N.D. Ill. 2015). Under the ICFA, the "allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005). For example, if information on the ingredients panel of a label clarify advertising on the front of the label, the advertising is not misleading under ICFA. *See, e.g.*, *Ibarrola* (the front of a label stating that a product contained "no refined sugars" was held not to be misleading under ICFA because the ingredients panel listed evaporated cane juice and molasses). "If other information disclosed or available to the consumer dispels any tendency to deceive, there is no deception." *Trujilo v. Apple Computer, Inc.*, 581 F. Supp. 2d 935, 938 (N.D. Ill. 2008) (citing *Bober*, 246 F.3d at 938)).

Based on all information available to Plaintiffs, including the ingredients expressly listed on the back of the label, it should have been clear to Plaintiffs that the product included non-cheese ingredients including salt, enzymes and cellulose powder. Accordingly, Plaintiffs were not deceived, and the ICFA claims fail as a matter of law.[11]

## B.     COUNT IV - ADTPA.

Plaintiff Wills again claims Defendants violated the Alabama Deceptive Trade Practices Act ("ADTPA"), Ala. Code § 8-19-1, *et seq*., which makes "deceptive acts or practices in the

---

[11] Defendants also reassert and incorporate by reference all of their prior arguments related to the ICFA. These arguments include application of the ICFA's "safe harbor" provision, Doc. 157 at 12–13, Doc. 192 at 9–10; and further argument supporting the Court's decision that the statements are not misleading as a matter of law, Doc. 157 at 13–16, Doc. 192 at 10.

conduct of any trade or commerce" unlawful. Ala. Code. § 8-19-5 (2016). (AC. ¶¶ 62–73.) To be held liable under the ADTPA, a person must commit one or more "acts or practices declared unlawful" and cause monetary damage to a consumer. Ala. Code. § 8-19-10 (2016).

Wills' amended ADTPA claim fails because Wills has not alleged that any reasonable consumer would be misled by Defendants' FDA-compliant labels. *See Suchanek v. Sturm Foods*, *Inc.*, 764 F.3d 750, 755 (7th Cir. 2014) (applying "reasonable consumer" test in class action lawsuit alleging violation of Alabama consumer protection statute). The Court has already determined Defendants' labels are not misleading as a matter of law. Plaintiffs' new allegations do not change that analysis. Should the Court determine additional analysis is required, however, Defendants reassert and incorporate by reference all of their prior arguments addressing Plaintiffs' failure to state an ADTPA claim.[12]

## IV.    COUNTS I & III - BREACH OF WARRANTY CLAIMS.

Plaintiffs allege breaches of express and implied warranties under Illinois and Alabama statutes codifying the Uniform Commercial Code. (AC ¶¶ 38–45; 53–61.) Plaintiffs' amended warranty claims fail for the same reasons the Court dismissed their original warranty claims—"a reasonable consumer would not understand Defendants' labels to warranty that the products contain only cheese." (Doc. 216 at 20, 22.) As the Court recognized, express warranties are treated like any other written form of contract and are interpreted according to general contract principles, and intent is to be discerned from the entire contract—or in this case, *the entire label*. (*Id.* at 20–

---

[12] These arguments include application of the ADTPA's "safe harbor" provision, Doc. 157 at 16, Doc. 192 at 9–10; Plaintiff Wills' failure to give pre-suit notice, Doc. 157 at 17, Doc. 192 at 10–11; and further argument supporting the Court's decision that the statements are not misleading as a matter of law, Doc. 157 at 17, Doc. 192 at 10.

22.) Plaintiffs cannot view the product name in isolation and simply ignore the express and unambiguous statement on the labels that the grated cheese products included cellulose.

The Amended Complaint's new allegations do not change that analysis. Should the Court determine additional analysis is required, however, Defendants reassert and incorporate by reference all of their prior arguments addressing Plaintiffs' failure to plead express and implied warranty claims.[13]

## V.    COUNT II - UNJUST ENRICHMENT.

The unjust enrichment claims alleged in Count II of the Amended Complaint are based on the same alleged wrongdoing pled in Counts I and III-V. Accordingly, Plaintiffs' alleged unjust enrichment claims rise and fall with their other alleged claims. *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). Should the Court determine additional analysis is required, Defendants reassert and incorporate by reference all of their prior arguments addressing Plaintiffs' failure to state an unjust enrichment claim.[14]

### CONCLUSION

Plaintiffs have now had three opportunities to allege a viable theory. Additional pleading will not cure the deficiencies in their Amended Complaint. The Court should dismiss the Amended Complaint with prejudice.

---

[13] These include Plaintiffs' failure to give pre-suit notice, Doc. 157 at 18–19, Doc. 192 at 11–12; Plaintiffs' lack of privity, Doc. 157 at 21–23, Doc. 192 at 13–14; and further argument supporting the Court's decision that no warranties were breached, Doc. 157 at 19–21, Doc. 192 at 12.

[14] Doc. 157 at 21–25, Doc. 192 at 14–15.

Dated: November 30, 2017                       Respectfully submitted,

/s/ Gary Hansen
Gary Hansen (admitted *pro hac vice*)
Heidi A.O. Fisher (admitted *pro hac vice*)
FOX ROTHSCHILD LLP
222 South Ninth Street - Suite 2000
Minneapolis, MN 55402-3338
Telephone: 612.607.7000
Facsimile: 612.607.7100
Email: ghansen@foxrothschild.com
       hfisher@foxrothschild.com

and

Joseph E. Collins
FOX ROTHSCHILD LLP
353 N. Clark St., Suite 3650
Chicago, IL 60654
Telephone: 312.517.9227
Facsimile: 312.517.9201
Email: jcollins@foxrothschild.com

*Counsel for Defendants Albertsons Companies, Inc., Albertsons LLC, and Supervalu, Inc.*

16

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing document was filed on November 30, 2017, with the Clerk of the Court by using the CM/ECF system which will send a notice of filing to all counsel of record.

<u>/s/ Heidi A.O. Fisher</u>

Heidi A.O. Fisher