UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: 100% GRATED PARMESAN CHEESE | ) | |
| MARKETING AND SALES PRACTICES | ) | 16 C 5802 |
| LITIGATION | ) | MDL 2705 |
| | ) | |
| | ) | Judge Gary Feinerman |
| This Document Relates to All Cases | ) | |

### Memorandum Opinion and Order

Defendants in this multidistrict litigation are purveyors of grated parmesan cheese

products with labels stating "100% Grated Parmesan Cheese" or some variation thereof.  After

the Judicial Panel on Multidistrict Litigation assigned these suits to the undersigned judge, Doc.

1, Plaintiffs filed five consolidated class action complaints, Docs. 120-123, 143, which alleged

that they were misled by the "100% Grated Parmesan Cheese" labels because the products

contained non-cheese ingredients such as cellulose.  Defendants moved to dismiss the complaints

under Civil Rules 12(b)(1) and 12(b)(6).  The court denied the Rule 12(b)(1) motions but granted

the Rule 12(b)(6) motions without prejudice to repleading.  Docs. 215-216 (reported at 275 F.

Supp. 3d 910 (N.D. Ill. 2017)).

Plaintiffs then filed five amended consolidated class action complaints.  Doc. 225

(against Kraft Heinz Company); Doc. 226 (against Publix Super Markets, Inc.); Doc. 227

(against Albertsons Companies, Inc., Albertsons LLC, and SuperValu, Inc.); Doc. 228 (against

Target Corp. and ICCO-Cheese Company, Inc.); Doc. 229 (against Wal-Mart Stores, Inc. and

ICCO-Cheese Company, Inc.).  Like the initial complaints, the amended complaints allege that

Plaintiffs were misled by the "100% Grated Parmesan Cheese" labels because the products in

fact contained cellulose.  In addition, the amended complaints except for the one against Publix

allege that the products' ingredient lists were misleading because they represented that the cellulose was added to prevent caking, when in fact the cellulose also acted as filler.

Defendants moved to dismiss the amended complaints under Rule 12(b)(6). Docs. 237, 238, 243, 246, 249. Those motions were granted as to the claims based on the "100% Grated Parmesan Cheese" label (the "100% claims") and granted in part and denied in part as to the claims based on the ingredient lists' representation that cellulose was added to prevent caking (the "Anticaking claims"), and Publix and Target/ICCO were dismissed as defendants. Docs. 296-297 (reported at 348 F. Supp. 3d 797 (N.D. Ill. 2018)). Plaintiffs now move under Rule 15(a)(2) to amend their complaints to allege an Anticaking claim against Publix and to cure the defects in their Anticaking claim against Target/ICCO, Doc. 306; Albertsons/SuperValu moves under Rule 56 for partial summary judgment and under Rule 12(c) for partial judgment on the pleadings, Doc. 309; and Kraft moves under Rule 12(c) for judgment on the pleadings, Doc. 314. Plaintiffs' motion is denied, and Albertsons/SuperValu's and Kraft's respective motions are granted in part and denied in part.

## Background

When considering Albertsons/SuperValu's motion for partial summary judgment, the facts are construed as favorably to Plaintiffs, the non-movants, as the record and local Rule 56.1 permit. *See Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018). When considering Albertsons/SuperValu's and Kraft's Rule 12(c) motions, the court assumes the truth of the operative complaints' well-pleaded factual allegations, though not their legal conclusions. *See Bishop v. Air Line Pilots Ass'n, Int'l*, 900 F.3d 388, 397 (7th Cir. 2018). The court must also consider "documents attached to the complaint[s], documents that are critical to the complaint[s] and referred to in [them], and information that is subject to proper judicial

notice," along with additional facts set forth in Plaintiffs' opposition briefs, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013) (internal quotation marks omitted); *see also N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). The facts are set forth as favorably to Plaintiffs as those materials allow. *See Brown v. Dart*, 876 F.3d 939, 940 (7th Cir. 2017). The court must assume the truth of the facts relevant to each motion, but does not vouch for them. *See Donley v. Stryker Sales Corp.*, 906 F.3d 635, 636 (7th Cir. 2018); *Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

A detailed description of Plaintiffs' allegations appears in the court's prior opinions, familiarity with which is assumed. In brief, Defendants Kraft Heinz Company, Albertsons Companies, Inc., Albertsons LLC (the two Albertsons entities will be referred to together as "Albertsons"), SuperValu, Inc., Target Corporation, Wal-Mart Stores, Inc., ICCO-Cheese Company, Inc., and Publix Super Markets, Inc. design, develop, manufacture, sell, test, package, label, distribute, promote, market, and/or advertise grated parmesan cheese products. Doc. 225 at ¶ 19; Doc. 226 at ¶ 10; Doc. 227 at ¶ 16; Doc. 228 at ¶¶ 13-14; Doc. 229 at ¶¶ 15, 29. (Albertsons and SuperValu, close corporate relatives, are named in one complaint. Doc. 227. ICCO manufactures the products for both Target and Wal-Mart, and is named as a defendant in both the Target and Wal-Mart complaints. Docs. 228-229.) At all relevant times, Defendants' products bore labels stating "100% Grated Parmesan Cheese," Doc. 225 at ¶ 21; Doc. 227 at ¶ 18; Doc. 228 at ¶ 18; Doc. 229 at ¶ 18, or some variation thereof, Doc. 225 at ¶ 21; Doc. 226 at ¶ 12; Doc. 227 at ¶ 18; Doc. 228 at ¶ 18; Doc. 229 at ¶ 18.

Defendants' products are comprised largely of cured, dried hard Italian cheeses, Doc. 225 at ¶ 26; Doc. 226 at ¶ 15; Doc. 227 at ¶ 22; Doc. 228 at ¶ 21; Doc. 229 at ¶ 22, but also include a

small but nontrivial percentage of cellulose, an organic polymer with no nutritional value that is "often used as a filler." Doc. 225 at ¶¶ 23-24 (Kraft, 3.8%); Doc. 226 at ¶ 13 (Publix, "a significant portion"); Doc. 227 at ¶¶ 19-20 (Albertsons/SuperValu, 8.8%); Doc. 228 at ¶ 19 (Target/ICCO, no percentage specified); Doc. 229 at ¶¶ 19-20 (Wal-Mart/ICCO, 7.8%). Each product's ingredient list, located on the rear label, lists cellulose and asserts that the cellulose is used to prevent "caking." Doc. 225 at ¶ 4; Doc. 227 at ¶ 4; Doc. 228 at ¶ 4; Doc. 229 at ¶ 4. However, grated parmesan "usually available in the marketplace" is cured and dried in such a way that there is "little problem of clumping or agglomeration," so there in fact is little need to ensure that grated parmesan does not clump or "cake." Doc. 225 at ¶ 26; Doc. 227 at ¶ 22; Doc. 228 at ¶ 21; Doc. 229 at ¶ 22. According to the U.S. Food and Drug Administration ("FDA"), dried cheese products should be, at most, 2% cellulose. Grated Cheeses; Amendment of the Standard of Identity, 51 Fed. Reg. 30,210, 30,210 (Aug. 25, 1986). After commissioning an independent laboratory to test several cured, dried cheese products, Bloomberg reported that many such products contained significantly more than 2% cellulose and specified the percentage of cellulose found in the Albertsons/SuperValu, Wal-Mart/ICCO, and Kraft products. *See* Lydia Mulvaney, *The Parmesan Cheese You Sprinkle on Your Penne Could Be Wood*, Bloomberg (Feb. 16, 2016, 4:00 AM), https://www.bloomberg.com/news/articles/2016-02-16/the-parmesan-cheese-you-sprinkle-on-your-penne-could-be-wood.

Plaintiffs are consumers who purchased Defendants' products at grocery stores in Alabama (Kraft, Albertsons/SuperValu, Wal-Mart/ICCO), California (Kraft, Target/ICCO, Wal-Mart/ICCO), Connecticut (Kraft), Florida (Kraft, Publix, Target/ICCO, Wal-Mart/ICCO), Illinois (Kraft, Albertsons/SuperValu, Target/ICCO), Michigan (Kraft), Minnesota (Kraft, Wal-Mart/ICCO), Missouri (Target/ICCO), New Jersey (Wal-Mart/ICCO), and New York

(Kraft, Wal-Mart/ICCO). Doc. 225 at ¶¶ 9-17; Doc. 226 at ¶¶ 8-9; Doc. 227 at ¶¶ 9-11; Doc. 228 at ¶¶ 9-12; Doc. 229 at ¶¶ 9-14. Plaintiffs purchased the products believing that they contained only cheese. Doc. 225 at ¶¶ 9-17; Doc. 226 at ¶¶ 8-9; Doc. 227 at ¶¶ 9-11; Doc. 228 at ¶¶ 9-12; Doc. 229 at ¶¶ 9-14. In addition, in every amended complaint except the one against Publix, Plaintiffs allege that the products' ingredient lists stated that cellulose was added "to prevent caking," Doc. 225 at ¶ 46; Doc. 227 at ¶ 39; Doc. 228 at ¶ 40; Doc. 229 at ¶ 4, but that the amount of cellulose exceeded what was necessary to prevent caking, Doc. 225 at ¶ 27; Doc. 227 at ¶ 23; Doc. 228 at ¶ 22; Doc. 229 at ¶ 23, and therefore that the cellulose must also serve the undisclosed purpose of acting as filler, Doc. 225 at ¶ 4; Doc. 227 at ¶ 4; Doc. 228 at ¶ 2; Doc. 229 at ¶ 4.

## Discussion

### I.  Standing

As noted, Plaintiffs' 100% claims have been dismissed, leaving only their Anticaking claims. Kraft argues that Plaintiffs cannot bring those claims in federal court because their allegations do not satisfy the causation requirement of Article III standing. Doc. 316 at 19-21. As the court explained in its more recent opinion in this case—and as reiterated below— Plaintiffs by necessary implication allege in the operative complaints that they did not see the Anticaking representation on the products' ingredient labels before purchase. 348 F. Supp. 3d at 810. Kraft reasons that because Plaintiffs never saw the Anticaking representation, they cannot have sustained an injury that is "fairly traceable to" that statement and thus do not have standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

Kraft's argument fails for the reasons given in the court's first opinion in this case. 275 F. Supp. 3d at 918-19. As the court explained, under *In re Aqua Dots Products Liability*

*Litigation*, 654 F.3d 748, 750-51 (7th Cir. 2011), a plaintiff has standing to bring a consumer protection claim if the allegedly deceptive practice caused her to pay more for the product than she otherwise would have paid.  That test is satisfied here: If Defendants had disclosed on their labels that cellulose was added in part as filler, at least some consumers would not have purchased the products or would not have been willing to pay as much for them, which—applying basic supply-and-demand principles—would have driven down the price for all consumers, even those who did not read the labels.  Indeed, that Defendants included the Anticaking representation on the products' ingredient labels—even though, as they conceded at the motion hearing, the representation is not required by law, Doc. 341—strongly suggests that the representation helped Defendants sell more cheese at higher prices, thereby driving up the price for all consumers.  Plaintiffs therefore have Article III standing to pursue the Anticaking claims.

## II.     Plaintiffs' Motion for Leave to Amend as to Publix and Target/ICCO

Plaintiffs move for leave to file second amended consolidated complaints against Publix and Target/ICCO.  Doc. 306.  The court's more recent opinion dismissed Publix and Target as defendants after holding that Plaintiffs did not bring an Anticaking claim against Publix and that their Anticaking claims against Target/ICCO were too vague to satisfy federal pleading standards because they did not allege the percentage of cellulose in the Target/ICCO products.  348 F. Supp. 3d at 803, 808, 818.  Plaintiffs attempt in their proposed second amended complaints to remedy both defects by bringing Anticaking claims against Publix and by alleging the amount of cellulose in the Publix and Target/ICCO products.  Doc. 306 at 2.

The parties dispute which standard governs Plaintiffs' motion.  Plaintiffs contend that the lenient Rule 15(a)(2) standard applies.  Doc. 306 at 2; Doc. 327 at 2-4.  Publix and Target/ICCO

contend that the court's more recent order must be considered a final judgment dismissing all claims against them with prejudice, and therefore that the more demanding standards for amending a judgment under Rule 59(e) or Rule 60(b) govern.  Doc. 324 at 5-9; Doc. 325 at 10-11.  The court need not resolve the dispute because Plaintiffs' motion fails even under the more lenient Rule 15(a)(2) standard.

Rule 15(a)(2) provides that leave to amend "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a)(2).  That said, district courts "have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile."  *Right Field Rooftops, LLC v. Chi. Cubs Baseball Club, LLC*, 870 F.3d 682, 693 (7th Cir. 2017).  Although a plaintiff ordinarily should be given at least one opportunity to amend, *see Pension Trust Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 941 (7th Cir. 2018), she is not entitled to additional opportunities if she fails to remedy defects apparent at the time of the prior amendment, nor is she entitled to amend if she made a considered, strategic choice not to include information known to her at that time.  *See Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 855 (7th Cir. 2017) (affirming the district court's denial of leave to amend to assert an ADA claim where the plaintiff "could have alleged the ADA claim at the beginning of the suit," "[t]he lengthy delay could not be justified by newly discovered information," and "the [district] court suggested that the delay was strategic"); *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 687 (7th Cir. 2014) ("Outland presented no excuse for omitting … three [proposed legal] theories originally, and the unexplained delay looks more like procedural gamesmanship than legitimate ignorance or oversight."); *First Wis. Fin. Corp. v. Yamaguchi*, 812 F.2d 370, 373 (7th Cir. 1987) ("By its own account, First Wisconsin did not try to amend the complaint for six

7

months after learning of Yamaguchi's complicity. First Wisconsin explains that it waited because it did not want to risk a postponement of the trial scheduled for May 1986. This damns rather than justifies the delay, however; First Wisconsin concedes that it tried to split this case and, for its own convenience, obtain two trials. District courts are entitled to protect themselves, and other litigants whose cases would be affected, against such strategic conduct.").

Here, Plaintiffs were on notice after the court issued its first opinion, which dismissed without prejudice their 100% claims, that those claims suffered from serious and potentially irremediable defects. When Plaintiffs filed their amended complaints, they not only repleaded their 100% claims, but also added Anticaking claims (except against Publix), undoubtedly because they realized that their 100% claims might again be dismissed. Docs. 225 at ¶ 50; Doc. 227 at ¶ 43; Doc. 228 at ¶ 44; Doc. 229 at ¶ 46. To support their Anticaking claims against Kraft, Wal-Mart/ICCO, and Albertsons/SuperValu, Plaintiffs alleged the percentage of cellulose in those Defendants' products, but their Target/ICCO amended complaint did not allege comparable information about the Target/ICCO product. Doc. 225 at ¶ 23; Doc. 227 at ¶ 19; Doc. 229 at ¶ 19.

At a hearing shortly after Plaintiffs filed their present motion for leave to amend, the court asked them to explain the discrepancies between the Publix amended complaint (which did not bring an Anticaking claim) and Target/ICCO amended complaint (which brought an Anticaking claim but did not allege the amount of cellulose in the Target/ICCO product), on the one hand, and the amended complaints against the other Defendants (which brought Anticaking claims and alleged the amount of cellulose in the other Defendants' products), on the other. In response, Plaintiffs stated that even though "there were people in the [Plaintiff] group that had done some tests" to determine the amount of cellulose in the Publix and Target/ICCO products,

Plaintiffs decided to base their Anticaking allegations solely on the Bloomberg data—which did not include the amounts of cellulose in the Target/ICCO and Publix products—because the Bloomberg tests were "publicly done by an independent organization." Doc. 324-2 at 14-15; *see also* Doc. 327 at 6 ("Plaintiffs decided to plead certain test results from a single, publicly available report in complaints filed against certain other defendants in this MDL, but not private testing results relating to Publix's and Target/ICCO's products … .").

Thus, when they filed their amended complaints, Plaintiffs knew that their 100% claims might not survive, were sufficiently attuned to that danger that they added Anticaking claims, and had the information needed to allege the amount of cellulose in *all* Defendants' products, including the Publix and Target/ICCO products. Yet Plaintiffs' amended complaint against Target/ICCO did not allege the percentage of cellulose in the Target/ICCO product, and their amended complaint against Publix did not bring an Anticaking claim at all. Those choices had consequences during the second round of Rule 12(b)(6) motions: (1) with the dismissal of Plaintiffs' amended 100% claims against Publix, Publix was dismissed from the suit altogether because there were no Anticaking claims to consider; and (2) the court was put to the task of evaluating whether the Anticaking claims against Target/ICCO could survive dismissal given that Plaintiffs did not allege the percentage of cellulose in the Target/ICCO product, and held that they could not, which led to the dismissal of the Target/ICCO amended complaint in its entirety. 348 F. Supp. 3d at 803, 808, 818.

Given these circumstances, Plaintiff will not be given an opportunity to do in second amended complaints against Publix and Target/ICCO what they should and easily could have done in their first amended complaints. The court "can only assume that [Plaintiffs'] decisions not to attempt" to plead an Anticaking claim against Publix despite having information about the

percentage of cellulose in the Publix product, and not to use the information they had to allege the percentage of cellulose in the Target/ICCO product, "were strategic, and so their attempts to take those steps now are unavailing." *Lowinger v. Oberhelman*, 924 F.3d 360, 370 (7th Cir. 2019). Plaintiffs certainly were entitled to withhold the Anticaking claim from the Publix amended complaint, and to withhold the percentage of cellulose in the Target/ICCO product from the Target/ICCO amended complaint, and hope that their claims against those Defendants would nonetheless satisfy federal pleading standards. But having gambled and lost, Plaintiffs "must live with the consequences of [their] strategic decision." *Int'l Coll. of Surgeons v. City of Chicago*, 153 F.3d 356, 366 (7th Cir. 1998); *see also Dyson, Inc. v. SharkNinja Operating LLC*, 2019 WL 1454509, at *9 (N.D. Ill. Mar. 31, 2019) (collecting cases).

In so holding, the court acknowledges that "[d]elay by itself is normally an insufficient reason to deny a motion for leave to amend. Delay must be coupled with some other reason … , [t]ypically, … prejudice to the non-moving party … ." *Liebhart v. SPX Corp.*, 917 F.3d 952, 965 (7th Cir. 2019). But there are reasons other than delay to deny leave to amend here, namely, Plaintiffs' strategic conduct in purposely omitting from the Publix and Target/ICCO amended complaints the claim (as to Publix) and factual content (as to Publix and Target/ICCO) they now seek to add. Granting leave to amend would be particularly inappropriate as to Publix because Publix's motion to dismiss the original complaint expressly highlighted the weaknesses in the 100% claim for which the new Anticaking claim is designed to compensate. Doc. 174 at 7-13. An amendment at this late stage, following two hard-fought Rule 12(b)(6) rounds that took significant time and effort for the parties to litigate and for the court to resolve, would therefore prejudice Publix and Target/ICCO by "forcing [them] to articulate [even more] reasons for dismissal, and, at the same time providing [Plaintiffs] with the opportunity to correct mistakes

10

facially apparent since the first complaint after the defendants had shown their hand." *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 759 (7th Cir. 2002).

For these reasons, Plaintiffs' motion for leave to file second amended complaints against Publix and Target/ICCO is denied.

## III. Consumer Protection Claims

The court's more recent opinion dismissed Plaintiffs' Anticaking claims under the Alabama, California, Florida, Minnesota, New Jersey, and New York consumer protection statutes, reasoning that those statutes "require some form of causal connection between the alleged misrepresentation and the plaintiff's alleged injury" and that the Anticaking representation could not have caused (under the causation standard applicable to those statutes) Plaintiffs' injury because they did not see that representation prior to purchase. 348 F. Supp. 3d at 809-11. Kraft and Albertsons/SuperValu now argue that Plaintiffs' claims under the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b ("CUTPA"), Doc. 225 at ¶¶ 140-147 (Kraft), the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.903 *et seq*. ("MCPA"), Doc. 225 at ¶¶ 172-182 (Kraft), and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 ("ICFA"), Doc. 225 at ¶¶ 132-139 (Kraft); Doc. 227 at ¶¶ 74-81 (Albertsons/SuperValu), fail on the same ground. Doc. 311 at 9-11; Doc. 316 at 12-14. (Contrary to Plaintiffs' understanding, Doc. 336 at 5, the court's more recent opinion did not consider and reject those arguments, as no Defendant has yet argued that causation is a necessary element of a CUTPA, ICFA, or MCPA claim.)

Plaintiffs retort that their Kraft and Albertsons/SuperValu amended complaints do, in fact, allege that they saw the ingredient lists' Anticaking representations because the complaints allege that (1) each Plaintiff saw the label on Defendants' products, (2) the label contained an Anticaking representation, and (3) Defendants' "affirmations of fact and descriptions of the

Products formed the basis of the bargain between" Plaintiffs and Defendants. Doc. 335 at 11-12 (citing Doc. 225 at ¶¶ 34, 46-47); *but see* Doc. 336 at 5 (admitting that the amended complaints do not "explicitly state" that the Plaintiffs saw the ingredient list). That is an implausible reading of the amended complaints. The amended complaints' allegations that the Anticaking representations formed the basis of the bargain between Defendants and Plaintiffs is disregarded because the court does not credit a complaint's legal conclusions in resolving a Rule 12(c) motion. *See Bishop*, 900 F.3d at 397. Plaintiffs' factual allegations, which the court does credit, show that Plaintiffs saw the *100% statement* on the products' labels and inferred from that statement that the products contained no non-cheese ingredients. Doc. 225 at ¶¶ 9-17; Doc. 227 at ¶¶ 9-11. Had Plaintiffs *also* seen the ingredient lists, they of course would have known that the products contained cellulose—and thus could not possibly have alleged as an essential predicate of their 100% claims that they were fooled into thinking that the products were composed of 100% cheese. Doc. 225 at ¶ 46; Doc. 227 at ¶ 39. Therefore, the only plausible inference from Plaintiffs' well-pleaded factual allegations is that they did not read the products' ingredient lists before purchase. 348 F. Supp. 3d at 810.

Plaintiffs' failure to allege that they saw the ingredient lists' Anticaking representations dooms their ICFA, CUTPA, and MCPA claims. ICFA does not require a plaintiff to prove reliance, but it does require the plaintiff to show that the ICFA violation proximately caused her damages. *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513-14 (7th Cir. 2006) ("[A] damages claim under the ICFA requires that the plaintiff was deceived in some manner and damaged by the deception."); *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996) ("[A] valid claim must show that the consumer fraud proximately caused plaintiff's injury."). "[T]o properly plead the element of proximate causation in a private cause of action for deceptive advertising brought

under the [ICFA], a plaintiff must allege that he was, in some manner, deceived." *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 134, 164 (Ill. 2002); *see also Oshana*, 472 F.3d at 513-14 ("[A] damages claim under the ICFA requires that the plaintiff was deceived in some manner and damaged by the deception."). As noted, Plaintiffs did not see the ingredient lists' Anticaking representations, so those representations could not possibly have deceived them. Plaintiffs therefore have no viable Anticaking claim under ICFA.

As under ICFA, a CUTPA plaintiff need not show reliance, but must prove proximate cause. *See Landmark Inv. Grp., LLC v. CALCO Const. & Dev. Co.*, 124 A.3d 847, 868 (Conn. 2015); *Hinchliffe v. Am. Motors Corp.*, 440 A.2d 810, 814 (Conn. 1981) (holding that a CUTPA plaintiff must prove that the challenged practice caused her to suffer an "ascertainable loss" by demonstrating that she "purchased an item partially as a result of an unfair or deceptive practice or act and that the item is different from that for which [s]he bargained"); *see also Collins v. Anthem Health Plans, Inc.*, 880 A.2d 106, 120 (Conn. 2005) ("emphasiz[ing] that, in order for a class member to obtain relief from the defendant under [CUTPA], the plaintiffs must prove, inter alia, that that class member suffered a loss that was caused by the challenged policies of the defendant," and holding that individualized inquiries were required to determine "whether the challenged business policies were the cause of [each plaintiff's] injury"); *D'Angelo Dev. & Const. Corp. v. Cordovano*, 995 A.2d 79, 89-90 (Conn. App. 2010) (holding that the plaintiffs could not recover under CUTPA because they did not establish that the challenged practice caused their damages). Plaintiffs contend that a plaintiff may satisfy CUTPA's causation requirement merely by alleging that the defendant's statement was false or likely to mislead. Doc. 335 at 19 (citing *Izzarelli v. R.J. Reynolds Tobacco Co.*, 117 F. Supp. 2d 167, 176 (D. Conn. 2000)). That contention cannot be reconciled with the Connecticut Supreme Court's

holding that "in order to prevail in a CUTPA action, a plaintiff must establish both that the defendant has engaged in a prohibited act *and* that, as a result of this act, the plaintiff suffered an injury." *Abrahams v. Young & Rubicam, Inc.*, 692 A.2d 709, 712 (Conn. 1997) (internal quotation marks omitted). Kraft therefore is entitled to judgment on Plaintiffs' Anticaking claim under CUTPA.

As for the MCPA, Plaintiffs acknowledge that they must plead reliance to state an MCPA claim based on a fraudulent misrepresentation, but they argue that they need not plead reliance to state an MCPA claim based on a material omission. Doc. 335 at 17. Plaintiffs contend that their Anticaking claim is omission-based, alleging that Kraft misled consumers by stating that cellulose was used to prevent caking while omitting the fact that it also was used as filler. *Id*. at 17-18. But an omission can ground an MCPA claim only if it is "material," *i.e.*, only if it is "important to the transaction or affects the consumer's decision to enter into the transaction." *Zine v. Chrysler Corp.*, 600 N.W.2d 384, 398 (Mich. App. 1999). The Anticaking representation and corresponding "filler" omission could not have been material to Plaintiffs' decisions to buy the Kraft product because they did not see the ingredient label, and thus they neither knew that the product contained cellulose nor saw the representation (that cellulose was used to prevent caking) that allegedly made Kraft's failure to disclose additional information (that the cellulose was also used as filler) deceptive and misleading. Kraft therefore is entitled to judgment on the Anticaking claims under MCPA. *See ibid*. (holding that the plaintiff did not state an MCPA claim where the omission did not affect the plaintiff's decision to purchase the product). Nor does reframing the Anticaking claim as omission-based change the outcome under ICFA or CUTPA because, under both statutes, the plaintiff must show that the omission contributed in some way to the plaintiff's damages, and the Anticaking representation cannot have done so

because Plaintiffs did not see it. *See De Bouse v. Bayer*, 922 N.E.2d 309, 316 (Ill. 2009) ("[W]e have repeatedly emphasized that in a consumer fraud action, the plaintiff must actually be deceived by a statement or omission. If there has been no communication with the plaintiff, there have been no statements and no omissions. In such a situation, a plaintiff cannot prove proximate cause."); *Haesche v. Kissner*, 640 A.2d 89, 92 (Conn. 1994) (affirming judgment on a CUPTA claim based on the defendant's failure to warn the plaintiff that a BB gun could cause eye injuries, where the summary judgment record showed that the plaintiff would have used the BB gun anyway).

Accordingly, Plaintiffs' ICFA, CUTPA, and MCPA claims against Kraft and their ICFA claims against Albertsons/SuperValu are dismissed. Given this disposition, the court need not reach Kraft's argument that Plaintiffs cannot state a claim under those statutes because the Anticaking representation is accurate and not misleading. Doc. 316 at 14-16.

## II.    Express and Implied Warranty Claims

### A.    Albertsons/SuperValu

Albertsons/SuperValu's second Rule 12(b)(6) motion sought dismissal of the amended complaint's express and implied warranty claims on the ground that Plaintiffs did not provide Albertsons/SuperValu with pre-suit notice in a reasonable time as required by 810 ILCS 5/2-607(3)(a) and Ala. Code. § 7-2-607(3)(a). Doc. 157 at 27-28. The court rejected that argument because the amended complaint alleged generally that Plaintiffs satisfied all conditions precedent to their warranty claims. 348 F. Supp. 3d at 812-13, 815. Albertsons/SuperValu now move for summary judgment based on evidence that they did not, in fact, receive pre-suit notice from Plaintiffs. Doc. 311 at 11-16. In response, Plaintiffs admit that they did not send Albertsons or SuperValu a pre-suit notice letter, Doc. 336-1 at ¶¶ 20-21, 28-29, 36-37, but they argue that the

notice requirement was satisfied because the Bloomberg article gave Albertsons/SuperValu actual notice of the defect at the heart of the Anticaking claims. Doc. 336 at 10-12.

Under Illinois warranty law, "direct notice is not required when … the seller has actual knowledge of the defect of the particular product." *Connick*, 675 N.E.2d at 589. "Actual knowledge" for this purpose does not mean knowledge of "the facts" underlying the plaintiff's claim—"which the seller presumably knows quite as well as, if not better than, the buyer"—but rather knowledge "of [the] *buyer's claim* that [those facts] constitute a breach." *Id*. at 590 (internal quotation marks omitted). Put another way, "[i]t is essential that the seller be notified that this *particular transaction* is troublesome and must be watched." *Ibid*. (internal quotation marks omitted). Thus, the actual knowledge exception to the direct notice requirement "is satisfied only where the manufacturer is somehow apprised of the trouble with the particular product purchased by a particular buyer"—not where "a manufacturer is aware of problems with a particular product line." *Ibid*. Applying that principle in *Connick*, the Supreme Court of Illinois held that the defendant did not have actual knowledge that the car it sold to the plaintiffs posed certain safety risks, even though the very same risks had caused a consumer organization to give that make and model a "not acceptable" rating and had prompted investigations by seven state attorneys general. *Id*. at 589-91; *see also Anthony v. Country Life Mfg., LLC*, 2002 WL 31269621, at *4 (N.D. Ill. Oct. 9, 2002) (holding that the defendant did not have actual knowledge of the plaintiff's claim that the defendant's snack bars contained unwholesome ingredients, even though the defendants knew that those ingredients were in their snack bars), *aff'd*, 70 F. App'x 379 (7th Cir. 2003).

Here, Plaintiffs argue that Albertsons/SuperValu had actual knowledge that cellulose was used as filler because Bloomberg published a report showing that its product was 8.8% cellulose,

while FDA standards provided that a dried cheese product should be 2% cellulose or less.  Doc.
336 at 11-12.  At best, Plaintiffs allege that Albertsons/SuperValu was aware of "problems with
[its] particular product line."  *Connick*, 675 N.E.2d at 590.  This falls far short of an allegation
that Albertsons/SuperValu was on notice that the "particular transaction[s]" in which the
"particular product[s]" at issue were "purchased by [the] particular buyers" now bringing suit
were "troublesome and must be watched."  *Id.* at 590.  Accordingly, Albertsons/SuperValu did
not receive adequate pre-suit notice under Illinois warranty law.

As for the Alabama warranty claims, Plaintiffs make no argument and cite no authority to
support their contention that Alabama law recognizes an actual knowledge exception to the
notice requirement, thereby forfeiting the issue.  *See M.G. Skinner & Assocs. Ins. Agency, Inc. v.
Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped
arguments are waived, as are arguments unsupported by legal authority.").  Even if Alabama
recognized an actual knowledge exception, *but see Smith v. Apple, Inc.*, 2009 WL 3958096, at *1
(N.D. Ala. Nov. 4, 2009) ("declin[ing] plaintiffs' invitation to create" an exception to the notice
requirement for circumstances where the defendant is "aware of the alleged defects," and
predicting that the Alabama Supreme Court would not endorse such an exception) (internal
quotation marks omitted), Plaintiffs have forfeited any argument that the Alabama actual notice
exception differs from the Illinois exception, which as shown above is not satisfied here.

For these reasons, Albertsons/SuperValu is entitled to judgment on Plaintiffs' Illinois and
Alabama express and implied warranty claims.

### B.      Kraft

Kraft moves under Rule 12(c) for judgment on the Connecticut implied warranty claims,
the Florida express warranty claims, and the Minnesota and California express and implied

warranty claims on the ground that Plaintiffs do not allege reliance (Florida, Minnesota, and California) or privity (Connecticut and California). Doc. 316 at 16-18. (Again, Plaintiffs are wrong to say that the court already "upheld" those warranty claims against all challenges to their sufficiency. Doc. 335 at 11. Kraft did not previously raise, and the court has not yet decided, the reliance and privity issues presented in the current motion.)

Kraft contends that a plaintiff can bring a Connecticut implied warranty claim only if she is in privity with the defendant. Doc. 316 at 16-17. Plaintiffs effectively concede that they are not in privity with Kraft and admit that privity is ordinarily required. But citing *Hamon v. Digliani*, 174 A.2d 294, 297-98 (Conn. 1961), Plaintiffs argue that Connecticut law relaxes the privity requirement where (1) "the manufacturer or producer makes representations in his advertisements or by the labels on his products as an inducement to the ultimate purchaser," (2) the purchaser "buys the product in reliance on the representations," and (3) she "later suffers an injury because the product fails to conform to them." Doc. 335 at 21.

That argument fails for two reasons. First, as noted, Plaintiffs did not see the ingredient label's Anticaking representation, and thus could not have bought "the product[s] in reliance on" it. Second, as the court explained in its more recent opinion, the exception described in *Hamon* applies only when the product causes physical injury, which is not alleged here. 348 F. Supp. 3d at 813. Kraft therefore is entitled to judgment on the Connecticut implied warranty claims.

Kraft next contends that a plaintiff can bring a Florida express warranty claim only if she relied on the warranty. Doc. 316 at 17-18. The great weight of authority—including every Florida intermediate appellate court decision the parties cite, *see In re Zimmer, NexGen Knee Implant Prod. Liab. Litig.*, 884 F.3d 746, 751 (7th Cir. 2018) (instructing that where a state's highest court has not resolved an issue of state law, a federal court should follow decisions

issued by the state intermediate appellate court absent a strong countervailing reason)—supports Kraft's position. *See*, *e.g.*, *Hobco, Inc. v. Tallahassee Assocs.*, 807 F.2d 1529, 1533 (11th Cir. 1987) ("Under Florida law, an express warranty may arise only where justifiable reliance upon assertions or affirmations is part of the basis of the bargain."); *Royal Typewriter Co. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1101 (11th Cir. 1983) (similar); *Spolski Gen. Contractor, Inc. v. Jett-Aire Corp. Aviation Mgmt. of Cent. Fla.*, 637 So. 2d 968, 970 (Fla. App. 1994) (affirming judgment on the pleadings on an express warranty claim, in part, because the plaintiff did not plead reliance); *Thursby v. Reynolds Metals Co.*, 466 So. 2d 245, 250 (Fla. App. 1984) ("[A]n express warranty is generally considered to arise only where the seller asserts a fact … on which the buyer justifiably relies as part of the basis of the bargain.") (internal quotation marks omitted); *Escambia Chem. Corp. v. Indus.-Marine Supply Co.*, 223 So. 2d 773, 775 (Fla. App. 1969) (similar). Given this authority, including the Eleventh Circuit's published decisions in *Hobco* and *Royal Typewriter*, the court declines Plaintiffs' invitation to follow *Southern Broadcast Group, LLC v. Gem Broadcasting, Inc.*, 145 F. Supp. 2d 1316, 1324 (M.D. Fla. 2001), *aff'd without opinion sub nom. S. Broad. v. GEM Broad.*, 49 F. App'x 288 (11th Cir. 2002), which reached the opposite conclusion.

Plaintiffs retort that *Southern Broadcast Group* finds support in Comment 3 to the Uniform Commercial Code's express warranty provision, which states that "affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement." U.C.C. § 2-313 cmt. n.3. But Florida courts have held that they are not bound by U.C.C. comments, *see PMT NPL Fin. 2015-1 v. Centurion Sys., LLC*, 257 So. 3d 516, 519 n.2 (Fla. App. 2018); *Corfan Banco Asuncion Paraguay v. Ocean Bank*, 715

So. 2d 967, 971 (Fla. App. 1998), and, more to the point, have consistently held (notwithstanding Comment 3) that reliance is required to state an express warranty claim. It also bears noting that Comment 3 has appeared in the U.C.C. commentary since 1952, *see* U.C.C. § 2-313 (Am. Law Inst. & Unif. Law Comm'n 1952); *see also Carter Hawley Hale Stores, Inc. v. Conley*, 372 So. 2d 965, 968 (Fla. App. 1979) (quoting the comment)—long before the above-cited Eleventh Circuit and Florida appellate decisions were issued. Accordingly, Kraft is entitled to judgment on the Florida express warranty claims.

Kraft next argues that Plaintiffs must allege reliance to state express or implied warranty claims under Minnesota law. Doc. 316 at 17-18. Minnesota law is somewhat unsettled on that point. The Minnesota Supreme Court endorsed a reliance requirement in *Midland Loan Financial Co. v. Madsen*, 14 N.W.2d 475, 481 (Minn. 1944), and applied that requirement in *Alley Construction Co. v. State*, 219 N.W.2d 922, 924-25 (Minn. 1974). (Contrary to Plaintiffs' understanding, Doc. 335 at 25, *Midland* did not limit the reliance rule to cases alleging observable defects, but rather held categorically that reliance is required and pointed to observable defects merely as an example of a situation where the requirement would not be met.) In setting forth the elements of a warranty claim in *Peterson v. Bendix Home Systems, Inc.*, 318 N.W.2d 50, 52-53 (Minn. 1982), however, the court did not mention reliance or cite *Midland* or *Alley*. The plaintiff in *Lyon Financial Services, Inc. v. Illinois Paper & Copier Co.*, 848 N.W.2d 539 (Minn. 2014), brought that discrepancy to the Minnesota Supreme Court's attention, arguing that *Peterson* had implicitly overruled *Midland* and *Alley*, but the court did not reach that issue. *See id.* at 544 n.6.

Federal courts are bound by state supreme court decisions interpreting state law. *See Wash. State Dep't of Licensing v. Cougar Den, Inc.*, 139 S. Ct. 1000, 1010 (2019); *Trytko v.*

*Hubbell, Inc.*, 28 F.3d 715, 719 (7th Cir. 1994). *Midland* directly addressed the issue at hand, holding that reliance is a required element of a Minnesota warranty claim; *Peterson* did not expressly overrule *Midland* or explicitly hold that reliance was not required; and *Lyon Financial* did not resolve whether *Midland* remains good law. Therefore, despite the uncertainty created by *Peterson*, the court will follow the Minnesota Supreme Court's only explicit pronouncement on the issue (in *Midland*) and hold that Plaintiffs must show reliance to succeed on an express or implied warranty claim. *See Hendricks v. Callahan*, 972 F.2d 190, 194 (8th Cir. 1992) (following *Midland*'s reliance rule, in part, "because the Minnesota Supreme Court has not expressly overruled *Midland*"); *Residential Funding Co. v. Americash*, 2014 WL 3577312, at *2 n.3 (D. Minn. July 21, 2014) (same, given the Minnesota Supreme Court's decision not to resolve the issue in *Lyon Financial*). Although Plaintiffs are correct that at least one unpublished, non-precedential Minnesota intermediate court decision went the other way, *see Krause v. City of Elk River*, 2015 WL 3823093, at *3 & n.2 (Minn. App. June 22, 2015), intermediate state court opinions countermanding state supreme court decisions do not relieve federal courts of their obligation to follow state supreme court decisions. *See Luna v. United States*, 454 F.3d 631, 636 (7th Cir. 2006) (holding that the district court erred in failing to follow a state supreme court decision and instead adhering to later intermediate appellate court decisions suggesting that the supreme court case was wrongly decided). Accordingly, because Plaintiffs have not alleged that they relied on the ingredient labels' Anticaking representations, Kraft is entitled to judgment on the Minnesota express and implied warranty claims.

Finally, Kraft argues that California requires express warranty plaintiffs to plead reliance. As in Minnesota, the issue is unsettled in California. Pre-U.C.C. California Supreme Court decisions held that express warranty plaintiffs must plead and prove reliance. *See, e.g., Burr v.*

*Sherwin Williams Co.*, 268 P.2d 1041, 1048-49 (Cal. 1954) (holding that reliance is required

absent privity); *Grinnell v. Charles Pfizer & Co.*, 79 Cal. Rptr. 369, 378 (Cal. App. 1969)

(holding that reliance is an "essential ingredient[ ]" of any express warranty claim).  But the

court later recognized in *Hauter v. Zogarts*, 534 P.2d 377 (Cal. 1975) (en banc), that the U.C.C.'s

adoption in California worked "a significant change in the law of warranties" by replacing the

traditional reliance element with a requirement that the challenged representation form the "basis

of the bargain."  *Id*. at 383 (citing *Grinnell*).  Specifically, *Hauter* held that this basis-of-the-

bargain requirement either "shift[ed] the burden of proving non-reliance to the seller" or

"eliminat[ed] the concept of reliance altogether."  *Id*. at 384.  *Hauter* found support for each of

those competing views in the U.C.C. commentary and scholarly work on the subject, and

ultimately declined to decide between them.  *Ibid*. (citing Cal. Com. Code § 2313 cmt. nn.3-4).

No consensus on that question has emerged since *Hauter*.  Most decisions hold that the

basis-of-the-bargain requirement has one of three effects: (1) eliminating the reliance

requirement, *see*, *e.g.*, *Weinstat v. Dentsply Internat., Inc.*, 103 Cal. Rptr. 3d 614, 626-29 (Cal.

App. 2010); *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 513 (6th Cir. 2015); *In re Nexus 6P

Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 915-16 (N.D. Cal. 2018); *Karim v. Hewlett-Packard Co.*,

311 F.R.D. 568, 574-75 (N.D. Cal. 2015); (2) keeping the reliance requirement, but shifting the

burden to the defendant to show that the "bargain d[id] not rest at all on the representation,"

*Keith v. Buchanan*, 220 Cal. Rptr. 392, 398 (Cal. App. 1985); *see also*, *e.g.*, *Davis v. Louisiana-

Pac. Corp.*, 2008 WL 2030495, at *12 (Cal. App. May 13, 2008); *Ibrahim v. Ford Motor Co.*,

214 Cal. App. 3d 878, 890 (1989); *Wilson v. Metals, USA, Inc.*, 2017 WL 2972608, at *13 (E.D.

Cal. July 12, 2017); *Karim v. Hewlett-Packard Co.*, 2014 WL 555934, at *6 (N.D. Cal. Feb. 10,

2014); or (3) changing the role of reliance where the parties are in privity, but maintaining the

reliance requirement where the parties are not in privity, *see Hardage Hotels X, LLC v. First Co.*,
2010 WL 1512138, at \*9 (Cal. App. Apr. 16, 2010); *Wiley v. Yihua Int'l Grp.*, 2009 WL
3720903, at \*6 (Cal. App. Nov. 9, 2009); *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 546
(C.D. Cal. 2012); *Coleman v. Bos. Sci. Corp.*, 2011 WL 3813173, at \*4 (E.D. Cal. Aug. 29,
2011).

Two considerations persuade the court that the California Supreme Court likely would
not adopt the first approach and eliminate the reliance requirement altogether, but instead would
adopt the second or third approaches and merely modify the requirement. First, the second and
third approaches have greater purchase with California Courts of Appeal. This court has not
identified, and the parties have not cited, any California Court of Appeal case other than
*Weinstat* to have eliminated the reliance requirement altogether, while multiple California Court
of Appeal decisions have adopted either the second or third approaches. Second, as noted,
reliance and privity played important roles in the California Supreme Court's pre-U.C.C
jurisprudence, suggesting that, if asked to choose between two defensible approaches that are
equally consistent with the U.C.C. commentary, the state supreme court would preserve at least
some role for reliance. *See Sutula-Johnson v. Office Depot, Inc.*, 893 F.3d 967, 971 (7th Cir.
2018) ("Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), our role is to decide
questions of state law as we predict the [state] [s]upreme [c]ourt would decide them.");
*Hendricks v. Novae Corp. Underwriting*, 868 F.3d 542, 547 (7th Cir. 2017) ("When a state
supreme court has not squarely addressed a question, our task is to predict what the state's
highest court would do if presented with the same issue.") (internal quotation marks omitted).
As an additional consideration, even if the three theories' likelihood of adoption were in
equipoise, this court would follow the Seventh Circuit's instruction to favor a "narrower

23

interpretation [of state law] which restricts liability"—here, one of the two approaches that preserves some role for reliance—over a "more expansive interpretation which creates substantially more liability"—here, the approach that eliminates the reliance requirement altogether. *Home Valu, Inc. v. Pep Boys*, 213 F.3d 960, 963 (7th Cir. 2000); *see also Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 635-36 (7th Cir. 2007) (same); *S. Ill. Riverboat Casino Cruises, Inc. v. Triangle Insulation & Sheet Metal Co.*, 302 F.3d 667, 676 (7th Cir. 2002) (same).

Having determined that the California Supreme Court would not adopt the first approach, the court need not decide between the second and third approaches because Kraft would prevail under either—Plaintiffs are not in privity with Kraft, and the Kraft amended complaint necessarily shows that Plaintiffs did not rely on the Anticaking representation prior to purchase. Kraft therefore is entitled to judgment on the California express warranty claims.

Kraft argues that it is also entitled to judgment on the California implied warranty claims because implied warranty claims based on a product's failure to "conform to the promises or affirmations of fact" on the label rise or fall with express warranty claims based on the same representation. Doc. 316 at 17 n.5 (quoting *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1106 (N.D. Cal. 2017), and *Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 933 (N.D. Cal. 2014)); Doc. 338 at 17 (same). Plaintiffs do not respond to that argument, thereby forfeiting the issue and the California implied warranty claims. *See Lee v. Ne. Illinois Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1054 (7th Cir. 2019) ("[The forfeiture] rule applies when a party fails to develop arguments related to a discrete issue or when a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss."); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("We apply [the forfeiture] rule … where a litigant

effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss.").

Accordingly, Kraft is entitled to judgment on the California, Florida, and Minnesota express warranty claims and the California, Minnesota, and Connecticut implied warrant claims.

## IV.     Unjust Enrichment Claims

Albertsons/SuperValu and Kraft move for judgment on all remaining unjust enrichment claims against them.

Kraft contends that the Illinois unjust enrichment claims fail because Plaintiffs do not sufficiently allege that they suffered a detriment or that there was a "connection between the detriment and the defendant's retention of the benefit." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 518-19 (7th Cir. 2011).  (Kraft relies on *Cleary* for judgment on Plaintiffs' unjust enrichment claims under New York, Connecticut, Minnesota, Florida, California, Alabama, and Michigan law, Doc. 316 at 18-19, but *Cleary* interpreted Illinois law, and Kraft makes no argument and cites no authority to support the proposition that *Cleary* reflects the law of any other State.  Accordingly, any such argument is forfeited.  *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court."); *Alioto*, 651 F.3d at 721 ("We apply [the forfeiture] rule where a party fails to develop arguments related to a discrete issue … .").)  In *Cleary*, a class of Illinois cigarette purchasers to whom the health risks of cigarettes were not adequately disclosed argued that they could prevail on an unjust enrichment claim against the cigarette manufacturer without proving "deception, causation, or actual harm with regard to individual members of the plaintiff class." *Cleary*, 656 F.3d at 518.  The Seventh Circuit disagreed, holding that "the mere violation of a consumer's legal right to know about a product's

risks … cannot support a claim that the manufacturer unjustly retained the revenue from the product's sale to the consumer's detriment." *Id*. at 519. As the Seventh Circuit explained, a plaintiff must show a "greater connection" between the unjust enrichment and the detriment to the plaintiff—for example, that "the revenue was obtained in a manner that caused injury to the plaintiffs, or … by deceiving the plaintiffs, or … by an inadvertent misrepresentation relied upon by the plaintiffs." *Id*. at 519-20.

Plaintiffs maintain that they have shown the requisite connection by alleging that they suffered damages as a result of the Anticaking representation. Doc. 335 at 27-28. The only damages that can be inferred from the Kraft amended complaint are the kinds of damages that support Plaintiffs' standing, namely, the generalized effect of the Anticaking representation on the Kraft product's purchase price. But *Cleary* held that that a consumer cannot make out an unjust enrichment claim merely by alleging that the defendant withheld information about a product's undesirable qualities, even though disclosure of such information would have affected overall consumer behavior in such a way as to drive down the price for every consumer. *See Cleary*, 656 F.3d at 518-20 (holding that the plaintiffs did not state an unjust enrichment claim where they alleged that the defendants had not adequately disclosed cigarettes' health hazards and that the omission was "to plaintiffs' detriment"). It follows that a plaintiff cannot establish the requisite connection between her detriment and the defendant's alleged unjust enrichment by showing that the defendant's representations or omissions affected the price that all consumers paid. Accordingly, Kraft is entitled to judgment on the Illinois unjust enrichment claims against it; the same holds for the materially identical Illinois unjust enrichment claims against Albertsons/SuperValu.

SuperValu argues that the Alabama unjust enrichment claims fail because: (1) unjust enrichment under Alabama law "sounds in the nature of quasi-contract," (2) courts generally do not find implied contracts, including quasi-contracts, where the parties have entered into an express contract concerning the same subject matter, (3) the allegations supporting Plaintiffs' express warranty claim show that the parties entered into an express contract based on the Anticaking representations, and therefore, (4) Plaintiffs cannot maintain an unjust enrichment cause of action based on an implied quasi-contract. Doc. 311 at 18-19 (citing *White v. Microsoft Corp.*, 454 F. Supp. 2d 1118, 1132 (S.D. Ala. 2006) (collecting cases)). That argument fails to persuade. Although Plaintiffs cannot recover for unjust enrichment if an express contract covers the same subject matter, they still may pursue express warranty claims and unjust enrichment claims in the alternative so long as a factfinder could plausibly determine that no express contract existed. *See* Fed. R. Civ. P. 8(d)(2); *Kennedy v. Polar-BEK & Baker Wildwood P'ship*, 682 So. 2d 443, 447 (Ala. 1996) (holding that "the existence of an express contract … [is] a question of fact" and that a court "may recognize an implied contract where the existence of an express contract on the same subject matter is not proven"). SuperValu has not even attempted to establish that an express contract indisputably existed here, and thus it has not shown that Plaintiffs are precluded from pleading unjust enrichment in the alternative.

SuperValu retorts that if the court grants its motion for summary judgment as to the Alabama express warranty claims—which, for the reasons given above, the court has done—then the court must also find that there was an express warranty in the first place. Doc. 338 at 10-11. That is incorrect. SuperValu is entitled to judgment on the Alabama express warranty claim because *even if* the Anticaking representation created an express warranty under Alabama law, Plaintiffs *still* could not recover because they did not provide SuperValu with adequate pre-suit

notice. In so holding, the court did not reach the question whether the Anticaking representation in fact created an express warranty, and SuperValu has not provided any argument or cited any case law showing that it did, thereby forfeiting the issue. *See G & S Holdings*, 697 F.3d at 538; *Alioto*, 651 F.3d at 721. Accordingly, SuperValu is not entitled to judgment on the Alabama unjust enrichment claims.

In sum, Plaintiffs' Illinois unjust enrichment claims against Albertsons/SuperValu and Kraft are dismissed, but their remaining unjust enrichment claims can proceed.

### Conclusion

Plaintiffs' motion for leave to file second amended complaints against Publix and Target/ICCO is denied. The claims against Publix and Target/ICCO remain dismissed.

As to Kraft, Plaintiffs' CUTPA, ICFA, and MCPA claims; their California, Florida, and Minnesota express warranty claims; their California, Connecticut, and Minnesota implied warranty claims; and their Illinois unjust enrichment claims are dismissed. Plaintiffs' New York, Connecticut, Minnesota, Florida, California, Alabama, and Michigan unjust enrichment claims against Kraft may proceed, along with their Alabama express warranty claims and Michigan implied warranty claims (neither of which were addressed in Kraft's Rule 12(c) motion).

As to Albertsons/SuperValu, Plaintiffs' ICFA claims; their Illinois and Alabama express warranty claims; their Illinois implied warranty claims; and their Illinois unjust enrichment claim are dismissed. Plaintiffs' Alabama unjust enrichment claim against SuperValu may proceed. As there are no remaining claims against Albertsons, it is dismissed as a defendant.

The dismissed claims against Publix, Target/ICCO, Kraft, and Albertsons/SuperValu are dismissed with prejudice. Plaintiffs were on notice of the reliance and causation issues that resulted in the dismissals at least since the court issued its more recent opinion. They have not

proposed, in either their motion for leave to amend or their responses to Kraft's and Albertsons/SuperValu's present motions, a way to amend their complaint to sufficiently allege reliance or causation. Moreover, Plaintiffs have from the beginning of this litigation known what information they saw and relied upon at the time they purchased Defendants' products. Permitting them to amend those allegations at this late stage, following three protracted and resource-intensive rounds of briefing, would prejudice Defendants and waste judicial resources. *See Thompson*, 300 F.3d at 759 (holding that defendants are prejudiced when they are forced to respond to new allegations that could have been raised earlier in the litigation).

July 16, 2019

_____
United States District Judge